# EXHIBIT 21

The New York Times | **Archives**

## Genetic Tests 'Inconclusive' In Jogger Rape

By RONALD SULLIVAN
Published: October 10, 1989

**Correction Appended**

Laboratory tests on genetic evidence that prosecutors hoped would link six young defendants to the rape and attempted murder of a Central Park jogger appear inconclusive, law-enforcement officials disclosed yesterday.

Although prosecutors would not say definitely that the tests were negative, one law-enforcement official, remarking that he was not encouraged by the results, said an F.B.I. report termed them "inconclusive."

At the same time, the officials said they expected that the victim, a 28-year-old investment banker who is suffering from amnesia and brain damage, would be called as a witness when the youths are tried. Emotional Effect

Physicians giving the woman physical therapy and medical treatment have said that because of the amnesia she has no recollection of the attack, which occurred on April 19 while she was jogging at night on the 102d Street traverse road across the northern end of the park.

Prosecutors in the office of District Attorney Robert M. Morgenthau of Manhattan, who declined to be identified, do not expect the victim to be able to identify her attackers. But they said they hoped that months of rehabilitation will enable her at least to recall the fact that she was attacked, and they hope that her appearance will have a dramatic emotional effect on the jury.

The woman, whose name has been withheld by news organizations because she was a rape victim, is undergoing physical and psychological rehabilitation at Gaylord Hospital in Wallingford, Conn.

The prosecutors also said yesterday that they expect the presiding judge, Justice Thomas B. Galligan, to order the defendants tried separately sometime early next year. The courts were closed yesterday and Justice Galligan was not available for comment.

Prosecutors noted that having six defendants would complicate the presentation of evidence in their respective cases. Evidentiary hearings to determine the admissibility of written and videotaped statements by the six defendants are scheduled to begin today before Justice Galligan in State Supreme Court in Manhattan. Hearings on the genetic tests and on the issue of having the defendants tried separately and in a different venue are scheduled later.

The genetic evidence consists of a comparison of the DNA in semen found on the body of the victim and DNA in blood samples taken under court order from the six defendants. The structure of DNA found in the bodily fluids and tissue of an individual is as singular as a person's fingerprint. If the Federal Bureau of Investigation tests fail to show a DNA match between the semen and the blood of any of the defendants, prosecutors said they would lose a critical piece of evidence.

DNA "genetic fingerprinting" has been widely accepted as evidence in criminal-court cases, though there have been some challenges of the reliability of the testing. Prosecutors in the Central Park case noted that they have never successfully tested multiple DNA samples before.

Without DNA evidence, prosecutors said their most important evidence would be statements that the defendants made to the police shortly after their arrests the day after the attack. Two Witnesses

Prosecutors said they also have two witnesses - one a 13-year-old who saw the attack. The other witness, Jermaine Robinson, 15, has admitted taking part in the park rampage in which two men were robbed before the rape. But he was never charged in the assault and rape of the victim.

Mr. Robinson has agreed to plead guilty to one count of robbery, while all other charges against him were dropped. In exchange for a recommendation that he serve no more than one year in prison, the prosecutors said he would testify that he heard the defendants boast about their roles in the rape and beating while they were being held for questioning. Critical to Case

As a consequence, prosecutors said today's hearing would be critical to their case against the defendants, who are charged individually with rape and attempted murder. The six defendants are Steven Lopez, 15; Raymond Santana, 15; Yusef Salaam, 15; Kevin Richardson, 15; Kharey Wise, 17, and Antron McCray, 15. Because of the gravity of the crime, they all are being tried as adults.

Defense lawyers for the six youths said they would ask the court to find that both written and videotaped statements the defendants made while being questioned by the police in the Central Park Precinct were coerced and thus inadmissible as evidence.

They have also asserted that the police used physical abuse and psychological coercion and deceit to persuade the youths to implicate themselves and blame one another for the attack. Implicating Others

In their statements, according to the prosecutors, each defendant tried to minimize his involvement while implicating others in the more serious aspects of the attack.

Mr. Lopez admitted hitting the victim with a metal pipe and holding her while others raped her.

Mr. Salaam admitted striking the victim with a metal pipe, too, and fondling her breasts while someone else, he said, raped her.



EXHIBIT Fairstein 28 4/24/13 AS

NYCLD_039536

Mr. Richardson admitted chasing the victim and grabbing her.

Mr. Wise admitted holding her legs while others attacked her. In particular, he said that Mr. Lopez wanted to kill the victim so she could not identify them, but that he and Mr. Salaam talked him out of it.

Mr. McCray admitted "taking turns getting on top of her" and punching and kicking her.

Mr. Santana admitted fondling the woman's breasts, tearing off her clothes and holding her while someone else raped her.

