**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | | |
|---|---|---|
| LINDA FAIRSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-00180 |
| | ) | |
| NETFLIX, INC., AVA DUVERNAY, and ATTICA LOCKE, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT NETFLIX INC.'S SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP ACT, CAL. C.C.P. § 425.16**

Kelley Geraghty Price (Florida Bar #889539)
Eric S. Olson (Florida Bar #99079)
DENTONS COHEN & GRIGSBY P.C.
Mercato - Suite 6200
9110 Strada Place
Naples, Florida 34108
Phone: (239) 390-1913
*kelley.price@dentons.com*
*eric.olson@dentons.com*

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-8000
*natalie.spears@dentons.com*
*gregory.naron@dentons.com*
*jacqui.giannini@dentons.com*

Kiran Patel (*pro hac vice* pending)
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Phone: (212) 768-6700
*kiran.patel@dentons.com*

*Trial Counsel for Defendant Netflix, Inc.*

Defendant Netflix, Inc. ("Netflix") hereby moves to strike the Complaint of Plaintiff Linda Fairstein, pursuant to the California anti-SLAPP Act, California Code of Civil Procedure ("C.C.P.") § 425.16. In support of this motion, Netflix incorporates by reference its Rule 12(b)(6) motion to dismiss ("Motion to Dismiss"), and states as follows:

1. This case involves protected First Amendment speech, namely, the critically-acclaimed four-part film series *When They See Us* (the "Series"), released by Netflix. The Series dramatizes the infamous 1989 "Central Park Jogger" rape case, from the perspective of the five men (the "Five") who as teenage boys were wrongfully accused, convicted and imprisoned for the crime. It follows the lives of the Five and their families through the frightening maze of the criminal justice system; the boys spend the rest of their youth in prison, only to be exonerated years later based on the DNA match and confession of the real offender.

2. Plaintiff Linda Fairstein—the head of the Manhattan District Attorney's Sex Crimes Unit in 1989—was the public official who oversaw and had critical responsibility for the prosecution of the case. A famous writer of crime novels, Plaintiff continues to publicly proclaim her view that the Five are guilty—even after their exoneration and a $41 million settlement of their civil rights suit. Plaintiff now sues Netflix, along with the filmmaker, Ava DuVernay, and one of the writers on the Series, Attica Locke (the "Individual Defendants")[1], for defamation, complaining of her portrayal in the Series. (Compl. ¶ 9.) Plaintiff's 119-page Complaint seeks not only actual and punitive damages, but a sweeping injunction against the Defendants, including, *inter alia*, an order "direct[ing] the removal of Parts One, Two and Four

[1] The Individual Defendants are moving to dismiss for lack of personal jurisdiction; all Defendants have jointly moved to dismiss for improper venue and to transfer the case to the Southern District of New York ("Joint Venue and Transfer Motion"). Netflix respectfully requests, in the interest of judicial economy, that the Court take up the Joint Venue and Transfer Motion before addressing Netflix's Motion to Dismiss and this special motion to strike under the anti-SLAPP statute.

of *When They See Us* from Netflix's streaming platform, and from any other platform, service or other medium" and bowdlerizing the Series by directing the removal of "scenes depicting Ms. Fairstein" (*id*. ¶¶ 274, 354, 374, 382 and Prayer for Relief).

3. Plaintiff's claims are an assault on the First Amendment and fail as a matter of law. Material falsity is essential to any defamation claim and is an element Plaintiff must establish. Here, the Series is an artistic dramatization of controversial and contested historical events. Plaintiff's complaint that the Series' portrayal of her is "false" because it "depict[s] her at places where she never was" and "puts words in her mouth" that "she never uttered" (*id*. ¶ 12), is simply a non sequitur in the dramatization context, *see, e.g.*, *Partington v. Bugliosi*, 56 F.3d 1147, 1155 (9th Cir. 1995); *Lovingood v. Discovery Comm., Inc.*, 800 F. App'x 840, 847 (11th Cir. 2020); *De Havilland v. FX Networks*, 21 Cal.App.5th 845, 866 (2018). Another District Judge, in fact, recently recognized this critical context in dismissing defamation claims based on the Series by an interrogation training company. *John E. Reid & Assocs., Inc. v. Netflix, Inc.*, 2020 WL 1330657, *8 (N.D. Ill. Mar. 23, 2020).

4. Equally clear is that the Series has a distinct point of view: that of the Five. Having told her side of the story, the First Amendment does not allow Plaintiff to silence their story and belief, founded on the facts leading to their exoneration, that the prosecution she helped lead was a colossal injustice. "Books, films, plays, and television shows often portray real people," but they "do[] not own history" or "have the legal right to control, dictate, approve, disapprove, or veto the creator's portrayal of actual people." *De Havilland*, 21 Cal.App.5th at 850 (claims against producers of historical miniseries stricken under anti-SLAPP statute). Indeed, criticism of Plaintiff's public actions as a powerful official is at the core of what the First Amendment protects.

