IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| LINDA FAIRSTEIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-00180 |
| | ) |
| NETFLIX, INC., AVA DUVERNAY, and | ) |
| ATTICA LOCKE, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS AVA DUVERNAY AND ATTICA LOCKE'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY

Jurisdictional discovery is wholly unwarranted. In their Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Individual Defendants Ava DuVernay ("DuVernay") and Attica Locke ("Locke") established as a matter of law and indisputable fact that this Court cannot exercise personal jurisdiction over them under the governing due process principles established by the Supreme Court and Eleventh Circuit, including *Walden v. Fiore*, 571 U.S. 277 (2014)—which, incredibly, Plaintiff's Motion wholly ignores. This case has nothing to do with Florida and does not belong in Florida, nor has Plaintiff remotely stated a *prima facie* case for jurisdiction over the Individual Defendants in Florida.

Plaintiff's motion does not challenge that controlling law, and has failed to identify a genuine dispute on a material jurisdictional fact, much less offer evidence that would create one warranting jurisdictional discovery at this stage. The affidavit Plaintiff submitted disputes none of the material facts in the Individual Defendants' declarations and is totally irrelevant to the issues on this motion—save one: Plaintiff now admits she only attempted to make Florida her domicile months *after* the Netflix Series at issue was released in May 2019 and a mere months

before she filed this action here.  (ECF No. 35,  Affidavit of Linda Fairstein ("Fairstein Aff.") ¶ 11.)  Jurisdiction over DuVernay and Locke in these circumstances does not remotely meet constitutional due process, as "the *plaintiff cannot be the only link* between the defendant and the forum."  *Walden*, 571 U.S at 285 (emphasis added).

It is undisputed that the four-part critically-acclaimed Netflix series *When They See Us* (the "Series"), of which Plaintiff complains, is about the infamous "Central Park Jogger" case in New York, and focuses on the wrongful conviction of five young teenagers and their subsequent exoneration for the brutal rape of a female jogger in Central Park in 1989.  As Plaintiff admits, she was a long-time New York public official—the head of the Manhattan District Attorney's Sex Crimes Unit in 1989—who had critical involvement in and responsibility for the prosecution.  All events depicted in the Series took place in New York.  The entire focus of the Series is New York-based, and was filmed there.  The Series has literally zero to do with Florida.  Nor do DuVernay and Locke have any relevant connections to Florida on which jurisdiction could be predicated.  The Complaint's generic allegations about jurisdiction say nothing to plausibly suggest otherwise.  And what is now crystal clear from Plaintiff's affidavit is that the only connection this matter has to Florida is Plaintiff, and it is an after-the-fact, weak link at that.

Contrary to Plaintiff's representations in her Motion, courts in this Circuit repeatedly deny meritless jurisdictional discovery motions like Plaintiff's here, where there are no material fact issues.  Certainly Plaintiff has failed to show how the improperly sweeping discovery she requests would establish grounds for exercising jurisdiction.  Plaintiff's numerous categories of requested discovery are nothing more than a fishing expedition into the merits and are irrelevant to personal jurisdiction under controlling authority, including *Walden*.

Further, given the substantial grounds, apart from personal jurisdiction, for dismissing or transferring this case to the Southern District of New York for improper venue, and the important First Amendment issues raised in Netflix's pending Motion to Dismiss for Failure to State a Claim, subjecting DuVernay and Locke to such jurisdictional discovery would be an egregious waste of judicial and party resources.  Indeed, on this record, jurisdictional discovery would serve no purpose other than delay, needless burden and increased expense.  Another federal court recently addressed this same question as to DuVernay in a meritless defamation action brought by an interrogation training company in Illinois regarding the Series, and denied jurisdictional discovery as unwarranted.  *John E. Reid & Assocs., Inc. v. Netflix, Inc.*, 2020 WL 1330657, at *6, n. 5 (N.D. Ill. Mar. 23, 2020).  It is even less warranted here, given Plaintiff Fairstein's tenuous connection herself to Florida.  Plaintiff's motion should be denied.

