# Exhibit A

**1**

1          UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
2                 EASTERN DIVISION

3   JOHN E. REID AND ASSOCIATES, INC.,  )
                                        )
4                    Plaintiff,         )
                                        )
5        vs.                            )  No. 19 C 6781
                                        )
6   NETFLIX, INC., et al.,              )  Chicago, Illinois
                                        )  January 7, 2020
7                    Defendants.        )  9:48 o'clock a.m.

8
                   TRANSCRIPT OF PROCEEDINGS
9          BEFORE THE HONORABLE MANISH S. SHAH

10
     APPEARANCES:
11
     For the Plaintiff:       COZEN O'CONNOR
12                            BY:  MR. JACK J. CARRIGLIO
                                   MR. COREY T. HICKMAN
13                            123 North Wacker Drive, Suite 1800
                              Chicago, Illinois  60606
14                            (312) 382-3100

15   For the Defendants:      DENTONS U.S., L.L.P.
                              BY:  MS. NATALIE J. SPEARS
16                                 MS. JACQUELINE A. GIANNINI
                              233 South Wacker Drive, Suite 5900
17                            Chicago, Illinois  60606
                              (312) 876-8000

18

19

20

21

22
                   COLLEEN M. CONWAY, CSR, RMR, CRR
23                      Official Court Reporter
               219 South Dearborn Street, Room 1918
24                    Chicago, Illinois  60604
                          (312) 435-5594
25                *colleen_conway@ilnd.uscourts.gov*

**Colleen M. Conway, Official Court Reporter**

**2**

1       (Proceedings heard in open court:)

2       THE CLERK:  19 C 6781, John Reid And Associates

3  versus Netflix.

4       MR. CARRIGLIO:  Good morning, Your Honor.  Jack

5  Carriglio for John Reid And Associates.

6       MR. HICKMAN:  Good morning, Your Honor.  Corey

7  Hickman for the plaintiff as well.

8       MS. SPEARS:  Good morning, Your Honor.  Natalie

9  Spears and Jacqui Giannini from Dentons on behalf of

10 defendants.

11      THE COURT:  Okay.  Good morning.

12      So I have the motion for jurisdictional discovery.  I

13 saw the response.

14      Do you want to say anything in reply?

15      MR. CARRIGLIO:  I saw the response, too.  Sure.  Just

16 briefly, Judge.

17      We filed a motion for jurisdictional discovery, and

18 we meant what we said.  It's in an abundance of caution to add

19 some information on to the allegations we've already made about

20 the targeting of Reid by Ms. DuVernay here in Illinois.

21      I looked at the response, and the response is,

22 basically, so what?  So what if she targeted?  So what if she

23 intended the harm to be inflicted here on Reid in Illinois?

24 Discovery wouldn't do us any good because we'd have to be able

25 to show either that she came to Illinois or that she controlled

**3**

1    the distribution in Illinois.

2         And then they cite a number of cases that are

3    non-defamation cases in support of that.  We've looked again at

4    the cases, Judge, including the ones that we've cited, starting

5    with *Calder*, the Supreme Court case, which was a defamation

6    case against the National Enquirer.  We're an editor who had

7    never been to California, but who was found to have targeted

8    the plaintiff there in the article, in the offensive article.

9    The Supreme Court held that jurisdiction over that editor was

10   appropriate.

11        We've looked at *Walden*, a non-defamation case; *INSTAR*

12   , another non-defamation case.  All those cases and their

13   discussions carve out a niche for defamation because of the

14   unique nature of the offense; that it actually -- the tort here

15   actually occurred in Illinois when the disparaging and false

16   article was read by third parties, by Reid's customers, here in

17   the home state of Reid.

18        They've also cited one of your own cases, Your Honor,

19   the *Intelius* case, not a defamation case, where you did not

20   find that personal jurisdiction existed, but I believe in that

21   case, you pointed out:  Well, nobody made any allegations about

22   targeting or anything like that.

