

| | | |
|---|---|---|
| Ira S. Nesenoff<br>Andrew T. Miltenberg<br>———————<br>Stuart Bernstein | Barbara H. Trapasso<br>Tara J. Davis<br>Diana R. Warshow<br>Gabrielle M. Vinci<br>Kara L. Gorycki<br>Cindy A. Singh<br>Nicholas E. Lewis<br>Adrienne D. Levy<br>Ryaan Nizam<br>Regina M. Federico | Philip A. Byler<br>*Senior Litigation Counsel*<br><br>Amy J. Zamir<br>Jeffrey S. Berkowitz<br>Rebecca C. Nunberg<br>*Counsel*<br><br>Marybeth Sydor<br>*Title IX Consultant* |

ATTORNEYS AT LAW
**nmllplaw.com**

November 9, 2020

**VIA ECF**
Hon. P. Kevin Castel
District Judge
United States District Court
Southern District of New York
United States Courthouse
Courtroom 11D
500 Pearl Street
New York, New York 10007

          **Re:**    *Fairstein v. Netflix, Inc. et al.*, 20-cv-8042 (PKC)
                  **Joint Pre-Trial Conference Letter**

Dear Judge Castel:

      In compliance with the Initial Pretrial Conference Order entered on September 30, 2020 (ECF No. 65), Plaintiff Linda Fairstein ("Ms. Fairstein") and Defendants Netflix, Inc. ("Netflix"), Ava DuVernay ("Ms. DuVernay"), and Attica Locke ("Ms. Locke") (collectively "Defendants") submit this letter in order to provide Your Honor with a summary of the action, and summary of the claims and defenses, contemplated motion practice and the prospect for settlement. An Initial Pretrial Conference is scheduled to be held by teleconference on November 16, 2020 at 12:30 p.m.

**I.**    **Background**

      Ms. Fairstein brought this action based on Defendant Netflix's original, four-part film series *When They See Us* ("*WTSU*" or the "Series"), which was released on Netflix on May 31, 2019. Ms. DuVernay, who wrote, directed and produced the Series, and Ms. Locke, who was a writer and producer of the Series, were named in the Complaint as individual defendants. The Series is about the "Central Park Jogger" case and the arrests, trials, convictions and vacatur of the convictions of five teenagers—Korey Wise, Raymond Santana, Kevin Richardson, Yusef Salaam



and Antron McCray (collectively "The Five")—who were, *inter alia*, accused of beating and raping a female jogger in Central Park on April 19, 1989 and whose convictions were vacated over a decade later following the confession and DNA match of another man.  Ms. Fairstein was the head of the Manhattan District Attorney's Sex Crimes Unit in April 1989, but was not the trial prosecutor on the cases against The Five.  Ms. Fairstein has filed this action for defamation based on her portrayal in three episodes of the Series.

Ms. Fairstein is presently a resident and citizen of Florida, having moved there from New York in the Fall of 2019.  Netflix, Ms. DuVernay and Ms. Locke are residents and citizens of California.  Ms. Fairstein originally filed this action in the United States District Court for the Middle District of Florida.  Ms. DuVernay and Ms. Locke filed a motion to dismiss for lack of personal jurisdiction, or alternatively to dismiss, or transfer, the action based on improper venue and in the interests of justice.  ECF Nos. 26, 51-52.  Netflix joined the motion to transfer and separately moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim (ECF Nos. 28-29, 53). Netflix also filed a motion to strike pursuant to California's Anti-SLAPP statute (ECF No. 30), but withdrew that motion on July 29, 2020 following subsequent case law developments related to application of that statute.  ECF No. 54.  Ms. Fairstein opposed all of Defendants' motions. ECF Nos. 41-46.

On August 4, 2020, the parties attended a preliminary pretrial conference with the Magistrate Judge in the Middle District of Florida, after which the Court entered a Case Management and Scheduling Order which, given the parties' agreement to informally stay discovery, provided extended deadlines for the commencement and completion of discovery until after the Defendants' motions were decided.

