KBGKFAIC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  LINDA FAIRSTEIN,

4                  Plaintiff,

5            v.                          20 CV 8042 (PKC)
                                         Telephone Conference
6  NETFLIX, INC., AVA DUVERNAY,
   ATTICA LOCKE,
7
                Defendants.
8
   ------------------------------x
9                                        New York, N.Y.
                                         November 16, 2020
10                                       12:30 p.m.

11 Before:

12                    HON. P. KEVIN CASTEL,

13                                       District Judge

14                        APPEARANCES

15 NESENOFF & MILTENBERG LLP
        Attorneys for Plaintiff
16 BY:  KARA LYNN GORYCKI

17 DENTONS US LLP
        Attorneys for Defendants
18 BY:  SANDRA DENISE HAUSER
        JACQUELINE A. GIANNINI
19      NATALIE J. SPEARS

20

21

22

23

24

25

KBGKFAIC

```
 1              (The Court and all parties appearing telephonically)

 2              THE COURT:  Good afternoon.  This is the judge.

 3              Do I have a court reporter on the line?

 4              (Pause)

 5              THE COURT:  We'll go on the record.

 6              This is 20 CV 8042, Linda Fairstein against Netflix,

 7    et al.

 8              Appearing for the plaintiff?

 9              MS. GORYCKI:  Kara Gorycki, Nesenoff & Miltenberg LLP.

10              THE COURT:  All right.

11              Just say your name one more time.

12              MS. GORYCKI:  Kara Gorycki.

13              THE COURT:  Thank you very much, Ms. Gorycki.

14              And appearing for Defendant Netflix?

15              MS. SPEARS:  Good afternoon, your Honor.  This is

16    Natalie Spears, with Dentons, appearing for Netflix and the

17    individual defendants, Ava DuVernay and Attica Locke.  And I

18    have with me on the line two of my colleagues from Dentons as

19    well, Sandra Hauser and Jackie Giannini.

20              THE COURT:  All right.  Thank you, all, very much.

21              Let me first turn to one housekeeping matter, and

22    that's regarding the motions.

23              As I understand it, all motions — venue motions,

24    personal jurisdiction motions — are moot at this stage of the

25    game except for the motion to dismiss filed by Netflix, which
```

KBGKFAIC

1    Ms. Locke and Ms. DuVernay have joined in.  Is that correct?

2            Let me hear from the plaintiff first and then the

3    defendant.

4            MS. GORYCKI:  Yes, your Honor, that's correct.

5            THE COURT:  And from the defendant?

6            MS. SPEARS:  Yes.  This is Ms. Spears.

7            That is correct, your Honor.

8            THE COURT:  Okay.  Thank you, Ms. Spears.

9            Now, the next order of business:  With regard to any

10   motion to dismiss, I want to talk about choice of law.  Now, I

11   haven't delved into the bottom of the motion to dismiss, but

12   there's a question of which jurisdiction's law applies, and

13   there is some suggestion that, regardless of whether it's

14   New York, Florida, as the plaintiff says, or California, that

15   there is no conflict, and, if there is no conflict in fact,

16   then I would apply the law of the forum, New York.  What I

17   would not do, if there's no conflict, is put the law of, for

18   example, New York and California, or New York, California, and

19   Florida, or New York and Florida in a blender and apply some

20   composite law of the two jurisdictions, because then it would

21   not be true that the law, in material respects, are not

22   different between the jurisdictions.

23           So let me hear the plaintiff's version of the

24   choice-of-law question, and then I want to hear from Ms. Spears

25   as to the defendants' position.

KBGKFAIC

1          So I'll begin with Ms. Gorycki.

2          MS. GORYCKI:  Yes, your Honor.

3          It was our position, when we briefed the motions in

4     the Middle District of Florida, that for purposes of the motion

5     to dismiss, there was no conflict between New York or Florida

6     law, which Netflix had been requesting be applied in the first

7     instance to its motion.  We don't believe that, for purposes of

8     the motion to dismiss, that the transfer to New York affects

9     our position on this issue.  We do believe that, for purposes

10    of alleging a defamation claim, the elements are the same, and

11    that, in both jurisdictions, Florida and New York, for purposes

12    of a conspiracy claim, you need to have an underlying tort, the

13    tort here being defamation.  So we believe that that claim

14    could also be analyzed under New York law with the same

15    results.

