# Exhibit 48

```
                        Proceedings                          3
```

1  
2       THE COURT: She said you would be here  
3   between 2:10 and 2:15.  
4       MR. MOORE: I was delayed by the traffic.  
5       THE COURT: I'm telling you the next time you  
6   come in here late, come with a check for $250;  
7   that's what it's going to cost you.  
8       MR. MOORE: It's not intentionally done; it  
9   was due to forces beyond my control.  
10      THE COURT: As you're probably aware at the  
11  moment, the trial date has been adjourned because  
12  of information that was brought to the attention  
13  of the district attorney through the Police  
14  Department and the dates have been changed.  
15      You want to place on the record so Mr. Moore  
16  can know?  
17      MISS LEDERER: A copy of the letter that was  
18  sent to the court was sent to Mr. Moore on  
19  Thursday of last week indicating that a semen  
20  stain had been found on a garment of clothing  
21  belonging to the female jogger and that the People  
22  were requesting an adjournment in order to perform  
23  DNA analysis on that sustain.  
24      A copy of the serology report that documents  
25  the finding of that stain and the item on which it

```
 1                      Proceedings                    4
 2      was found has been sent to all counsel and a copy
 3      has been filed with the court.
 4           The court granted the People's request for an
 5      adjournment and I believe the date set was May
 6      21st as a control date to see if we have any
 7      information that results from the F.B.I. at that
 8      time.
 9           MR. MOORE:  The application was granted by
10      the court?
11           THE COURT:  Yes it was, May 21st.
12           MR. MOORE:  I was not here.
13           THE COURT:  I'm aware of that.
14           MR. MOORE:  I just want to state Your Honor
15      my very strong objection to this adjournment that
16      was granted to the People and the permission that
17      Your Honor has given to the district attorney to
18      conduct its test.
19           The district attorney has had this vouchered
20      clothing in their possession for over a year.
21      They have conducted a series of DNA test, four,
22      and the implication of that was that they had sent
23      for the DNA analysis every item of clothing that
24      they deemed relevant and applicable to these
25      circumstances.
```

ANNA L. SOCISA, SENIOR COURT REPORTER

```
SUPREME COURT           NEW YORK COUNTY
TRIAL TERM              PART 59
------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK  :   INDICTMENT NOS:
                                     :   4762/89
            -against-                :   2790/90
                                     :   CHARGE:
YUSEF SALAAM, RAYMOND SANTANA, STEVE :   Att. Murder
LOPEZ, ANTRON MC CRAY, KHAREY WISE,  :
KEVIN RICHARDSON & MICHAEL BRISCO,   :
                        Defendants   :
------------------------------------x  Proceedings

                                111 Centre Street
                                New York, N.Y. 10013

                                April 2, 1990

BEFORE:

            HONORABLE THOMAS B. GALLIGAN,
            JUSTICE OF THE SUPREME COURT


APPEARANCES:

      For the People:    ROBERT M. MORGENTHAU, ESQ.,
                         District Attorney, New York County

            BY:   ELIZABETH LEDERER & ARTHUR CLEMENTS, ESQS.,
                  Assistant District Attorneys


      For the Defendants:

ROBERT L. BURNS, ESQ.,              MICHAEL JOSEPH, ESQ.,
Atty. for Yusef Salaam              Atty. for Antron Mc Cray

PETER RIVERA, ESQ.,                 HOWARD DILLER, ESQ.,
Atty. for Raymond Santana           Atty. for Kevin Richardson

JESSE BERMAN, ESQ.,
Atty. for Steve Lopez               ANNA L. POGIER, RPR
                                    Senior Court Reporter



            ANNA L. POGIER, SENIOR COURT REPORTER
```

```
 1                            Proceedings                        2
 2          COURT CLERK: Indictment Number 4762 of '89,
 3     Yusef Salaam, Raymond Santana, Steve Lopez, Antron
 4     McCray, Kharey Wise, Kevin Richardson and Michael
 5     Brisco; also Indictment Number 2790 of '89,
 6     Michael Brisco.
 7          MR. BURNS: Robert Burns for Yusef Salaam.
 8          MR. RIVERA: Peter Rivera for Raymond
 9     Santana.
10          MR. JOSEPH: Michael Joseph for Antron Mc
11     Cray.
12          MR. DILLER: Howard Diller for Kevin
13     Richardson.
14          MR. BERMAN: Jesse Berman for Steve Lopez.
15          MISS LEDERER: Elizabeth Lederer for the
16     People.
17          MR. CLEMENTS: Arthur Clements for the
18     People.
19          THE COURT: All right. Before we start, I
20     have the usual application for permission to
21     conduct audio visual coverage by the press and
22     counsel, as always, have an opportunity to accept
23     or reject the offer of the press to make the
24     proceedings public.
25          MR. BURNS: We take the same position we
```

ANNA L. RIGHTER, SENIOR COURT REPORTER

| | Proceedings | 3 |

previously took.

  MR. BURNS: That is on behalf of all of the defendants.

  THE COURT: And I will also, and the order will be signed.

