## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

LINDA FAIRSTEIN,                        )
                                        )
              Plaintiff,                )
                                        )   Case No. 20-cv-8042 (PKC)
       v.                               )
                                        )
NETFLIX, INC., AVA DUVERNAY, and        )
ATTICA LOCKE,                           )
                                        )
              Defendants.               )

## DEFENDANTS'  MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE BERRY WELSH DECLARATION AND PRECLUDE HIS RELATED TESTIMONY AT TRIAL

Sandra D. Hauser
Justin N. Kattan
DENTONS US LLP
1221 Avenue of the Americas
New York, New York  10020
Phone: (212) 768-6700
*sandra.hauser@dentons.com*

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-8000
*natalie.spears@dentons.com*
*gregory.naron@dentons.com*
*jacqui.giannini@dentons.com*

*Counsel for Defendants Netflix, Inc., Ava DuVernay and Attica Locke*

Berry Welsh was one of four Executive Producers of *When They See Us* ("the Series"); he gathered much of the initial research material upon which the writers relied, and additional research throughout the "writers' room" process. Defendants properly disclosed Mr. Welsh as a potential fact witness. Plaintiff affirmatively chose not to depose Mr. Welsh during discovery. Plaintiff now moves to strike certain Paragraphs of Mr. Welsh's Declaration, claiming he is offering "expert" testimony. Plaintiff is wrong.

Mr. Welsh's testimony pertains to relevant aspects of his work on the Series. The Paragraphs Plaintiff challenges refer to his professional background and experience on other television and film projects to explain why he believed the research he provided to Defendants was "extensive" and complete, and to put the Series in proper context. None of that is "expert" testimony under Rule 701 and the applicable law. Defendants timely disclosed the identity of this lay witness and subject of his potential testimony, fully discharging their obligations under Federal Rule of Civil Procedure 26. The Court should deny Plaintiff's Motion to Strike.

## BACKGROUND

Mr. Welsh worked on the Series as an Executive Producer while employed by Tribeca Productions, an accomplished film production company, which co-produced the Series with Participant Media. (Welsh Decl. (ECF No. 153) ¶¶ 2, 4, 6, 10; DuVernay Decl. (ECF No. 149) ¶ 17.) At the request of Series showrunner Ava DuVernay, Mr. Welsh compiled the "principal set" of research relied upon by the writers, and continued to update them with additional research materials during the writers' room process. (DuVernay Decl. ¶ 28; Welsh Decl. ¶¶ 10-12, 21; Engel Decl. (ECF No. 152) ¶ 14; Swicord Decl. (ECF No. 151) ¶¶ 11, 18; Locke Decl. (ECF No. 150) ¶¶ 17, 19). The writers used this research in creating the Fairstein character. (*E.g.*, Swicord Decl. ¶¶ 11-12, 18; Locke Decl. ¶¶ 17, 19, 35, 36, 39, 62-64.)

On October 4, 2021, Defendants sent Plaintiff's Counsel their Initial Disclosures. (Declaration of Natalie J. Spears ("Spears Decl.") at ¶ 2, Exhibit 1.)  This document identified Mr. Welsh as a potential witness having "[i]nformation regarding the Series, including research, development and production of the Series."  (*Id.* at ¶ 1.)  Defendants did not identify Mr. Welsh as an expert witness because he is not providing expert testimony.  (*Id.*)  On March 15, 2022, Plaintiff informed Defendants of her intent to depose Mr. Welsh and on March 22, 2022, Defendants provided Plaintiff with dates for his deposition.  (*Id.* at ¶ 5.)  Plaintiff later "withdrew the request for Mr. Welsh's deposition" because she decided that deposing him would be "a waste of time and expense."  (Gorycki Decl. (ECF No. 187) at ¶ 14.)

Defendants submitted Mr. Welsh's Declaration, along with others, in support of their Motion for Summary Judgment. In his Declaration, Mr. Welsh discusses his background as a producer, his involvement with the Series and compilation of research for the Series, and  discusses the Series' use of standard storytelling techniques, *e.g.*, compressed timelines or a greater emphasis on some characters relative to others.  For context, he also explains these techniques were familiar to him based on his work on other fact-based dramatizations, and compiles a list of recent dramatizations based on true stories.

