IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA FAIRSTEIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 20-cv-8042 (PKC) |
| v. | ) |
| | ) |
| NETFLIX, INC., AVA DUVERNAY, and ATTICA LOCKE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF LINDA FAIRSTEIN'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION TO STRIKE PORTIONS OF THE WELSH DECLARATION AND PRECLUDE HIS RELATED TESTIMONY AT TRIAL**

Kara L. Gorycki
Andrew T. Miltenberg
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212)736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com

*Attorneys for Plaintiff Linda Fairstein*

## INTRODUCTION

Plaintiff respectfully submits this reply memorandum of law in further support of her motion to strike certain portions of the Declaration of Berry Welsh, dated September 28, 2022 (ECF No. 153) (the "Welsh Declaration") and preclude Welsh's related testimony at trial.

Defendants proffer no grounds upon which Plaintiff's motion should be denied. They clearly violated Rule 26(a)(1) which, alone, is grounds to strike Welsh's testimony. Ignoring this clear violation, Defendants unsuccessfully attempt to argue the admissibility of Welsh's opinions under Federal Rule of Evidence 701 ("FRE 701" or "Rule 701"). Welsh's testimony is inadmissible under Rule 701 because his opinions are not rationally based on his perceptions, they offer no help in understanding Welsh's testimony, they have no bearing on any fact in issue in this case and they fall within the scope of Federal Rule of Evidence 702 ("FRE 702" or "Rule 702").

As fully set forth below, and in Plaintiff's moving papers, Welsh's testimony should be stricken and he should be precluded from testifying about the same subject matter should the case proceed to trial.

## ARGUMENT

I. **Defendants Violated Rule 26 of the Federal Rules of Civil Procedure**

While Defendants timely identified Mr. Welsh as a lay witness, they violated Rule 26(a) by failing to timely disclose ***the subject matter*** of the discoverable information that Mr. Welsh had in his possession and which appears in his declaration. FRCP 26(a)(1)(A)(i).[1] *See* Moving Br. at

---

[1] As discussed in Plaintiff's Moving Brief, Welsh's testimony is expert testimony that they failed to disclose in violation of Rule 26(a)(2) and 26(e). Moving Br. at 2-3. While Defendants contend that the four-part test discussed in Plaintiff's motion, (Moving Br. at 6-9), only applies when there is a Rule 26 violation, *Williams v. City of N.Y.*, 2017 WL 4382273, at *1 (S.D.N.Y. Sept. 29, 2017) does not support this assertion. *See* Opp. Br. at 3. The four-part test is not limited to violations of Rule 26, or motions brought under Rule 37(c)(1). Instead, the factors are considered when courts "exercise[e] their discretion to impose sanctions that preclude evidence. *Irish v. Tropical Emerald LLC*, 2022 WL 2716182, at * 10 (E.D.N.Y. Jul. 13, 2022); *Codename Enters. v. Fremantle Media N. Am., Inc.*, 2018 WL 3407709, at *3 (S.D.N.Y. Jan. 12, 2018).

2-3. Defendants attempt to deflect from this patently obvious violation by asserting that Plaintiff could have deposed Welsh. Opp. Br. at 10. However, Defendants gave **no indication** that Welsh would provide testimony in this action about his purported expertise in making films based on true stories, comparing the Series to **other films** or offering opinions about the First Amendment (he is not a legal expert)[2] or common storytelling techniques in the film industry. Per Defendants' initial disclosures, the subject matter of the discoverable information in Welsh's possession concerned research, development and production of **the Series**. Moving Br. at 2-4. *Minority Television Project Inc. v. Federal Comm'ns. Comm.*, 649 F. Supp. 2d 1025, 1032 (N.D. Cal. 2009), is readily distinguishable because the declaration at issue concerned subject matter that was **specifically identified** in the defendant's initial disclosures. *Id.* at 1032, 1034-1035.

Because Defendants failed to disclose the subject matter of Welsh's testimony, there is no basis for considering whether that testimony should be admitted under Rule 701. His testimony should be stricken and he should be precluded from testifying about the same subject matter at trial.

## II.     Welsh's Testimony Is Not Admissible Under FRE 701

Defendants do not deny that the portions of the Welsh declaration at issue on this motion offer Welsh's **opinions**. Rather, they contend that those opinions fall within the scope of Rule 701—rather than Rule 702—of the Federal Rules of Evidence. Opp. Br. at 2-5. On the contrary, Welsh's testimony fails to meet the requirements of FRE 701, pursuant to which lay witness opinions must be a) rationally based on the witness's perception; b) helpful to clearly

---

[2] Defendants mischaracterize Plaintiff's motion to strike Welsh's First Amendment testimony as "disparaging." Opp. Br. at 6 n.1. This is nonsensical. Plaintiff's brief merely summarizes Welsh's testimony. There is no attempt to belittle or show a lack of respect for the declarant. *See* Moving Br. at 7-8. Paragraphs 13, 16, 17 of the Welsh Declaration clearly opine that films based on true stories—like the Series—are protected artistic expression which foster "public debate" and cannot be understood by the average viewer as the truth. This mirrors the legal arguments made in Defendants' summary judgment moving brief. ECF No. 156, at 22-24. *See New Show Studios LLC v. Needle*, 2014 WL 12495640, at *14 (C.D. Cal. Dec. 29, 2014) (striking portion of declaration that drew legal conclusion).

