# Exhibit 1

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
REGINA ROTH,

                          Plaintiff,

-against-

CHEESECAKE FACTORY RESTAURANTS, INC.,

                         Defendant.
-----------------------------------------------------------------------X

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1**

       Defendant, in violation of this Court's and the SDNY's local rules, [1] did not provide a Rule 56.1 statement, but an "Affirmation in Support of Motion for Summary Judgment." Defendant's affirmation recites a number of legal arguments and conclusions without citation to any evidence in the record. These assertions, ¶¶ 1-6, and portions of ¶¶ 43-50, should be disregarded by the Court. *See Costello v. N.Y. State Nurses Ass'n,* 783 F.Supp. 2d 656, 661 n. 5 (S.D.N.Y. 2011) (disregarding plaintiff's responses to defendant's Rule 56.1 statement where plaintiff failed to refer to evidence in the record). Plaintiff, in an abundance of caution, has provided a response to each paragraph of Defendant's affirmation.

---

[1] SDNY Local Rule 56.1
    a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

Individual Practices of Magistrate Judge Barbara Moses

2.c. . . . As required by Local Civil Rule 56.1(d), each statement of undisputed material fact and response thereto shall be followed by a citation to the specific evidentiary material that supports the statement or response, e.g., "Smith Deposition Tr. 3:15-4:20," or "Jones Interrog. Resp. No. 18."

Plaintiff hereby responds to defendants' 56.1 Statement pursuant to Local Rule 56.1 as follows:

1. I am with SOBEL PEVZNER, LLC, attorneys for Defendant, THE CHEESECAKE FACTORY RESTAURANTS, INC., in the above entitled action and, as such, I am fully familiar with the facts of this case.

**Undisputed.** However, Defendant's statement is not a material fact and it does not cite to the evidence; thus, it should be disregarded by the Court.

2. This affirmation is submitted in support of Defendant, THE CHEESECAKE FACTORY RESTAURANTS, INC.'s, Motion which seeks an Order: (i) pursuant to Federal Rule of Civil Procedure 56, granting Defendant THE CHEESECAKE FACTORY RESTAURANTS, INC. summary judgment dismissing Plaintiff REGINA ROTH's Complaint in its entirety with prejudice, as Defendant neither created any alleged condition nor did it have actual and constructive notice of any such condition; and (ii) for such other and further relief as this Court may deem just and proper.

**Disputed.** Plaintiff disputes Defendant's legal arguments and conclusions of law and responds accordingly in her Motion in Opposition to Defendant's Motion for Summary Judgment. Furthermore, Defendant's statement is not a material fact and it does not cite to the evidence; thus, it should be disregarded by the Court.

3. As more fully detailed below, the undisputed evidence demonstrates that Defendant THE CHEESECAKE FACTORY RESTAURANTS, INC. (hereinafter referred to as "Cheesecake Factory") did not create or have notice, either actual or constructive, of any alleged condition that led to the occurrence of the subject accident.

**Disputed.** The Cheesecake Factory created and had actual and constructive notice of the conditions that caused Ms. Roth's slip and fall. Ms. Roth was eating with her family at the Cheesecake Factory, when she got up to go to the restroom with her grandson. Ex. 1, Plaintiff's Deposition at 37:3-8 ("Ex. 1, Pl. Dep."). After Ms. Roth entered the restroom, surveillance video shows Cheesecake Factory employee, Warren Ford, mopping the area outside of the restroom, placing a caution sign on the floor, leaving a mop on the floor, then returning to pick up the mop. *See* Ex. 5, Cheesecake Surveillance Video, Ch. 15 at 3:01-3:02:28 ("Ex. 5, Surv. Vid. 15"). Mr. Ford then walks with the mop in his hand, without a mop bucket, and drips water on the floor leading to Ms. Roth's table. *Id.*

When Ms. Roth exited the bathroom she was forced to walk through a large puddle of water causing her shoes to get wet. *See* Ex. 1, Plaintiff's Deposition at 57:12-59:18 ("Ex. 1, Pl. Dep."); *see also* Ex. 5, Surv. Vid. 15. As explained by Ms. Roth, the water near the bathroom caused Ms. Roth to slip and fall.

> A. When I left the restroom at The Cheesecake Factory, I got out, and I was holding my grandson's hand, and there was a sign up of -- about a wet floor. That wet floor was very wet, and I had told my grandson we are going to take baby steps through this, and I was actually holding the wall as I was walking.
>
> And my shoes and his shoes got wet walking through that area . . .

Ex. 1, Pl. Dep. at 57:14-58:4. Ms. Roth further testified, that as she walked down the aisle towards her table, "I was walking very slow because I knew that my feet were wet, and I was walking very slow, and then all of a sudden boom. I didn't want to fall." Ex. 1, Roth Depo. 163:16-20.

4.  Defendant Cheesecake Factory had no actual notice of the alleged condition since no one, including Plaintiff, reported or complained of the alleged condition. Moreover, Plaintiff admits that she did not see the alleged condition either prior or subsequent to her fall.

**Disputed.** Cheesecake Factory employee, Warren Ford, testified that "someone told me to go check by the bathroom." Ex. 3, Ford Deposition at 29:6-13. Mr. Ford placed a caution sign near the wet area of the floor, outside the bathroom, and inadequately mopped the area. Ex. 5, Surv. Vid. 15 3:01-3:02:28. Ford then walked with a wet mop, and no bucket, from the bathroom area to the maintenance closet, dripping water in the path of where Ms. Roth would soon walk. *Id.*

Ms. Roth testified that when she exited the bathroom, she was forced to walk through a large puddle of water causing her shoes to get wet. *See* Ex. 1, Plaintiff's Deposition at 57:12-59:18 ("Ex. 1, Pl. Dep."); *see also* Ex. 5, Surv. Vid. 15.

