THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA FAIRSTEIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NETFLIX, INC., AVA DUVERNAY, and ) <br> ATTICA LOCKE, ) <br> ) <br> Defendants. ) | Case No. 20-cv-8042 (PKC) |

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

Sandra D. Hauser
Justin N. Kattan
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Phone: (212) 768-6700
*sandra.hauser@dentons.com*
*justin.kattan@dentons.com*

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-8000
*natalie.spears@dentons.com*
*gregory.naron@dentons.com*
*jacqui.giannini@dentons.com*

*Counsel for Defendants Netflix, Inc., Ava DuVernay and Attica Locke*

Unable to meet her daunting constitutional burden on actual malice and desperate to avoid summary judgment, Plaintiff Linda Fairstein has invented a last-minute spoliation accusation. Her motion is spurious.

The writers of *When They See Us* ("the Series") relied upon extensive research materials to tell a dramatized story from the perspective of five young teenagers who were wrongly convicted of the Central Park Jogger rape. All of those research materials were produced to Plaintiff during discovery, including, among other things, recorded interviews with the Five men and their family members, print and broadcast news coverage spanning more than a decade, a documentary by acclaimed filmmaker Ken Burns, and multiple published books, including books by news journalist Timothy Sullivan and Plaintiff's former-colleague in the District Attorney's Office Harlan Levy. Defendants also produced thousands of other documents and sat for extensive depositions. Following discovery, Defendants moved for summary judgment because there is no evidence of constitutional actual malice—that Defendants subjectively knew their portrayal of Plaintiff in the five scenes at issue was false or in fact seriously doubted its truth. (ECF No. 146.)

Plaintiff's current Motion, first raised two weeks after submitting her opposition to summary judgment, focuses on one aspect of Defendants' extensive research: the published books that tell the story of the Central Park Five. (ECF No. 199.) Although Plaintiff has multiple copies of these books, she now asks the Court for spoliation sanctions because, she contends, even though she has multiple copies of these books and those copies have no evidence of actual malice, in another copy of those books, there *might* be handwritten notes, that *might* be about Plaintiff, and that *might* contain evidence of actual malice. Sanctions do not lie for a party "claiming that defendants' conduct deprived [her] of a pond in which [she] would like to have gone on a fishing expedition." *Humphreys v. New York City Health & Hosps. Corp.*, No. 16-CV-09707, 2022 WL 614677, at **5-6 (S.D.N.Y. Mar. 2, 2022), *adopted*, 2023 WL 155446 (S.D.N.Y. Jan. 11, 2023) (quoting *New York State Nat. Org. for Women v. Cuomo*, No. 93-CV-7146, 1998 WL 395320, at

1

*3 (S.D.N.Y. July 14, 1998)) (alterations original).  Courts in this Circuit have consistently rejected sanctions motions like Plaintiff's, based on unsubstantiated speculation that documents contained handwritten notes.  *See infra* at 6 (collecting cases).

In short, this motion fails for nearly every possible reason.  *First*, it is untimely.  *Second*, and contrary to Plaintiff's rank speculation, Ms. DuVernay did not take notes in her set of the published books.  *Third*, Ms. DuVernay did not "destroy" the duplicate copies of the books, intentionally or otherwise.  *Fourth*, not only did the allegedly "destroyed" evidence never exist, but there is no reason to believe that any hypothetical notes would be favorable to her claims. *Fifth*, there is no prejudice to Plaintiff.

The Court should deny Plaintiff's Motion.

## BACKGROUND

Ms. DuVernay created and directed the Series, and was also one of its multiple writers. (DuVernay Decl. ¶ 2.)  While developing the Series, its writers amassed research materials from many perspectives and in many forms.  (ECF No. 149, ¶ 28.)  During discovery in this action, Defendants identified and produced the research materials upon which the Series' writers relied. Among other things, the produced materials included recorded interviews, extensive news coverage, a documentary, and multiple published books.  (*See* ECF 147, at 9 (list of sources).)  All told, Defendants produced over 11,000 documents,[1] answered scores of interrogatories, and offered the depositions of six people involved in creating the Series.  (*Id.* at 2.)  Ms. DuVernay was deposed at length in this matter about her research, including the books.  (ECF No. 155-3.)

