**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LINDA FAIRSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cv-8042 (PKC) |
| v. | ) | |
| | ) | |
| NETFLIX, INC., AVA DUVERNAY, and | ) | |
| ATTICA LOCKE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF**
**LINDA FAIRSTEIN'S MOTION FOR SANCTIONS**
**RELATING TO THE SPOLIATION OF EVIDENCE**

Kara L. Gorycki
Andrew T. Miltenberg
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212)736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com

*Attorneys for Plaintiff Linda Fairstein*

## **INTRODUCTION**

Plaintiff Linda Fairstein ("Plaintiff") respectfully submits this reply memorandum of law in further support of her spoliation motion and request for sanctions against Defendant Ava DuVernay ("Ms. DuVernay").

In typical fashion, Defendants mischaracterize Plaintiff's spoliation motion as seeking sanctions because copies of the books that were produced by Defendants—minus a single copy of any book from Ms. DuVernay's personal collection—contain "no evidence of actual malice." Opp. Br. at 1. On the contrary, "[a]s fully set forth in Plaintiff's summary judgment opposition briefing, ***there is clear and convincing evidence of actual malice*** in this case on the part of all Defendants." Moving Br. at 6 n.1 (emphasis added). *See* ECF No. 183, Pltf. SJ Opp. Br. at 27-28, 32-33, 37-38, 40-41 (discussing lack of support in Defendants' sources). Accordingly, Plaintiff is not relying on the Court's imposition of spoliation sanctions against Ms. DuVernay to survive summary judgment. *See* Opp. Br. at 5 (describing Plaintiff's motion as a "last ditch attempt to stave off summary judgment"). Rather, Plaintiff's motion is narrowly tailored to address Ms. DuVernay's selective destruction of her book collection and requests that an adverse inference be drawn only with respect thereto. *See* Moving Br. at 1, 10.[1] Defendants proffer no reason why Plaintiff's motion should not be granted.

---

[1] For this reason, Defendants' assertion that Plaintiff was looking for a "pond in which to go on a fishing expedition" is inapt. *See* Opp. Br. at 1; Moving Br. at 8 (discussing *Humphreys*). Defendants' argument that the requested sanction is "extreme" and "grossly disproportionate" also fails because the requested relief is narrowly tailored. *See* Opp. Br. at 11. The "current reality" is that—as fully set forth in Plaintiff's summary judgment opposition—Plaintiff has a case that should proceed to trial regardless of whether the Court sanctions Ms. DuVernay. *Id.*

## ARGUMENT

## MS. DUVERNAY SHOULD BE SANCTIONED

Defendants **do not deny** that:

- Ms. DuVernay relied on her own copies of the books when researching the Series. Moving Br. at 9.

- Ms. DuVernay failed to disclose that "she did not keep" her books in her responses to Plaintiff's document requests and interrogatories. Moving Br. at 4-5.[2]

- Ms. DuVernay failed to disclose that she "did not keep" her books until her declaration was filed in support of Defendants' summary judgment motion. Moving Br. at 4.

- Ms. DuVernay had notice of potential litigation concerning her portrayal of Ms. Fairstein: i) in June 2016;[3] ii) on March 3, 2020; and iii) as of March 18, 2020. Moving Br. at 5, 7. Ms. DuVernay offers no testimony on this issue.

- Plaintiff was deprived of the right to inspect Ms. DuVernay's books to determine whether there were any relevant tabs, markings or notations in them. Moving Br. at 8.

Defendants contend that Ms. DuVernay did not "destroy" her books and that the books were not in Ms. DuVernay's "exclusive custody and control." Opp. Br. at 7-8. But no other inferences can be drawn from the facts. Ms. DuVernay's summary judgment declaration expressly states "I did not keep **my** copies of the books." ECF No. 149, DuVernay Decl. ¶ 29 n. 7 (emphasis added). From this statement, one can only conclude that Ms. DuVernay had her own set of books (*i.e.* in her exclusive custody and control) and that she destroyed them (*i.e.* did not keep them). She

---

[2] Defendants assert that they answered "scores of interrogatories" but offer no explanation why they did not disclose that Ms. DuVernay "did not keep" her books when responding to same. Opp. Br. at 2. Defendants further assert that Ms. DuVernay merely failed to "produce a duplicative set of" books, ignoring that she was unable to produce any books—duplicative or not—because she no longer had them. Opp. Br. at 3. Defendants' reliance on *Mitchell v. Fishbein*, 2007 WL 2669581, at *5 (S.D.N.Y. Sept. 13, 2007), a case in which the "potential for litigation was inchoate," is also misplaced because Defendants have failed to provide any evidence concerning when Ms. DuVernay's books allegedly went missing. Moreover, as noted above, Defendants have not disputed that Ms. DuVernay received a preservation notice as early as June 2016.

