UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LINDA FAIRSTEIN,

                      Plaintiff,                        20-cv-8042 (PKC)

      -against-                            ORDER ON SEALING

NETFLIX, INC., AVA DUVERNAY and
ATTICA LOCKE,

                      Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

       Three motions to seal have been filed in connection with defendants' motion for summary judgment. (ECF 124, 132, 162.) This Order will not summarize the parties, relevant non-parties or plaintiff's defamation claims, and assumes the reader's familiarity with the Court's Opinion and Order of September 19, 2023. (See ECF 216.) For the reasons that will be explained, the sealing motions are granted in part and denied in part.

       A three-step analysis governs whether a filing may be submitted under seal or with redactions. First, a court determines whether the filing is a "judicial document;" second, it determines the weight of the presumption of access afforded to the document; and third, it identifies and weighs factors "that legitimately counsel" against public access. Mirlis v. Greer, 952 F.3d 51, 59 (2d Cir. 2020). Sealing or redaction is warranted if, among other reasons, the privacy interests of the party resisting disclosure outweigh the presumption of access. Id.

       Judicial documents are materials that are "'relevant to the performance of the judicial function and useful in the judicial process. . . .'" Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006) (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")). "[D]ocuments submitted to a court for its consideration in a summary

judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." Id. at 121. Summary judgment filings should not remain under seal "absent the most compelling reason" or "absent exceptional circumstances." Id. (quotation marks omitted). That is because the right of public access "is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II").

"Finding that a document is a 'judicial document' triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access." Newsday LLC v. Cnty. of Nassau, 730 F.3d 156, 167 n.15 (2d Cir. 2013). When there is a strong presumption of access, as is the case here, "'continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim.'" Brown v. Maxwell, 929 F.3d 41, 47 (2d Cir. 2019) (quoting Lugosch, 435 F.3d at 124).

Courts must consider the "nature and degree of the injury" if information is publicly disclosed. Mirlis, 952 F.3d at 61. Information should not be redacted merely because it might harm a party's public reputation. Sony Ericsson Mobile Commc'ns AB v. Delta Elecs. Pub, Co. (Thai.), 2009 WL 959639, at *2 (S.D.N.Y. Apr. 8, 2009) (Jones, J.). "A possibility of future adverse impact on employment or the celebrity status of a party is not a 'higher value' sufficient to overcome the presumption of access to judicial documents. Generalized concerns of

adverse publicity do not outweigh the presumption of access." Bernsten v. O'Reilly, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018) (Batts, J.) (quotation marks, internal citations and brackets omitted); accord Doe v. City of New York, 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019) (Nathan, J.).

Redaction may be appropriate to protect confidential information. Amodeo II, 71 F.3d at 1047-48. The privacy interests of third parties "should weigh heavily in a court's balancing equation." S.E.C. v. TheStreet.Com, 273 F.3d 222, 232 (2d Cir. 2001) (quotation marks omitted). Such privacy interests "are a venerable common law exception to the presumption of access." Amodeo II, 71 F.3d at 1051. In this defamation case, some of the documents at issue involve communications with third parties that relate to the production, marketing and public reception of "When They See Us," and touch in some way on issues relevant to the parties' arguments on actual malice and their understanding of Fairstein's depiction in the series. Some of the third parties to these communications participated in the series' creation or were involved in its marketing and publicity. Thus, while the Court affords weight to the privacy interests of third parties and, in many instances, concludes that they outweigh the presumption of public access, many of these third parties are differently positioned than, for example, a customer whose confidential information is swept up in a broad category of otherwise-relevant materials. See, e.g., Olson v. Major League Baseball, 29 F.4th 59, 91 (2d Cir. 2022) (noting that movant's "third-party status should be placed in context" given its close affiliation with the defendant).

DEFENDANTS' SEALING MOTION.