Under the rules of evidence, a defendant's statement can only be used to incriminate himself, and his accusations cannot be used as evidence against others. But the rules allow a judge to instruct a jury that no matter how small a role a defendant claims in the attack, any role constitutes grounds for conviction.

*Correction: October 13, 1989, Friday, Late Edition - Final An article on Tuesday about the six teen-agers accused of the rape of a jogger in Central Park misattributed assertions about the role of one defendant, Steven Lopez. It was a co-defendant, Kevin Richardson, who told the authorities that Mr. Lopez had held the jogger down and struck her with a pipe. Mr. Lopez has made no such admission to the authorities.*

NYCLD_039537

# DNA prints fail to ID jogger's attackers

**By LIZETTE ALVAREZ**
Daily News Staff Writer

Semen found in the jogger's body and on her sock did not come from any of the defendants in the Central Park rape trial, a prosecution witness admitted yesterday.

The revelation, wrested from an FBI expert under cross-examination, suggests that the rapist may still be roaming city streets, defense attorneys said, hailing the testimony as a major setback for the prosecution.

Prosecutors have said all along that DNA "genetic fingerprint" tests of semen found in the jogger's cervix were too weak to interpret.

But FBI expert Dwight Adams testified yesterday that he did make out a faint DNA pattern in one of four tests he conducted. That pattern, he said, did not match the semen of the three defendants currently on trial, the three others to be tried later or the jogger's boyfriend.

Adams, a DNA analyst, also testified that a semen stain found on the jogger's sock appears to match faint DNA patterns of semen found inside her body.

But that semen does not belong to any of the suspects in the case or to the jogger's boyfriend, Adams said.

### Matches with boyfriend

Adams told jurors he found semen matching that of the jogger's boyfriend only on her running pants.

Defense attorneys said they would have called the DNA analyst to testify if prosecutors did not.

"Certainly they did not want us to be in a position where their expert was called by the defense," said Michael Joseph, Antron McCray's attorney.

Defense attorney Peter Rivera said the admission "weakens the prosecution's case tremendously."

"It permits us to argue that our clients had nothing to do with the rape of the jogger," said Rivera, who represents Raymond Santana.

Santana, 15, McCray, 16, and Yusef Salaam, 16, are charged with the rape, sodomy and attempted murder of the Central Park jogger on April 19, 1989. Three other defendants will be tried later this year.

Earlier in the day, Joseph suggested during cross-examination that a detective lied when he said McCray told police he penetrated the jogger.

A written statement taken by police and signed by McCray does not say McCray penetrated the jogger but that he "jumped on" the jogger.

"We don't put anything in the statement that he doesn't say," Detective Carlos Gonzalez said during cross-examination.



**Riddled with bullets**

**APPARENT TRAFFIC DISPUTE** ended in gunfire on 42d St. and 10th Ave. around 11 last night, leaving a man in critical condition with gunshot wounds at Bellevue Hospital. The gunman apparently fled the scene in a car after shooting up the victim's vehicle and shattering the front, rear and right side windows, according to police.    ALAN AARONSON DAILY NEWS

# Revenge spurs a riot on Rikers

Forty-two correction officers were injured yesterday after about 60 inmates — at least 17 armed with homemade knives — stormed a Rikers Island jail wing to take revenge on an inmate who stabbed a Muslim religious leader.

At least two officers were briefly held hostage at knifepoint by a feared group of Muslim inmates, according to sources at the scene.

Four officers were seriously injured; two were admitted at the City Hospital Center at Elmhurst and two at St. John's Hospital, also in Elmhurst. The others were treated at Booth Memorial Hospital and released.

> This account was reported by **EDDIE BORGES, DEAN CHANG** and **PAUL LA ROSA**. It was written by **LA ROSA**.

Hospital officials would not confirm a report by correction officers union head Phil Seelig that one officer was stabbed five times in the chest and another in the eye.

Seelig said it was the worst incident on Rikers in 18 years.

At least 17 inmates were treated by Emergency Medical Service technicians and three reportedly were taken to Elmhurst. Details on their conditions were not immediately available.

The riot broke out at 2:30 p.m. at the Anna M. Kross Center — the largest jail on Rikers with more than 2,600 inmates — when dozens of Muslim inmates were returning from a religious service, according to Ruby Ryles, a Correction Department spokeswoman.

The Muslims were angry about the Thursday night slashing of inmate Andrew Jackson, their elected imam, or religious leader, allegedly by another inmate, Renaldo Gonzalez, Ryles said. Jackson was treated at the jail clinic for a "visible" slash to the face — known as a "lifemark" among inmates.

Gonzalez was not transferred from the jail, a move openly questioned yesterday by members of the city Board of Correction, a watchdog agency.

"When the inmates were returning from the service, they sought revenge against Gonzalez," Ryles said.