5. Plaintiff's Complaint allegations are also contradicted by her own words and admissions in the public record cited extensively in her Complaint. Having had critical involvement and responsibility for the prosecution, and for years vocally defending it and relentlessly proclaiming the Five's guilt, Plaintiff cannot now claim defamation based on scenes showing her using language and espousing the *very theories and decisions she has so vigorously defended to this day.* Each asserted defamation falls apart upon examination, either as incapable of defamatory meaning, substantially true as matter of law, or protected opinion and hyperbole used for dramatic effect in the context of a dramatization of controversial events.

6. For the reasons set forth in Netflix's alternative Motion to Dismiss, Plaintiff's Complaint is without merit as a matter of law. The Complaint was filed to punish and censor First Amendment expression on a matter of vital public concern. California's anti-SLAPP statute is designed to protect against such threats to free speech rights. C.C.P. § 425.16.[2] It does so by providing a remedy "to expose and dismiss at an early stage such nonmeritorious actions" that chill speech. *Lafayette Morehouse, Inc. v. Chronicle Publ. Co.*, 37 Cal.App.4th 855, 858-59 (1995). To protect speech on "issue[s] of public interest," the statute has been applied to defamation-based causes of action against entertainment media. *See, e.g., De Havilland*, 21 Cal.App.5th at 849-50, 856; *Brodeur v. Atlas Ent'mnt, Inc.,* 248 Cal.App.4th 665 (2016).

---

[2] The Courts of Appeal have differed as to whether various State anti-SLAPP statutes are substantive and therefore applicable in federal diversity cases; Defendant acknowledges that the Eleventh Circuit found that the Georgia anti-SLAPP statute does not apply in federal court. *See Carbone v. Cable News Network*, Inc., 910 F.3d 1345 (11th Cir. 2018). However, the Ninth Circuit has consistently held that "the motion to strike and attorneys' fees provisions of California's anti-SLAPP statute apply" in federal diversity cases. *See, e.g., Makaeff v. Trump Univ., LLC,* 736 F.3d 1180, 1181 (9th Cir. 2013). In the Second Circuit—where this case should have been venued and would be heard upon transfer, *see* Joint Venue and Transfer Motion—the court declined to reach the issue, *Liberty Synergistics Inc. v. Microflo Ltd.*, 637 F. App'x 33, 34 n.1 (2d Cir. 2016), but in a subsequent decision affirmed dismissal under the Nevada anti-SLAPP statute. *Adelson v. Harris*, 876 F.3d 413, 415 (2d Cir. 2017). Netflix seeks to preserve its rights accordingly.

**I. The California Anti-SLAPP Law Applies to Plaintiff's Claims Given That the Series Was Developed, Written and Edited in California by California Citizens**

7. In this diversity action, Florida choice-of law principles apply, and Florida courts follow the most significant contacts test to determine applicable law. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). The courts also apply the doctrine of dépeçage whereby the test is applied "to each individual issue." *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1578 (11th Cir. 1990); *Wallitsch v. Socata SAS*, 2014 WL 12835448, *2 (M.D. Fla. Aug. 22, 2014). Thus, "[t]he issue of whether a statement is defamatory . . . is distinct [for choice of law purposes] from the issue of whether that statement is privileged," since privileges are "meant to protect speakers". *Wilkow v. Forbes, Inc.*, 2000 WL 631344, *5, 7 (N.D. Ill. May 15, 2000).[3]

8. In the specific case of an anti-SLAPP statute, the choice-of-law question regarding the anti-SLAPP law is treated separately from "whether a statement is defamatory." *Chi v. Loyola Univ. Med. Ctr.*, 787 F.Supp.2d 797, 803 (N.D. Ill. 2011). The purpose behind an anti-SLAPP law, "to encourage the exercise of free speech," requires that "the place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis on this issue." *Id*. "A state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, at least when, as in this case, the speech initiated within the state's borders." *Id.* (even though plaintiff lived and suffered injury elsewhere, state with strongest interest in applying its own SLAPP law was where speech originated).[4]

9. Under these choice of law principles, whether it is New York or California law that applies to the merits of Plaintiff's defamation claims (*see* Motion to Dismiss at 13), the

---

[3] *See Gubarev v. BuzzFeed*, No. 1:17-cv-60426, Corr. Order on Pl. Mot. for Partial Judgment on Pleadings, ECF No. 171, at 8 (S.D. Fla. June 5, 2018) (following *Wilkow's* "persuasive" reasoning).