## BACKGROUND

Plaintiff's Complaint challenges her portrayal in the four-part critically-acclaimed Netflix series *When They See Us* (the "Series"), a dramatization of the infamous "Central Park Jogger" case, one of the most controversial and highly-publicized criminal cases in New York's history. The Series focuses on the wrongful conviction and imprisonment of five young teenagers, Yusef Salaam, Antron McCray, Kevin Richardson, Raymond Santana, and Korey Wise (the "Five") for the brutal rape of a female jogger in Central Park in 1989, and their subsequent exoneration years later based on the DNA match and confession of the real offender.  (ECF No. 1, Compl. ¶¶ 4-5; ECF No. 26, DuVernay and Locke's Mot. at 3.)  Plaintiff Linda Fairstein led the Manhattan District Attorney's Sex Crimes Unit in 1989, and had critical responsibility for the prosecution of the Central Park Jogger case.  (ECF No. 1, Compl. ¶ 32; ECF No. 26, DuVernay and Locke's Mot. at 3-4.)  All of the events depicted in the Series took place in New York—the rape of which

the Five were falsely accused as young teenagers, the investigation by the NYPD and Manhattan D.A.'s office, the prosecution in the New York Courts, the Five's incarceration in New York state prisons, and their eventual exoneration after spending the rest of their youth in prison.

The Series was released by Netflix in May 2019 and distributed worldwide through Netflix's subscription-based Internet streaming service. DuVernay is the director and one of the writers and executive producers of the Series. (ECF No. 26-1, DuVernay Decl. ¶ 3.) Locke is one of the writers and producers of the Series. (ECF No. 26-2, Locke Decl. ¶ 4.) Both Locke and DuVernay live in California. (*Id*. ¶ 3; DuVernay Decl. ¶ 2.)

Plaintiff filed this Complaint in Florida through New York counsel, nearly a year after the Series was released. (ECF No. 1.) She now was forced to admit that she only recently declared "residency" in Florida in late October 2019 (ECF No. 35, Fairstein Aff. ¶ 11), having spent the last 40-plus years and her entire career as a public official in New York City, where she lived for decades—to and including most of 2019. Plaintiff admits she still owns a penthouse condo (*id*. ¶ 12), maintains a law license (ECF No. 24-7) and a publishing business (ECF Nos. 26-8, 26-9) in New York. The Individual Defendants have filed a Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, for Improper Venue or Transfer of Venue to the Southern District of New York under 28 U.S.C. 1404(a) (in which Netflix has joined).[1]

As set forth in DuVernay and Locke's declarations on jurisdiction, and uncontested by Plaintiff, the Series has no connection whatsoever to Florida. DuVernay researched the script for the Series from California, New York and Georgia and wrote the script in California and New

---

[1] Defendant Netflix also filed a Motion to Dismiss for Failure to State a Claim and Joinder in Motion of Defendants DuVernay and Locke to Dismiss for Improper Venue or to Transfer Venue to the SDNY (ECF No. 28), but has requested that in the interest of judicial economy the Court take up the venue and transfer motion first (*id*. at 1, n.1).

4

York; the Series was filmed on location in New York.  (ECF No. 26-1, DuVernay Decl. ¶ 4.) Post-production took place in California. (*Id*.)  Locke only worked on the Series from California. (ECF No. 26-2, Locke Decl. ¶ 5.)  Neither Locke nor DuVernay traveled to Florida for the Series and did not contact anyone in Florida for the Series.   (*Id*. ¶ 6; DuVernay Decl. ¶ 5.)

## ARGUMENT

### I. Plaintiff Has Not Raised A Genuine Dispute on a Material Jurisdictional Fact Warranting Jurisdictional Discovery

Eleventh Circuit law is clear that jurisdictional discovery is not warranted where there is no "genuine dispute" on a material jurisdictional fact.  *Wolf v. Celebrity Cruises, Inc*., 683 F. App'x 786, 792 (11th Cir. 2017) (denying jurisdictional discovery as unnecessary "fishing expedition"), citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 (11th Cir. 1982).  Courts *routinely* deny such requests.  *See Brown v. Carnival Corp., et al*., 202 F. Supp. 3d 1332, 1346 (S.D. Fla. 2016) (denying jurisdictional discovery where there is "no genuine dispute on a material jurisdictional fact[.]") (citations omitted); *Serra-Cruz v. Carnival Corp*., 400 F. Supp. 3d 1354, 1363 (S.D. Fla. 2019) ("The Court does not find it necessary to provide Plaintiff with an opportunity to engage in jurisdictional discovery because there is 'no genuine dispute on a material jurisdictional fact to warrant jurisdictional discovery.'").[2]