23        We don't make our allegations in a vacuum, Judge.  We

24   show within the context of this program that Ms. DuVernay was

25   on a mission to assign blame, to hold people accountable, and

**4**

1    one of the people she targeted was Reid.

2            And that's why we made the allegations that we did.

3    We can color them up with some more information that we think

4    we could get rather quickly, and have a brief deposition with

5    Ms. DuVernay to show that she did, indeed, target.  And they

6    didn't deny it in her declaration, so it stands uncontroverted.

7            THE COURT:  May I interrupt with a question?

8            MR. CARRIGLIO:  Yeah.

9            THE COURT:  Do you agree that if Netflix's

10   substantive motion to dismiss is successful that those theories

11   would equally apply to the substantive theories you're lodging

12   against the remaining defendants?

13           MR. CARRIGLIO:  Well, I -- as I understand what --

14           THE COURT:  And keep in mind that I am asking these

15   questions solely with the eye towards should jurisdictional

16   discovery be authorized --

17           MR. CARRIGLIO:  Right.

18           THE COURT:  -- at this moment.

19           MR. CARRIGLIO:  Yeah, I -- I get it, that what I

20   believe they said in their response was that why don't we hold

21   off on this until you decide the motion to dismiss for failure

22   to state a claim.  Even though that is Netflix's motion, they

23   add DuVernay in just in case there is jurisdiction over her.

24           Is that going to harm us if we wait to decide the

25   jurisdiction on DuVernay or jurisdictional discovery on

1    DuVernay until after we've ventilated the Netflix motion?  No,

2    I can't say that it will.  And we will be responding to the

3    Netflix motion.  We believe Your Honor will be denying that

4    motion.  But we're willing to see that through.

5            But I did feel compelled to bring this motion to air

6    it out and show that there's no doubt that she targeted, and

7    that targeting in the manner that it was done here is

8    sufficient to confer jurisdiction.

9            There is also this --

10           THE COURT:  Okay.  Well, let me --

11           MR. CARRIGLIO:  Yeah, yeah.

12           THE COURT:  Then let me just cut us short, then.

13           The motion for jurisdictional discovery is denied.

14   If I conclude that what's alleged in the complaint is

15   sufficient, then you don't need jurisdictional discovery.

16           If I conclude that what's alleged in the complaint

17   isn't sufficient, discovery still might not be warranted

18   because the question would -- is really whether you have a

19   colorable or *prima facie* case for personal jurisdiction, and

20   that showing should be met before jurisdictional discovery is

21   permitted.

22           The requested discovery, what you've articulated as

23   what you're asking for, is overbroad.  I mean, all

24   communications about Reid is not narrowly targeted to issues of

25   targeting or personal jurisdiction.  The identity of the Array

**6**

1    entity that's referenced in the credits is not a fact that goes

2    to whether the named defendant targeted Illinois through its

3    tortious conduct and such that there's personal jurisdiction

4    over the named defendant.

5             And jurisdictional discovery at this moment would be

6    unduly burdensome when there's a substantive motion to dismiss

7    that's pending.

8             And I still haven't resolved the threshold question

9    of personal jurisdiction, which is whether you have a colorable

10   or *prima facie* case.  And I'll give you an opportunity to make

11   that argument.  The briefing schedule that we have in place

12   anticipated you making a substantive response to the motion to

13   dismiss for lack of personal jurisdiction on the same schedule

14   as your response for the Netflix motion.

15            And so I'll give you the opportunity to make any

16   other arguments you want to make; including if you want to

17   submit any declarations or affidavits in response to the

18   declarations that they're submitting, we can do that.

19            And I should note that this doesn't mean that I am

20   necessarily accepting Ms. DuVernay's declaration for the truth

21   of the matters asserted.  And if there's material dispute of

22   facts that go to issues of personal jurisdiction, then we

23   should have an evidentiary hearing and not resolve that just on

24   the papers.