By Order dated September 24, 2020 (ECF No. 63), the Honorable John L. Badalamenti granted the Defendants' motion to transfer this action to this District. Ms. DuVernay's and Ms. Locke's motion to dismiss for lack of personal jurisdiction was rendered moot by the transfer of the action to this District at their request.  Netflix's Rule 12(b)(6) Motion is fully briefed and remains pending.[1]

**II.    Ms. Fairstein's Claims**

As alleged in her Complaint, Ms. Fairstein did not personally prosecute the case against The Five.  Ms. Fairstein served as an Assistant District Attorney in the Manhattan District Attorney's Office for three decades, until 2002.  She was appointed by Robert M. Morgenthau to lead the Sex Crimes Unit, and did so for twenty-six years of that time.  Ms. Fairstein is also the author of twenty-four published books, including twenty bestselling crime novels.

---

[1] Their jurisdiction and venue motions having been addressed by Judge Badalamenti's order transferring the case to this forum, Ms. DuVernay and Ms. Locke, as indicated in their prior motions, now join Netflix's Rule 12(b)(6) Motion to Dismiss, and intend to file a formal joinder in that Motion.

Case 1:20-cv-08042-PKC   Document 75   Filed 11/09/20   Page 3 of 7



As alleged in the Complaint, the Series, in which Ms. Fairstein is prominently featured using her real name, depicts Ms. Fairstein in a false and defamatory manner in thirteen scenes in which she is depicted, including: leading the NYPD investigation against The Five; changing the theory of the case developed by the two prosecutors, Elizabeth Lederer and Tim Clements, in order to prosecute The Five without any legal basis; referring to The Five using racist and derogatory language; interrogating unaccompanied minors; pressuring NYPD police officers to treat The Five as adults, abuse and coerce confessions from them; ordering a roundup of young men of color without probable cause; withholding exculpatory evidence from defense counsel prior to the trials; forcing a false theory of the case on prosecutor Elizabeth Lederer; and manipulating the timeline of events to fit her theory of the case.  It is Ms. Fairstein's position that these scenes, for which The Five would not have been present, cannot be justified as portraying their account of what happened.

As further alleged in the Complaint, prior to the development of the Series, Ms. Fairstein contacted Ms. DuVernay and Netflix to express the concern that she be portrayed accurately, and alerted them to a number of unreliable and defamatory sources which they should not rely upon when depicting Ms. Fairstein in the Series.  Ms. Fairstein also provided them with a list of recommended publicly available sources, including trial transcripts and deposition testimony from the original case and The Five's lawsuit against New York City, that they should consult while developing the Series.  According to Ms. Fairstein, Ms. DuVernay and Netflix disregarded her concerns.

As further alleged in the Complaint, Ms. Fairstein was not responsible for the investigation or prosecution of the case against The Five, which she alleges was apparent from sources in the public record, including those which Defendants publicly claimed to have reviewed as part of their research for the Series.  Plaintiff contends that Defendants ignored the evidence and acted with actual malice when they elected to knowingly, falsely, cast Ms. Fairstein as a villain, who was legally, ethically and morally culpable for what happened to The Five.  Ms. Fairstein further contends that Defendants then marketed and promoted the Series as a true story, and knowingly made statements which were intended to, and did, lead the public to believe that Defendants' portrayal of Ms. Fairstein was truthful, factually accurate and based on documentary evidence.

As further alleged in the Complaint, apart from her role in writing and producing the Series, Ms. Locke relied on her work on the Series, and purported review of the public record, to make false and defamatory statements about Ms. Fairstein on social media and in interviews with various media outlets. This included a series of posts on Twitter that caused Ms. Fairstein to be stripped of a prestigious literary award. Ms. Locke also called for Ms. Fairstein to suffer "all the rage and hate and consequences that are coming her way."  Ms. Fairstein contends that Ms. DuVernay also published false and defamatory statements about Ms. Fairstein on social media and in various media outlets.  Ms. Fairstein contends that both Ms. Locke and Ms. DuVernay used the false and defamatory Series as a means through which Ms. Fairstein could and should be held singularly, personally accountable for ruining the lives of The Five.