16         So, I think the only issue, in our minds, but I've

17    actually reviewed the briefing, would have been that we've

18    spoken on Florida case law while briefing in the Middle

19    District of Florida because our position was that the court

20    should apply Florida law due to the lack of conflict.  But I --

21         THE COURT:  We can possibly deal with that, but that's

22    helpful.

23         Let me hear from the defendants on the choice-of-law

24    issue.

25         MS. SPEARS:  Sure.  Again, this is Ms. Spears.

KBGKFAIC

1      We don't think there's even a close call here that

2  New York or California law would apply over Florida law, and,

3  in fact, that's what the judge, in transferring the case in

4  Florida, indicated as well.  None of those substantial events

5  giving rise to the claims occurred in Florida.  And for all the

6  reasons we set forth in our papers, we believe that it's quite

7  clear there's no instance in which Florida law would apply.

8      That said, we briefed in our papers predominantly

9  focusing on New York law; we also cited California law.

10  There's not a conflict between California and New York law.  As

11  plaintiff raised with respect to their purported claim for

12  civil conspiracy, there is a difference in the law.  Neither

13  New York law or California recognize a freestanding claim for a

14  conspiracy, so there is a conflict there.  And to the extent

15  that there is stronger law in New York in terms of opinion,

16  that law should be applied as well.

17      So we believe that it's pretty clear-cut in this case

18  that the Court should be applying New York law or California

19  law here, which there's not a difference between, so the Court

20  can go ahead and apply the law of the forum as your Honor

21  suggested, New York law, but not in any circumstance be

22  applying Florida law.

23      THE COURT:  Well, I realize that you're both coming at

24  it in a different perspective, but if I understand Ms. Gorycki

25  correctly, her position is that Florida law would control, but

KBGKFAIC

1    Florida law is the same as New York law, and, therefore, the

2    court, the forum court, should apply New York law to the claim,

3    and that the position of Ms. Spears is that either New York or

4    California law should apply, but because there is no conflict

5    between New York and California law, the court should apply the

6    law of the forum, New York.

7           Bottom line:  Ms. Gorycki, am I correct that you agree

8    the Court should apply New York law to the claim analyzing the

9    claim for defamation and civil conspiracy?

10          MS. GORYCKI:  Yes, your Honor.

11          THE COURT:  Ms. Spears, same question?

12          MS. SPEARS:  Yes, your Honor.

13          THE COURT:  Okay.  That's wonderful.

14          Now, the next thing I want to talk about is what is

15   properly considered on a 12(b)(6) motion in this context.  And

16   I read Part V of the defendants' brief, and they make such

17   assertions, not unheard of in a defamation case, that certain

18   statements are opinion or I think the point is made that

19   they're incapable of defamatory meaning, I guess, just taking

20   the statement on its face, or hyperbole, used to dramatize

21   events.

22          Now, that's what a court can do.  First of all, I take

23   the plaintiff's pleading, and on a 12(b)(6) motion, defamation

24   or not, I draw every reasonable inference in favor of the

25   plaintiff.  I disregard conclusory labels, but I draw all

KBGKFAIC

1  reasonable inferences in favor of the plaintiff.  And on the

2  12(b)(6) motion, I can take account of the underlying work in

3  which the defamation is said to have taken place.

4       That said, one of the things I don't do is decide

5  whether something is substantially true.  I wouldn't know how

6  to do that in this context because there are, I guess,

7  different viewpoints as to what is true, and that, it would

8  seem to me, is going to take discovery and a trial.  And

9  looking at the parties' letters to me, it appears that both the

10 plaintiff and the defendant anticipate a summary judgment

11 motion in this case.  It doesn't surprise me, but I note that.

12 But it seems to me that the task I should engage in in any

13 12(b)(6) analysis is, look at the complaint, look at the word

14 statements that are alleged to be defamatory or to portray the

15 plaintiff in a false light, look at the publication of the work

16 — the work — which is said to be defamatory, and, in light of

17 the pleading, in light of the briefing, determine whether or

18 not the words are capable of a defamatory meaning, whether

19 they're a protected opinion, and whether they're kind of

20 hyperbole, which, again, the law is not as well developed in

21 that area, but certainly things that are not proveable facts

22 are not generally actionable as defamatory.  Now, that means I

23 don't consider whether something is substantially true at this

24 stage of the case.