  For the record, obviously there are two other defendants who are not here. They are actually available; they're in the pens. Their attorneys are not here.

  Mr. Fedoon has called and is on trial in this court and cannot be here at the moment; he can't be two places at the same time. We'll call that case later.

  Mr. Moore was advised to be here, has not arrived, which is not unusual, and his client is present and so we'll proceed with those defendants who are before the court and we'll handle the other two cases subsequently.

  Now I have received, and I might just add for the record, Mr. Perlman was late but he had advised the court he had an engagement in Brooklyn and we were aware of that and I appreciate that courtesy.

  I have received a letter from the district attorney, copies of which were sent to counsel

Proceedings 4

indicating that they are not ready to proceed because of certain clothing which has been vouchered which had previously been vouchered which now -- well, I'll read the letter.

"Dear Justice Galligan: Upon re-examination of an article of clothing vouchered in connection with the case, a semen sample was discovered.

Because the article of clothing belonged to the female jogger, it is necessary to submit this stain for DNA testing.

Therefore, the People respectfully request an adjournment of the April 16, 1990 trial date in order that this test may be performed." The letter is signed by Elizabeth J. Lederer, Assistant District Attorney.

I must say that obviously, I'm very distressed. The fact that a year after an incident occurs and a year after an exhibit has been in the possession of the Police Department, that on the eve of trial, all of a sudden it has to be tested, it's something that seems to me could have been done a long time ago, so I'll be interested to hear from the district attorney why that's so.

MISS LEDERER: Your Honor, I cannot explain

ANNA L. SICILY, SENIOR COURT REPORTER

Proceedings 5

why the stain was not previously discovered. On Wednesday, March 26th, in anticipation for trial, the property was examined in order to be ready for the April 16th trial date and at that time, the stain was discovered.

I'm not a serologist and I can't explain to the court why the Police Department did not find it upon their initial evaluation and review of this piece of evidence.

MR. FISCHER: Judge, is it proper for me to inquire first as to which item of clothing the letter is talking about because the letter we received is silent as to which item of clothing and it would be helpful if we could identify it.

THE COURT: What item of clothing?

MISS LEDERER: It was a sock belonging to the female jogger.

MR. FISCHER: And just for the purpose of this discussion, obviously on behalf of my client, he is not among the three who are scheduled to go to trial on the 16th, but I appreciate the court having us be here today because it does impact.

Since the court has already said it's not going to sever my client to the extent of sending

Proceedings 6

it out to another judge to start preparing for a trial, since we have to await this other trial, the adjourning of the other trial affects my client's rights.

I would like to know how much time the People are asking for since the letter is silent on that question. They just use the word "adjournment" and they don't say how long and I remember the last DNA work they did took five months until we got an answer.

THE COURT: That's a fair question.

MISS LEDERER: In anticipation of that question, I spoke with both the agent who has done the testing thus far in this case and I also contacted the head of the DNA lab from the F.B.I., Mr. John Hicks. I explained to him the results of this re-examination and I explained to him that we had a trial date set for April 16th and that both the court and the attorneys on both sides would be anxious to proceed as quickly as possible.

I asked him to give me a date that would be a reliable date for when the results of the test would be available. I was advised it would be eight to ten weeks. There is an outside possi-

ANNA L. SOGIRE, SENIOR COURT REPORTER

Proceedings 7

bility that the earliest would be six weeks but I asked Mr. Hicks to give me a date that would fairly state to the court what range of time we're talking about.

THE COURT: Well, I frankly still have great difficulty in accepting -- it seems to me almost negligent on the part of the police or whoever is in charge of the lab to have an item a year later and find out it may be valuable in terms of evidence.

Well -- presumably if there are positive results, we're going to have additional hearings.

They said the earliest would be six weeks?

MISS LEDERER: It is conceivable that we could have results as early as six weeks. I asked for a date so that we would not be in a position of setting a firm date for trial and then coming in to inform the court the tests were not ready, and Mr. Hicks told me eight to ten weeks was a more reliable estimate, but it depends on the process of the testing, and they cannot definitively state that it would be a minimum of six weeks.

If the court wishes to set a date, obviously

ANNA L. ROSIER, SENIOR COURT REPORTER

Proceedings   6

1  we're ready to proceed as soon as the results are
2  known and if they could be known in six weeks, we
3  would be ready at that time, but I thought it only
4  fair to apprise the court of a -- exactly what
5  I've been informed by the DNA lab.
6      THE COURT: I will put it on for six weeks as
7  a control date at least.
8      MR. RIVERA: Your Honor, can we be heard on
9  the People's request for an adjournment?
10     THE COURT: Sure.
11     MR. RIVERA: As the court knows, my client
12 has been in jail for the last year on this matter.
13     THE COURT: It should also be noted that you
14 didn't even make a bail application until December
15 on his behalf.
16     MR. RIVERA: And the judge set bail in the
17 amount of $125,000 and my client has still been in
18 because he has not been able to make the bail.
19 The bail would have been academic at that point in
20 time, Your Honor.
21
22     If the court is willing to grant the People's
23 adjournment, I would ask the court to reconsider
24 the question of bail as to my client.
25     At this juncture, on behalf of my client, I'm

ANNA L. ROGIER, SENIOR COURT REPORTER

|   |   |   |
|---|---|---|
| 1 | Proceedings | 9 |

opposed to it. This was evidence that the People had in their possession as the court indicated. It was their negligence and their inadvertence that delayed the uncovering of this evidence for approximately one year, and on behalf of Raymond Santana, I would oppose the People's adjournment.