## LEGAL STANDARD

Under Fed. R. Evid. 701, lay witnesses may give opinion testimony so long as it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Accordingly, when a witness is timely disclosed as a fact witness, courts only strike or preclude testimony for violating Federal Rule of Civil Procedure 26 if the Court determines it constitutes "expert", as opposed to "lay", opinion

testimony.  Fed. R. Civ. P. 37(c)(1).  *See, e.g., Bank of China v. NBM LLC*, 359 F.3d 171, 181-82 (2d Cir. 2004) (court properly admitted portions of lay witness testimony that satisfied Federal Rule of Evidence 701 and should have only precluded those portions that constituted improper expert testimony).  A witness' direct participation with events in question is relevant to whether his testimony constitutes improper expert testimony.  *Compare U.S. v. Afriyie*, 929 F.3d 63, 70 (2d Cir. 2019) (lay witness with "contemporaneous involvement" permissibly "referred to his specialized knowledge" in testimony), *with Bank of China*, 359 F.3d at 181-82 (admission of lay testimony that "exclusively" reflected witness' "specialized knowledge" and "extensive experience"—but not his "perceptions" of relevant facts—was improper).  When a fact witness has "firsthand participation" in relevant facts at issue and "'particularized knowledge'" of related practices by virtue of his position in a business or industry, that is not "expert" testimony.  *Afriyie*, 929 F.3d at 70; *Bank of China*, 359 F.3d at 181 (quoting Fed. R. Evid. 701 adv. comm. note (2000)).

Plaintiff urges the Court to "exercis[e] its discretion to preclude Mr. Welsh's . . . testimony," invoking a four-part test under which she claims "prejudice" from having to "meet" purportedly "new" testimony.  (Memorandum in Support of Motion to Strike ("Pl. Mem.") (ECF No. 188), at 6-9.)  However, this test applies only if the Court first finds a Rule 26 violation. *See, e.g.,* Fed. R. Civ. P. 37(c)(1); *Williams v. City of New York*, 2017 WL 4382283, at *1 (S.D.N.Y. Sept. 29, 2017) (absent Rule 26 violation, Rule 37(c)(1) motion "must be denied").  There is no such violation here.  Mr. Welsh was timely disclosed as a fact witness and the challenged portions of his testimony are lay testimony, not *expert* testimony.

**ARGUMENT**

I.     **Berry Welsh Is a Disclosed Lay Fact Witness Not an "Expert" and the Challenged Testimony Is Admissible Under Federal Rule of Evidence 701**

     A.     **Lay Witnesses May Testify to Both Their Personal Observations in Connection With the Matters in Suit, and Broader Experience in Their Field**

"Courts have permitted lay witnesses to testify under Rule 701 to their opinions when those opinions are based on a combination of their personal observations of the incident in question and background information they acquired through earlier personal observations." *B & G Plastics, Inc. v. Eastern Creative Industries, Inc.*, 2004 WL 307276, at *8 (S.D.N.Y. Feb. 18, 2004) (necktie company president could testify "based on both his observations of the clips and hangers at issue and background information he has acquired about the industry from his experience.").  For example, in *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, the Second Circuit held that a lay witness could give testimony based on *both* his general, "everyday experience as a computer programmer" *and* "specifically on his work on" the software at issue.  290 F.3d 98, 110-11 (2d Cir. 2002) (distinguishing between experience at work and non-work-related "scientific, technical or other specialized knowledge").

An employee or executive may thus testify under Rule 701, and is not transformed into an "expert" who has to be disclosed as such, "so long as the testimony was based" in part on personal knowledge of relevant facts at issue, "and was not rooted *exclusively* in his expertise".  *Bank of China*, 359 F.3d at 181-82 (emphasis added).  This testimony is admissible "'not because of experience, training, or specialized knowledge within the realm of an expert, but *because of the particularized knowledge that the witness has by virtue of his [ ] position in the business*.'"  *Id.* (quoting Fed. R. Civ. P. 701 adv. comm. note (2000)) (emphasis added, alterations original). Citing the same Rule 701 Advisory Committee's Note as the Second Circuit in *Bank of China*, the

court in *Minority Television Project v. F.C.C.*, 649 F. Supp. 2d 1025 (N.D. Cal. 2009) denied a motion to strike the lay testimony of a non-commercial broadcasting executive about the economics and standard practices of non-commercial broadcasters because his opinions were "largely" based on "particularized knowledge" he acquired by virtue of his "role" at his current employer. *Id.* at 1032.