understanding the witness's testimony or to determining a fact in issue; **and** c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*First*, given Welsh's lack of involvement in writing the Series, (Welsh Decl. ¶¶ 10-11), his opinions about "how the raw materials of research were turned into dramatic dialogue and scenes" are not "rationally based on [Welsh's] perception" as required by FRE 701(a). *See* Opp. Br. at 4, 9. This also precludes his testimony about the choices the writers made regarding Plaintiff's character. Welsh Decl. ¶ 20. Welsh's opinions about the "time of the Ancient Greeks," compilation of Best Picture nominees and discussion about films that he had no personal experience in writing or producing also fail to meet the requirement set forth in FRE 701(a). Welsh Decl. ¶¶ 13-15. *See Bank of China*, 359 F.3d at 181 (error to admit testimony per Rule 701 because it was not based entirely on witness's perceptions).

*B&G Plastics, Inc. v. Eastern Creative Indus.*, 2004 WL 307276, at *8 (S.D.N.Y. Feb. 18, 2004), is readily distinguishable from the present facts. The witness in *B&G* testified as to his firsthand experience with the specific product at issue in patent litigation. Likewise, the witness in *Medforms, Inc. v. Healthcare Mgm't Solutions, Inc.*, 290 F.3d 98 (2d Cir. 2002), testified about his specific work on the computer programs at issue, and in supervising another employee in that work, in a copyright infringement case. *Id.* at 111. In *Minority Television Project*, 649 F. Supp. 2d at 1032-1035, the witness' opinions directly concerned his work for a foundation that operated television stations. In contrast, the Welsh opinions at issue herein are unrelated to his personal observations while working on the Series or specific to the research materials he compiled at Ms. DuVernay's request.[3]

---

[3] For this reason, Welsh's opinions do not, as Defendants contend, "corroborate" Ms. DuVernay's testimony. Opp. Br. at 9. Unlike Welsh, DuVernay (and Locke and Swicord) *wrote* the Series.

3

In *New Show Studios*, 2014 WL 12495640 at *12-13, the court struck the opinion testimony of a witness who founded the plaintiff company but no longer worked there because he lacked the requisite personal knowledge to offer opinions about the day-to-day practices of the company. The witness who was permitted to testify was the President of the plaintiff company and opined about the ***company's*** knowledge of entertainment industry practices. Similarly, in *Dinler v. City of N.Y.*, 2012 WL 4513352, at **17-18 (S.D.N.Y. Sept. 30, 2012), the research that the witness testified about was conducted as part of his own investigative work into threats to the City during the RNC. His testimony did not concern his "general experience in the area" of threat assessment. *Id.* In contrast, Welsh offers opinions unrelated to the Series or his—or Tribeca's—experience with producing the Series.

***Second***, Defendants cannot reasonably assert that the testimony in question (Paragraphs 5-8, 12-20), is helpful to determining a fact in issue in this case. They concede that "Plaintiff is correct that 'actual malice concerns Defendants' subjective awareness of probable falsity, 'not industry standards or practices' or negligent failure to investigate." Opp. Br. at 9. Yet Defendants offer Welsh's testimony for precisely this reason—to show that they followed "common practice" or industry standards for dramatizations based on true stories when writing the Series.[4] *See, e.g.*, Welsh Decl. ¶ 12 (research was "customary for a typical production based on a true story."); Opp. Br. at 6 (describing Welsh's testimony as "comparisons and observations about standard practices in … the entertainment industry"); ECF No. 157, Rule 56 Stmt., at ¶ 72 (foregrounding as common practice), ¶ 79 (writers use of common storytelling techniques). This information is not only irrelevant but highly prejudicial as it could lead the trier of fact to conclude that following industry practices somehow shields Defendants from a finding of actual malice. Defendants make no

---

[4] Notably, Welsh ***did not*** write the Series. *See* Moving Br. at 4.

4

connection between this "evidence" and the fact that Welsh simply provided the writers of the Series with research materials. Welsh Decl. ¶ 10.

**Third**, Defendants are incorrect that Welsh's opinions are helpful to clearly understanding his testimony. Opp. Br. at 9. One need not consider Welsh's opinions about industry practices, or how the Series compares to other films, in order to understand the simple fact that he compiled research materials for the writers at Ms. DuVernay's direction. Welsh Decl. ¶ 11. Indeed, Defendants assert (though Plaintiff disagrees) that Welsh's testimony relates to "very basic concepts" that would be known to "anyone who has watched a movie." *See* Opp. Br. at 7, 9. On these grounds, Welsh's testimony about other films and industry practices is of no use in clearly understanding his testimony. Moreover, Defendants fail to specify how Welsh's opinions about unrelated films—including those he has not personally worked on—and artistic expression in any way relate to helpfully "describing a specialized industry." *See* Opp. Br. at 9.[5]

**Fourth**, Welsh's testimony falls within the scope of FRE 702. The Advisory Committee Notes to Rule 701, which Defendants cite throughout their opposition, make clear that lay testimony results from a "'process of reasoning familiar in everyday life' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" FRE 701 Advisory Committee Note re 2000 Amendments (citation omitted). Welsh's testimony is clearly that of a specialist in his field and, accordingly, constitutes expert testimony under FRE 702.