5. Further, Defendant Cheesecake Factory did not have any constructive notice of the alleged condition since the area was cleaned at several intervals and no reports or complaints of the condition were filed prior to the occurrence of the subject accident. Plaintiff fails to establish any length of time that the alleged condition existed. Any attempt to do so is pure speculation.

**Disputed.** Cheesecake Factory employee, Warren Ford, testified that "someone told me to go check by the bathroom." Ex. 3, Ford Deposition at 29:6-13. Mr. Ford placed a caution sign near the wet area of the floor, outside the bathroom, and inadequately mopped the area. Ex. 5, Surv. Vid. 15 3:01-3:02:28. Ford then walked with a wet mop, and no bucket, from the bathroom area to the maintenance closet, dripping water in the path of where Ms. Roth would soon walk. *Id.*

Ms. Roth testified that when she exited the bathroom, she was forced to walk through a large puddle of water causing her shoes to get wet. *See* Ex. 1, Plaintiff's Deposition at 57:12-59:18 ("Ex. 1, Pl. Dep."); *see also* Ex. 5, Surv. Vid. 15. Furthermore, Defendant's statement is not a material fact and it does not cite to the evidence; thus, it should be disregarded by the Court.

6. As expounded within this Affirmation and Memorandum of Law, Defendant Cheesecake Factory's Motion for Summary Judgment must be granted as a matter of law as: (1) The undisputed evidence fails to demonstrate that Defendant Cheesecake Factory created the alleged condition that caused the subject accident; (2) Defendant Cheesecake Factory lacked actual notice since it did not receive any complaints of the alleged condition prior to the occurrence of the subject accident; and (3) Constructive notice is absent in the subject matter as the alleged condition was not visible or apparent to any party, did not exist for a sufficient length of time to permit detection and remedy, and was not ongoing or recurring evidenced by the absence of complaints and reports.

**Disputed.** Plaintiff disputes Defendant's legal arguments and conclusions of law and responds accordingly in her Motion in Opposition to Defendant's Motion for Summary Judgment. Furthermore, Defendant's statement is not a material fact and it does not cite to the evidence; thus, it should be disregarded by the Court.

## **PROCEDURAL HISTORY**

7. By way of background, this is an action for personal injuries suffered from an alleged slip-and-fall that occurred on March 30, 2019 at The Cheesecake Factory Restaurant located at 140 Market Street, Yonkers, New York 10710.

**Undisputed.**

8. Plaintiff REGINA ROTH commenced this action by the filing of a Verified Summons and Complaint, in the Supreme Court of the State of New York, County of Westchester, on or about June 10, 2019. Annexed hereto as Exhibit "A" is a copy of Plaintiff Roth's Summons and Complaint.

**Undisputed.**

9. As there was diversity of citizenship between the parties and the sum sought by Plaintiff Roth exceeds $75,000.00, Defendant Cheesecake Factory filed a Notice of Removal on or about July 15, 2019 to remove the subject matter to this Court. Annexed hereto as Exhibit "B" is a copy of the Notice of Removal.

**Undisputed.**

10. Defendant Cheesecake Factory, on or about July 18, 2019, joined issue through the filing of a Verified Answer with Affirmative Defenses and Jury Demand. Annexed hereto as Exhibit "C" is a copy of the Verified Answer with Affirmative Defenses and Jury Demand.

**Undisputed.**

11. On or about July 23, 2019, the Court issued an Order setting the date of the initial pretrial conference and Case Management Plan. Annexed hereto as Exhibit "D" is a copy of the Initial Pretrial Conference and Civil Case Management Plan and Schedule Order.

**Undisputed.**

12. On or about March 11, 2020, a discovery conference was held before the Court and an Order was issued. Annexed hereto as Exhibit "E" is a copy of the Discovery Conference Order.

**Undisputed.**

13. A joint letter motion was filed, on or about April 29, 2020, seeking an adjournment of fact discovery. On the same date, the Court entered an Order that extended the deadline to complete fact discovery. Annexed hereto as Exhibit "F" is a copy of the joint letter motion seeking adjournment and Court Order granting an extension.

**Undisputed.**

14. A telephonic status conference was held, on or about June 16, 2020, and an Order was entered on June 17, 2020. Annexed hereto as Exhibit "G" is a copy of the Court's Order as entered in Document 38 of NYSD ECF.

**Undisputed.**

15. The Order set a deadline of August 21, 2020 for the filing of summary judgment motions as to liability. Therefore, the instant motion is timely filed.

**Undisputed.**

## STATEMENT OF FACTS

**DEPOSITION TESTIMONY OF PLAINTIFF, REGINA ROTH**

16. On Saturday, March 30, 2019, Plaintiff Roth visited Defendant Cheesecake Factory's 140 Market Street, Yonkers, New York location at approximately 3:10 p.m. with her daughter and three grandchildren after shopping at the Ridge Hill Mall. Annexed hereto as Exhibit "H" is a copy of Regina Roth's deposition transcript, see, p. 11, lines 21-23; p. 20, lines 15-20; p. 22, lines 2-7; p. 23, lines 18-23; p. 24, lines 16-18.