After fact discovery closed, Defendants filed their Summary Judgment Motion

---

[1] The produced documents included, among other things, audio recordings of Ms. DuVernay's interviews with the Five men, audio recordings of the writers' room interviews with the Five, audio recordings of writers' room sessions, daily notes from the writers' room, thousands of emails and numerous text messages.

2

(which demonstrates there is no constitutional actual malice in this case). (ECF No. 147.) In support of their Summary Judgment Motion, Defendants submitted the Declarations of Ms. DuVernay (ECF No. 149) and writers Attica Locke (ECF No. 150) and Robin Swicord (ECF No. 151), among others. Consistent with her written discovery responses and her deposition testimony, Ms. DuVernay's Declaration again identified the numerous sources she and the other writers in the writers' room relied upon in writing the Series—including several published books, recorded interviews, and contemporaneous news coverage—and set forth in detail her specific support for each of the remaining challenged scenes. (ECF No. 149 at ¶¶ 28-43, 64-131.) Ms. DuVernay's Declaration states that she "did not keep" her copies of the published books (ECF No. 149 at n.7), and refers, for the Court's convenience, to the copies of the same books used by Ms. Swicord and submitted as part of Defendants' master Appendix.

After receiving Ms. DuVernay's declaration as part of Defendants' Summary Judgment Motion, Plaintiff did not include her "spoliation" argument as part of her opposition thereto. It was not until weeks after the deadline for her opposition that Plaintiff claimed for the first time that she was entitled to a "spoliation sanction" in the form of an adverse inference of actual malice because, even though Ms. DuVernay had long-ago identified during discovery the publicly-available books she relied upon and Defendants produced multiple copies of those books, Ms. DuVernay did not produce a duplicative set of them. (*See* ECF No. 193 (pre-motion letter).)

When Plaintiff filed her belated pre-motion letter, she assumed without any foundation that Ms. DuVernay not only made notations in her books but that those hypothesized notations would be helpful to Plaintiff on actual malice. (*Id.*) In their pre-motion response letter, Defendants informed Plaintiff that she was mistaken, including because Ms. DuVernay did not take notes in the books and would aver so in a declaration. (ECF No. 195, at 1.) With no evidence to support

3

her, and ignoring Defendants' representations, Plaintiff nonetheless filed this Motion, demanding an adverse inference that Ms. DuVernay's copies of the published books "contained markings or notations which evidenced actual malice." (Pl's Motion, ECF No. 199 at 1, 10.)

## LEGAL STANDARD

In the Second Circuit, a party seeking sanctions for alleged spoliation has the burden of establishing: "'(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the [moving] party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

Even if Plaintiff could meet this burden—and she cannot—sanctions are discretionary and not automatic. *Id.* (noting the Second Circuit has "repeatedly held" a case-by-case approach is necessary); *see also Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (similar). No sanction in the form of an adverse instruction should be granted if that would be "grossly disproportionate" to the questioned conduct, especially when placed in the overall context of a case. *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-02543, 2015 WL 9480315, at *4 (S.D.N.Y. Dec. 29, 2015). Additionally, even where spoliation occurs, the accused party "should have the opportunity to demonstrate that the innocent party has not been prejudiced by the absence of the missing information" including by demonstrating "that the other parties were able to obtain the same evidence from another source." *Mestecky v. New York City Dep't of Educ.*, No. 13-CV-4302, 2016 WL 8677285, at *4 (E.D.N.Y. Feb. 5, 2016) (citations omitted). "A sanction in the form of an adverse inference instruction is an extreme sanction and should not be imposed lightly."

*Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 171 (E.D.N.Y. 2009) (citation omitted) (denying spoliation sanctions).

## ARGUMENT

### I. Plaintiff's Motion Is Untimely

As an initial matter, this Court can deny Plaintiff's Motion because it is untimely. When the Court allowed Plaintiff's Motion to be filed, it emphasized that it was "without prejudice" to Defendants raising untimeliness arguments. (*See* ECF No. 196.) Preemptively, Plaintiff's Motion contends she was just too busy to raise her spoliation accusations in her summary judgment opposition or any earlier time in the 75 days between Defendants' Summary Judgment Motion and Ms. DuVernay's Declaration being filed, on the one hand (*see* ECF Nos. 146, 149, filed 9/30/2022), and Plaintiff's relevant Pre-Motion Letter being filed, on the other hand (*see* ECF No. 193, filed 12/14/2022). Plaintiff's excuses are uncompelling. Moreover, "reserve[ing] the right" to move (Pl's Motion at 9) does not mean that Plaintiff can file a motion related to summary judgment after her deadline for opposing summary judgment has passed. Her Motion should be seen for what it is: an after-the-fact, last ditch attempt to stave off summary judgment in the face of overwhelming evidence of lack of actual malice; and it should be denied as untimely.

### II. There Was No Spoliation

#### A. Contrary to Plaintiff's Spurious Accusation, Ms. DuVernay Did Not Take Notes in the Published Books

Plaintiff accuses Ms. DuVernay of "spoliating" handwritten markups or notations in her copies of the published books, but ***no such notes ever existed.*** As Ms. DuVernay has confirmed under oath, she did not take notes inside the books. (DuVernay Decl. ¶ 5.) At the risk of stating the obvious, "there can by definition be no spoliation of evidence if no such evidence existed in the first place." *Offor v. Mercy Med. Ctr.*, No. 15-CV-02219, 2019 WL 4918082, at *1 (E.D.N.Y.

5

Oct. 4, 2019); *see Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010) (citation omitted; alterations original) ("[F]or sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence *actually existed and was destroyed*."

Courts in the Second Circuit deny sanctions motions based on purportedly lost notes when, as here, there is no evidence that a particular form of notes ever existed. For example, in *Offor v. Mercy Medical Center*, a plaintiff claimed that detailed treatment notes were spoliated. 2019 WL 4918082, at *1. However, the plaintiff "neither identifie[d] documents corroborating the existence of those treatment notes nor provide[d] credible, sworn testimony to that effect" from any individual with personal knowledge. *Id.* Further dooming the motion, supposed authors of the notes submitted affidavits stating they did not recall creating them. *Id.* at *2. Ultimately, the court ruled that "[t]he party seeking a spoliation sanction carries a substantial burden," and found the movant had failed "to come even remotely close to meeting that burden" because she offered "little more than baseless speculation." *Id.* at *1. The court thus denied the spoliation motion in its entirety. *Id.* at *2.

Recent decisions from this District are in accord, holding that spoliation motions based on alleged notes should be denied if there is no credible proof the notes in question actually existed. *E.g.*, *Humphreys*, 2022 WL 614677, at *5 (a plaintiff's unsubstantiated supposition that remarks were "handwritten on the original documents . . . cannot establish her right to sanctions"); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 541 (S.D.N.Y. 2022) ("[T]he record does not support a finding that notes . . . 'ever existed.'") (internal citation omitted); *Khatabi v. Bonura*, No. 10-CIV-01168, 2017 WL 10621191, at *7 (S.D.N.Y. Apr. 21, 2017) ("[A]s to the handwritten notes . . . Plaintiff did not sufficiently establish their existence such that the notes can form the basis of a spoliation motion.").

The situation is the same here. The most Plaintiff can do is suggest that Ms. DuVernay's copies of the books "*potentially* contained markings and notations." (Pl's Motion at 1, 8 (emphasis added).) There is no evidence to support her conjecture. That is because Ms. DuVernay did not take notes inside the books. (DuVernay Decl. ¶ 5.)