[3] Rather than address the very straightforward issue of when Ms. DuVernay was aware of her obligation to preserve evidence for potential litigation, Defendants endeavor to create complexity where there is none, baselessly assert that the matter concerns "free speech and artistic expression" and, once again, mischaracterize the June 2016 lawyer letter as "threatening." Opp. Br. at 7 n. 2. *See* ECF No. 183, Pltf. SJ Opp. Br. at 11 n. 16.

does not state that she gave the books away, that someone else was responsible for them or that she attempted to locate them for production during the discovery period. *See* ECF No. 149.

Defendants cannot escape the presumption that Ms. DuVernay's actions were intentional. It was not until Ms. DuVernay was faced with the present motion that she suddenly was "not sure what happened to" the books. ECF No. 12, DuVernay Decl. (2/1/23) ¶ 7.[4] Though Ms. DuVernay admits that she "did not personally keep track of [her] copies of the books" she offers no information about who was responsible for doing so. *Id.* While Ms. DuVernay states that she is "confident that [she] never told anyone to get rid of [her] copies of the books" she does not assert that she advised anyone to preserve them for this litigation or otherwise.[5] Ms. DuVernay states that she did not mark, tab or make notations in any of the books because it is not her "general practice" to take "notes in the margins of books." ECF No. 212, DuVernay Decl. (2/1/23) ¶¶ 5-6. *See* Opp. Br. at 5-6.

The Court need not accept the above statements as true. Since the veracity of Ms. DuVernay's statements is an issue of credibility best left for trial the Court may conclude, for summary judgment purposes, that Ms. DuVernay's failure to produce her copies of the books ***was intentional***. *Buskey v. Boston Mkt. Corp.*, 2006 WL 2527826, at *8 (E.D.N.Y. 2006) (veracity of testimony that report was missing because defendant could not find it raised credibility issues at summary judgment stage). *See also Kronish v. U.S.*, 150 F.3d 112, 127 (2d Cir. 1998) (discussing "sound approach" of district court in presuming for purposes of considering motion for summary

---

[4] Defendants' assertion that the books "were not destroyed" is unsupported by Ms. DuVernay's declaration, which clearly states that she ***does not know*** what happened to them. Opp. Br. at 8; ECF No. 212, DuVernay Decl. (2/1/23) ¶ 7.

[5] Indeed, Defendants proudly point to their production of "over 11,000 documents" in discovery but fail to explain what happened to Ms. DuVernay's books. Opp. Br. at 2. Defendants also assert that "extensive depositions" were conducted in this action but ignore that Plaintiff was unable to explore the spoliation issue with Ms. DuVernay because she did not disclose her failure to preserve copies of her book collection until the summary judgment phase of this action. *See* Opp. Br. at 1.

judgment that defendants had obligation to preserve files and that destruction was intentional).[6] A party's intentional destruction of evidence is, further, sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party. *See* Moving Br. at 7. Indeed, as noted in Defendants' opposition brief, Defendants produced copies of other sources upon which Ms. DuVernay relied in researching the Series—except for her collection of books. *See* Opp. Br. at 2 n. 2.

Defendants incorrectly assert that Plaintiff "assumed without any foundation" that Ms. DuVernay made "notations in her books." Opp. Br. at 3, 7. Given Ms. DuVernay's ability to precisely pinpoint the pages of the books upon which she relied when researching the Series, one can infer that she actively engaged with the material contained in her books—by marking, tabbing or making notes—at the time she conducted her research. *See* ECF No. 149, DuVernay Decl. (9/28/22), ¶¶ 30, 49, 51, 53(a), 67-69, 74, 84-85, 97-99, 106, 108-109, 113, 120, 123(b). In addition, as Defendants prominently noted in their appendix of summary judgment exhibits, Ms. Swicord and Ms. Locke each marked up their copies of the books in question. ECF No. 158, Exs. 20, 27, 36, 97 and 98.[7] Ms. DuVernay also produced a document called "questions for the room" which cites to a specific page of the Sullivan book that contradicts Ms. DuVernay's purported beliefs about Ms. Fairstein. ECF No. 185-162 (PX-189); ECF No. 184, Pl. R56 Resp. ¶ 54(g). This suggests that Ms. DuVernay marked specific pages of her books, including information that

---

[6] Defendants assert that Plaintiff should not have gone forward with her motion—which she did with the Court's permission—because in "their pre-motion response letter, Defendants informed Plaintiff that… Ms. DuVernay did not take notes in the books and would aver so in a declaration." Opp. Br. at 3, 7. Given the case law cited above, Plaintiff was not required to take this self-serving statement as the truth.