Defendant Locke's notes on interviews with the Five (Spears Dec. Exs. 3 to 7). These exhibits are handwritten notes taken by Locke during the writing staff's interviews with

the Five. The notes do not appear to pertain to any of the men's views of Fairstein or their interactions with her and often reference details about their personal and family lives. Had these materials touched on the basis for defendants' depiction of Fairstein, the right to public access would likely outweigh any privacy interests of the Five. However, these materials chronicle biographical details and personal impressions that do not obviously pertain to Fairstein or any issue in this litigation. Because the privacy interests of non-parties outweighs the right of public access, the sealing motion will be granted as to these exhibits.

Writing staff notes and communications about the Five (Spears Dec. Exs. 8 and 9). Exhibit 8 is an email between Locke and Swicord with redaction to discussion about the depiction of a non-party's health and substance-abuse problems. Exhibit 9 is approximately 30 pages of handwritten notes taken by Locke that summarized non-public interviews with the Five, including personal and family details. These materials do not pertain to Fairstein or other issues in this litigation. Because the privacy interests of non-parties outweighs the right of public access, the sealing motion will be granted as to these exhibits.

Swicord's writing room binder (Spears Dec. Ex. 10). The exhibit contains a 416-page excerpt of Swicord's writer's room research binder. Defendants state that Fairstein has filed this exhibit with redactions as to certain personal details about the Five. The Court is unable to discern which portions of this lengthy exhibit have been redacted. The motion is denied without prejudice to this exhibit. Defendants may re-file their motion as to this exhibit, subject to identifying with precision their proposed redactions.

Interrogation transcripts (Spears Dec. Exs. 11 to 13). Defendants seek to maintain redactions to portions of the 1989 transcripts of the interrogations of Wise, McCray and Richardson. Those redactions are limited to residential addresses identified during the

questioning, which, defendants state, are not publicly available in versions of the transcripts published elsewhere. Because the privacy interests of non-parties in these residential addresses outweighs the right of public access, the sealing motion will be granted as to these exhibits.

Writers' staff timeline involving the Five (Spears Dec. Ex. 14.) Defendants urge that the 75-page document contains private information about the Five. It is true that the exhibit includes lengthy biographical and background notes on the Five that describe personal details, including, for example, the nature of certain family relationships. However, the section of the exhibit titled "Part One Timeline" relates to the depiction of Fairstein in Episode One of the series. There are no apparent privacy interest or other harms that outweigh the right of public access to that portion of the exhibit. The sealing motion is denied without prejudice to this exhibit. Defendants may re-file the motion to provide for narrower sealing or redaction of discussion of the Five's personal lives but preserves the right to public access as to the document's discussions of Fairstein and the investigation of law enforcement more broadly.

Video of Angela Black interview. Defendants seek to maintain under seal a non-public videotaped interview with Angela Black, the sister of Kevin Richardson. Relevant portions of Angela Black's interview, which relate to her interactions with Fairstein, have been transcribed and quoted in the parties' submissions. There is no suggestion that the remainder of the interview has any bearing on the summary judgment motion. Because the privacy interests of Angela Black as a non-party outweighs the right of public access, the sealing motion will be granted.

Emails and communications referencing third parties and contact information (Spears Dec. Exs. 15, 16, 19, 37). These documents contain redactions to personal contact information and discussions of individuals with no connection to the depiction of Fairstein or any

other issue in this case.  Document 16 appears to list only the names and phone numbers of persons in DuVernay's contacts lists and Document 37 appears to list the same information as to Locke.  Because the privacy interests of non-parties outweighs the right of public access, the sealing motion will be granted as to these documents.

<u>Emails and electronic communications that discuss Fairstein (Spears Dec. Exs. 17-18, 20-36, 38-39, 49).</u>  These documents are emails and other messages sent by or to the defendants that, broadly described, enthuse about the negative attention Fairstein received after the series was released.  They also include redactions to deposition transcripts where these communications were subject to questioning.