As the crowd of inmates grew to about 60, they passed through a corridor near Gonzalez' housing area and suddenly brandished homemade weapons, overcoming their escort officers and, holding two officers at knifepoint, secured keys that led them closer to Gonzalez, sources said.

An alarm was sounded and some 45 officers wearing helmets and carrying wooden batons dispersed the group and regained control. The group never got to Gonzalez, Ryles said.

**The New York Times**   https://nyti.ms/29o0bAh

# Semen Tested in Jogger Case Was Not That of Defendants

By Ronald Sullivan

July 14, 1990



See the article in its original context from
July 14, 1990, Section 1, Page 25   Buy Reprints

**VIEW ON TIMESMACHINE**

TimesMachine is an exclusive benefit for home delivery and digital subscribers.

**About the Archive**

*This is a digitized version of an article from The Times's print archive, before the start of online publication in 1996. To preserve these articles as they originally appeared, The Times does not alter, edit or update them.*

*Occasionally the digitization process introduces transcription errors or other problems; we are continuing to work to improve these archived versions.*

A scientific expert from the Federal Bureau of Investigation testified yesterday that a DNA analysis of semen found in the jogger in Central Park did not match any defendants charged with her rape and attempted murder.

Although the prosecution does not have to establish ejaculation took place to prove rape, the testimony was regarded by defense lawyers as the first major break in a trial they conceded had thus far gone badly for them.

''It weakens the prosecution's case tremendously,'' said Peter Rivera, the lawyer for one of the three defendants, 15-year-old Raymond Santana.

The testimony also appeared to contradict statements that the expert made moments earlier as a witness for the prosecution.

No DNA Link to Defendants

The witness, Dwight Adams, an expert in DNA analysis at the F.B.I. crime laboratory in Quantico, Va., said under questioning from Arthur Clements, an assistant District Attorney, that a DNA analysis of the semen failed to link the defendants with the rape of the woman.

''There was no conclusive result,'' Mr. Adams said in State Supreme Court in Manhattan. ''The result of our analysis was too weak and not adequate enough to make a positive interpretation,'' explaining that of four tests, one was ''too faint to draw any conclusions,'' and three were so faint they did not register results.

His testimony was consistent with an announcement last year by the Manhattan District Attorney, Robert M. Morgenthau, who said the DNA results ''were inconclusive.''

But under cross-examination by Michael Joseph, the lawyer for one of the other defendants, 16-year-old Antron McCray, Mr. Adams gave a different interpretation of the results.

Easier to Exclude Than Include

''Would it be correct to say the result of even the faint test excluded my client, Antron McCray?'' asked Mr. Joseph. ''Yes, it would,'' replied Mr. Adams. ''And did it exclude all of the other defendants?'' he asked as the prosecutors moved as if they were going to object, then stopped. ''Yes,'' said Mr. Adams. ''Then what you are saying is that in a DNA analysis it is easier to exclude than include?'' Mr. Joseph asked. ''Yes,'' the witness replied. ''Are you are saying that there is no scientific link between the victim and my client?'' asked Mr. Joseph as Mr. Clements leapt to his feet to object.

Justice Thomas B. Galligan sustained the objection.

As Good as Fingerprints

Through DNA analysis, the chemical composition of body fluid like semen or blood is categorized genetically. Most forensic experts say if a DNA test is done correctly, a positive comparison is as reliable as a fingerprint.

Because Mr. Adams said the DNA analysis excluded the three defendants on trial and the three others to be tried later, ''That means there was another rapist who is still at large.'' Mr. Rivera said as he left the courtroom.

Semen found in the woman's cervix and on her sock does not match anyone tested. Mr. Adams said the only DNA match of semen recovered, a sample taken from the woman's jogging pants, came from a blood sample taken from her boyfriend.

The third defendant is Yusef Salaam, 16. The three defendants to be tried later are Kevin Richardson, 15, Steven Lopez, 16, and Kharey Wise, 17.

Incriminating Statements

Asked to explain Mr. Adams's apparent contradictory testimony, Mr. Joseph said, ''I guess he was not telling the whole truth under direct examination, and he just felt he ought to when I questioned him.'' Mr. Clements declined to comment. Despite the failure of the DNA tests to link the defendants with the rape, the prosecution has told the jury that five of them have made incriminating statements.

Detective Carlos Gonzalez testified on Thursday that Mr. McCray confessed to taking part in the beating and rape of the woman. During cross-examination yesterday, Mr. Joseph tried to break his testimony, suggesting that Mr. McCray was either tricked or coerced into confessing.

But the detective sat back in the witness chair seeming to relish every challenge, telling the jury on several occasions, ''All we wanted to get was the truth.''

Recalling the third-degree tactics of the police in gangster movies, Mr. Clements asked him, ''Did you use any hot lights? Did you draw out your guns?''

''No, never,'' Detective Gonzalez said with a smile.