[4] *Accord Underground Solutions, Inc. v. Palermo*, 41 F. Supp. 3d 720, 723-24 (N.D. Ill. 2014); *Diamond Ranch Academy, Inc. v. Filer*, 117 F.Supp.3d 1313 (D. Utah 2015); *Drexler v. Billet*, 2018 WL 6920117, *2 n. 4 (C.D. Cal. June 12, 2018).

protections of California's anti-SLAPP statute must be available to the Series, under the doctrine of dépeçage, since all of the Defendants—Netflix and the two individual defendants Ms. DuVernay and Ms. Locke—are citizens of California, as Plaintiff alleges in the Complaint (Compl. ¶¶ 23-25); the Defendants developed the Series in California; it was written in California; and editing and post-production took place in California (*see* Joint Venue and Transfer Motion at 4). In short, California "has the clearest interest in applying its anti-SLAPP law vis-à-vis one of its own citizens," and to First Amendment speech activities within its borders. *Underground Solutions,* 41 F. Supp. 3d at 725; *see also Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1015 (N.D. Cal. 2017).

**II. Plaintiff's Complaint Should Be Stricken Under The California Anti-SLAPP Statute**

10. A court considering a motion to strike under the California anti-SLAPP statute engages in a two-part inquiry. First, the defendant must make a prima facie showing that the plaintiff's suit "arises from an act in furtherance of the defendant's rights of petition or free speech." Second, "once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1110 (9th Cir. 2003) (citations omitted). By invoking this statute, a defendant can obtain early dismissal of meritless First Amendment-chilling litigation; and upon application, a prevailing defendant is entitled to recover its reasonable attorney's fees. C.C.P. § 425.16(c)(1).

11. A defendant meets its *prima facie* burden under the California anti–SLAPP statute by showing that the suit arises out of the exercise of his right of petition or free speech, *see* C.C.P. § 425.16(b)(1), which is defined as, *inter alia*, "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" or "conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest." C.C.P. § 425.16(e)(3), (4).

12. Defendant has satisfied the statute's first prong, because there is no question the Series is a publication made in a public forum in connection with a matter of public interest and that publication constituted "conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest." C.C.P. § 425.16(e)(3), (4); *see, e.g., De Havilland*, 21 Cal.App.5th at 856 (lawsuit against television docudrama arose from exercise of "free speech rights on a topic of public interest").

13. Under the second prong, Plaintiff must demonstrate that there is a probability she will prevail on the claims. C.C.P. § 425.16(b)(1), (b)(2). To establish a "reasonable probability" the plaintiff needs to "state[ ] and substantiate[ ] a legally sufficient claim." *Jarrow Formulas, Inc. v. LaMarche,* 31 Cal.4th 728, 741(2003); *Makaeff*, 715 F.3d at 261; *see also Brodeur*, 248 Cal.App.4th at 680-81(dialogue in film *American Hustle* not actionable; anti-SLAPP motion "should have been granted").

14. Plaintiff's defamation claims all fail as a matter of law for all the reasons set forth in Defendants' Motion to Dismiss—specifically, the Series and identified scenes are protected speech under the First Amendment, voice non-actionable opinions, and are otherwise incapable of defamatory meaning or substantially true. As such, Plaintiff cannot meet her burden under the second prong of the California anti-SLAPP analysis. *See Resolute Forest Prods.*, 302 F.Supp.3d at 1026 ("if Plaintiffs cannot plead a plausible cause of action under the FRCP 12(b)(6) standard," then they "cannot meet" the statute's "probability of success on the merits standard").

## CONCLUSION

Defendant Netflix respectfully requests that this Court strike Plaintiff's Complaint pursuant to California Code of Civil Procedure § 425.16, and award Defendant its attorneys' fees in an amount to be determined.

Dated: May 18, 2020

Respectfully submitted,

/s/ Natalie J. Spears

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-8000
*natalie.spears@dentons.com*
*gregory.naron@dentons.com*
*jacqui.giannini@dentons.com*

Kelley Geraghty Price (Florida Bar #889539)
Eric S. Olson (Florida Bar #99079)
DENTONS COHEN & GRIGSBY P.C.
Mercato - Suite 6200
9110 Strada Place
Naples, Florida 34108
Phone: (239) 390-1913
*kelley.price@dentons.com*
*eric.olson@dentons.com*

Kiran Patel (*pro hac vice* pending)
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Phone: (212) 768-6700
*kiran.patel@dentons.com*

*Attorneys for Defendant Netflix, Inc.*,

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of May, 2020 a copy of the foregoing was filed electronically via the ECF filing system.

/s/ Natalie J. Spears