---

[2] *See also Encore Select, Inc. v. Great Atl. & Pac. Tea Co*., 2014 WL 2548176, at *1 (M.D. Fla. June 5, 2014) (denying jurisdictional discovery where "plaintiff identifies no disputed fact; the plaintiff 'merely has a hunch that there may be facts—or a desire to find out if there are any facts—that justify the exercise of personal jurisdiction'") (citations omitted); *Finkelstein v. Carnival Corp*., 2015 WL 12765435, at *2 (S.D. Fla. Apr. 7, 2015) (denying jurisdictional discovery where plaintiff had "not demonstrated what facts [were] in genuine dispute that would allow the Court to exercise personal jurisdiction"); *Westchester Fire Ins. Co. v. Vector Aerospace*, 2017 WL 4326097, at *3 (S.D. Fla. Sept. 27, 2017) (This Court does not find it appropriate to provide Plaintiff an opportunity to engage in jurisdictional discovery because 'there is no genuine dispute on a material jurisdictional fact to warrant discovery.'") (citation omitted).

Thus, contrary to Plaintiff's overstated assertions, the Eleventh Circuit does not "highly favor" jurisdictional discovery anytime the Plaintiff seeks it, nor is denial automatically an "abuse of discretion". (ECF No. 34, Motion at 1-3.) Rather, as the *Eaton* case cited by Plaintiff held, albeit dealing with "subject matter" jurisdiction, jurisdictional discovery is warranted when there are genuinely "disputed jurisdictional facts". *Eaton v. Dorchester Development*, 692 F.2d 727, 729-30, and n.7 (11th Cir. 1982).[3] Moreover, in *Eaton* the Court found jurisdiction was "not only a question of fact but also is intimately related to the substantive merits of the plaintiffs' claim....[and] plaintiffs ha[d] made a fairly substantial showing of subject matter jurisdiction, even without the discovery they desire[d]." *Id.* at 734. The opposite is true here.

Plaintiff's Complaint and Motion fail to identify any *genuine* dispute that would warrant jurisdictional discovery. The Complaint alleges in conclusory fashion that:

> The Court has personal jurisdiction over Ms. DuVernay because the causes of action alleged against her arise from her commission of a tortious act within Florida by participating in, facilitating and causing the publication of defamatory content on Netflix's website, namely *When They See Us*, for which she served as co-writer, director and producer, and which contains false and defamatory statements about Ms. Fairstein and was, and continues to be, accessed in Florida by Netflix subscribers. See Section 48.193 (1)(a)(2), Florida Statutes. Ms. DuVernay also committed a tortious act in Florida by publishing false and defamatory posts about Ms. Fairstein on Twitter, which were published and accessed by Ms. DuVernay's followers, in Florida. See Section 48.193 (1)(a)(2), Florida Statutes. Further the causes of action arise from Ms. DuVernay conspiring with Netflix and Ms. Locke to portray Ms. Fairstein in a false and defamatory manner in When They See Us., as alleged in Count VII.

---

[3] In one of Plaintiff's cases, *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1147 (S.D. Fla. 2007), the court actually *denied* jurisdictional discovery, holding that it "is not persuaded that the Motion to Dismiss should be deferred any longer while Plaintiffs engage in discovery in an attempt to make a prima facie or other showing that the Court's exercise of personal jurisdiction over Defendants would be appropriate." Plaintiff's other cited cases are distinguishable, as the plaintiffs established genuine "material disputed facts". *See, e.g., Amerifactors Fin. Grp., LLC v. Enbridge, Inc.*, 2013 WL 5954777, at *6 (M.D. Fla. Nov. 7, 2013); *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*, 2016 WL 8794534, at *2 (S.D. Fla. Dec. 5, 2016).