25            But for now, the question is whether plaintiff has

1    raised a colorable or *prima facie* case for personal

2    jurisdiction, and you don't need discovery to do that.  And the

3    underlying premise of all of this is that you should conduct a

4    pre-suit investigation to warrant haling people into court, and

5    we can get to the bottom of all that through the briefing that

6    we've already got in place.

7              And so the motion for jurisdictional discovery is

8    denied.  Things may change if how I resolve the merits of the

9    motion to dismiss for personal jurisdiction might lead us to

10   think there are some facts in dispute and we need to get to the

11   bottom of those facts, and I'll be sure to give everybody the

12   appropriate tools that they would need to flesh those facts out

13   if a factual dispute is necessary to resolve.

14             MR. CARRIGLIO:  Judge, may I just -- so I'll -- we'll

15   be responding to both motions.  And I hear your ruling on

16   the -- you know, on the jurisdictional discovery, at least

17   certainly for now.

18             Could we have until Wednesday to file these

19   responses, Judge?

20             THE COURT:  Yes.

21             MR. CARRIGLIO:  I could use a few extra days.

22             THE COURT:  The next thing on my agenda was to

23   confirm the briefing schedule and whether you can meet it as

24   currently set or if we need to make any adjustments.

25             MR. CARRIGLIO:  A few more days would help.

**8**

1       THE COURT:  So you're asking now for January 15th to

2   respond to the motions?

3       MR. CARRIGLIO:  Yes.

4       THE COURT:  Is that right?  And then how much time

5   would the defendants like to reply?

6       MS. SPEARS:  I don't recall the date that we had

7   before.

8       MR. CARRIGLIO:  You had January 31st before.

9       MS. SPEARS:  We had January 31st?  If we could just

10  get commensurate time after that?  What would --

11      THE COURT:  So it'd be February 5th.

12      MS. SPEARS:  What would that come to?

13      THE COURT:  It's a three-week --

14      MS. SPEARS:  February 5th?  Is that -- could we just

15  add two days to that, to February 7th?

16      THE COURT:  Sure.

17      MS. SPEARS:  And I have one other housekeeping

18  matter, if I may?

19      THE COURT:  Yeah.

20      MS. SPEARS:  The status is set for February 20th, and

21  I have an oral argument in the Second Circuit in New York on

22  that date, which I didn't realize when it was originally set.

23  Otherwise, I would have raised it.  But if we could push that

24  to the following week, I would greatly appreciate it.

25      THE COURT:  In light of the adjustment that we've

**9**

1    made in the briefing schedule, what I'd like to do is move our

2    status to the first week in March.

3              THE CLERK:  Everyone, how does Thursday, March 5th at

4    9:30 work for you?

5              MS. SPEARS:  Fine.

6              MR. CARRIGLIO:  That's fine.

7              MS. SPEARS:  Thank you.

8              THE COURT:  Is there anything else we should cover

9    this morning?

10             MR. CARRIGLIO:  I don't think so, Judge.

11             THE COURT:  Thank you.

12             MS. SPEARS:  Thank you very much.

13             MS. GIANNINI:  Thank you.

14             MR. CARRIGLIO:  Thank you.

15         (Proceedings concluded.)

16

17

18

19

20

21

22

23

24

25

1        C E R T I F I C A T E

2

3

4

5        I, Colleen M. Conway, do hereby certify that the

6    foregoing is a complete, true, and accurate transcript of the

7    proceedings had in the above-entitled case before the

8    HONORABLE MANISH S. SHAH, one of the Judges of said Court, at

9    Chicago, Illinois, on January 7, 2020.

10

11

12        */s/ Colleen M. Conway, CSR, RMR, CRR*        *05/20/20*

13             Official Court Reporter              Date
             United States District Court
14           Northern District of Illinois
                Eastern Division
15

16

17

18

19

20

21

22

23

24

25

**Colleen M. Conway, Official Court Reporter**