3



Ms. Fairstein's Complaint alleges that as a consequence of Defendants' false and defamatory portrayal of Ms. Fairstein in the Series, there was a public outcry against Ms. Fairstein, which continues to this day, because the viewing audience understands *WTSU* to be a true account rather than a fictionalized dramatization, as the Defendants intended.  Ms. Fairstein contends that this resulted in death threats and threats to her physical safety, petitions against her, the termination of longstanding publishing and literary agency contracts, the loss of consulting jobs, her forced resignation from nonprofit boards on which she had served for decades and the necessity of her withdrawal from social media.

Based on the aforementioned allegations, and as further detailed in the Complaint, Ms. Fairstein has asserted claims against: (i) Ms. DuVernay for defamation *per se* and defamation *per quod*; (ii) Ms. Locke for defamation *per se* and defamation *per quod*; (iii) Netflix for defamation *per se* and defamation *per quod*; and (iv) all Defendants, for conspiracy to defame Ms. Fairstein. Ms. Fairstein seeks damages for economic losses, lost career opportunities, reputational harm, emotional distress and punitive damages, plus costs and attorneys' fees. Ms. Fairstein also seeks an injunction directing Defendants to, among other things, issue a public statement correcting the false and defamatory scenes in the Series, remove the Series from Netflix's platform and editing the Series to remove the false and defamatory scenes concerning Ms. Fairstein, place a prominent disclaimer at the beginning of the Series and categorize the Series as a TV Drama on Netflix. *See* Compl. at pp. 117-18.

### III.  <u>Defenses</u>

Netflix has moved to dismiss Plaintiff's Complaint for failure to state a claim as a matter of law.  As set forth in Netflix's Motion, the Series is an artistic dramatization of controversial and contested historical events surrounding the Central Park Jogger case, told from the perspective of the Five young teenagers who were wrongfully accused, convicted and imprisoned for the rape of the jogger.  As Netflix argues in its Motion, Plaintiff, the head of the District Attorney's Sex Crimes Unit in 1989, was the public official who oversaw and, had critical responsibility for the prosecution.  As Netflix contends in its Motion based on public records and what Netflix asserts are Plaintiff's admissions, Plaintiff spent more than 30 hours at the police station during the investigation and interrogations of the Five as the highest-ranking prosecutor from the D.A.'s office.  She visited the crime scene with detectives and two of the Five teens, and testified for the prosecution at trial.  She later became a famous crime novelist, and, as Netflix contends, touted her involvement in the case and used that platform to publicly defend the prosecution and proclaim the Five's guilt—which she has steadfastly maintained from the outset and to this day, even after it became clear before trial that none of the Five's DNA was a match, and even after they were exonerated years later based on the DNA match and confession of the real offender, a serial rapist who committed a similar assault near Central Park weeks earlier.  As Netflix argues in its motion, Plaintiff seeks to not only disclaim responsibility for the prosecution and her record of statements



about it, but to censor the filmmakers' (and the Five's) belief that they were wrongfully imprisoned and the prosecution was in fact a colossal injustice.[2]

As argued in Netflix's Motion, the law does not allow Plaintiff to silence such views. The dramatized scenes and dialogue of which Plaintiff complains are core protected speech under the First Amendment. Case law strongly protects filmed dramatizations of controversial historical events that compress events or places characters in different places or enhances dialogue for dramatic effect. Plaintiff has suggested that there is no First Amendment protection for the Series because Defendants "marketed and promoted" it as "a true story," however, as Netflix's Motion argues, the Series is plainly not a documentary but rather a dramatization based on a true story—the story of the Five from their point of view—and any viewer would immediately recognize it as such. As one district court held in dismissing another complaint based on the Series, "Even a novice police-procedural viewer in Netflix's audience would pick up on that context" and understand the aggressive dialogue assigned to the character "as a rhetorical device," not an actionable factual assertion. *John E. Reid & Assocs., Inc. v. Netflix, Inc.*, 2020 WL 1330657, at *8 (N.D. Ill. Mar. 23, 2020).