25       Let me begin with Ms. Gorycki.  Please tell me where I

KBGKFAIC

1    am wrong or off base or whether you agree with that

2    formulation, and then I'll turn to Ms. Spears.

3              MS. GORYCKI:  Well, your Honor, I hadn't prepared to

4    argue these issues today.  I would say based on my familiarity

5    with the case and with the briefing, that you are correct — I

6    do believe that whether or not something is substantially true

7    is a question of fact that should not be resolved at the

8    motion-to-dismiss phase.

9              I also think, which defendants have not really

10   addressed at any length because I think they recognize this,

11   that the issue of actual malice is also a question of fact that

12   should not be resolved at the motion-to-dismiss phase.  But I

13   do agree, your Honor, that you are able to undertake an

14   analysis as to whether or not the statements of which

15   Ms. Fairstein complains or the scenes in the film, I should

16   say, constitute protected opinion.  I do think that is an

17   analysis that should be undertaken at this phase.

18             And I think those were all the topics you raised, your

19   Honor.  If I missed something, please let me know.

20             THE COURT:  And let me hear from Ms. Spears.

21             MS. SPEARS:  Yes.  Thank you, your Honor.

22             Well, I agree with you that you are absolutely allowed

23   to look at whether a statement is incapable of defamatory

24   meaning on its face and, of course, whether it's protected

25   opinion or hyperbolic dialogue.  You are also — and courts

KBGKFAIC

1    routinely do look at defamation cases — able to look at whether

2    the complained-of dialogue is substantially true, as a matter

3    of law, based on records of which the Court can take judicial

4    notice.  And we've cited a number of cases, and that happens

5    quite regularly.  In fact, we cited the *Tannerite* case, which

6    is a Second Circuit 2017 decision, dismissal on substantial

7    truth grounds on a 12(b)(6), we cited the *Nix* Eleventh Circuit

8    case, where, again, there was --

9              THE COURT:  Sorry, let's go with the Second Circuit.

10             MS. SPEARS:  Sure.

11             THE COURT:  What were the records that the Court

12   properly took judicial notice of?  I'm quite familiar with it,

13   with judicial notice.

14             MS. SPEARS:  Right.

15             THE COURT:  Listen, judicial notice often enables me

16   to say that a party was on notice of a contention, for example,

17   from the filing of a pleading, that somebody claimed something,

18   and so I can take judicial notice of that pleading.  I don't

19   take judicial notice of the truth of that pleading.  And the

20   same way if the parties quote the district attorney, they quote

21   the Corporation Counsel, they quote investigations conducted by

22   others, they quote a dissent by a judge of the New York Court

23   of Appeals in an interview that he gave to a publication.  It's

24   a different matter to take judicial notice of a fact that was

25   known and knowable to somebody, or at least a contention that

KBGKFAIC

1     was known, and it's an entirely different ball of wax to take a

2     document and say, this document represents the truth, and

3     that's the truth, and you can take judicial notice of the

4     truth.  If it's not an admission, I question whether I can do

5     that.

6             So, go ahead.  Let me hear you.

7             MS. SPEARS:  Sure, yes.

8             First of all -- and I want to address a couple of the

9     different points you made in there -- the public records that

10    are referenced or incorporated into the complaint include the

11    body of public records in the case that are available on the

12    New York City website.  We cited a number of them in our

13    appendix.  For example, some of them include Ms. Fairstein's

14    testimony and testimony before the New York City council about

15    the case.  And, certainly, the Court can take judicial notice

16    of those records for purposes of the motion to dismiss.  And

17    that's what was done in, for example, the *Cerasani* case that we

18    cite, a defamation case based on a film, and certain prior

19    testimony and coverage in the press was matters that the court

20    took judicial notice of in dismissing the complaint.  It wasn't

21    for the truth of the matter – you're absolutely right, of

22    course – and we're not citing it for the truth of the matter,

23    but rather that the words were spoken.  So just by way of

24    example, we cite her statements that the five teens were

25    wilding or wild pack, and that's not for the truth of the

KBGKFAIC

1  matter that they were, in fact, wilding, but that she's made

2  those statements.

3       Similarly, there are statements that were made about

4  plaintiff's expressions about the guilt of the five teens or

5  the validity of the timeline.  Again, it's not to prove that

6  they were guilty, or not guilty, or that the timeline was

7  accurate, it's what she said about those matters.  And when a

8  court takes judicial notice of those, and it's really under

9  201, they're not subject to debate, those words were spoken by

10  the plaintiff in the public record.  As a matter of law, her

11  defamation claim fails.