THE COURT: Anybody else want to be heard?

MR. BERMAN: Judge, I'm just -- just to finish up what I said before, I now understand that this purported stain is on the sock.

There is a lab report that was given to us months back that says on April 20, 1989, a detective named Honeyman submitted two socks, two socks for analysis. One is called both, 2-5 and 8-10 and the other one is called 3-5 and 8-11.

Can I relate this to subsequent reports? Can the People tell us which sock this is?

MISS LEDERER: Your Honor, I have directed the serologist who found the stain to prepare a serology report and that will be served on each of the attorneys this week.

THE COURT: He's asking which of two socks, 8-10 or 8-11?

MISS LEDERER: I don't know exactly which

ANNA L. BOGIEP, SENIOR COURT REPORTER

```
                              Proceedings                    10
```

label and I'm reluctant to hazard a guess. The report will be served this week.

MR. BERMAN: Insofar as it might aid the court in deciding whether to grant the People's application, this report doesn't have any other identifying number except the case number I guess, is a report ultimately dated 12-8-89 reporting back on the results of what was submitted on 4-20-89 and without getting too much into it, the comparisons were made apparently with these two socks with various specimens submitted from each of the defendants in this case, and I'm at a loss to understand how they could compare whatever serological stains of value were on the socks way back last year and come up with nothing and now look at the same sock and find a stain that wasn't there between last April and last December.

I don't doubt everybody's integrity here but maybe when the court wants to decide this motion which is going to put things off for at least two months or so, if you want to take a look at this report, we'll gladly lend it to the court.

It looks like they did a lab report on this last year and didn't see a stain and it's shocking

| | Proceedings | 11 |

and I'm sorry judge.

THE COURT: I'm sorry also and I'm also shocked, but the fact that they did not discover a stain earlier -- I'm not a serologist -- does not foreclose their finding something subsequently.

I will allow them to make their test and I will grant the adjournment reluctantly but I think necessarily, and I'll put the case on for May 14th which is six weeks.

Obviously, based upon what the district attorney has indicated, six to eight weeks, eight to ten weeks, the earliest possible would be six so I'll put it on for the earliest possible date and find out where we are.

MR. BERMAN: That happens to be a bad -- that week I will not be available judge. I know it's just for a conference, it's not a trial date but the Friday before or the week after.

THE COURT: How about the Monday after?

MR. BERMAN: Absolutely satisfactory.

THE COURT: May 21st.

MR. DILLER: Is this for all of the defendants Your Honor?

THE COURT: This will be for all of the

ANNA L. BOSIER, SENIOR COURT REPORTER

```
                          Proceedings                        12
```

defendants because we'll have to establish -- it may alter perhaps the trial order, I don't know.

MR. BERMAN: This is for a status conference rather than a firm trial date?

THE COURT: Exactly, because presumably, if it's a positive, there may be additional proceedings.

MR. BERMAN: May I also ask that the court adjudicate this time not excludable time?

THE COURT: When the time arrives to discuss 30.30 time counsel, you can make your application.

MR. BERMAN: I just always --

THE COURT: It's obvious the people are making this request at this particular point in time. What impact that is going to have ultimately we'll wait and see. We'll await that time.

MR. BERMAN: I just wanted to capture your state of shock now while you're in that state of shock and get you to rule.

THE COURT: You can also buy the record.

MISS LEDERER: Your Honor, in response to a motion and an application from Mr. Joseph on behalf of Antron Mc Cray, I am turning over at this time, certain F.B.I. reports including copies

ANNA L. SCGIER, SENIOR COURT REPORTER

| | Proceedings | 13 |

1  
2  of 16 auto reds and the F.B.I. notes and materials
3  that he has requested.
4      THE COURT: Your application is still on the
5  floor.
6      MR. RIVERA: In view of the fact the court
7  has adjourned this case to May 21st, I would renew
8  my application to reduce the bail of Mr. Raymond
9  Santana. He's the one most prejudiced by this
10  adjournment.
11      We were ready to start trial on April 16th
12  and the court is quite familiar with all the facts
13  and circumstances of this case. I would just
14  renew my application.
15      My client is able to make bail in the amount
16  of $10,000.
17      THE COURT: The bail conditions will remain
18  the same, $25,000, as I said. This defendant,
19  your client, you threw the ball over here. Your
20  client was in jail from the time he was arrested
21  until December, and there was no bail application
22  made of any kind, so whatever efforts could have
23  been made to obtain bail for your client from
24  April to December were totally lost. That's eight
25  months.

NYCLD_006654