Lay witnesses may compare and contrast facts at issue with "particularized knowledge" of standard practices in an industry—including the media and entertainment industry—accumulated "by virtue of his or her position in [a] business" or organization. *See* Fed. R. Civ. P. 701 adv. comm. note; *Minority Television Project,* 649 F. Supp. 2d at 1032; *New Show Studios LLC v. Needle*, 2014 WL 12495640 at *12 (C.D. Cal. Dec. 29, 2014) (executive of entertainment company could testify to company's "institutional knowledge of entertainment industry practices"); *see also Dinler v. City of New York*, 2012 WL 4513352 at **17-18 (S.D.N.Y. Sept. 30, 2012) (denying motion to strike declaration discussing "general conclusions and assertions about the risks of chaos and disorder resulting from widespread civil disobedience" where it was based both on declarant's "personal knowledge of possible terrorist threats to the City during the RNC and his research into similar incidents elsewhere, such as the 1999 WTO protest in Seattle").

### B.    Mr. Welsh's Declaration Reflects His Firsthand Perceptions as a Producer of the Series and Is Not Improper Expert Testimony

Mr. Welsh's Declaration reflects his direct involvement and personal experience with the production of the Series as one of its Executive Producers—including the compilation of research that informed the formulation of the Fairstein character—rendering his Declaration quintessential lay testimony.  (Welsh Decl. ¶¶ 4, 10-12.)  On its face, the Welsh Declaration is not "rooted exclusively" in opinions based on an expert's specialized knowledge, divorced from his personal experience on the Series. *Bank of China*, 359 F.3d at 181.  Far from "predominately" discussing

"what practices are customary in researching and writing films based on real-life events" or "opinions about free speech and artistic expression" unrelated to the Series as Ms. Fairstein misstates (Pl. Mem. at 5),[1] the Paragraphs of the Welsh Declaration Plaintiff moves to strike (¶¶ 5-8, 12-20) properly draw upon Mr. Welsh's "particularized experience" as a producer of dramatizations based on true stories for Tribeca Productions to explain and give context to his testimony *about the Series*.  Nothing in those Paragraphs implicates the kind of testimony contemplated by Rule 702.

**Paragraphs 5-8.**  These Paragraphs simply consist of a recitation of Mr. Welsh's experience and professional background—no different from similar parts of the Declarations of Ava DuVernay (¶¶ 2-4), Robin Swicord (¶¶ 2, 3, 5), Attica Locke (¶ 2), and Allison Engel (¶¶ 2-4), or for that matter, most declarants.  None of that commonplace preface is "expert" testimony; Plaintiff's motion as to those paragraphs is meritless.

**Paragraph 12.**  This Paragraph simply states: "Based on my experience, I believed when making the Series, and continue to believe, that the factual source material that the writers had for the Series was extensive and customary for a typical production based on a true story."  Again, this testimony relates to the Series and the "particularized knowledge that [Mr. Welsh] has by virtue of his [ ] position in the business."  Fed. R. Civ. P. 701 adv. comm. note (2000).  And, as the authority above makes clear, these kinds of comparisons and observations about standard practices in an industry (and specifically the entertainment industry) are entirely proper lay testimony.

---

[1]  While disparaging Mr. Welsh's purported references to "'artistic expression' and First Amendment considerations" (Pl. Mem. at 7), there is no basis for her argument that he is making "legal arguments" in an effort to "usurp the Court's role in determining whether a statement is protected opinion."  (*Id.*, citing Welsh Decl. ¶¶ 13, 16, 17.)  None of the cited paragraphs even mentions a specific scene, let alone makes a legal argument about one.

**Paragraphs 13-20.**  These Paragraphs discuss examples of the many other films or series telling stories based on real people and events (¶¶ 13-16), and the commonplace storytelling techniques that are used in telling those stories (¶¶ 17-20), all by way of situating the Series in proper context.  That is not inappropriate testimony for a lay witness providing context.  These Paragraphs are not offered as opinions on "industry standards" based on Mr. Welsh's "experience and specialized knowledge" (Pl. Mem. at 5)—even though as discussed above, that would not take them out of Rule 701's ambit.  As the courts sensibly recognize, in testifying about the Series Mr. Welsh does not have to blind himself to his "everyday experience" as a producer (*Medforms, Inc.,* 290 F.3d at 111) and may convey "information he has acquired about the industry from his experience" (*B & G Plastics,* at *8).