In their summary judgment brief, Defendants describe Welsh as a "veteran producer." ECF No. 156, at 9. His declaration outlines his experience with "major projects that dramatize real-life

---

[5] Note that Defendants' opposition is full of contradictions, at once asserting that no specialized knowledge is required to understand common filmmaking techniques and then asserting that Welsh offers helpful testimony regarding a specialized industry. Opp. Br. at 7, 9.

people and events," and the industry awards that his projects have won. Welsh Decl. ¶¶ 5-8. The opinions offered by Welsh do not pertain to his compilation of research materials for the Series, but how the Series compares to popular, award-winning dramatizations of real-life stories and whether the storytelling techniques employed by the writers in the Series are typical of the docudrama genre. *Id. See Bank of China v. NBM, LLC*, 359 F.3d 171, 181 (2d Cir. 2003) (admission of testimony pursuant to Rule 701 was error because it was based on witness's experience and specialized knowledge in international banking).

Defendants mischaracterize *U.S. v. Afriyie*, 929 F.3d 63, 69 (2d Cir. 2019), as permitting a lay witness to testify about "'particularized knowledge' of related practices by virtue of his position in a business or industry," (Opp. Br. at 3), when the Second Circuit clearly held that lay witness testimony which "reflects 'specialized knowledge [resulting from] extensive experience,'" is ***not admissible*** under FRE 701. *Id.* at 69 (alteration in original) (citing *Bank of China*, 359 F.3d at 181-82). Here, Defendants acknowledge that Welsh's testimony concerns his "'particularized experience' as a producer of dramatizations based on true stories," which is not admissible under FRE 701. Opp. Br. at 6. *Afriyie*, 929 F.3d at 69. Though Defendants contend that special training is not required to discuss the storytelling techniques Welsh discusses in his declaration, they elected to submit a declaration containing the opinions of a "veteran producer" who is a member of the Academy of Television Arts and Sciences and the Producers Guild of America, and worked with Martin Scorsese. Welsh Decl. ¶¶ 3-6.

Welsh's testimony is readily distinguishable from that at issue in *White v. Alcon Film Fund, LLC*, 52 F. Supp. 3d 1308, 1327-1328 (N.D. Ga. 2014), in which the lay witness' testimony was excluded pursuant to Rule 37(a)(1). In *White*, the lay witness, a cost-effective researcher, merely compiled a list of films and other media from Google which concerned coming of age stories. In

6

*U.S. v. Yannotti,* 541 F.3d 112, 126 (2d Cir. 2008), the witness testified about his personal experience in participating in loansharking activities as opposed to "some unrelated criminal scheme" and the case's holding was limited to "insider perceptions of a conspiracy of which he was a member." *Id.* Here, Welsh does not merely report on his internet searches concerning films like the Series or recount his personal experience with creating the Series. He spends significant time discussing common practices, "standard techniques and literary licenses" employed by producers of docudramas to tell unrelated, real-life stories and defines, and explains, various filmmaking techniques. Welsh Decl. ¶¶ 12-20.[6]

For the above stated reasons, Welsh's testimony does not meet the requirements of FRE 701 and, consequently, Defendants should have (but did not) disclosed Welsh as an expert witness.

## CONCLUSION

For the above stated reasons, and those set forth in Plaintiff's Memorandum of Law in Support of Her Motion to Strike Portions of the Welsh Declaration and Preclude His Related Testimony at Trial (ECF No. 188) and the Gorycki Declaration, and exhibits annexed thereto (ECF No. 187) Plaintiff's motion to strike portions of the Welsh Declaration and preclude his related testimony at trial should be granted.

Dated: New York, New York
January 13, 2023

                                                                    Respectfully Submitted,

By:   /s/ *Kara L. Gorycki*
              Kara L. Gorycki
              Andrew T. Miltenberg
              NESENOFF & MILTENBERG, LLP

---

[6] Defendants contend that Plaintiff's hearsay objections to the Welsh Declaration are "improper," (Opp. Br. at 7 n. 2. *See* Moving Br. at 8 & n. 5), because the testimony to which Plaintiff objects (at Paragraphs 17, note 1 and Paragraph 20) was offered to show "the filmmakers' intent with respect to certain storytelling decisions" and "contextualize these decisions." Welsh's intent is not at issue in this case and the writers of the Series can testify as to their own intent and decisions, his context is simply not needed nor is it based on his personal knowledge because he did not participate in the writer's room. Welsh Decl. ¶¶ 10-11. Defendants fail to explain how a quote from Time magazine or testimony concerning the business of Participant Media contextualizes the writers' intent or decisions.

363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com

*Attorneys for Plaintiff Linda Fairstein*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2023, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Kara L. Gorycki*