**Disputed.** Ms. Roth arrived at the Cheesecake Factory, 140 Market Street, Yonkers, New York, at approximately 3:30 p.m.[2] with her daughter and three grandchildren after shopping at the Ridge Hill Mall. *See* Ex. 5, Cheesecake Surveillance Video, Ch. 1 at 2:29:16 ("Ex. 5, Surv. Vid. 1").

17. After sitting down at a table, Plaintiff Roth took her grandson, Daniel, to the restroom, where she successfully passed through the aisle where the subject accident would later occur. See, Exhibit "H," p. 37, lines 4-11; p. 42, lines 4-11; p. 43, lines 16-20.

---

[2] The time stamp on the surveillance video is set one hour early. Thus, 2:29:16 P.M. is actually 3:29:16 P.M.

**Disputed.** Ms. Roth and her family placed their food order, and at 3:59 p.m. she took her grandson to the bathroom. Ex. 1, Pl. Dep. at 37:4-8; *See* Ex. 5, Surv. Vid. 15 at 2:59:30. Ms. Roth and her grandson entered the hallway where the restrooms were located at approximately 4:00 p.m. *Id.* at 2:59:50.

18. As Plaintiff Roth and her grandson left the restroom, she saw a wet floor sign immediately outside the bathroom vestibule area. Upon exiting the vestibule area, patrons would walk the length of a pathway where a wall separated the pathway from the tables. Upon walking the length of the pathway, a patron would enter the table area. Plaintiff was seated at the opposite end near the kitchen. Aside from the wet floor sign immediately outside the bathroom vestibule, plaintiff testified that the floor was dry. See, Exhibit "H," p. 39, p. 57, lines 14-18 - p. 61, lines 6-11. See also, Exhibit "L", a copy of the video shown to plaintiff at her deposition showing plaintiff's exit from the bathroom vestibule area to the time she fell (Cheesecake Channel 15, at 2:59:30 – 3:02:24); See also, Exhibit "M", a screen grab at 3:02:23 illustrating same.

**Disputed.** Plaintiff testified numerous times that the floor was very wet outside the bathroom. In fact, on pages 57-58, part of the portion cited by Defendant, Ms. Roth stated:

> A. When I left the restroom at The Cheesecake Factory, I got out, and I was holding my grandson's hand, and there was a sign up of -- about a wet floor. **That wet floor was very wet, and I had told my grandson we are going to take baby steps through this, and I was actually holding the wall as I was walking**.
>
> **And my shoes and his shoes got wet walking through that area** . . .

Ex. 1, Pl. Dep. at 57:14-58:4. On page 59 of her deposition, Ms. Roth stated:

> Q. Did it look like the area was recently mopped?
> A. No, because it was very very wet. It didn't look like it was really dried up sufficiently.

Ex. 1, Pl. Dep. at 59:10-14.

19. Five to eight minutes after successfully passing through the aisle, Plaintiff Roth and her grandson fell allegedly due to blotches of water on the floor. See, Exhibit "H," p. 46, lines 18-23; p. 47, lines 4-8; p. 48, lines 16-22.

```
16        Q.  And  as  I  had  asked  before,  you
17    had  walked  in  that  area  before  your
18    incident  took  place,  right?
19        A.  Yes.
20        Q.  And  that  was  about  five  to
21    eight  minutes  beforehand?
22        A.  Yes.
```

**Disputed.** Ms. Roth's slip and fall was caused by water outside of the bathroom, which made her shoes very wet.

> A. When I left the restroom at The Cheesecake Factory, I got out, and I was holding my grandson's hand, and there was a sign up of -- about a wet floor. **That wet floor was very wet, and I had told my grandson we are going to take baby steps through this, and I was actually holding the wall as I was walking**.
>
> And my shoes and his shoes got wet walking through that area . . .

Ex. 1, Pl. Dep. at 57:14-58:4. Ms. Roth further testified, that as she walked down the aisle towards her table, "I was walking very slow because I knew that my feet were wet, and I was walking very slow, and then all of a sudden boom. I didn't want to fall." Ex. 1, Roth Depo. 163:16-20.

19. Prior to her fall, Plaintiff Roth never registered a complaint regarding the presence of water on the floor nor did she hear or know of any other individuals complain about the condition. See, Exhibit "H," p. 49, lines 16-22.

```
16        Q.  Did  you  ever  complain  to
17    anybody,  before  your  incident  took
18    place,  about  water  on  the  floor?
19        A.  No.
20        Q.  Did  you  hear  anybody  else
21    complain  about  water  on  the  floor?
22        A.  No.
```

**Undisputed.** However, there was a caution sign on the floor in the area which was covered with water. Ex. 1, Pl. Dep. at 57:14-58:4.

20. Plaintiff Roth did not see the water prior to her fall and did not see anybody place water or other wet substance on the floor. Further, prior to her fall, Plaintiff Roth did not see anybody carrying or spilling any food or beverages. See, Exhibit "H," p. 49, lines 23-25; p. 50, lines 2-4; p. 55, lines 14-16; p. 62, lines 11-18; p. 74, lines 8-11; p. 89, lines 14-23.

```
14        Q.  Did  you  see  that  water  on  the
15    floor  before  your  incident  took  place?
16        A.  No.

 8        Q.  Did  you  see  water  on  the  ground
 9    after  your  incident  took  place?
10        A.  No.   I'm  sorry  if  I'm  being
11    difficult.
```

**Disputed.** Plaintiff observed, and was forced to walked through, a large amount of water on the floor near the bathroom. Ex. 1, Pl. Dep. at 57:14-58:4. This caused her shoes to get wet and caused her to slip and fall in the aisle. *Id.* After she fell, Ms. Roth observed blotches of water on the floor in the aisle and noticed that the knees of her pants were wet. Ex. 1, Pl. Dep. at 47:6-8.