None of this is a surprise. Before Plaintiff filed her Motion, she was informed that Ms. DuVernay did not take notes in the published books. (*See* ECF No. 195, at 1.) Plaintiff's decision to file this baseless Motion anyway wastes the time of this Court and the Defendants. Plaintiff's speculation fails to come "even remotely close to meeting [her] burden" on her Sanctions Motion. *Offor*, 2019 WL 4918082, at *1. The Motion should be denied.

### B. Ms. DuVernay Did Not "Destroy" Her Copies of the Books, and No Prejudice Befell Plaintiff Because Defendants Produced Substantively Identical Copies

As set forth above, the fact that no notes ever existed is fatal to Plaintiff's Motion. But even setting aside this reality—as Plaintiff seeks to do—Plaintiff's Motion independently fails on the remaining factors necessary for the extraordinary relief she seeks. Thus, even assuming that Ms. DuVernay was obligated to preserve duplicate copies of the published books she relied upon while still researching and writing the Series,[2] no sanctions are justified. Rather than addressing the requirements under the law, Plaintiff's Motion instead is rife with hyperbolic mischaracterizations and lack of evidence.

---

[2] Plaintiff sent Ms. DuVernay and the producers a threatening letter in June 2016, a year before the project at Netflix and writing of the Series even began. (*See* Pl's Motion at 5.) Defendants take serious issue with the notion that a "reasonable anticipation of litigation" arises each time a lawyer sends a threatening or belligerent letter, given the chilling effect that would have on free speech and artistic expression in media. However, for purposes of this Motion, there is no need to wade into the complexities of those issues because even assuming there was a duty to preserve duplicate copies of the published books, Plaintiff's Motion is without merit as there can be no spoliation of non-existent notes in the books in the first place. Nor is there any prejudice as discussed further below.

7

***No Intentional Destruction.***  Plaintiff claims without citation to any evidence that Ms. DuVernay "destroyed" the books, that "her destruction of the books was admittedly intentional," and that the books were in "her exclusive custody and control." (*E.g.*, Pl's Motion at 1, 9.) ***None of that is true***. Ms. DuVernay did not destroy the books, and she did not tell anyone to destroy them. (DuVernay Decl. ¶¶ 7-8.) It was Ms. DuVernay's (correct) understanding that the books were published books and that multiple copies of the books existed. (DuVernay Decl. ¶ 7.) Given that Ms. DuVernay's copies of the books did not have any markings, and thus she did not believe they were separately significant in any way, it is not surprising that Ms. DuVernay simply does not know what happened to the particular set of books she read. (*Id.* ¶¶ 7-8.) During discovery in this case, Ms. DuVernay disclosed all of the titles of the publicly-available books upon which she relied. (*See, e.g.*, ECF 198-2, at 3-4 (identifying the Burns, Byfield, Levy, and Sullivan books by Bates-stamp)). Consistent with Ms. DuVernay's understanding, both Ms. Locke and Ms. Swicord kept their copies of the same books and those versions were produced. (*See e.g.* ECF Nos. 155-18 to 155-20, 155-32 to 155-34, 155-115 and 155-116.)[3] There is no "missing evidence."

Contrary to Plaintiff's over-reaching claims, Ms. DuVernay's conduct was not "intentional" and does not allow the inference that the materials would have been favorable to Plaintiff. (Pl's Motion at 7.) When materials were not destroyed and simply cannot be located, *at most* that may be deemed "ordinary negligence"—meaning a movant for spoliation sanctions cannot prevail unless they prove the materials would have been "unfavorable" to the individual who once held them. *See, e.g.*, *Mitchell v. Fishbein*, No. 01-CV-02760, 2007 WL 2669581, at *5 (S.D.N.Y. Sept. 13,

---

[3] While Ms. Locke's and Ms. Swicord's copies of the books contain certain handwritten notations, the printed content of these same books, upon which Ms. DuVernay relied when writing the Series, is identical. Again, these books are published books in print and circulation—they say what they say.