[7] As noted in Plaintiff's spoliation motion, Ms. Swicord's personal notations are not relevant to the issue of whether ***Defendants*** acted with actual malice because she is not a party to this litigation. Moving Br. at 5, 8. This is not, as Defendants contend, "unserious," but correct as a matter of law. *See* Opp. Br. at 10 n. 5. Defendants further misconstrue Plaintiff's point—that Ms. Swicord's and Ms. Locke's book notations are not relevant to Ms. DuVernay's state of mind. *See* Moving Br. at 5, 8. Ms. DuVernay has not claimed that she reviewed their notations when researching the Series. *Id.*

*supports* Plaintiff's claims against Ms. DuVernay. *Id. See* Moving Br. at 9;[8] Opp. Br. at 9. In light of these facts, Defendants cannot reasonably assert that Plaintiff suffered no prejudice as a result of Ms. DuVernay's spoliation of her book collection because "identical" copies of the books were made available to Plaintiff. Opp. Br. at 10.[9]

In arguing that Plaintiff's motion is based on speculation or conjecture, Defendants contend that Plaintiff failed to "cite a single note" in Ms. Swicord's books that Plaintiff believes is helpful to her case. Opp. Br. at 10 & n. 5. Putting aside that Plaintiff has no burden to prove that a non-party acted with actual malice, Defendants overlook Plaintiff's extensive citation to Ms. Swicord's books throughout her summary judgment opposition, including numerous pages containing Ms. Swicord's notes and underlining. *See, e.g.*, ECF No. 184, Pl. R56 Resp. ¶ 75 (citing Sullivan, DX-17, at pp. 23, 30, 31, 35, 39, 41, 51-53 and Burns, DX-27, at 49, 97, 140, 159, 162 and 201).

Defendants' cases are inapposite. In *Khatabi v. Bonura*, 2017 WL 10621191, at **4-5 (S.D.N.Y. Apr. 21, 2017), the defendants had no duty to preserve the handwritten notes in question, which were discarded in the normal course of business after they were entered into a computer system. In *Offor v. Mercy Medical Ctr.*, 2019 WL 4918082, at *2 (E.D.N.Y. Oct. 4, 2019), the defendant provided a detailed accounting of its recordkeeping system, as opposed to vague assertions that it did not know what happened to the records in question, along with several corroborating affidavits. In *Orbit One Communications, Inc. v. Numerex Corp.*, 271 F.R.D. 429,

---

[8] Defendants are incorrect in their assertion that Plaintiff "does not even attempt to establish relevance." Opp. Br. at 9. Putting aside that there is no need to do so in light of the presumption of intent discussed above, Plaintiff's motion plainly states "[a]s set forth in Plaintiff's opposition to Defendants' summary judgment motion, the books contain a wealth of information which contradicts Defendants' portrayal of Ms. Fairstein in the Series.… How Ms. DuVernay marked…a given book, including on the pages containing contradictory information, is relevant to her state of mind." Moving Br. at 9.

[9] *Mestecky v. NYC Dep't of Ed.*, 2016 WL 8677285, at *5 (E.D.N.Y. Feb. 5, 2016) is distinguishable from the present case because the plaintiff possessed exact copies of the documents that were destroyed and did not allege that the destroyed copies differed in any way from documents in her possession. Likewise, in *Ispat Inland, Inc. v. Kemper Env'l, Ltd.*, 2006 WL 3478339, at *3 (S.D.N.Y. Nov. 30, 2006), the plaintiff had in his possession exact copies of the documents that a witness discarded.

441-44 (S.D.N.Y. 2010), the data in question was archived or backed up to a server and available for examination by the defendant. In *In re Keurig Greenmountain*, 341 F.R.D. 474, 541 (S.D.N.Y. 2022), the movant failed to request the documents in discovery and failed to question the witness at deposition about the documents that were believed to have been destroyed. Here, Plaintiff requested Ms. DuVernay's research materials in discovery, she did not disclose that she no longer had the books that she identified and there was no opportunity to depose Ms. DuVernay about this issue. There is also more than sufficient evidence, here, that Ms. DuVernay's books existed and they were not preserved.

Finally, Defendants make no valid argument as to why Plaintiff's motion should be denied as untimely. Their disparagement of the extensively detailed timing challenges set forth in Plaintiff's Moving Brief, (at pages 2-4 and 9-10), does not change that they admittedly were aware of Plaintiff's objection to Ms. DuVernay's declaration and suffered no prejudice as a result of the timing of Plaintiff's motion. *See* Opp. Br. at 5. While Defendants contend that Plaintiff should have filed her motion earlier, Plaintiff would not have had to address the spoliation issue during summary judgment briefing if Defendants had disclosed that Ms. DuVernay "did not keep" her books at any point during the 10-month fact discovery period (including prior to her deposition).

## CONCLUSION

For the above stated reasons, and those set forth in Plaintiff's motion, Plaintiff respectfully requests that the Court grant Plaintiff's motion for sanctions against Ms. DuVernay, along with such other and further relief as the Court deems just and proper.

Dated: New York, New York
        February 10, 2023

                                        Respectfully Submitted,

                                        By:  /s/ *Kara L. Gorycki*

6

Kara L. Gorycki (KG 3519)
Andrew T. Miltenberg (AM 7006)
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
Phone: (212) 736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com

*Attorneys for Plaintiff Linda Fairstein*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2023, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Kara L. Gorycki*