Defendants urge that these materials should be maintained under seal to protect the privacy interests of third parties.  These third parties include series producers, writers, actors and editors, as well as media personalities and at least one Netflix executive, and attorneys who participated in the underlying litigation.  As the Court repeatedly noted in the Opinion and Order of September 19, a speaker's subjective animus is just one component of the actual-malice analysis and is not itself determinative, but these communications are relevant to defendants' subjective understanding of Fairstein and her depiction in the series.  Defendants have not pointed to any countervailing harm or risk of harm that could arise from public access to these documents, which are squarely relevant to the issues discussed in the Opinion and Order.

As to Exhibit 36 specifically, it may be filed with redactions to all emails preceding the message of 12/20/2018 at 8:05 a.m., which include personal discussions wholly unrelated to this case.  Further, in all exhibits, redactions shall be maintained as to email address, phone number, physical address, and similar contact information.  The names of individual non-party recipients and senders may also be redacted.

Because defendants have not identified interests that outweigh the right of public access, the sealing motion will otherwise be denied as to these documents.

Redaction of Swicord's notes on personal matters (Spears Dec. Ex. 40.)  This packet of handwritten notes from Swicord largely involves work on the series but contains two pages of redactions covering solely personal tasks.  The privacy interest in these notes outweighs the presumption of public access and the motion to maintain the redactions will be granted.

Certain communications to and from Swicord (Spears Dec. Exs. 41 to 43.) Exhibit 41 is an email to Swicord from a personal friend, in which the friend describes her reaction to the series and Swicord replies.  Exhibit 42 contains redactions to Swicord's deposition transcript on certain matters not relevant to this proceeding.  These materials do not touch on the series' depiction of Fairstein and Swicord's privacy interests outweigh the right of public access to these materials.  Defendants' motion will be granted as to these two exhibits, except for the redactions contained on pages 201 to 203 of the deposition transcript, which relate to Swicord's understanding of a 2002 NYPD report.

Exhibit 43 is an email exchange between Swicord and a personal friend.  The final message from Swicord, dated 10:27 a.m. and beginning, "Linda Fairstein is still maintaining . . . ." discusses subject matter relevant to the summary judgment motion.  The remainder of Exhibit 43 may be filed with redactions.

Communications about casting (Spears Dec. Exs. 44-47.)  These documents pertain to the casting of actors who were considered for the series but ultimately did not appear in it.  They contain limited redactions to the names of third parties, and relevant casting descriptions of the Fairstein character are unredacted.  The privacy interests of the third parties

named outweigh the presumption of public access. The sealing motion will be granted as to these exhibits.

<u>Summary of DuVernay's press interview (Spears Dec. Ex. 48.)</u> This email summarizes a May 2019 press interview with DuVernay that apparently involved discussions about the accuracy of certain lines of dialogue and DuVernay's goals for the series, including its depiction of Fairstein. This discussion is relevant to the summary judgment motion and defendants' broad invocation of privacy is not a countervailing interest that outweighs the presumption of public access. The sealing motion will be denied as to this exhibit.

<u>Exhibits containing proprietary information (Spears Dec. Exs. 50 to 63).</u> Exhibits 50 to 63 include documents about Netflix's internal viewing metrics and details about its marketing campaign for the series. They also include contracts related to the work of Swicord, DuVernay and Locke on the series. These are proprietary and confidential materials about business operations that, if disclosed, have the potential to harm Netflix's competitive standing. <u>See generally</u> <u>Amodeo II</u>, 71 F.3d at 1051 ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts . . . ."); <u>Skyline Steel, LLC v. PilePro, LLC</u>, 101 F. Supp. 3d 394, 412 (S.D.N.Y. 2015) (sealing "highly confidential sales information, including pricing information" as well as information "revealing confidential negotiations" with a customer) (Furman, J.).