(Compl. ¶ 28.)  Similar allegations are made with respect to Locke.  (*Id*. ¶ 29.)  These allegations are insufficient to establish a prima facie or colorable basis for personal jurisdiction or to raise a genuine dispute of material fact.  All Plaintiff's Motion does is to parrot her inadequate and conclusory allegations, disputing nothing of material relevance in the Individual Defendants' declarations.  Jurisdictional discovery is not warranted where Defendants have submitted declarations denying contacts with Florida and "Plaintiff has not rebutted any of the assertions contained therein."  *Millennium Indus. Network, Inc. v. Hitti*, 2014 WL 324656, at *3 (S.D. Fla. Jan. 28, 2014) (denying jurisdictional discovery).  Under the unrebutted facts and controlling law, there is not even a colorable basis for personal jurisdiction over the Individual Defendants.

First, whether or not Plaintiff's analysis of Florida's long-arm statute is correct,[4] Plaintiff must still establish a prima facie case that personal jurisdiction over DuVernay and Locke is compatible with due process.  That is the basis for the Individual Defendants' Motion.  (ECF No. 26, DuVernay and Locke's Mot. at 5-13.)  She has failed to do so.  As set forth in detail in their Motion to Dismiss for Lack of Personal Jurisdiction, Plaintiff's claims against DuVernay and Locke do not "arise out of" their contacts with Florida, and neither Defendant has purposefully availed themselves of the privileged of conducting activities in Florida to warrant the exercise of personal jurisdiction.  The Supreme Court firmly held in *Walden v. Fiore* that "*the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.*"  571 U.S. 277, 285 (2014) (emphasis added).

---

[4] Defendants question whether social media posts are sufficient to satisfy Florida's long-arm statute.  *See* ECF No. 26, DuVernay and Locke's Mot. at 5, n. 2.

7

Plaintiff's Motion ignores *Walden*—which is not surprising given she is the only link to Florida, and the weakest possible one at that, having not even claimed "residency" until after the Series was published. Instead Plaintiff relies on the outdated decision in *Keeton v. Hustler Magazine, Inc*. 465, U.S. 770 (1984). And *Keeton* is entirely distinguishable as the defendant in that case was the *publisher* of the magazine. Here, Netflix, not DuVernay or Locke, is the publisher of the Series. Plaintiff's citation to *Guberev v. Buzzfeed, Inc*., 253 F. Supp. 3d 1149 (S.D. Fla. 2017) is misplaced for the same reason. The *Buzzfeed* Court found that it could exercise personal jurisdiction over the "Editor-in-Chief," an executive of Buzzfeed, because he "made the ultimate decision to publish the Article." *Id*. at 1161, n.3. Both DuVernay and Locke have expressly denied having control over the distribution of the Series, which Plaintiff *admits* was distributed *by Netflix* on its internet streaming platform. (ECF No. 26-1, DuVernay Decl. ¶ 7; ECF No. 26-2, Locke Decl. ¶ 8; ECF No. 1, Compl. at ¶ 1.) Plaintiff's affidavit (ECF No. 35) does nothing to rebut this clear evidence from DuVernay and Locke. Nor could she. In the context here, it is not genuinely disputable, or even plausible, to hypothesize that two individuals, DuVernay and Locke, had "control over" Netflix's world-wide Internet distribution platform in over 190 countries,[5] much less that they directed Netflix to stream this Series specifically in Florida. Not only is that not alleged in the Complaint, it wouldn't meet *Twombly* pleading standards if it were. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Second, Plaintiff has not identified any facts that connect *DuVernay* and *Locke* to Florida. Contrary to what Plaintiff seems to suggest, merely posting material on social media is not sufficient to support the exercise of personal jurisdiction. In *Internet Sols. Corp. v. Marshall*—a case on which Plaintiff herself relies—after the Florida Supreme Court's decision on the certified

---

[5] *See* https://help.netflix.com/en/node/14164.

question regarding Florida's long-arm statute, this Court next considered whether the exercise of personal jurisdiction comported with due process. 2010 WL 11617855 (M.D. Fla. Sept. 30, 2010). Finding it did *not*, this Court held that even though defendant "included in her post three Florida addressees associated with" plaintiff, and "Florida residents may have posted in response to the [allegedly defamatory] article, personal jurisdiction cannot be based solely on the ability of a Florida resident to access the website." *Id.* at *5.