Further, as Netflix argues in its Motion, the challenged scenes and dialogue, upon review, cannot be the basis for the defamatory meaning Plaintiff alleges, and otherwise are substantially true when viewed in light of Plaintiff's own statements and admissions and the extensive public record, which, as Netflix contends, are part of the Complaint and of which the Court may take judicial notice. The legal standard is one of substantial truth, and here the portrayal of the Fairstein character is as a "true believer" in the prosecution's theory and the guilt of the Five notwithstanding the evidence to the contrary. It is Netflix's position that Plaintiff cannot now, for purposes of a defamation suit, claim to be unfairly made a "villain" by dialogue showing her using language and espousing the very theories and decisions she has so vigorously defended to this day.

In response, Plaintiff has argued, among other things, that The Five would not have been present in the scenes she complains of and therefore the Series does not portray their "account" of what happened. However, as argued in Netflix's Motion, the "account" of the Five, reflected in their later civil rights lawsuit against Plaintiff and other New York City officials that settled to the tune of $41 million, is that their prosecution and imprisonment was wrong and unjust. The Series is an examination of the inequities and biases of the entire criminal justice system in New York and society in general, dramatically told through the lens of the Five and their parents' harrowing experience. As Netflix argues in its Motion, that narrative includes, of necessity, the public official who oversaw, was critically involved in and approved of the investigations and the prosecution. It is Defendants' position that Plaintiff cannot foreclose critical discussion of and a film dramatization of the Central Park Jogger prosecution because she does not come off well in the telling. And here, as Netflix's Motion contends, the portrayal is entirely consistent with her own words and deeds.

---

[2] Plaintiff also seeks injunctive relief including, an order "direct[ing] the removal of Parts One, Two and Four of When They See Us from Netflix's streaming platform" and directing the removal of "scenes depicting Ms. Fairstein" from the Series. (Compl. ¶¶ 274, 354, 374, 382 and Prayer for Relief.)

Case 1:20-cv-08042-PKC Document 75 Filed 11/09/20 Page 6 of 7



Finally, while lack of actual malice is not before the Court on Netflix's Motion, there is no question Plaintiff is a public official and must prove actual malice by clear and convincing evidence to recover. Defendants submit that Plaintiff also will not be able to establish the rigorous actual malice standard required under the law.

### IV.   Contemplated Motions

As set forth above Netflix's motion to dismiss this action pursuant to Rule 12(b)(6) is pending and fully briefed. The parties are prepared to provide courtesy copies of the briefing and exhibits, which includes videos of the Series, in whichever format is preferable to the Court.

Discovery has yet to be conducted in this action, as set forth in the Civil Case Management Plan and Scheduling Order submitted to chambers today. It is likely that the parties will seek to file summary judgment motions. Defendants anticipate filing a Motion for Summary Judgment asserting the defenses of opinion, substantial truth and lack of actual malice, among others. Ms. Fairstein anticipates filing a Motion for Summary Judgment motion on the elements of falsity and actual malice, among others.

### V.   Prospects for Settlement

It is unlikely that this case will settle. However, as set forth in the proposed Civil Case Management Plan and Scheduling Order, the parties have agreed that after the close of fact discovery they will meet and confer as to the engagement of a privately retained mediator.

Respectfully Submitted,

NESENOFF & MILTENBERG, LLP

By:   /s/ Andrew T. Miltenberg
      Andrew T. Miltenberg (AM7006)
      Kara L. Gorycki (KG3519)
      363 Seventh Avenue, 5th Floor
      New York, New York 10001
      (212)726-4500
      amiltenberg@nmllplaw.com
      kgorycki@nmllplaw.com

*Attorneys for Plaintiff Linda Fairstein*

6



                              DENTONS US LLP

By:   */s/ Natalie J. Spears*

      Natalie J. Spears (*pro hac vice*)
      Gregory R. Naron (*pro hac vice*)
      Jacqueline A. Giannini (*pro hac vice*)
      233 South Wacker Drive, Suite 5900
      Chicago, Illinois 60606
      Phone: (312) 876-8000
      natalie.spears@dentons.com
      gregory.naron@dentons.com
      jacqui.giannini@dentons.com

      Kiran Patel
      1221 Avenue of the Americas
      New York, New York 10020
      Phone: (212) 768-6700
      kiran.patel@dentons.com

      *Attorneys for Defendants Netflix, Inc., Ava DuVernay and Attica Locke*