12       And as I mentioned, the Second Circuit's case in

13  *Tannerite*, what they looked at, but also *Nix* — and I know it's

14  an Eleventh Circuit case, but it was based on New York law —

15  it's just a matter of regular practice in defamation cases that

16  courts look to matters that are a public record and of which

17  the courts can take judicial notice, to look, at this stage of

18  the case, on the record, as a matter of law, that particular

19  claim that that statement is defamatory or that that dialogue

20  is defamatory can't be, as a matter of law, based on the

21  admissions of the plaintiff or something that is a matter the

22  Court can take judicial notice of.

23       So it's regularly done, and something that we flesh

24  out a little bit more obviously in the motion itself, and would

25  ask that the Court do.  It's one of many arguments as to why

KBGKFAIC

1    the claim fails at this stage.

2            And, of course, when a claim for defamation, as I know

3    your Honor has ruled in other decisions, failed at the 12(b)(6)

4    stage on substantial truth grounds or on opinion grounds, it's

5    important for an early dismissal not just because that's the

6    right of the defendants at the beginning of the case, but also

7    because, in this kind of a case, of the chilling effect that it

8    can have on First Amendment rights.  So it is very important to

9    look at not only legal matters, in terms of opinions and

10    failure to state defamation as a matter of law, but also

11    matters that courts have within their toolbox the ability to

12    take judicial notice of at the outset of a case.

13            THE COURT:  All right.  Well, I think that also

14    depends on when the statement was made.  So, for example -- and

15    I'm using this as a hypothetical -- if Ms. Fairstein were to

16    say today, I don't believe the five participated in the actual

17    physical rape, I believe they were present, but I don't believe

18    they participated in the rape, that would not be an admission,

19    for example, that she held that view at or about the time

20    portrayed in the defendants' work.

21            So an admission that is relevant to the Court's

22    analysis, I would think, has to speak to the time that is

23    portrayed in the story.  In other words, what's relevant is,

24    did she, at the time of the events portrayed, believe she was

25    prosecuting innocent people, not what she may believe today

KBGKFAIC

1    based on subsequent events.  I just want to state for the

2    record, not that this is neither here, nor there, I am not a

3    devotee of the events at issue.  I've never seen the Netflix

4    series.  I saw a reference in the papers to a Ken Burns

5    documentary; I've never seen that.  I have, as a New Yorker, a

6    passing knowledge of the underlying tragic events, but that's

7    about it.

8            But the point is, when assessing truth, it's important

9    that the admission you're relying on is an admission that

10   speaks to the relevant time period, correct?

11           MS. SPEARS:  I think you have to look at each

12   particular scene in the dialogue to kind of -- I would be

13   uncomfortable making a global statement in that regard because

14   truth within the context of New York law and the First

15   Amendment is substantial truth, and it goes to whether the gist

16   or sting is the same.  So I think you'd have to look at each

17   specific issue and --

18           THE COURT:  Let's take the following situation:  I say

19   X murdered Y, and I say this in 2016, and I subsequently -- and

20   somebody says, you had no basis for making that accusation,

21   that accusation was untrue, you lied, you're a prosecutor,

22   you're making false accusations, and then I subsequently learn

23   that the accusation is untrue, and I retract it.  Does that

24   make the statement that you lied, you falsely prosecuted

25   somebody, true?  That's the heart of what we're dealing with,

KBGKFAIC

1    right?

2            MS. SPEARS:  Yes, I think the heart of what we're

3    dealing with is a little different, though, your Honor, and I

4    think part of it is perhaps because when you look at this, as

5    you must, in deciding it, you have to look at the context of

6    the actual scenes of the dialogue, and when you do, upon

7    examination, a number of them are, in fact, either

8    substantially true or incapable of defamatory meaning.  They're

9    not posited statements in the sense you just said, X murdered

10   Y.  They're told --

11           THE COURT:  They're substantially true.  So far, the

12   only thing you've pointed to -- and I want to make sure that

13   this is the universe -- are purported admissions, admissions,

14   as you would call them, I don't know whether they are or they

15   aren't, but let's call them admissions by the plaintiff.  Is

16   there anything else of which you would want me to take judicial

17   notice on the question of truth?