In any event, these Paragraphs do *not* relate "facts that would [not] be known to the average person and thus, fall within the scope of Rule 702."  (Pl. Mem. at 6.)  Compiling recent examples of films and series based on true stories, and articles discussing them, is not exclusively in the realm of an expert.  *See, e.g., White v. Alcon Film Fund, LLC*, 52 F.Supp.3d 1308, 1328 (N.D. Ga. 2014) (rejecting contention that "only an expert would be able to generate a list of films concerning graduation, basketball documentaries," and other facts; such research "is anything but expert").[2]

Likewise, discussing common storytelling techniques does not require special training, and Welsh is not using obscure "'industry . . . terminology'" (Pl. Mem. at 6, quoting *Irish*, *infra*) beyond the ken of anyone who has watched a movie.  *Contrast Irish v. Tropical Emerald LLC*,

---

[2]  Plaintiff also makes improper hearsay objections to ¶ 17 ("relying on *TIME* magazine article"), n.1 ("regarding Participant Media and its films"), and ¶ 20 ("Mr. Welsh's testimony that the writers 'chose to have Ms. Fairstein act as the face of the system'").  (Pl. Mem. at 8.)  None of this objected-to testimony was offered for the truth of the matter asserted, but rather to show the filmmakers' intent with respect to certain storytelling decisions, to contextualize these decisions, or both, and therefore is not hearsay.  Fed. R. Civ. P. 801(c)(2).  It is well-established that "statements not offered for their truth, but instead, for their effect on the listener or for context, may be introduced as non-hearsay statements."  *U.S. v. Bouterse*, 765 F. App'x 463, 468 (2d Cir. 2019).

2022 WL 2716182, at *7, *9 (E.D.N.Y. July 13, 2022) (citations omitted), cited by Plaintiff (excluding employee's "revenue loss analysis" testimony that used "undefined terms and estimates that would not be used by the 'average person in everyday life'").  That the "average person" may not be familiar with these storytelling devices does not make them the subject of expert testimony. Even if they don't know the exact words Mr. Welsh used, they are likely familiar with the concepts they describe (one need not know the term "time compression" to understand that *The Longest Day* doesn't cover every minute of D-Day).

For example, in *White v. Alcon Film Fund*, a researcher's declaration included "the opinion that stories about characters about to graduate or recently graduating high school and transitioning to adulthood constitute 'an entire genre known as the coming-of-age story.'"  The court rejected plaintiff's argument that "'this "genre" and its title is beyond the knowledge of a layperson'": "The coming-of-age narrative is a remarkably common topic in literature and film" and "[r]ecognition of this genre is hardly reserved to literary or film experts."  52 F.Supp.3d at 1328.[3] *See also U.S. v. Yannotti*, 541 F.3d 112, 126 (2d Cir. 2008) ("While we do not profess that loansharking is an activity about which the average person has knowledge," witness' testimony "derived from a reasoning process familiar to average persons.  In short, his opinion did not depend on the sort of specialized training that scientific witnesses or statisticians rely upon when interpreting the results of their own experiments or investigations.")

### C.     The Declaration Gives Relevant Context and Is "Helpful" to "Determining a Fact in Issue"

The Welsh Declaration is plainly relevant and contains testimony that would be "helpful . . . to determining a fact in issue".  Fed. R. Evid. 701(b).  The challenged Paragraphs provide context

---

[3]  Ultimately, even though the researcher was found not to be an expert in *White*, the objection to the declaration was sustained because the defendants "failed to disclose her identity and declined to supplement earlier responses to interrogatories."  *Id.*  Exactly the opposite is true here.  *See infra* Section II.

that is "helpful to clearly understanding the witness's testimony" regarding the Series.   Under Federal Rule of Evidence 701(b), testimony need not be essential, but merely helpful.  *See, e.g., B & G Plastics*, 2004 WL 307276, at \*9 (while "not an expert," executive's "testimony can be helpful in describing a specialized industry to the trier of fact"); *U.S. v. Reyes*, 384 F. App'x 37, 41 (2d Cir. 2010) (agent's testimony about "typical" sales of cocaine provided "helpful context").  *Cf. Vill. of Freeport v. Barrella*, 814 F.3d 594, 612 (2d Cir. 2016) (testimony by witnesses with "no personal knowledge" and "only the vaguest idea of the relevant" facts not "helpful").  Likewise, Federal Rule of Evidence 401 sets forth a "'very broad'" and "'very low standard'" for relevance. *U.S. v. Litvak*, 808 F.3d 160, 180 (2d Cir. 2015) (citations omitted).