21. Plaintiff Roth's daughter (Melanie Arminio) advised Plaintiff that she had not seen any water on the floor and no one from their party informed the employees of Defendant Cheesecake Factory about the need for the area to be mopped. See, Exhibit "H," p. 64, lines 15-18; p. 65, lines 3-14.

**Disputed.** Ms. Arminio told Ms. Roth that she did not observe her fall. Ex. 1, Pl. Dep. at 63:25-64:14. Further, Ms. Arminio testified at her deposition that she informed their waitress that Ms. Roth had fallen and asked the manager for an accident report. *See* Ex. B, Arminio Deposition at 14:1-16.

> A. When I had spoken with the manager at that point we had asked our --well, I spoke to the waitress. We informed the waitress that my mom had fallen. I had asked for a manager and the manager came. We asked him just for an accident report just so that we could put it on paper that it had happened. The same manager brought a white sheet of paper several minutes later and told us that they didn't have that and just to write down what happened on the piece of paper. At that time he was standing there. I had written that my mom had fallen and she had signed the paper with her name.

*Id.*

## DEPOSITION TESTIMONY OF PLAINTIFF'S WITNESS, MELANIE ARMINIO

23. Melanie Arminio is Plaintiff Roth's daughter and, along with her three children, was with Plaintiff Roth at Defendant Cheesecake Factory's restaurant on the date of the subject accident. Annexed hereto as Exhibit "I" is a copy of Melanie Arminio's deposition transcript, see, p. 6, line 25; p. 7, lines 2-5; p. 9, lines 8-25.

**Undisputed.**

24. According to Ms. Arminio, her son, who fell with Plaintiff Roth, did not tell her that the floor was slippery by the table. Additionally, Ms. Arminio herself did not notice anything on the

ground, including water, when she walked past the area of the subject accident. See, Exhibit "I,"

p. 13, lines 8-10; p. 19, lines 21-25; p. 20, lines 2-7.

```
21            Q    After the incident took place,
22      when you left the restaurant, did you walk
23      past that area where your son pointed that
24      they had fallen?
25            A    We did.


 2            Q    Did you notice anything on the
 3      ground?
 4            A    I did not.
 5            Q    Did you see any water on the
 6      ground?
 7            A    I did not.
```

**Disputed.** Ms. Arminio's son said that "it was slippery, and told [her] that he and grandma fell."

Ex. B, Arminio Deposition at 13:3-5.

25. While at the restaurant, Ms. Arminio did not see anyone spill anything nor did she see any

individuals clean anything in the area where plaintiff allegedly fell. See, Exhibit "I," p. 50, lines

15- 25; p. 51, lines 2-9.

```
15                Q    Did you she anybody spill any
16      water?
17                A    No.
18                Q    Did you see anybody point to any
19      water on the ground or any other substance
20      on the ground?
21                A    No.
22                Q    Did you see anybody cleaning
23      anything up in that area?
24                A    No.
25                Q    And now the same questions for
```

```
2        the day of the incident itself when you
3        were actually at the store sitting at the
4        table, did you see anybody spill anything
5        in that area?
6             A    No.
7             Q    Did you see anybody clean
8        anything up in that area?
9             A    No.
```

**Undisputed.**

26. After the subject accident occurred, neither Ms. Arminio nor Plaintiff Roth advised anyone that there was an area that required cleaning. Further, Ms. Arminio was not aware of any restaurant patrons advising any employee of Defendant Cheesecake Factory that the subject area needed to be cleaned.

```
10            Q    Did you tell anybody from the
11       Cheesecake Factory that that area needed to
12       be cleaned up?
13            A    No.
14            Q    Did your mother tell anybody?
15            A    No.
16            Q    Did you know if anybody told
17       somebody from Cheesecake Factory that that
18       area needed to be cleaned.
19            MR. RUBERT-SCHEWEL:  Objection.  Calls
20                for speculation.
21            MR. FRITZSON:  She can answer though.
22            A    Not to my knowledge.
```

See, Exhibit "I," p. 51, lines 10-18, 22.

**Disputed.** Ms. Arminio testified at her deposition that she informed their waitress that Ms. Roth

had fallen and asked the manager for an accident report. *See* Ex. B, Arminio Deposition at 14:1-

16.

> A. When I had spoken with the manager at that point we had asked our --well, I spoke to the waitress. We informed the waitress that my mom had fallen. I had asked for a manager and the manager came. We asked him just for an accident report just so that we could put it on paper that it had happened. The same manager brought a white sheet of paper several minutes later and told us that they didn't have that and just to write down what happened on the piece of paper. At that time he was standing there. I had written that my mom had fallen and she had signed the paper with her name.

*Id.* Ms. Arminio testified that Ms. Roth told the manager that "it was slippery near the

bathroom." *Id.* at 44:18-20.

### DEPOSITION TESTIMONY OF DEFENSE WITNESS, WARREN FORD

27. Warren Ford has worked for Defendant Cheesecake Factory for approximately four years and

is currently employed as a front of the house manager. Annexed hereto as Exhibit "J" is a copy

of Warren Ford's deposition transcript, see, p. 8, lines 9-11, 19-24.

**Undisputed.**

28. As a front of the house manager, Mr. Ford made sure that everything is run systematically

and that all were safe. In addition, Mr. Ford oversaw "pretty much all the staff" and, as a

manager, was responsible for making sure that anything dirty is cleaned up. See, Exhibit "J," p.