8

2007) (items lost when "the potential for litigation was inchoate" did not amount to bad faith or gross negligence, and did not support sanctions); *Humphreys*, 2022 WL 614677, at \*\*4-5 (items unable to be located were not proven to be a consequence of intentional acts or gross negligence, and did not support sanctions); *see also Khatabi*, 2017 WL 10621191, at \*\*7-8 (no sanctions even assuming some items lost due to gross negligence); *In re Gen. Motors Litig.*, 2015 WL 9480315, at \*\*3-4 (similar).

***No Evidence The Non-Existent Notes Would Support Plaintiff's Claims.*** Because Ms. DuVernay's actions do not rise above negligence (if that even), Plaintiff must also prove "relevance". *Humphreys*, 2022 WL 614677, at \*3; *see also In re: Gen. Motors Litig.*, 2015 WL 9480315, at \*3 ("And where the destruction was the result of mere negligence, a presumption of relevance never applies."). Plaintiff does not even attempt to establish relevance. Plaintiff states only that Ms. DuVernay's books are relevant "because they potentially contained markings and notations which spoke to Ms. DuVernay's state of mind with respect to her portrayal of Ms. Fairstein in the Series." (Pl's Motion at 8.) That is not the standard.

In the context of spoliation, a document is relevant "where a reasonable trier of fact could find that the document either would ***harm the spoliator's case or support the innocent party's case***." *Humphreys*, 2022 WL 614677, at \*3 (emphasis added; citations omitted). Conclusory assertions as to relevance are "insufficient to warrant the imposition of sanctions." *In re Gen. Motors Litig.*, 2015 WL 9480315, at \*3; *Humphreys*, 2022 WL 614677, at \*5 ("To the extent that plaintiff believes that there may be discriminatory remarks handwritten on the original documents, she cannot establish her right to sanctions by claiming that 'defendants' conduct deprived [her] of

9

a pond in which [she] would like to have gone on a fishing expedition.'") (citations omitted; alternations original).⁴

Here, Plaintiff points to no evidence that any marginalia in Ms. DuVernay's books (which does not even exist) would be helpful to her claim that Ms. DuVernay acted with actual malice. The evidence indicates the opposite—Plaintiff's massive response to Defendants' Statement of Facts fails to cite a single note in Ms. Locke's or Ms. Swicord's books that Plaintiff believes is helpful to her case.⁵  There is no reason to believe that the imagined, hypothetical notes in Ms. DuVernay's books would be any different.

***No Prejudice to Plaintiff.***  Lastly, Plaintiff fails to establish any prejudice she has suffered because there is no missing evidence. *Humphreys*, 2022 WL 614677, at *3 (noting that if the accused party is merely negligent, "the innocent party must prove both relevance and prejudice in order to justify the imposition of a severe sanction" including an adverse inference).  It is well-established in the Second Circuit that spoliation sanctions should not be granted if substantively identical copies of missing items were produced. *See, e.g.*, *Mestecky*, 2016 WL 8677285, at *2, 5 (no prejudice because "although certain original documents were destroyed, Plaintiff has copies of all of the substantive documents" and did not prove any difference existed between the versions); *Ispat Inland, Inc. v. Kemper Env't, Ltd.*, No. 05-CV-5401, 2006 WL 3478339, at *3

---

⁴ Plaintiff's own authorities emphasize that for evidence to be relevant under *Residential Funding*, the movant must demonstrate that it supports her claims and cannot simply hypothesize that it would. *See Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 49-50 (S.D.N.Y. 2014) (denying adverse inference resulting from defendant's destruction of data contained on laptop; where plaintiff did not "demonstrate[] that the deleted documents would have benefited him" and they "could just as easily support" defendant, evidence was not "'relevant' within the meaning of the third *Residential Funding* factor").