The motion to maintain these exhibits under seal will be granted with two limited exceptions. Exhibit 51A, at DEFS 144764, and Exhibit 52, at DEFS 169114 and 169116 contains discussion of a communications strategy specific to Fairstein. Netflix is a defendant in this action and its understanding of the Fairstein character's portrayal was relevant to the

adjudication of the summary judgment motion. There is no countervailing interest that outweighs the public right of access to these limited discussions of Fairstein.

The sealing motion will therefore be granted as to exhibits 50 to 63, with the exception to the discussions of Fairstein contained at Exhibit 51A, at DEFS 144764, and Exhibit 52, at DEFS 169114 and 169116.

PLAINTIFF'S SEALING MOTION.

Fairstein's emails about the use of the term "wilding" (Gorycki Dec. Exs. 2-3). Fairstein seeks to maintain under seal a 2012 email that she sent to Lederer about the implications of the term "wilding" as construed by Sarah Burns and disputes that the word was "made up to liken the thugs animals in a racist way." She also seeks to maintain under seal a portion of her deposition transcript where she was questioned about this email. How the term "thugs" should reasonably construed was touched on in the parties' summary judgment submissions, Fairstein has disputed the reliability of Burns's work, and claims dismissed in the Rule 12(b)(6) motion related to the use of the terms "wilding" and "animals." Fairstein has not pointed to a countervailing privacy interest that outweighs the public's right of access, and the motion to seal exhibits 2 and 3 will be denied.

Fairstein's role in the CentralParkFiveJoggerAttackers.com website (Gorycki Dec. Exs. 4-8). Fairstein seeks to maintain under seal communications about her role in the creation of a website that posts videos and documents from the underlying case, including an email suggesting that the site is intended to refute "When They See Us" and will contain "[o]nly stuff we want on it . . . ." Fairstein has urged that defendants failed to review or consider widely available documents when writing and researching the series. She has not identified a countervailing privacy interest that weighs against disclosure of her participation in creating a

publicly available website that she has sought to publicize. To the extent that these exhibits include email addresses and the names of various non-parties involved in creating the website (see Exs. 5, 6, 8), their names and contact information may be redacted. The sealing motion is otherwise denied as to exhibits 4 through 8.

<u>Fairstein's communications about a proposed movie depicting the Central Park Jogger case (Gorycki Dec. Exs. 9-10).</u> Fairstein seeks to maintain under seal a 2018 email she sent that outlines a proposed film version of the underlying events and portions of the deposition transcript where she was questioned about the proposed project. The email states in part:

> Just FYI about this –
>
> we have documents no one else has –
>
> we being my 'team' –
>
> never spoken publicly –

(Ex. 10.) The email then disparages the expected version of events from "When They See Us" and speaks of telling the "real story." Fairstein broadly urges that the email involves her "confidential business information" and that it implicates the privacy interests of third parties. But the suggestion in the email that Fairstein exclusively possessed relevant, non-public documents is potentially relevant to the issue of actual malice. Fairstein has not identified a countervailing public interest that weighs against public access. To the extent that the email lists individuals' contact information, and that Fairstein named in her deposition the individuals who she considered to be on her "team," such contact information and names may redacted. The sealing motion will otherwise be denied as to exhibits 9 and 10.

<u>Identifying information about a non-party (Gorycki Dec. Exs. 11-13.)</u> These exhibits related to Fairstein's 2019 attempt to communicate with a non-party to this case who

was affected by the events of April 19, 1989. The proposed redactions are limited to the name and identifying information for this person. The redactions are narrowly tailored and the privacy interests of the non-party outweigh the right of public access to these materials. The sealing motion will therefore be granted as to these exhibits.

<u>Redactions to Fairstein's 5/7/2014 email with Lederer (Gorycki Dec. Ex. 14.)</u> Fairstein moves to redact email addresses and a string of personal messages with Lederer that accompany an email that Fairstein sent to a publisher that disputed portions of a book; no aspect of that publisher email is redacted. The redactions are narrowly tailored and the privacy interests in the redacted messages outweigh the right of public access. The sealing motion will therefore be granted as to Exhibit 14.