Here, again, the same is true. There are simply no allegations that the Individual Defendants' social media posts or tweets were in any way related or *directed to* Florida, thereby barring the exercise of personal jurisdiction over the Individual Defendants. "[C]ourts have uniformly rejected the argument that a tweet, not specifically directed to a forum state, is a sufficient minimum contact to confer personal jurisdiction under the Due Process Clause." *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1375 (S.D. Fla. 2019).

Third, Plaintiff's utterly conclusory and legally baseless "conspiracy" count is wholly insufficient for a finding of personal jurisdiction—and is certainly not a basis for jurisdictional discovery. Here, there is no way Florida law applies to this dispute, which has no connection whatsoever to Florida, and Plaintiff offers no support for that casual assumption. As Defendants have pointed out, either New York or California law would apply. (ECF No. 26, DuVernay and Locke's Mot. at 22-23.) Neither New York nor California law recognizes a stand-alone conspiracy claim (*see* ECF No. 28, Motion to Dismiss at 35); but in any event, Plaintiff's allegations are facially deficient even if the claim were recognized.

Merely alleging that Defendants "conspired and agreed" to "write, produce and publish scenes" in *When They See Us* (Compl. ¶ 376) does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. All Plaintiff has done is slap a "conspiracy" label

on the defamation claim against each Defendant.  That does not pass muster under *Twombly* ("a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*); and it cannot be used as a device to establish a basis for jurisdiction over the Individual Defendants where none exists.

Further, in the Eleventh Circuit well-pled "allegations demonstrating a civil conspiracy . . . [are] a prerequisite to the imputation of the acts of co-conspirators for jurisdictional purposes." *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, 2016 WL 11501768, at *4 (S.D. Fla. Sept. 14, 2016) (citing Florida law).  In *Marjam*, the court held that "because Marjam offers only conclusions and no facts to support the civil conspiracy claim against URB, the Court cannot impute Pliteq's Florida acts to URB to find that the Complaint establishes a prima facie case of personal jurisdiction."  2016 WL 11501768 at *5.  *See also United Techs. Corp.*, 556 F.3d at 1281 (finding the "conspiracy allegations are insufficient to justify the exercise of personal jurisdiction over" defendant).[6]  The cases Plaintiff cites are distinguishable both because they are decided under inapplicable Florida state law, and because in any event the courts found the conspiracy count was well-pleaded.  *See, e.g., J & M Assocs., Inc. v. Romero*, 488 F. App'x 373, 376 (11th Cir. 2012) ("J & M alleged the elements of conspiracy with particularity as well as an overt act taken in furtherance of the conspiracy in Alabama.").[7]  None remotely provide a basis for launching jurisdictional discovery here.

---

[6] *See also Advantus, Corp., v. Sandpiper of California, Inc., et al.*, 2019 WL 4751725, at *23 (M.D. Fla. Sept. 30, 2019) ("'[I]f the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy,' then Florida courts decline to apply the co-conspirator theory to extend personal jurisdiction over a non-resident defendant.") (citations omitted).

[7] *See also AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009) ("[T]he complaint as a whole sufficiently alleges that the defendants formed a

In sum, Plaintiff's complaint is "insufficient as a matter of law to establish a *prima facie* case that the district court ha[s] jurisdiction" over DuVernay and Locke, and Plaintiff has not established any material factual jurisdictional dispute warranting discovery. *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009) (holding that "the district court abused its discretion in allowing the case to proceed and granting discovery on the jurisdictional issue"). To find that DuVernay and Locke should be haled into court in Florida because they wrote a docudrama Series that is critical of Fairstein's role as public official in New York where she lived and worked for over 40 years, just because Fairstein began the process of relocating herself to Florida after the Series aired, would offend traditional notions of fair play and substantial justice in violation of due process under *Walden*. Given the hollow nature of the Complaint's personal jurisdictional allegations and the lack of any material fact issues (as opposed to wishful fishing), jurisdictional discovery is simply not warranted.