18           MS. SPEARS:  On the question of truth -- I'm just

19   looking through our papers here -- they rest on the statements

20   of the plaintiff and in our appendix, and we have an index of

21   it.  There are several statements both in testimony and in

22   articles, and all of those, we believe, are admissions.  There

23   are also statements in broadcasts.  Those are the bulk of what

24   we ask the Court to look at in terms of substantial truth, yes.

25           THE COURT:  Is there anything else?

KBGKFAIC

1      MS. SPEARS:  The only other thing I would say is some

2 of the actual facts that are not contested whatsoever, just the

3 basic facts of the case in terms of Ms. Fairstein was the head

4 of the Manhattan District Attorney's Office and the sex crimes

5 unit in 1989, the unit that tried the case.  She doesn't

6 dispute that --

7      THE COURT:  When you say -- listen, listen, listen.  I

8 have to do this for a living, and it's somewhat of an

9 admittedly artificial exercise, but I put on blinders, I look

10 to the four corners of the complaint and matters incorporated

11 by reference, and even the admissions of the plaintiff, how did

12 they come in?  Let's say you have a deposition of Ms. Fairstein

13 given in a civil suit.  Okay?  How do you get that in on a

14 12(b)(6) motion?

15      MS. SPEARS:  That is testimony of which the Court can

16 take judicial notice, that the words were spoken and were said

17 personal, and it also is an admission of the plaintiff.  And in

18 defamation cases, including the ones we've cited and others,

19 that is routinely looked at, that is the type of testimony

20 that's routinely looked at as a matter as to which the Court

21 can take judicial notice.

22      THE COURT:  So it would be your position, broadly,

23 that on any 12(b)(6) motion, any testimony given by a person --

24 a party -- not by a person, but by a party can be judicially

25 noticed?  Is that your position, or are you claiming that there

KBGKFAIC

1    is a different standard under Rule 12(b)(6) in defamation

2    cases?

3          MS. SPEARS:  No, I'm not saying there's a different

4    standard for defamation case.  Now, on a 12(b)(6) motion, the

5    Court can take judicial notice of facts that are publicly

6    available if their accuracy cannot be reasonably questioned

7    under 201(b).  It's done routinely in the Second Circuit and

8    elsewhere, and it's done routinely in defamation cases and in

9    other cases.

10         THE COURT:  No, I take judicial notice of facts on a

11   12(b)(6) motion.  That's not the issue.  I am curious -- and

12   you will have to brief -- whether, for example, a defamation

13   transcript, or some other transcript, or a radio interview,

14   television interview is a matter of which the Court can take

15   judicial notice.  That's going to be part of your burden on

16   your motion, to the extent that you rely on it for a principle

17   of substantial truth.

18         I'm going to tell you right now, I'm going to have the

19   parties resubmit their briefing.

20         First of all, I have two individual defendants for the

21   first time joining in the motion.

22         Second of all, I really didn't find the briefing to be

23   adequate to the task.  We now have an agreement between and

24   among all parties that New York law controls here under a

25   choice-of-law analysis.  So that's where we're going to start,

KBGKFAIC

1    begin, and end, really, with New York law on defamation.  And I

2    think the defendant would be well advised to revise their

3    briefing to be, what I would say, more critical.  If you want

4    to take somewhat of the broad position you take in your briefs

5    about dramatization of factual events and the fact that a

6    reasonable viewer would not take them to be true, and that,

7    therefore, you could put words into someone's mouth which would

8    otherwise be defamatory — in other words, hurt them in their

9    profession — that they didn't say because the reasonable viewer

10   would understand that, I will be happy to rule on that.  If

11   that's an argument you want to stand on, I will rule on it, and

12   I will write on it.  But you may choose to have a more narrow

13   focus to your motion to dismiss.

14        What I'm going to do, you have all the law material,

15   you've done the work, you have it on word processors, so it's

16   not some cruel and brutal burden I'm putting on people, but you

17   will have to take out choice-of-law discussion and insert your

18   New York law cases, and focus, and drill down on New York law,

19   and we can do this on a schedule that is appropriate to where

20   we are in the case now.

21        It is my intention not to enter a case management plan

22   with a discovery schedule until we get past the

23   motion-to-dismiss stage.  I have to see what's left in the case

24   — how broad, how narrow, how much time the parties need — and

25   that's best determined once I have a pleading that has gone

KBGKFAIC

1    through the motion-to-dismiss stage.