Plaintiff's attempts to cast the Declaration as "unimportant", "unnecessary" "duplicative", and "irrelevant" (Pl. Mem. at 4, 7, 8) disregards those broad standards of relevance, and Mr. Welsh's role as Executive Producer who helped compile the research material on which the filmmakers relied.  While Plaintiff is correct that "actual malice concerns Defendants' subjective awareness" of probable falsity, "not industry standards or practices" or negligent failure to investigate (Pl. Mem. 7), Mr. Welsh is not defining a standard of conduct, but rather, placing the Series in a broader context that may be helpful in understanding how the raw materials of research are turned into dramatic dialogue and scenes.[4]  Furthermore, as Plaintiff points out, his testimony supports and corroborates Ms. DuVernay's uncontroverted testimony on the same concepts.  (SUF ¶¶ 42, 63, 72, 79.)  Just because Plaintiff has no response to testimony on these very basic concepts that are part of the genre of the Series does not make it "irrelevant."

---

[4] Plaintiff's objection pursuant to Fed. R. Civ. P. 403 (Pl. Mem. at 7) is also meritless.  This Declaration is not "more prejudicial than probative":  she will not be prejudiced by testimony of which she had notice for over a year (Spears Decl., at ¶ 2), and her attempts to downplay the probative value of the Declaration fail for the same reasons her "relevance" objections do.  Nor is there any reason to assume that the Court is incapable of receiving the contextual information Mr. Welsh provides without mistaking it for the standard of care or "confus[ing] the issues".  (Pl. Mem. at 7.)

## II.    Defendants Timely Disclosed Mr. Welsh as a Potential Lay Witness

Plaintiff has been on notice that Defendants may call Mr. Welsh as a lay witness since October 2021.  (Spears Decl., at ¶ 2.)  Her claim that "Defendants intended to 'sandbag'" her with his testimony and she will suffer serious prejudice if the Court admits his testimony is baseless. (Pl. Mem. at 8-9.)  As shown above, Mr. Welsh is not an expert witness, and did not need to be disclosed as one. Nor did Defendants fail to "previously disclose" him (*id.* at 8) as a *lay* witness by describing the matters on which he might testify as "[i]nformation regarding the Series including research, development and production of the Series."  (*Id.* at 3 (emphasis omitted).)  As explained above, this is the *exact* subject matter of the Declaration; to the extent it focuses on anything else, *i.e.*, "other films or filmmaking practices in general" (*id.*), it does so only to contextualize Mr. Welsh's opinions about the research for the Series and portrayal of Plaintiff.

Plaintiff's heavy reliance on *Irish v. Tropical Emerald*, *supra*, is misplaced. There, a declaration by defendant's employee attempted to circumvent prior orders striking the declaration of another employee who was actually responsible for the subject matter at issue.  2022 WL 2716182 at *3.  The court found declarant's "revenue loss analysis" was based on "measurements and estimates" from a site visit performed "months after [his] deposition"; there was no explanation of how the declarant reached his conclusions; and even if the declarant was giving lay and not expert opinion, the declaration prejudicially violated discovery deadlines by relying on information from the post-deposition site visit not disclosed to plaintiff.  *Id.* at **6-10.

Nothing of the sort exists here.  Unlike in *Irish*, the subject of Mr. Welsh's testimony was disclosed, Plaintiff elected not to depose him, and she has suffered no "prejudice" whatsoever. The reality is that Plaintiff regrets her decision not to depose Mr. Welsh.  But that is not grounds to exclude Mr. Welsh's testimony. *See Minority Television Project.,* 649 F. Supp. 3d at 1032 (even

to the extent some portion of declaration could be considered expert testimony, Fed. R. Civ. P. 37(c)(1) permitted its consideration where defendant disclosed him as a lay witness and plaintiff nevertheless declined to depose him, rendering any failure to disclose "harmless").

Defendants fully discharged their obligations to disclose Mr. Welsh as a lay witness, and as a result Plaintiff's Motion to Strike his testimony pursuant to Federal Rule of Civil Procedure 37(c)(1) must be denied.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion to Strike Portions of the Welsh Declaration and Preclude His Related Testimony at Trial should be denied.

Dated: January 6, 2023

Respectfully submitted,

/s/ Natalie J. Spears

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-8000

Sandra D. Hauser
Justin N. Kattan
DENTONS US LLP
1221 Avenue of the Americas
New York, New York  10020
Phone: (212) 768-6700

*Attorneys for Defendants Netflix, Inc., Ava DuVernay and Attica Locke*

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 6, 2023, a true and correct copy of the foregoing was served by CM/ECF on all counsel or parties of record on the service list.

/s/ *Natalie J. Spears*