9, lines 7-16; p. 10, lines 5-19.

**Undisputed.**

29. According to Mr. Ford, the floor was regularly cleaned, including every time a restaurant patron left the table. In Mr. Ford's estimation, the floor was cleaned "every five, ten minutes or so" in order to ensure that nothing is on the floor. These floor cleanings would involve sweeping and mopping. See, Exhibit "J," p. 10, lines 20-25; p. 11, lines 9-14; p. 12, lines 6-14.

```
    Q.      Is the floor cleaned every day on a
set schedule or only on an as need basis?
    A.      Oh, no.  It's cleaned every day.
Every five, ten minutes or so.  So like sweeping,
making sure nothing is on the floor, things of
that nature.
```

(Exhibit "J," p. 11, lines 9-14)

**Undisputed.**

30. In addition to the every five-to-ten minute cleanings, a nightly cleaning crew also cleaned the floors and equipment of the restaurant each night. See, Exhibit "J," p. 11, lines 19-23.

**Disputed.** The overnight staff cleans and buffs the floors. *See* Ex. 3, Ford Deposition at 13:2-5.

31. If the floor, at any point, was found to be wet, an employee would use a mop to get the spill up. Once the floor is clean and dry, a wet floor sign would be put down as a precaution to restaurant patrons that something may have once been there. See, Exhibit "J," p. 19, lines 5-18.

**Disputed.** Mr. Ford testified that if the floor is wet an employee is supposed to stay in the area to make sure that no one slips on it. Ex. 3, Ford Dep. at 19:7-18.

> A. One, if the floor is wet someone is not supposed to not leave the area to make sure that no one obviously slips on it. The other person is supposed to get a mop or whatever we are going to use to get the spill up, if there is a spill. And

15

then one person will wait there while someone goes to get the wet floor sign and they put the wet floor sign down. Once the floor is dry the wet floor sign goes down as a precaution just to let the customer know there was something there. It goes down after the floor is clean or dry, if you will.

*Id.*

32. Mr. Ford was working at Defendant Cheesecake Factory's restaurant on the date of the subject accident as a front of house manager and was to make sure that every restaurant patron had a great experience. Further, Mr. Ford was to ensure that everyone was safe, that the restaurant was clean, and that all safety standards (cleanliness and food safety) were followed. See, Exhibit "J," p. 27, line 25; p. 28, lines 2-7, 14-22.

**Undisputed.**

33. On the date of the subject accident, Mr. Ford did not see any liquid substances on the floor of the restaurant nor could he recall anybody telling him that there was something wet on the restaurant floor. Nevertheless, Mr. Ford dry mopped the area by the bathroom and put down a wet floor sign down as a precaution. See, Exhibit "J," p. 29, lines 6-13; p. 30, lines 7-12.

```
        Q.      On March 30th, 2019, do you remember
    seeing any liquid substance on the floor of The
    Cheesecake Factory?
        A.      No.  Even when I went to -- someone
    told me to go check by the bathroom.  I went over
    to check by the bathroom.  I didn't see anything.
    I dry mopped it anyway and put a wet floor sigh
    down because you'd rather be safe than sorry.
```

(Exhibit "J," p. 29, lines 6-13)

16

> Q. On March 30th, 2019, did anyone tell
> you that the floor was slick by the bathroom?
> A. I can't recall if someone told me
> that there was something wet on the floor, but I
> can recall that someone said that a guest
> slipped.

(Exhibit "J," p. 30, lines 7-12)

**Disputed.** Mr. Ford testified that he probably went to clean the area by the bathroom because he was told that a customer had slipped and fallen. Ex. 3, Ford Dep. at 40:14-41:6 ("That's probably why I went over to the bathroom and I just don't remember."). Similarly, Ford testified that "someone told me to go check by the bathroom." Ex. 3, Ford Deposition at 29:6-13. Mr. Ford also testified, "[w]ell, there was something there and I handled it. I put the wet floor down as a precaution." Ex. 3, Ford Dep. at 32:16-18.

Mr. Ford is visible in Cheesecake Factory Surveillance Video Channel 15, at 4:00:27 p.m., mopping the floor outside of the bathroom. Ex. 5, Surv. Video, Chan. 15 at 3:00:27. Mr. Ford mops the floor for approximately 30 seconds, until he places the mop on the ground and walks away from the bathroom area. *Id.* at 3:01:03. At 4:01:15, Mr. Ford returns with a yellow caution sign and places it in front of the bathrooms. *Id.* at 3:01:15. Mr. Ford continues to briefly mop the area until 4:01:42 when he is approached by Cheesecake Factory Manager Andre Ellis. *Id.* at 3:01:42. Mr. Ford never re-mopped the area of the floor where he left the mop. *Id.* Mr. Ford talks briefly with Mr. Ellis then walks away from the bathroom area, dragging the mop behind him. *Id.* At 4:02 p.m., Ms. Roth and her grandson exit the bathroom and walk through the area just mopped by Mr. Ford. *Id.* at 3:02.

34. Mr. Ford did not see any water on the floor at the site of the subject accident as, if any water had been seen, he would have cleaned it up and put down a wet floor sign. Mr. Ford even specified that, following Plaintiff Roth's fall, he did not see any water or substances on the floor. See, Exhibit "J," p. 46, lines 17-19; p. 47, lines 3-15; p. 48, lines 7-10.