⁵ Plaintiff's claim that Ms. Swicord's books should be disregarded because she is "not required to prove that Ms. Swicord acted with actual malice because she is not a named defendant in this action" (Pl's Motion at 8) is simply unserious.  Plaintiff submitted dozens of exhibits related to Ms. Swicord in opposition to Summary Judgment—none of which actually evidence actual malice.  Had Plaintiff found anything remotely helpful to her case in Ms. Swicord's copies of the books, she would have cited those as well.

(S.D.N.Y. Nov. 30, 2006) (same).  That is the precisely the case here, as Defendants produced identical copies of the published books upon which Ms. DuVernay relied. (*See* DuVernay Decl. ¶¶ 3-4, 8).

Particularly given the extreme nature of the sanction requested—an adverse instruction—the Motion is wildly inappropriate and seeks a remedy "grossly disproportionate" to the questioned conduct, especially in the overall context of this case.  *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9480315, at *5.  In fact, it would transform the current reality—in which Plaintiff has no case at all, with no evidence of actual malice—to one in which liability is presumed based on pure conjecture.

In this regard, Fairstein's bald citation to the "selective" destruction of documents in *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119 (7th Cir. 1987) illustrates how desperately misguided her motion is.  In *Brown*, when the case was on appeal the defendant's producer actively destroyed *specific pages* of documents, including the draft script of the news broadcast itself, which then no one else could locate, and an "extensively" marked up copy of an FTC report, which was the basis for the broadcast.  *Id.* at 1125-26, 1135-36.  Moreover, as the court emphasized, the producer "did not destroy *all* of these documents," he "only destroyed the parts of the documents that would have been relevant to this litigation":  he "destroyed fifteen of the eighteen pages of his copy of the sample script" and "five of the ten pages from his copy of the FTC report.  As 'luck' would have it, the five destroyed pages were the pages that contained" the material discussed in the broadcast.  *See id.* at 1134-36 (emphasis added).  The *Brown* case is not remotely parallel; it is in another universe.  To be analogous, Fairstein would have to show not only that there were in fact notes in the copies of Ms. DuVernay's books (which there were not), but that Ms. DuVernay destroyed only the pages relevant to Fairstein.

11

Finally, the remainder of Plaintiff's cases are also inapposite because the notes or other documents in those cases undeniably existed, were centrally relevant, and were destroyed.[6] Here, there is only Fairstein's speculation. The further assumption that those putative notes would be relevant, much less supportive of Fairstein's claims, is equally baseless.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion for Sanctions should be denied.

Dated: February 6, 2023                              Respectfully submitted,

                                                           */s/ Natalie J. Spears*

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-8000

Sandra D. Hauser
Justin N. Kattan
DENTONS US LLP
1221 Avenue of the Americas
New York, New York  10020
Phone: (212) 768-6700

*Attorneys for Defendants Netflix, Inc., Ava DuVernay and Attica Locke*

---

[6] *See e.g.* Pl's Motion at 6, citing *Frank v. Lawrence Union Free School Dist.*, 688 F. Supp. 2d 160, 168 (E.D.N.Y. 2010) ("the evidence shows that Ms. Lineal maintained a file 'related to [plaintiff]' in her office, which contained '[a]nectdotal notes from the two observations and the notes from the conferences'" and that defendants "'shredded' this file . . . long after [plaintiff] had filed a charge of discrimination" and after "refus[ing] to share" the notes with others); and *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (in discrimination suit by applicant against school district, several critical documents relating to interview process were missing, and "any notes made by the interviewers"—which school principal admitted were "likely . . . made"—were destroyed, as were notes the principal "relied upon in drafting the summary of the hiring process").

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 6, 2023, a true and correct copy of the foregoing was served by CM/ECF on all counsel or parties of record on the service list.

/s/ Natalie J. Spears