<u>Fairstein's emails about the revocation of a writing award (Gorycki Dec. Exs. 17-18).</u> In these email exchanges, Fairstein discusses the expected revocation of a mystery-writing award she expected to receive and discusses defendant Locke in disparaging terms. This award's revocation was described in the Complaint and discussed in the parties' summary judgment submissions as part of the public backlash against Fairstein. Fairstein has not identified a countervailing interest that outweighs the right of public access. However, the names and email addresses of the other individuals in the email exchanges may be filed under redaction. The sealing motion will otherwise be denied as to exhibits 17 and 18.

<u>Redaction of email addresses and contact information (Gorycki Dec. Ex. 19.)</u> Fairstein seeks to maintain redactions of email addresses and an office address included in this email chain. The privacy interests in such contact information outweigh any presumption of public access, and the motion will be granted as to Exhibit 19.

<u>Lederer's email of May 30, 2019 (Gorycki Dec. Ex. 20.)</u>  This email chain includes a message written by Lederer that describes certain aspects of the DNA tests taken from crime-scene samples.  Lederer is not a party to this action and the email does not relate to the depiction of Fairstein.  All parties agree that the email chain should be maintained under seal.  The privacy interests of non-party Lederer outweigh the presumption of access to this email, and the motion to seal will be granted as to Exhibit 20.

<u>Emails in which Fairstein used harsh language (Gorycki Dec. Exs. 15, 16, 21 and 22).</u>  Fairstein urges that sealing should be maintained as to four exhibits that contain harsh references to persons involved in the series or participants in the underlying events.

As noted, information ought not be sealed or redacted solely because it may harm a party's public reputation or celebrity status, and generalized concerns of adverse publicity do not outweigh the presumption of public access.  <u>See</u> <u>Bernsten</u>, 307 F. Supp. 3d at 169; <u>Sony Ericsson</u>, 2009 WL 959639, at *2.  At the same time, documents reflecting "embarrassing conduct with no public ramifications . . . will weigh more heavily against access than conduct affecting a substantial portion of the public."  <u>Amodeo I</u>, 71 F.3d at 1051.

The contents of the exhibits are as follows:

- Exhibit 15 is a 2012 email in which Fairstein described an upcoming court date.  Fairstein notes her displeasure with the Ken Burns documentary and makes a disparaging reference to the Five.
- Exhibit 16 is a 2019 email in which Fairstein makes disparaging remarks about DuVernay, Ken Burns and the Five, and references the public availability of videos from the underlying case.
- Exhibit 21 is a 2018 email chain in which Fairstein makes disparaging remarks about a participant in the underlying events of 1989 in the context of discussing the series.
- Exhibit 22 is a 2018 email chain that begins with Fairstein encouraging two participants in the events of 1989 to speak positively to the press about the work of police and prosecutors.  In the chain, Fairstein then forwards her message to a different non-party and speaks harshly about

>the initial recipients for not being more vocal in their support.  Fairstein also discusses the withdrawal of her anticipated mystery-writers' award.

Defendants submitted these exhibits in support of their argument that they did not act with actual malice by showing the Fairstein character as using abrasive and profane language because such dialogue is consistent with her real-life practices.  While the Court did not detail the contents of these exhibits in its Opinion and Order, it reviewed them when adjudicating the motion and broadly referenced them, observing that defendants did not have access to these communications during the series' writing and production, and that the materials therefore did not inform the actual-malice analysis.  (Opinion & Order at 42 n.5.)

The Second Circuit has stated that the highest presumption of public access attaches when documents "are relevant to the performance of the judicial function, not whether they were relied upon.  Indeed, decision-makers often find that a great deal of relevant material does not ultimately sway their decision."  Brown, 929 F.3d at 50.  "It is not, and should not be, an easy matter to deny the public access to documents that are utilized in judicial proceedings and form part of the basis of judicial decision-making, since the public is ordinarily entitled to review such material in order to understand and evaluate the actions of the courts." Newsday, 730 F.3d at 167.  The right of public access "is an essential feature of democratic control.  Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior.  Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." Amodeo II, 71 F.3d at 1048.