Indeed, in the same procedural posture, the Northern District of Illinois denied a similar request for jurisdictional discovery as to DuVernay's contacts with Illinois in a defamation lawsuit over the Series, holding that where, as here, the Court has not yet "resolved the threshold question of personal jurisdiction, which is whether you have a colorable or *prima facie* case," jurisdictional discovery is premature, and should be denied. *John E. Reid & Assocs. v. Netflix, Inc.*, No. 1:19-cv-06781 (N.D. Ill.), ECF No. 54, Transcript of 1/7/20 Hearing at p. 6 (denying jurisdictional discovery) (attached as Ex. A); *see also John E. Reid & Assocs.*, 2020 WL 1330657, at *6, n.5 (reiterating lack of need for jurisdictional discovery) (attached as Ex. B).

---

civil conspiracy, at least some acts in furtherance of which were carried out in Florida."); *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, 2011 WL 5057203, at *4 (S.D. Fla. Oct. 24, 2011) (complaint sufficiently alleged "conspiracy to fraudulently conceal deficiencies and misrepresent the condition of the Pacific in anticipation of its sale to Quail.").

11

The "underlying premise" for requiring plaintiffs to make a prima facie case is that they "should conduct a pre-suit investigation to warrant haling people into court" (*id.,* Tr. at 7)—something Plaintiff here did not do. This Court similarly should reject needless jurisdictional discovery.

### B. The Requested Discovery Is Not Relevant to Personal Jurisdiction--It Is Calculated to Fish And Harass

Plaintiff has not only failed to identify a colorable basis for jurisdiction or genuine dispute on that score, but the sweeping discovery she proposed is not relevant to personal jurisdiction here. "Such discovery requests should not serve as fishing expeditions, and, as such, are appropriate only when 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'" *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 792 (11th Cir. 2017) (denying jurisdictional discovery) (citations omitted). While Plaintiff feigns in the introduction of her Motion that her requested discovery is "limited," she later lists 17 broad "topics to be explored in jurisdictional discovery. " (ECF No. 34, Motion at 8-9.)   Many of these topics are completely irrelevant to jurisdiction, and *none* would help Plaintiff genuinely establish personal jurisdiction over DuVernay and Locke. A review of the topics underscore that jurisdictional discovery here would not only be pointless—but also improper and harassing.

**Topics Related to the Merits.** Several of Plaintiff's identified topics have nothing whatsoever to do with personal jurisdiction and instead go to the merits of the claim. These include the following topics:

   a. Each Defendant's role with respect to developing and creating the content of the film series, including fact-checking for accuracy of the content.

   d. The individual(s) responsible for the decision to use Linda Fairstein's actual name in the film series.

   e. The individual(s) responsible for fabricating scenes portraying Linda Fairstein as an unscrupulous lawyer who violates laws, the United States Constitution and basic rules of professional responsibility.

      p.       Whether the individual Defendants played any role in selecting the categories under which the film series would be classified on Netflix.

      q.       Whether Netflix agreed to indemnify the individual defendants for liability arising from the film series and, if not, the reasons why Netflix is defending them . . .

None of these topics remotely touch on DuVernay and Locke's alleged contacts with Florida, and thus are grossly inappropriate as "jurisdictional discovery".

**Topics Related to Netflix's Subscribers.** As Plaintiff points out her motion, Netflix does not contest personal jurisdiction as to itself. Thus, topics g and h related to Netflix's "subscribers" are not necessary to establish personal jurisdiction over Netflix, and Plaintiff offers no reason why these facts would support personal jurisdiction over DuVernay and Locke individually. They don't.

**Topics Related to Social Media.** Topics m, n and o relate to DuVernay and Locke's social media use. But as discussed above, merely posting to social media will not support the exercise of personal jurisdiction. Therefore, any facts related to Defendants' social media use will not support a showing of personal jurisdiction. *See e.g., Schwab v. Hites*, 896 F. Supp. 2d 1124, 1138 (M.D. Fla. 2012) (facts not "*material*" under law; "none of the requests would ultimately support a showing of personal jurisdiction over [defendant]. The request is denied.").