2              So let me inquire of the defendants:  When would you

3    like to submit your revised 12(b)(6) motion?

4              MS. SPEARS:  Thank you, your Honor.

5              Just given the schedule and holidays coming up here,

6    we would ask for, I guess, 28 days, 30 days, until December --

7    could we get until December 18th?

8              THE COURT:  All right.  Let me hear from Ms. Gorycki.

9    Would that work?  And when would you want to respond by?

10             MS. GORYCKI:  Yes, your Honor.  I do have several

11   depositions towards the holidays, at the end of December.  I am

12   certainly all right with the December 18th deadline for

13   Netflix.  I would probably, though, need until the end of

14   January to submit my opposition brief due to the holiday

15   schedule.

16             THE COURT:  Let's just look for a second.

17             Hypothetically, for the moment, January 29th, 2021.

18             And, Ms. Spears, on a reply brief, how about

19   February 12th?

20             MS. SPEARS:  What was the other date, your Honor?  You

21   said the 21st --

22             THE COURT:  No, no.  Let's see what we have here.

23   Defendants' motion is due December 18th; plaintiff's response

24   due January 29th; and defendants' reply due February 12th.

25             MS. SPEARS:  Given just the compression in the other

KBGKFAIC

materials we're dealing with, can we just do a little longer on the reply, your Honor, than two weeks?  Would you mind giving us until the 19th?

THE COURT:  You got February 19th.  All right?  That's it on how far out I'll go.

You've heard my comments.  Please don't waste my time with matters that I cannot take judicial notice of, and just telling me that courts can take judicial notice on a 12(b)(6) motion doesn't tell me anything I don't already know.  I have to know that that which you are seeking me to take judicial notice of on a 12(b)(6) motion can be taken of.  It makes a difference if you have an audio recording of an interview or you have a newspaper report on what somebody purportedly said.  Those things are two different things.

And you're asking me to take judicial notice on it, the defendant asked me.  It doesn't impose a burden on the plaintiff.  This is not like a request to admit.  So it's your burden, as the defendant, to show that I can take judicial notice of it.

But, anyway, I think we've actually accomplished a lot in this conference, and that's because you're all well prepared, and you know your case, and I appreciate that.

So I'm going to deem the existing motion withdrawn subject to the filing of a new 12(b)(6) motion on December 18, and, of course, that stays your time to answer, and response

KBGKFAIC

```
 1   January 29, and reply on February 19.

 2                  Anything further from the plaintiff?

 3            MS. GORYCKI:  Yes, your Honor.  The one question I had

 4   was about page limits for the briefing.

 5            THE COURT:  Yes, 25 pages for the plaintiff and

 6   defendant, and 15 on the reply.

 7            MS. GORYCKI:  Okay.

 8            THE COURT:  That's my individual practices.

 9            MS. GORYCKI:  Yes, I saw that, your Honor.  Our

10   original briefing, I know for plaintiff, was about a little bit

11   less than 40 pages because so many issues had been raised in

12   the defendants' motion.  Should we need an extension of the

13   page limit, shall we just address that later, once we're able

14   to see what the motion to dismiss looks like?

15            THE COURT:  I think that's exactly right.  Let's see

16   how you do.  Efficient is going to work better, and I'm not

17   going to judge that at this time.

18            MS. SPEARS:  Your Honor, since Ms. Gorycki raised

19   that, you're right, I'm looking here, that the papers -- the

20   original -- I mean, obviously, the complaint is 119 pages.  The

21   original motion to dismiss was 35 pages.  Would your Honor

22   entertain, just for efficiency purposes -- obviously we'll try

23   to condense as much as possible --

24            THE COURT:  How about this:  30, 30, and 20.  That's

25   the best I'm going to do for you.
```

KBGKFAIC

1            MS. SPEARS:  Okay.  Thank you, your Honor.

2            THE COURT:  All right.  I'll give you 30, 30, and 20.

3       Okay.  Anything else from the plaintiff?

4            MS. GORYCKI:  No, your Honor.

5            THE COURT:  Anything else from the defendant?

6            MS. SPEARS:  No.  Thank you, your Honor.

7            THE COURT:  All right.  Thank you, Ms. Gorycki.  Thank

8  you, Ms. Spears.  We are adjourned.

9            MS. SPEARS:  Thank you.

10            MS. GORYCKI:  Thank you.

11                              * * *