**Disputed.** Mr. Ford testified, "[w]ell, there was something there and I handled it. I put the wet floor down as a precaution." Ex. 3, Ford Dep. at 32:16-18. Mr. Ford placed a caution sign near the wet area of the floor, outside the bathroom, and inadequately mopped the area. Ex. 5, Surv. Vid. 15 3:01-3:02:28. Ford then walked with a wet mop, and no bucket, from the bathroom area to the maintenance closet, dripping water in the path of where Ms. Roth would soon walk. *Id.*

35. Mr. Ford was shown surveillance footage, from the date and time of the subject accident, and was asked to testify as to certain facts and details presented.

```
     Q.    As far as you could tell, in that top
right-hand corner of that video, when you had
looked on the day of the incident there was
nothing on the floor?
     A.    No, nothing.
```

(Exhibit "J," p. 47, lines 11-15)

```
     Q.    And that's in the same area you went
to a few minutes later and saw nothing on the
floor, correct?
     A.    Yes, sir.
```

(Exhibit "J," p. 48, lines 7-10)

18

**Disputed.** For clarity, this section refers to the site of the fall, not near the bathroom where Mr. Ford mopped water from the floor. Ford Dep. at 46-48.

## DEPOSITION TESTIMONY OF DEFENSE WITNESS, ANDRE ELLIS

36. Andre Ellis has worked for Defendant Cheesecake Factory since 2017 and is currently employed as a senior 2 manager. Annexed hereto as Exhibit "K" is a copy of Andre Ellis's deposition transcript, see, p. 7, lines 9-11, 20-22.

**Undisputed.**

37. As a senior 2 manager, Mr. Ellis supervises the entire staff, including level 1 managers and maintenance and cleaning staff, and is responsible for making sure that the restaurant, and its floor, is cleaned. See, Exhibit "K," p. 8, lines 17-25; p. 9, lines 2-11.

**Undisputed.**

38. According to Mr. Ellis, the restaurant floor is cleaned at intervals and the floor is buffed by a cleaning crew every night. See, Exhibit "K," p. 9, lines 17-20; p. 10, lines 2-10.

**Undisputed.**

39. Mr. Ellis received training in both cleaning and handling slip and falls. In the event of a spill and a patron slips and falls due to the spill, Mr. Ellis was trained on the proper way to clean up the spill and the procedure on obtaining the patron's information, transferring it to an accident report, to submitting it to corporate headquarters. See, Exhibit "K," p. 11, lines 4-22.

**Undisputed.**

40. In the event of a slip and fall, a patron would be handed a sheet of paper to list his or her contact information and the existence of any witnesses. This information would then be filled out online by the on-duty manager. See, Exhibit "K," p. 13, lines 6-16.

**Undisputed.**

41. Additionally, when anything spilled onto the restaurant floor, a busser would use a string mop or a super mop, which looks like a towel, to clean the spill up and would check to see if the surface is dry afterwards. However, prior to using a mop, a wet dry is put down. See, Exhibit "K," p. 16, lines 11-20; p. 17, lines 15-19.

**Disputed.** Mr. Ellis testified, "[i]f it is a huge spill, it is definitely a string mop." Ex. 4, Ellis Deposition at 17:10-11.

42. Mr. Ellis had no recollection about the occurrence of this accident. See, Exhibit "K," p. 20, lines 10-12, 17-23.

**Disputed.** After being shown a video of the incident, Mr. Ellis testified that Warren Ford was mopping up a spill with a "string mop." Ex. 4, Ellis Dep. at 24:6-17.

## ARGUMENT

43. In the subject matter, the undisputed evidence fails to demonstrate that (1) Defendant Cheesecake Factory created the alleged condition that caused the subject accident; (2) Defendant Cheesecake Factory had actual notice since it did not receive any complaints of the alleged condition prior to the occurrence of the subject accident; and (3) Defendant Cheesecake Factory had constructive notice as the alleged condition was not visible or apparent to any party, did not exist for a sufficient length of time to permit detection and remedy as the area was cleaned every

5-10 minutes, and was not ongoing or recurring evidenced by the absence of complaints and reports.

**Disputed.** Plaintiff disputes Defendant's legal arguments and conclusions of law and responds accordingly in her Motion in Opposition to Defendant's Motion for Summary Judgment. Furthermore, Defendant's statement is not a material fact and it does not cite to the evidence; thus, it should be disregarded by the Court.

44. It is clear that Defendant Cheesecake Factory did not create the alleged condition as the deposition testimonies of Plaintiff Roth, Ms. Arminio, and Mr. Ford demonstrate that none of these individuals saw the condition nor did they see an employee or other individual spill, drop, or perform any other action that led to the water being on the floor. See, Exhibit "H," p. 49, lines 23-25; p. 50, lines 2-4; p. 55, lines 14-16; p. 62, lines 11-18; p. 64, lines 15-18; p. 65, lines 3-14; p. 74, lines 8-11; p. 89, lines 14-23. See, Exhibit "I," p. 19, lines 21-25; p. 20, lines 2-7; p. 50, line 25; p. 51, lines 2-9. See, Exhibit "J," p. 46, lines 17-19; p. 47, lines 3-15; p. 48, lines 7-10.

**Disputed.** After Ms. Roth entered the restroom, surveillance video shows Cheesecake Factory employee, Warren Ford, mopping the area outside of the restroom, placing a caution sign on the floor, leaving a wet mop on the floor, then returning to pick up the mop. *See* Ex. 5, Cheesecake Surveillance Video, Ch. 15 at 3:01-3:02:28 ("Ex. 5, Surv. Vid. 15"). Mr. Ford then walks with the mop in his hand, without a mop bucket, and drags and drips water on the floor leading to Ms. Roth's table. *Id.*

When Ms. Roth exited the bathroom she was forced to walk through a large puddle of water causing her shoes to get wet. *See* Ex. 1, Plaintiff's Deposition at 57:12-59:18 ("Ex. 1, Pl.