As countervailing interests weighing against disclosure, Fairstein broadly cites to "embarrassment, unwarranted controversy and potential harm to Plaintiff."  (ECF 129 at 15, 16,

21, 22.)[1]  She points to an earlier affidavit that quoted hostile and threatening comments posted about her on social media.  (ECF 35 ¶ 19.)  "[E]mbarrassing conduct with no public ramifications . . . will weigh more heavily against access than conduct affecting a substantial portion of the public."  Amodeo II, 71 F.3d at 1051.  Fairstein is the plaintiff in this action, not a third party, and she brought claims directed to depictions of her conduct as a public figure acting in an official capacity.  Defendants' unsuccessful summary judgment motion raised significant First Amendment arguments with public ramifications.  The communications in these exhibits touched on matters at issue in this proceeding, including Fairstein's disagreement with the versions of events advanced by Ken Burns and DuVernay and the withdrawal of the mystery-writers' award.  To the extent that these exhibits risk potential embarrassment or controversy, they relate to plaintiff's own words on matters pertaining to her conduct as a public figure carrying out a public function, and not communications about extraneous personal matters unrelated to this litigation.

        As documents that were relevant to the judicial function of adjudicating a First Amendment issue relating to a public figure, Exhibits 15, 16, 21 and 22 are afforded the highest presumption of public access, and the countervailing interests identified by Fairstein do not outweigh that presumption.  The motion to maintain these documents under seal will be denied.

        The documents will be filed with redactions to all third parties' names and the substance of any third party's communications contained in the exhibits.

---

[1] Fairstein also urges that these communications would likely be inadmissible at trial. But the presumption of public access and the reasoning of Lugosch and its progeny are directed to different concerns than the Federal Rules of Evidence.

LEDERER'S SEALING MOTION.

Lederer, who is a non-party, has filed a motion to maintain the sealing and redaction of six exhibits filed in connection with defendants' summary judgment motion.

Lederer moves to maintain redactions to her email address and replies that she wrote to Fairstein in various email chains. (Liston Dec. Exs. B, C, D, F, G.) Lederer has a strong privacy interest in the use of her personal email address. As a non-party, her responses to Fairstein do not bear on the issues adjudicated in the summary judgment motion, and her privacy interests outweigh the presumption of public access to these statements.

Exhibit E is an excerpt of Lederer's deposition transcript, in which she was questioned about the May 30, 2019 email discussed above in connection with Exhibit 20 to the Gorycki Declaration. Lederer's views and statements about this DNA evidence is far removed from Fairstein's claims, and, as a non-party, her privacy interests outweigh the presumption of public access.

Lederer's sealing motion will be granted in its entirety.

CONCLUSION.

Defendants' motion to seal is GRANTED as to the following exhibits to the Spears Declaration: 3-9, 11-13, 15-16, 19, 37, 40-41, 44-47, 50, 51B, 53-63. It is GRANTED IN PART as to the following exhibits: 42, 43, 51A, 52. It is DENIED WITHOUT PREJUDICE as to the following exhibits: 10, 14. It is DENIED as to the following exhibits: 17-18, 20-36, 38-39, 48, 49.

Plaintiff's motion to seal is GRANTED as to the following exhibits to the Gorycki Declaration: 11-14, 19-20. It is DENIED as to the following exhibits: 2-10, 15-16, 21-22.

The motion to seal of non-party Lederer is GRANTED in its entirety.

Any redactions shall be made consistent with this Order.

The Clerk is respectfully directed to terminate the motions. (ECF 124, 132, 162.)

SO ORDERED.

                                                 P. Kevin Castel
                                        United States District Judge

Dated: New York, New York
         September 21, 2023