**Topics Previously Addressed by DuVernay and Locke.** Plaintiff seeks discovery on several topics that are expressly addressed in DuVernay and Locke's declarations (ECF Nos. 26-1 and 26-2, respectively). These include topics c (interviews with Florida reporters for the Series), b and k (visits to Florida for filming or marketing the Series) and l (contacts with any Florida residents in connection to the Series). Plaintiff all but ignores the Individual Defendants' declarations, which confirm what is frankly obvious—that the entire focus of the Series was New York, was filmed in New York, and had nothing to do with Florida; nor did they have any relevant contacts in Florida. Moreover, Plaintiff has "not submit[ted] affidavits or any other

13

competent evidence that rebutted [Defendants'] affidavits" to warrant jurisdictional discovery. *Hinkle, Inc. v. Continental Motors, Inc.*, 268 F. Supp. 3d 1312, 1328 (M.D.Fla. 2017).

Speculation is not enough. *Encore Select, Inc.*, 2014 WL 2548176, at *1 (denying jurisdictional discovery based on purported "hunch that there may be facts—or a desire to find out if there are any facts" that justify personal jurisdiction'"). Plaintiff offers no evidence to show DuVernay or Locke did any interviews or marketing for the Series *in Florida* (no articles would even suggest that), or to show they made any visits to Florida for the Series or did research in Florida. If any interviews did in fact take place, they would be publicly available to Plaintiff. The fact that she has not found any is telling.[8]

**Other Legally Irrelevant Topics.** Finally, while the remaining topics listed by Plaintiff—b, f, i and j—may on their face relate to Florida, they are insufficient for the exercise of personal jurisdiction and are based on pure and (implausible) conjecture. For example, of the four subparts in topic b, the only marginally relevant topic is the last one, "whether Ms. DuVernay and Ms. Locke were involved in marketing or promotion aimed at Florida." (Motion at 8.) Again, the Individual Defendants have averred they did not conduct business in Florida in connection with promoting the Series or anything else. As noted above, Plaintiff points to *nothing* to dispute that testimony, much less to support launching the fishing expedition she

---

[8] At most, Plaintiff disingenuously suggests that Ms. Meili now lives in Florida and that DuVernay may have contacted Ms. Meili there. (Motion at 9.) This is a red-herring. The New York based *Daily Beast* article Plaintiff relies upon (Compl. ¶ 146, n.98) also states that Ms. Meili "declined to talk" to DuVernay. Plaintiff fails to mention that point. Again, DuVernay did not speak to anyone in Florida for the Series, including Ms. Meili. (ECF No. 26-1, DuVernay Decl. ¶ 5.) Given that, whether Ms. Meili lived in Florida (if Meili even did at the time) is irrelevant. Moreover, even if DuVernay had contacted Ms. Meili in Florida (which she did not), that single contact would be exactly the type of "random, fortuitous or attenuated" contact that does not justify the exercise of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Walden*, 571 U.S. at 288.

seeks—other than that she, herself, is apparently a licensed "angler" in the State of Florida (which is among the litany of irrelevant facts her affidavit does address, *see* ECF No. 35 at ¶ 13).

In fact, topic j shows the desperation and pointless nature of Plaintiff's pursuit. She cites DuVernay's October 2018 appearance in Miami for a gubernatorial political campaign[9] that had nothing to do with the Series—indeed, it occurred eight months *before* the release of the Series and well over a year before Plaintiff's filing of the Complaint. Thus, Plaintiff's speculation that DuVernay may have "discussed or promoted" the Series in Florida is baseless.

Lastly, with respect to topics f and i, Florida viewership alone is not sufficient for personal jurisdiction under *Walden's* clarification of *Calder v. Jones*, 465 U.S. 783 (1984). When reexamined in *Walden*, the Court explained that *Calder* was based on "the injury to the plaintiff's reputation in the estimation of the California public . . . *combined with the various facts that gave the article a California focus*[.]" 571 U.S. at 288 (emphasis added). Here, there are absolutely no facts giving the Series a "Florida focus" as is necessary to establish personal jurisdiction over the Individual Defendants. Again, Plaintiff ignores *Walden*.