Dep."); *see also* Ex. 5, Surv. Vid. 15. As explained by Ms. Roth, the water near the bathroom, combined with the slick tile floor, caused Ms. Roth to slip and fall. *Id.*

45. Further, Defendant Cheesecake Factory lacked actual notice of the alleged condition since the provided evidence and deposition testimonies fully demonstrate that no restaurant patrons, including Plaintiff Roth and Ms. Arminio, complained or notified an employee of the existence of the condition prior to the occurrence of the subject accident. See, Exhibit "H," p. 49, lines 16-22. See, Exhibit "I," p. 51, lines 10-18, 22. See, Exhibit "J," p. 30, lines 7-10.

**Disputed.** The Cheesecake Factory created and had actual and constructive notice of the conditions that caused Ms. Roth's slip and fall. Ms. Roth was eating with her family at the Cheesecake Factory, when she got up to go to the restroom with her grandson. Ex. 1, Plaintiff's Deposition at 37:3-8 ("Ex. 1, Pl. Dep."). After Ms. Roth entered the restroom, surveillance video shows Cheesecake Factory employee, Warren Ford, mopping the area outside of the restroom, placing a caution sign on the floor, leaving a wet mop on the floor, then returning to pick up the mop. *See* Ex. 5, Cheesecake Surveillance Video, Ch. 15 at 3:01-3:02:28 ("Ex. 5, Surv. Vid. 15"). Mr. Ford then walks with the mop in his hand, without a mop bucket, and drags and drips water on the floor leading to Ms. Roth's table. *Id.*

When Ms. Roth exited the bathroom she was forced to walk through a large puddle of water causing her shoes to get wet. *See* Ex. 1, Plaintiff's Deposition at 57:12-59:18 ("Ex. 1, Pl. Dep."); *see also* Ex. 5, Surv. Vid. 15. As explained by Ms. Roth, the water near the bathroom, combined with the slick tile floor, caused Ms. Roth to slip and fall.

> A. When I left the restroom at The Cheesecake Factory, I got out, and I was holding my grandson's hand, and there was a sign up of -- about a wet floor. **That wet floor was very wet, and I had told my grandson we are going to take baby steps through this, and I was actually holding the wall as I was walking**.

And my shoes and his shoes got wet walking through that area . . .

Ex. 1, Pl. Dep. at 57:14-58:4. Ms. Roth further testified, that as she walked down the aisle towards her table, "I was walking very slow because I knew that my feet were wet, and I was walking very slow, and then all of a sudden boom. I didn't want to fall." Ex. 1, Roth Depo. 163:16-20.

46. The provided evidence also fails to establish that Defendant Cheesecake Factory had any type of constructive notice of the alleged condition since it was not visible or apparent, did not exist long enough for detection and remedy, and was not reoccurring.

**Disputed.** *See* ¶¶ 44-45. Mr. Ford attempted to mop the floor area, which cause Ms. Roth's fall, but failed to adequately do so, and then dragged a wet mop across the floor in the area in which Ms. Roth would soon walk, further contributing to her fall.

47. The alleged condition could not be considered visible or apparent since no one, including Plaintiff Roth, saw the water on the floor prior to the occurrence of the subject accident. See, Exhibit "H," p. 55, lines 14-16; p. 62, lines 11-18; p. 64, lines 15- 18; p. 74, lines 8-11. See, Exhibit "I," p. 20, lines 5-7. See, Exhibit "J," p. 11, lines 9-14; p. 29, lines 6-11; p. 30, lines 7-10; p. 46, lines 17-19; p. 47, lines 3-15; p. 48, lines 7-10.

**Disputed.** Plaintiff observed, and was forced to walked through, a large amount of water on the floor near the bathroom. Ex. 1, Pl. Dep. at 57:14-58:4. This caused her shoes to get wet and caused her to slip and fall in the aisle. *Id.* After she fell, Ms. Roth observed blotches of water on the floor in the aisle and noticed that the knees of her pants were wet. Ex. 1, Pl. Dep. at 47:6-8.

48. In addition to Plaintiff Roth's failure to demonstrate that the water remained on the floor for an unreasonable amount of time prior to her fall, the timing of Plaintiff Roth leaving the table

and the timing of the routine floor cleanings, in comparison to the timing of her fall, does not establish sufficient time for Defendant Cheesecake Factory to detect and remedy the alleged condition. See, Exhibit "H," p. 48, lines 16-22. See, Exhibit "J," p. 11, lines 9-14.

**Disputed.** *See* ¶¶ 44-45. Mr. Ford attempted to mop the floor area, which cause Ms. Roth's fall, but failed to adequately do so, and then dragged a wet mop across the floor in the area in which Ms. Roth would soon walk, further contributing to her fall.

49. Finally, Defendant Cheesecake Factory lacked constructive notice as the water on the floor of the restaurant was not an ongoing or recurring issue. As noted above, prior to the Plaintiff Roth's fall, no complaints or reports were registered concerning the alleged condition at the site of the subject accident.