Because none of the requested discovery would be sufficient to establish personal jurisdiction over DuVernay and Locke in Florida, and would cause needless expense and burden, Plaintiff's motion should be denied in its entirety. *See RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 791 (11th Cir. 2014) (denial of jurisdictional discovery proper where "the facts Premier sought would not have affected the district court's jurisdiction").[10]

---

[9] For last minute scheduling reasons, DuVernay did not even travel to Florida to appear in person at the event but only attended remotely.

[10] *See also Grimes v. Young Life, Inc.*, No. 8:16-CV-27-T-23EAJ, 2016 WL 11531540, at *3 (M.D. Fla. May 2, 2016) ("The plaintiff lists several generic "areas of inquiry" for jurisdictional discovery but fails to explain how the information sought would establish personal jurisdiction over the defendants."); *Millennium*, 2014 WL 324656, at *4 ("Ultimately, Plaintiff has failed to show that further discovery would generate facts necessary to prove that the Court has personal

### C. Jurisdictional Discovery is Premature in Light of the Request to Transfer and Netflix's Motion to Dismiss.

Plaintiff's request for personal jurisdiction should also be denied as futile because transfer of this case to SDNY is appropriate whether or not there is personal jurisdiction over DuVernay and Locke. Defendants have made a strong showing that this case should be transferred to SDNY either for improper venue or under 28 U.S.C. § 1404(a). The Court need not even reach the issue of personal jurisdiction before deciding to transfer the case. That is exactly what the Southern District of Florida did in a recent defamation case, granting transfer to SDNY based on improper venue and the convenience of the parties and witnesses without reaching the question of personal jurisdiction. *Kesner v. Barron's, Inc.*, No. 19-cv-61370-RS, ECF No. 76 (S.D. Fla., May 1, 2020); *see also Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("[W]hen there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue" and consider venue first). Thus, it would be a waste of the parties' resources to engage in jurisdictional discovery when the Court has several other avenues to grant Defendants' requested relief.

Additionally, Netflix filed a Motion to Dismiss for Failure to State a Claim (ECF No. 28), which DuVernay and Locke will join if they are not dismissed for lack of personal jurisdiction. As the district judge in the *Reid* case properly found, "jurisdictional discovery at this moment would be unduly burdensome when there's a substantive motion to dismiss that's pending." *John E. Reid & Assocs., Inc. v. Netflix, Inc.*, No. 1:19-cv-06781 (N.D. Ill.), ECF No. 54, Transcript of 1/7/20 Hearing on Jurisdictional Discovery at p. 6 (Ex. A). The same reasoning

---

jurisdiction over [defendant]. The Court declines to authorize such an unguided inquest, particularly at this point in the litigation.").

16

applies with even more force in this matter, where this case has no business being filed in Florida, given that Plaintiff is the *only* link to Florida, and an extremely weak one at that.

## CONCLUSION

Based on the foregoing, Defendants Ava DuVernay and Attica Locke respectfully request that the Court deny Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery and grant their Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative Transfer to SDNY.  Alternatively, given that the issues raised on jurisdiction here are in essence legal questions based on undisputed facts, the Court should, at most, take Plaintiff's request for jurisdictional discovery under advisement and should first decide Defendants' motions to dismiss for improper venue or alternatively transfer to SDNY, and/or to dismiss for failure to state a claim, which motions should be granted and would moot the issue of personal jurisdiction.  It would be a waste of the Court's and the parties' resources to allow jurisdictional discovery now.

Dated: June 10, 2020                                    Respectfully submitted,

/s/ Natalie J. Spears

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606

Kelley Geraghty Price (Florida Bar #889539)
Eric S. Olson (Florida Bar #99079)
DENTONS COHEN & GRIGSBY P.C.
Mercato - Suite 6200
9110 Strada Place
Naples, Florida  34108

Kiran Patel (*pro hac vice*)
DENTONS US LLP
1221 Avenue of the Americas
New York, New York  10020

*Attorneys for Defendants Ava DuVernay and Attica Locke*

17

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 10, 2020, a true and correct copy of the foregoing was served by CM/ECF on all counsel or parties of record on the service list.

/s/ Natalie J. Spears