**Disputed.** *See* ¶¶ 44-48. Also, Mr. Ford testified that he probably went to clean the area by the bathroom because he was told that, prior to Ms. Roth's fall, a customer had slipped and fallen. Ex. 3, Ford Dep. at 40:14-41:6 ("That's probably why I went over to the bathroom and I just don't remember."). Mr. Ford also testified, "[w]ell, there was something there and I handled it. I put the wet floor down as a precaution." Ex. 3, Ford Dep. at 32:16-18.

50. As such, due to the clear and inarguable absence of evidence demonstrating Defendant Cheesecake Factory's creation, actual notice, or constructive notice of the alleged condition, Plaintiff Roth's Complaint must be dismissed entirely, with prejudice, as a matter of law.

**Disputed.** Plaintiff disputes Defendant's legal arguments and conclusions of law and responds accordingly in her Motion in Opposition to Defendant's Motion for Summary Judgment. Furthermore, Defendant's statement is not a material fact and it does not cite to the evidence; thus, it should be disregarded by the Court.

## ADDITIONAL MATERIAL FACTS

51. Cheesecake Factory Manager Warren Ford stated that at the Cheesecake Factory he mops with either a Swiffer or a string mop. Ex. 3, Ford Depo. At 17:6-17.

52. The type of mop Mr. Ford uses depends on how large the spill is. Ex. 3, Ford Depo. At 12:11-14. ("Yes, we actually have like a Swifter mop. You press the button and the solution comes out the bottom, or you could use a regular mop. It all depends on the size of the spill.").

53. A "string mop" is a mop "with long strings that you have to st[r]ain the water out before you actually use it." Ex. 3, Ford Depo. At 17:14-17.

54. On the date of the incident Mr. Ford used a string mop. Ex. 3, Ford Depo. At 35:6-10.

55. Cheesecake Factory Senior Manager Andre Ellis testified the rapid mop "is mainly used for track marks" and the "string mop is used to mop up spills." Ex. 4, Ford Depo. At 15:17-21.

56. Mr. Ellis testified if there is a spill it would be cleaned with the "string mop" and if it is a "huge spill, it is definitely a string mop." Ex. 4, Ford Depo. At 17:10-11.

57. After watching surveillance video of Mr. Ford mopping the floor, Mr. Ellis testified that Mr. Ford was using a "string mop" which would indicate this was a "liquid spill." Ex. 4, Ford Depo. At 24:12-16.

58. After Regina Roth entered the restroom, surveillance video shows Cheesecake Factory employee, Warren Ford, mopping the area outside of the restroom, placing a caution sign on the floor, leaving a mop on the floor, then returning to pick up the mop. *See* Ex. 5, Cheesecake Surveillance Video, Ch. 15 at 3:01-3:02:28 ("Ex. 5, Surv. Vid. 15").

59. Mr. Ford then walks with the mop in his hand, without a mop bucket, and drips water on the floor leading to Ms. Roth's table. *Id.*

60. When Ms. Roth exited the bathroom, at 4:02:08, she was forced to walk through a large puddle of water causing her shoes to get wet. *See* Ex. 1, Plaintiff's Deposition at 57:12-59:18 ("Ex. 1, Pl. Dep."); *see also* Ex. 5, Surv. Vid. 15.

61. As explained by Ms. Roth, the water near the bathroom, combined with the slick aisle, caused Ms. Roth to slip and fall.

> A. When I left the restroom at The Cheesecake Factory, I got out, and I was holding my grandson's hand, and there was a sign up of -- about a wet floor. That wet floor was very wet, and I had told my grandson we are going to take baby steps through this, and I was actually holding the wall as I was walking.
>
> And my shoes and his shoes got wet walking through that area . . .

Ex. 1, Pl. Dep. at 57:14-58:4; *see also* Ex. 5, Surv. Vid. 15 at 3:02:02-08. Ms. Roth further testified, that as she walked down the aisle towards her table, "I was walking very slow because I knew that my feet were wet, and I was walking very slow, and then all of a sudden boom. I didn't want to fall." Ex. 1, Roth Depo. 163:16-20.

62. Ms. Roth slipped and fell at 4:02:25. Ex. 5, Surv. Vid. 15.

63. As a result of the slip and fall at the Cheesecake Factory, Ms. Roth fractured her left patella. Ex. 1, Pl. Depo. At 95:10.

64. When Ms. Roth returned to their table, Ms. Arminio testified that Ms. Roth told her that it was slippery near the bathroom and that she had held onto the wall to prevent falling, but had slipped and fallen near the table. Ex. 2, Arminio Depo. At 17:23-18:3.

65. Ms. Arminio testified that her son told her that it was slippery near the bathroom and grandma fell. Ex. 2, Arminio Depo. At 13:2-7.

66. Ms. Arminio testified that, after falling, Ms. Roth stated her knees were hurt and she wanted to leave. Ex. 2, Arminio Depo. At 18:18-23.

67. After falling, Ms. Arminio requested an accident report, and Ms. Roth completed the report with assistance from her daughter. Ex. 1, Roth Depo. 72:7-17.

68. The floor, in the bathroom area and on the path to Ms. Roth's table, was entirely white tile. Ex. 1, Roth Depo. 144:18-25.

69. Ms. Roth testified, that as she walked down the aisle towards her table, "I was walking very slow because I knew that my feet were wet, and I was walking very slow, and then all of a sudden boom. I didn't want to fall." Ex. 1, Roth Depo. 163:16-20.

Dated:

September 11, 2020

Respectfully,

_____
Abraham Rubert-Schewel
TIN FULTON WALKER & OWEN
119 E. Main Street
Durham, NC 27701
Telephone:     (919) 451-9216
Email: schewel@tinfulton.com