# Exhibit 7

# LITIGATION SERVICES HANDBOOK

## *The Role of the Financial Expert*

FIFTH EDITION

*Edited by*

Roman L. Weil
Daniel G. Lentz
David P. Hoffman

WILEY
John Wiley & Sons, Inc.

CHAPTER 3

# CAUSATION ISSUES AND EXPERT TESTIMONY*

Randy C. Joshi
Catherine F. Madrid
Lee-Anne V. Mulholland

CONTENTS

3.1 Introduction 3.1
3.2 The Fundamentals of Causation 3.2
(a) Negligence 3.3
(b) Common Law Fraud 3.6
(c) Breach of Contract 3.7
(d) Securities Fraud 3.8
3.3 Expert Testimony on Causation Issues 3.11
(a) Admissibility of Expert Testimony 3.11
(b) Expert Testimony versus Fact Testimony 3.12
(c) Securities Fraud 3.13
(d) Expert Sensitivity to Alternative Outcomes 3.14

NOTES 3.15

LIST OF CASES 3.22

## 3.1 INTRODUCTION

Proof that a defendant's wrongful conduct caused a plaintiff to suffer damages is a key concept in the determination of culpability in civil litigation. Testimony of a qualified expert can help the trier of fact—that is, the jury, or the judge in a non-jury trial—to decide whether the plaintiff has proved this causal link.

Causation is a simple concept: Did the defendant's wrongful conduct produce the damage suffered by the plaintiff? Some situations have obvious causation, such as when a gunshot fired by the defendant hits the plaintiff. In others, however, such clarity does not exist. Does a public company's announcement that it will miss quarterly earnings projections cause its stock price to drop, as plaintiffs in a shareholder class action lawsuit might claim, or is some other factor at work, such as bad news about the economy that made the entire stock market plummet the same day?

*The authors acknowledge Lawrence Ranallo and Diana Weiss, who coauthored the version of this chapter that appeared in the fourth edition of the *Litigation Services Handbook*. This chapter retains much of their work. The authors thank Bret H. Ladine, Esq., and Bejan D. Faniba, Esq., for their contributions to this chapter.

The law follows logic. It requires that the plaintiff prove more than correlation to establish causation.[1] Accordingly, courts reject expert testimony on causation that identifies merely a correlation between two variables.

Courts similarly refuse to find causation when an expert neglects to consider other factors that could have caused—or at least contributed to—the plaintiff's damages, even when the defendant has indisputably engaged in legally actionable misconduct. This refusal makes clear that to ensure the credibility and sometimes even admissibility of their testimony, expert witnesses must understand both the applicable causation standards and the relevant facts regarding causation.

The legal standard for establishing causation varies, depending on both the nature of the legal claim (e.g., negligence, common law fraud, securities fraud) and the law of the relevant jurisdiction. All courts, however, require that the defendant's wrongful conduct *cause* the damages allegedly suffered by the plaintiff. A financial expert retained to measure damages must therefore understand and be prepared to explain the following:

- The defendant's wrongful conduct;
- How the plaintiff alleges the defendant's wrongful conduct *caused* damages to the plaintiff and how the defendant alleges that *it did not cause* damages;
- The logic that connects the defendant's wrongful conduct and the plaintiff's damages;
- Other factors that could have caused or exacerbated the plaintiff's damages; and
- Whether the plaintiff's damages were reasonably expected to result from the defendant's wrongful conduct.

The first half of this chapter focuses on the legal standards for establishing causation in the cases where financial experts most often testify. The second explains why financial experts need to account for causation in their analyses and assessments. Chapter 4 also discusses causation and how it relates to damages theories and models.

## 3.2 THE FUNDAMENTALS OF CAUSATION

Exhibit 3-1 illustrates the two components of causation required regardless of the legal claim asserted: (1) actual cause; and (2) legal cause. We will first discuss




**Exhibit 3-1. Actual versus Legal Cause**

whether (or how
are most often ir

*Actual Cause*
*Legal Cause:*

**(a) Negligence.**
bility in neglige
professionals.[2] P
ance of evidence
not to be true.[4] F
tumor visible on
to full recovery.
sult. In such a ca
ble on the x-ray
radiology and th

*(i) Actual Cause.*
tion in negliger
and sometimes
negligent act and
the plaintiff can
cause.[6]

Some courts c
*qua non* (literally,
of the event if t
versely, the defe
have occurred wi

Other courts c
in bringing abou
*(Second) of Torts,*
vant in deciding
referred to as the

- The numb extent of tl
- Whether tl continuous situation h responsibl
- Lapse of ti

These three ele
causes, each by a

ın correlation
on causation

ts to consider
the plaintiff's
.egally action-
lity and some-
st understand
.cts regarding

ıg on both the
:curities fraud)
equire that the
ɔd by the plain-
ore understand

*caused* damages
*ause* damages;
nd the plaintiff's

ıintiff's damages;

to result from the

: establishing cau-
ıe second explains
alyses and assess-
damages theories

ɔd regardless of the
'e will first discuss



whether (or how) these components are present in the cases that financial experts are most often involved in or provide testimony.

**Components of Causation**

*Actual Cause + Legal Cause = Liability*

*Actual Cause: The defendant's conduct actually causes the plaintiff's damages.*

*Legal Cause: The defendant's conduct gives rise to legal liability for the plaintiff's damages.*

**(a) Negligence.** Causation plays a central role in establishing the defendant's liability in negligence cases, including those that involve alleged malpractice by professionals.[2] Plaintiffs bear the burden of proving negligence by a preponderance of evidence,[3] that is, by showing that their allegations are more likely than not to be true.[4] For example, suppose a radiologist failed to diagnose a cancerous tumor visible on an x-ray when it could have been treated successfully and led to full recovery. Instead, the cancer went untreated and the person died as a result. In such a case, the failure to diagnose the early-stage tumor when it was visible on the x-ray constitutes negligence within the professional medical field of radiology and this negligence was the cause of the wrongful death.

*(i) Actual Cause.* Although courts lack consensus on a standard for actual causation in negligence cases, "the focus [always] remains on the fundamental and sometimes metaphysical inquiry into the nexus between the defendant's negligent act and the resultant harm to the plaintiff."[5] Regardless of the standard, the plaintiff can use either direct or circumstantial evidence to prove actual cause.[6]

Some courts cast actual cause in negligence cases in terms of a but-for or *sine qua non* (literally, "without which not") test: "The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event if the event would have occurred without it."[7]

Other courts consider whether the defendant's conduct is a substantial factor in bringing about the plaintiff's damages.[8] Following § 433 of the *Restatement (Second) of Torts*, those courts have identified the following considerations as relevant in deciding whether the defendant's conduct meets the standard, generally referred to as the *substantial factor test*:

- The number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
- Whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and
- Lapse of time.[9]

These three elements address the concern in situations where two independent causes, each by a different defendant, bring about the plaintiff's damages, and

when either cause by itself would have resulted in the same damages, courts would absolve both defendants of liability for negligence, to the plaintiff's detriment.[10] The test also helps resolve those cases where "a similar, but not identical result would have followed without the defendant's act . . . [or] one defendant has made a clearly proved but quite insignificant contribution to the result, [such] as where he throws a lighted match into a forest fire."[11]

Aside from these two situations, the but-for and substantial factor tests should produce the same legal conclusion.[12] This congruence follows from the fact that "the substantial factor test subsumes the but-for test. If the conduct which is claimed to have caused the injury had nothing at all to do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor, in the production of the injuries."[13]

**Standards for Actual Cause in Negligence Cases**

| | |
|---|---|
| Sine qua non: | *but for the defendant's conduct, the plaintiff would not have suffered damages.* |
| *Substantial factor:* | *even though it was not the only cause, the defendant's conduct was a substantial factor causing the plaintiff's damages.* |

*(ii) Legal Cause.* Proof of actual cause is alone insufficient to establish the defendant's liability for negligence; the plaintiff must show that the defendant's conduct is also the legal cause of his damages.[14] Legal cause "tempers the expansive view of causation [in fact]."[15] As one court has explained:

> The law does not undertake to charge a person with all the *possible* consequences of a wrongful act, but only with its probable and natural result; otherwise, the punishment would often be entirely disproportioned to the wrong, thereby impeding commerce and the ordinary business of life, and rendering the rule [of causation] impracticable.[16]

Thus, one can best understand legal cause as demarcating a certain point beyond which "the law arbitrarily declines to trace a series of events."[17] The determination of this point is not a matter of "logic" but instead of "practical politics," reflecting considerations "of convenience, of public policy, [and] of a rough sense of justice."[18]

- **Foreseeability.** Courts generally define legal cause in negligence cases in terms of foreseeability,[19] which they consider to be an issue of fact.[20] Courts do, however, vary somewhat in how they apply this concept. Some courts consider whether the plaintiff's injury is a "natural and probable consequence" of the defendant's conduct.[21] Others focus on whether a "reasonable person" would have foreseen the conduct causing the plaintiff's injury.[22] Finally, others still (albeit a small number of courts) assess whether the plaintiff's injury is the natural and probable consequence of a negligent act *and* could have been reasonably foreseen in light of all the circumstances.[23] This divergence underscores the importance to the expert witness of understanding the applicable law concerning causation in the jurisdiction in which a case is pending.

ages, courts
ıntiff's detri-
not identical
ıe defendant
o the result,

r tests should
ı the fact that
luct which is
he injuries, it
ıtial factor, in

: have suffered

conduct was a

ish the defend-
ıdant's conduct
expansive view

ısequences of a
se, the punish-
impeding com-
[of causation]

certain point be-
nts."[17] The deter-
ractical politics,"
] of a rough sense

egligence cases in
ıe of fact.[20] Courts
cept. Some courts
nd probable con-
ıs on whether a
ısing the plaintiff's
rts) assess whether
ence of a negligent
of all the circum-
the expert witness
n in the jurisdiction






**Exhibit 3-2. Intervening Cause**

- **Intervening causes.** As Exhibit 3-2 illustrates, legal cause fails to materialize when an independent act of another party intervenes subsequent to the defendant's conduct and produces the plaintiff's damages.[24] In this situation, the independent intervening act supersedes the defendant's conduct as the legal cause, thereby freeing the defendant of liability to the plaintiff.[25] Some courts characterize the occasion of an intervening cause as triggering "a legal metamorphosis [of the defendant's conduct] into a remote cause or 'mere condition.'"[26] To the same effect, other courts provide that "a remote condition or conduct which furnishes only the occasion for someone else's supervening negligence is not a proximate cause of the result of the subsequent negligence."[27] More important, a foreseeable intervening cause will not absolve the defendant of liability for the defendant's prior conduct.[28]

*Ventricelli v. Kinney System Rent A Car, Inc.* provides an example of how the intervening cause doctrine works. In that case, Joseph Ventricelli rented a car from Kinney System Rent A Car, Inc.[29] The car had a defective trunk lid that did not close satisfactorily.[30] This problem persisted even after Ventricelli returned the car for repair.[31] When the trunk lid later popped open again, Ventricelli parked the car along the street curb, got out, and attempted to shut the lid.[32] While Ventricelli was trying to shut the lid, the car of Antonio Maldonado, which was parked behind where Ventricelli was standing, lurched forward and struck Ventricelli, severely injuring him.[33]

The Court of Appeals of New York overturned the jury's verdict that Kinney was primarily at fault for Ventricelli's injuries.[34] This reversal rested on the following reasoning:

> The immediately effective cause of plaintiff's injuries was the negligence of Maldonado, the driver of the second car, in striking plaintiff while he was standing behind his parked automobile. That Kinney's negligence in providing an automobile with a defective trunk lid would result in plaintiff's repeated attempts to close the lid was reasonably foreseeable. Not "foreseeable," however, was the collision between vehicles both parked a brief interval before the accident. Plaintiff was standing in a relatively "safe" place, a parking space, not in an actively travelled lane. He might well have been there independent of any negligence of Kinney, as, for example, if he were loading or unloading the trunk. Under these circumstances, to hold the accident a foreseeable consequence of Kinney's negligence is to stretch the concept of foreseeability beyond applicable limits.[35]

This case illustrates how the unforeseeable intervening conduct of another party can render the defendant's conduct *not* the legal cause of the plaintiff's injuries, thereby absolving the defendant of liability to the plaintiff for negligence.




**Exhibit 3-3. Standards of Proof from Least to Most Onerous**

**(b) Common Law Fraud.** Common law fraud, also known as actual or intentional misrepresentation, arises when, among other things:

- The defendant's material misrepresentation causes the plaintiff to act in reliance of it; and
- This reliance causes the plaintiff to suffer damages.[36]

Many courts require the plaintiff to provide clear and convincing evidence to prove common law fraud.[37] Courts recognize clear and convincing evidence as the degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the existence of the fact in question.[38] As Exhibit 3-3 illustrates, this requires an evidentiary showing greater than that necessary to prove a fact by a preponderance of the evidence yet less than that necessary to prove a fact beyond a reasonable doubt, which is the standard of proof in all criminal cases (including those that allege fraud).[39]

Some courts, by contrast, allow the plaintiff to prove common law fraud by a preponderance of evidence.[40] A few other courts require clear and convincing evidence to establish all the elements of fraud except for damages, which may be proved by a preponderance of the evidence.[41]

*(i) Actual Cause.* Reliance equates with actual cause in the context of common law fraud.[42] No consensus prevails on the test for determining actual cause. As with other torts, some courts apply a but-for test, which requires the plaintiffs to show that "but for the alleged misrepresentation . . . , [they] would not have entered the transaction."[43] Others favor a substantial factor test, which provides that

> it is not . . . necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in

influencing hi
stantial part, a

Most courts
cases.[45] For exa
of reliance reco
of this chapter)

*(ii) Legal Cause.*
context of com
foreseeability.
Some courts
*Restatement* (S
representation
action in relian
result from the
injury "is the
representation
jury was a pro
whether "in an
proximate and
probable conse
This diverge
ness of underst
in which a frau

**(c) Breach of Co**
claims. The pla
defendant's bre

*Expectancy:*
*Reliance:*
*Restitution:*

*(i) General versus*
ries of damage
flects a particul
Depending on
der the expecta
causation and c

ıal or intentional

ntiff to act in reli-

ncing evidence to
ncing evidence as
f fact a firm belief
ıibit 3-3 illustrates,
ıry to prove a fact
ıry to prove a fact
ı all criminal cases

ıon law fraud by a
ıar and convincing
ıges, which may be

context of common
ıng actual cause. As
quires the plaintiffs
, [they] would not
ıl factor test, which

th of the fraudulent
: decisive factor in



> influencing his conduct . . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.[44]

Most courts do not permit that reliance be presumed in common law fraud cases.[45] For example, some have refused to extend the rebuttable presumptions of reliance recognized in federal securities fraud law (discussed in Section 3.2(d) of this chapter) to common law fraud.[46]

*(ii) Legal Cause.* Courts generally equate legal causation with foreseeability in the context of common law fraud. They differ, however, in how they characterize foreseeability.

Some courts follow the definition of legal cause set forth in Section 548A of the *Restatement (Second) of Torts*, which provides that "[a] fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance."[47] Other courts frame the issue as whether the plaintiff's injury "is the natural and probable consequence of the defrauder's misrepresentation or if the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud."[48] Yet another court focuses on whether "in an appreciable sense . . . the damage flowed from the fraud as the proximate and not the remote cause, and the damage . . . [is] the natural and probable consequence of the fraud."[49]

This divergence in definitions underscores the importance to the expert witness of understanding the applicable law concerning causation in the jurisdiction in which a fraud case is pending.

**Causation Elements of Common Law Fraud**

*Actual Cause = Reliance*

*Legal Cause = Foreseeability*

**(c) Breach of Contract.** Causation is also an essential element in breach of contract claims. The plaintiff must prove by a preponderance of the evidence that the defendant's breach of contract *caused* the damages.[50]

**Theories of Contract Damages**

| | |
|---|---|
| *Expectancy:* | *Provide the plaintiff with the benefit of the contract.* |
| *Reliance:* | *Compensate the plaintiff for losses caused by contract breach.* |
| *Restitution:* | *Return the plaintiff to pre-contract position.* |

*(i) General versus Consequential Damages.* The plaintiff can seek two distinct categories of damages in a breach of contract case: general or consequential.[51] Each reflects a particular causal relation between the contract breach and the damages. Depending on the circumstances, either or both categories may be available under the expectancy or reliance theory of damages.[52] Chapter 4 further explores causation and damages.

General contract damages seek to compensate the plaintiff for the value of the performance promised.[53] Such damages flow directly from the breach of contract.[54] As one court has explained:

> General damages are those defined as economic injuries that are proximately caused by the breach and are the natural or "usual" consequences. "Usual" refers to those harms suffered by a plaintiff and that are reasonably foreseeable at the time when the contract is formed.[55]

Special or consequential damages compensate the plaintiff for losses other than the value of the promised performance incurred as a result of the defendant's breach of contract.[56] They differ from general damages in that "they do not follow as a necessary consequence of the injury complained of, though they may in fact naturally flow from that injury."[57] In other words, one would not ordinarily consider these damages to be a foreseeable result of the contract breach.[58] Examples of consequential damages include lost profits (unless profits are expressly stipulated in the contract) as well as interest earned under a loan contract.[59]

When courts ponder causation with respect to consequential damages, they use the same analysis applied in the law of negligence (discussed previously in Section 3.2(a)).[60] They first ascertain whether the defendant's breach caused the plaintiff's consequential damages. Most courts rely on the substantial factor test when the actions of multiple parties contribute to the breach of contract.[61] Thus, plaintiffs need not show that they incurred damages solely because of the defendant's breach to prove actual cause.[62]

As in tort actions, the use of the substantial factor test instead of the alternative but-for test to establish actual cause has little legal consequence:

> The only difference between the two tests is that, when there are multiple potential causes, the substantial factor test accounts for the possibility that other causes may have contributed to plaintiff's injury. A plaintiff still must prove that a defendant's breach of contract was sufficiently connected to the plaintiff's damage that it could reasonably be said to have caused the injury, that is, that defendant was the cause in fact of plaintiff's damages.[63]

When considering consequential damages, courts also undertake an analysis analogous to the foreseeability inquiry that decides legal cause in negligence cases.[64] In doing so, they apply the test set forth in the English case of *Hadley v. Baxendale*: whether both parties contemplated the plaintiff's damages when they formed the contract.[65]

**Elements of Consequential Contract Damages**

*Actual Cause: Substantial Factor or* Sine Qua Non *Test*

*Legal Cause: Foreseeability*

**(d) Securities Fraud.** The six elements of securities fraud, which plaintiffs must prove by a preponderance of evidence,[66] are as follows:

1. A material
2. Scienter (i.e
fraud inves
3. A connectio
or sale of a
4. Transaction
5. Economic l
6. Loss causat

Elements 3, 4,
misrepresentatio
tory. We next di
Refer to Chapters

*(i) Transaction Caus*
the defendant's
engage in the tra
the concept of bu
Plaintiffs mus
representation by
rity.[70] In other
[knew] of the pa
true and because
question."[71]
Affirmative pr
defendant has fai
essary [to prove
reasonable invest
or her] decision.
showing, by a pr
rial fact, the plain
Reliance is als
"in reliance on t
defendant's] ma
depressed."[74] Th
reliance too.[75] As
link between the
by the plaintiff, o
rebut the presum
The fraud-on-t
tiff investor class
omissions much
members across
each individual p
predominance re
Procedure 23(a)(2
The fraud-on-
squarely within t

1. A material misrepresentation or omission;
2. Scienter (i.e., the misrepresentation or omission is intended to deceive or defraud investors);
3. A connection between the misrepresentation or omission and the purchase or sale of a security;
4. Transaction causation;
5. Economic loss; and
6. Loss causation.[67]

Elements 3, 4, and 6 address causation. The connection between a material misrepresentation or omission and purchase or sale of a security is self-explanatory. We next discuss elements 4 (transaction causation) and 6 (loss causation). Refer to Chapters 24 and 25 for more detail.

*(i) Transaction Causation.* Transaction causation, also called *reliance*, requires that the defendant's material misrepresentation or omission cause the plaintiff to engage in the transaction leading to the plaintiff's injury.[68] As such, it is akin to the concept of but-for causation in tort law.[69]

Plaintiffs must show that they (1) either read or heard a material misrepresentation by the defendant; and (2) relied on it in buying or selling a security.[70] In other words, "Reliance . . . generally requires that the plaintiff[s] [knew] of the particular misrepresentation complained of, have believed it to be true and because of that knowledge and belief, purchased or sold the security in question."[71]

Affirmative proof of reliance is unnecessary in two situations. First, when the defendant has failed to disclose material information to investors, "all that is necessary [to prove reliance] is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [his or her] decision."[72] The defendant can rebut this presumption of reliance by showing, by a preponderance of evidence, that even if it *had* disclosed the material fact, the plaintiff would not have acted differently.[73]

Reliance is also presumed where the plaintiff has made a trading decision "in reliance on the integrity of the price set by the market, but because of [the defendant's] material misrepresentations that price ha[s] been fraudulently depressed."[74] The defendant can rebut this fraud-on-the-market presumption of reliance too.[75] As the Supreme Court has explained, "any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."[76]

The fraud-on-the-market presumption of reliance makes certification of plaintiff investor classes seeking damages for alleged defendant misrepresentations or omissions much easier. Because it permits the class to prove reliance by class members across the board, thus obviating the need to prove the reliance of each individual plaintiff, the presumption enables the plaintiff class to satisfy the predominance requirement for class certification under Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).[77]

The fraud-on-the-market presumption places the central issue of reliance squarely within the realm of expert testimony. In this regard, an expert witness is

necessary to establish that the plaintiff is entitled to the presumption that the security in question traded in an efficient market.[78]

Courts have identified the following factors in deciding whether a security trades in an efficient market:

- Average weekly trading volume expressed as a percentage of total outstanding shares;
- Number of securities analysts following and reporting on the stock;
- Extent to which market makers and arbitrageurs trade in the shares;
- Company's eligibility to file SEC registration Form S-3 (as opposed to Form S-1 or S-2);
- Existence of empirical facts showing a cause and effect relation between unexpected corporate events or financial releases and an immediate response in the share price;
- Company's market capitalization;
- Bid-ask spread for stock sales; and
- Float, the shares' trading volume without counting insider-owned shares.[79]

**Proving Transaction Causation**

*Reliance on the defendant's material misrepresentation or omission must be shown, except that such reliance is presumed when there has been*

- *nondisclosure of material information or*
- *a fraud on the market.*

*Both presumptions of reliance are rebuttable.*

*(ii) Loss Causation.* Loss causation connects the defendant's misrepresentation or omission and the plaintiff's economic loss.[80] It resembles legal causation insofar as it establishes the defendant as legally responsible for the plaintiff's loss.[81] The mere purchase of a security at an inflated price does not by itself prove loss causation.[82]

To establish loss causation, the plaintiff must show that it suffered an economic loss as a result of the defendant's misrepresentation or omission.[83] The misrepresentation need not be the sole cause of the economic loss. As one court explained:

> Because market responses, such as stock downturns, are often the result of many different, complex, and often unknowable factors, the plaintiff need not show that the defendant's act was the sole and exclusive cause of the injury he has suffered; he need only show that it was a substantial, i.e., significant contributing cause.[84]

Although the defendant's misrepresentation or omission need not be the sole cause of the plaintiff's economic loss to establish loss causation, the plaintiff nevertheless can recover only damages caused by the misrepresentation or omission.[85] Accordingly, in calculating the plaintiff's recoverable damages, the court must isolate and remove other contributing causes.[86] An expert witness often facilitates this task.[87]

*The defendar*
*cause, of the p*

**3.3 EXPERT TE**

Lawyers someti
engaged in wron
the conduct. Li
causation.

These practic
matches betwee
nancial expert t
unless one can s
acts. Similarly,
auditing standa
financial statem
injury.

As these exa
expert testimon
the plaintiff's da
lowing grounds:

- Causation i
rather than
- Causation i

The following
under Federal R
testimony relati
the trier of fact i
long as it compli

- The testimo
- The testimo
- The witnes
the case.

These require
dation and is rel
as experts.[89]

**(a) Admissibility**
jeopardizes the
admissibility of
whether the "ex
it will aid the ju

ı that the se-
er a security
outstanding
;
s;
l to Form S-1
between un-
e response in
l shares.[79]
must be shown,
representation or
causation insofar
intiff's loss.[81] The
itself prove loss
t suffered an eco-
or omission.[83] The
loss. As one court
he result of many
eed not show that
he has suffered; he
ng cause.[84]
need not be the sole
sation, the plaintiff
presentation or omis-
e damages, the court
pert witness often fa-



**Proving Loss Causation**

*The defendant's material misrepresentation or omission must be a cause, not the* only *cause, of the plaintiff suffering an actual economic loss.*

## 3.3 EXPERT TESTIMONY ON CAUSATION ISSUES

Lawyers sometimes ask liability experts to evaluate whether the defendant has engaged in wrongful conduct without regard to whatever harm has flowed from the conduct. Likewise, they frequently instruct damages experts to assume causation.

These practices, when pursued without proper consideration, can lead to mismatches between the expert evidence and the facts of the case. For example, financial expert testimony quantifying the amount of damages lacks relevance unless one can show that the damages resulted from the defendant's wrongful acts. Similarly, proof that an audit conducted pursuant to generally accepted auditing standards (GAAS) would have detected a misstatement in a company's financial statements is irrelevant unless the misstatement caused the plaintiff's injury.

As these examples illustrate, cases involving financial matters often require expert testimony to resolve whether the defendant's wrongful conduct caused the plaintiff's damages. Such expert testimony is frequently challenged on the following grounds:

- Causation is a fact question that depends on the testimony of fact witnesses rather than experts; and
- Causation is a legal issue upon which an expert should not opine.

The following discussion addresses these issues. Each case it reviews arises under Federal Rule of Evidence 702, which provides that a court can admit expert testimony relating to scientific, technical, or other specialized knowledge to assist the trier of fact in understanding the evidence or determining a fact in issue so long as it complies with the following requirements:

- The testimony is based on sufficient facts or data;
- The testimony is the product of reliable principles and methods; and
- The witness has applied the principles and methods reliably to the facts of the case.

These requirements ensure that expert testimony "both rests on a reliable foundation and is relevant to the task at hand."[88] They apply to all witnesses offered as experts.[89]

**(a) Admissibility of Expert Testimony.** The failure to properly consider causation jeopardizes the admissibility of expert testimony on damages. In evaluating the admissibility of expert testimony under Rule 702, a trial court must consider whether the "expert testimony . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."[90] Damages experts who fail to

take causation into consideration risk a ruling that their testimony lacks this essential tie to the facts of the case.

For example, in *Concord Boat Corp. v. Brunswick Corp.*,[91] the U.S. Court of Appeals for the Eighth Circuit overturned a $133 million antitrust judgment based in part on the conclusion that the trial court should have excluded the damages-related testimony of the plaintiff's financial expert. The court found that the expert's damages model "was not grounded in the economic reality of the . . . [relevant] market, for it ignored inconvenient evidence."[92] Among other things, the damages model "failed to account for market events that both sides agreed were not related to any anticompetitive conduct."[93] Based on this and other "deficiencies in the foundation of the opinion," the court held that the expert's conclusions were speculative and unhelpful to the trier of fact.[94]

*Concord Boat* teaches that an expert cannot ignore whether the plaintiff's calculated damages flow from the defendant's conduct or other events. Indeed, even if the court had not excluded the expert's testimony there, the damages calculation would still have been vulnerable to attack as the expert would presumably have been hard pressed to calculate on the witness stand the extent to which his damages calculation would have changed in response to changes in the facts.

**(b) Expert Testimony versus Fact Testimony.** Expert testimony on causation can prove more reliable than fact testimony in financial cases. A breach of contract case in the U.S. Court of Appeals for the Federal Circuit illustrates this situation.

*California Federal Bank v. United States*[95] is one of a series of so-called *Winstar* cases in which banks that purchased failing thrifts during the savings and loan crisis of the late 1980s and early 1990s sought to recover for damages caused by the passage of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA). This act effectively negated beneficial financial statement and regulatory capital provisions of banks' earlier contracts with the federal government to acquire failing thrifts. In *California Federal*, the plaintiff bank, CalFed, alleged that the enactment of FIRREA forced it to sell certain assets, including a large number of adjustable rate mortgages (ARMs), to meet the act's new regulatory capital requirements.[96]

The court held that the government breached its contract with the bank, thus establishing liability. CalFed sought lost profits as damages for this breach, arguing that, but for FIRREA's enactment, it would have retained more ARMs, which would have yielded substantial profits. The government countered that FIRREA did not cause the sale of ARMs, which shrunk the size of the bank, and that other factors existed that would have caused the sale irrespective of the changes in regulatory capital requirements effected by the act.

The government sought to debunk the plaintiff's lost profits claim through a financial expert who testified about the economics of the relevant market and presented an analysis of the operations and financial performance of CalFed. Among other considerations, the expert explained a principle familiar to most financial experts: one would expect the sale of the ARMs to have produced the same amount of profit as retaining them because, in a liquid market, the fair value of the ARMs at the time of their sale would have included the present value of the future cash flow if CalFed had retained them.

The trial cc
recession in tl
Fed to shrink
from the enac
proper for the
rather than th
own intention
The Federal C

the court, sit
fact witnesse
the same tim
to the extent
helped expla
The exper
tion of why a
even in the al
ily result in a
Rule 702 of t
admitted "to
in issue."[99]

Accordingly
the evidence t
bank from recc
*CalFed* dem
dence to supp
prove even mc
to the finder of

**(c) Securities Fra**
rities fraud cas
tion or they ris
For instance
the defendants
fund.[101] In this
tions and pro
would have cu
(NAV) for the
alleged overva
that adverse m
a widening cre
fund's NAV.[10
ion, explaining

if plaintiffs p
were caused l
Here, howeve
*rates and the c*
*attempt to sho*
shown that th

The trial court relied on the government's expert in finding that "it was the recession in the California real estate market in the early 1990s that 'caused Cal Fed to shrink the bank,' not the changes in regulatory requirements that resulted from the enactment of FIRREA."[97] On appeal, CalFed argued that "it was improper for the [trial] court to rely on the testimony of the government's experts rather than the testimony of CalFed's fact witnesses, who testified about their own intentions [i.e., but for FIRREA, they would have retained the ARMs]."[98] The Federal Circuit rejected this argument, explaining that

> the court, sitting as finder of fact, was entitled to weigh the credibility of CalFed's fact witnesses, taking into account their interest in the outcome of the litigation. At the same time, the court was entitled to consider the government's expert testimony to the extent that it shed light on the economics of finance and banking and thus helped explain why CalFed sold the ARMs following FIRREA's enactment.
>
> The expert testimony on which the court relied in this case provided an explanation of why a bank such as CalFed might well have chosen to dispose of the ARMs, even in the absence of a breach . . . , and why the sale of the ARMs did not necessarily result in a loss to CalFed. The expert testimony thus satisfied the requirement of Rule 702 of the Federal Rules of Evidence, which permits expert testimony to be admitted "to assist the trier of fact to understand the evidence or to determine a fact in issue."[99]

Accordingly, the court held that "the inability to prove by a preponderance of the evidence that profits would have been made but for the breach" barred the bank from recovering lost profits.[100]

*CalFed* demonstrates not only how a financial expert can properly present evidence to support or undercut a causation theory but also that such evidence can prove even more useful and credible than fact testimony that appears self-serving to the finder of fact under the circumstances.

**(c) Securities Fraud.** Expert testimony on causation is often a critical issue in securities fraud cases. Experts must connect their opinions to facts relating to causation or they risk the exclusion of their testimony.

For instance, in *Abrams v. Van Kampen Funds, Inc.*, the plaintiff class alleged that the defendants overstated in various prospectuses the value of loans held by the fund.[101] In this respect, the class "contend[ed] that using available market quotations and properly determining fair [market] value based on what the loans would have currently sold for would have resulted in lower daily net asset values (NAV) for the fund."[102] To refute the class's calculation of damages caused by the alleged overvaluation of loans held by the fund, the defendants' experts opined that adverse market conditions, in particular an increase in loan default rates and a widening credit spread, accounted for all or a substantial part of a decline in the fund's NAV.[103] The court barred the experts from testifying regarding this opinion, explaining that

> if plaintiffs prove liability, the burden is on defendants to show that drops in NAV were caused by something other than the alleged misstatements in the prospectuses. Here, however, *the experts do not attempt to connect changes [generally] in loan default rates and the credit spread to changes [specifically] in the fund's NAV nor do they make any attempt to show how much of an effect there may have been.* Therefore, it has not been shown that this testimony is relevant to the damages issues in this case.[104]

The court reached a similar result in *In re Williams*, rejecting proffered expert testimony for failure "to differentiate between losses rooted in causes cognizable under loss causation doctrine, on one hand, and, on the other hand, losses attributable to industry-specific stresses, the meltdown in the telecommunications sector, and other negative developments unrelated to the alleged fraud."[105]

Likewise, in *In re MIVA, Inc.*, a court granted the defendants' motion for summary judgment where an extensive expert analysis on alleged misstatements by MIVA (formerly known as FindWhat.com) failed to specifically connect the statements to the loss.[106] The investors presented evidence from an expert that MIVA's stock was inflated prior to, and continued to inflate after, MIVA's alleged misstatements. The expert did not, however, offer a description of what portion of the inflation was related to MIVA's statements.[107]

Expert testimony is also important in securities fraud class actions alleging fraud on the market by the defendant. As discussed in Section 3.2(d)(i), in class actions involving allegations of fraud on the market, the court presumes the plaintiff's reliance on the defendant's misrepresentation or omission when the security in question is traded in an efficient market. Assessment of whether the security is traded in an efficient market involves factors best evaluated by experts.

A case in the U.S. Court of Appeals for the Fifth Circuit illustrates the importance of expert testimony in establishing that a security is traded in an efficient market.[108] Seeking to proceed under the fraud on the market presumption, the plaintiffs submitted an event study by their own expert to establish the existence of an efficient market for the shares at issue.[109]

The trial court found the study "unreliable and purposefully designed to support [the plaintiff's] market-efficiency conclusion."[110] Absent expert evidence, the plaintiffs had to argue that one should presume an efficient market for any stock traded on NYMEX. The Fifth Circuit rejected this argument and affirmed the lower court's denial of class certification.[111]

Finally, expert witnesses should keep in mind the effects of the burden of proof on causation in securities fraud cases. Under Section 11 of the Securities Act, the defendant bears the burden of proving negative causation (i.e., a cause other than the securities violation). Even when the defendant's expert can undermine the plaintiff's case by presenting evidence that other factors *could have* caused the plaintiff's damages in a Section 11 case, the proof must instead show that there is *a cause in fact other than* the alleged securities law violation.

**(d) Expert Sensitivity to Alternative Outcomes.** In cases in which but-for causation becomes an issue, the expert must prepare to address alternative outcomes. For example, suppose a former client brings a claim against a law firm for improper representation in a bankruptcy proceeding. The plaintiff/debtor contends that, but for the defendant law firm's bad advice, the bankruptcy judge would have confirmed a different plan that provided a superior outcome to either historical equity interests or creditors. The plaintiff's contention hinges on proving that the alternative plan would have

- Been approved for a creditor vote;
- Won approval of the impaired creditors in number and dollar amount;

- Prevailed c
confirmati
- Been held
feasible, an

To carry this
ber and amoun
Such a showing
(1) the relative
(2) the position
and (3) whether
the creditors co
many financial
plaintiff would
and its relevanc
This example
ful and necessa
caused the dam
vide testimony
plaintiff's theor
case, and be rea

**NOTES**

1. *See, e.g., Cr*
*Agland Coop*
2. *See, e.g., Mc*
1989); *Bayly*
(*en banc*); *Jol*
*Spencer Sale*
So. 2d 368, 3
526 (Ill. 200
*sumers Powe*
286, 298 (S.
472, 477 (Te
3. *See, e.g., Bay*
(*en banc*); *C*
*Mobil Chem.*
4. *See, e.g., Sar*
*v. $6,425.00*
*Rights Comr*
The caus
ity, which d
ing that the
*e.g., Greenm*
*Motors Cor*
TORTS § 4
*Scheels Hard*
*& Power Co.*
OND) OF T
ance of the

ffered expert
es cognizable
losses attrib-
nications sec-
."105
ɔtion for sum-
statements by
ɩnect the state-
n expert that
MIVA's alleged
f what portion

ctions alleging
2(d)(i), in class
presumes the
ɔmission when
ɩent of whether
best evaluated

rates the impor-
d in an efficient
resumption, the
ish the existence

signed to support
idence, the plain-
any stock traded
the lower court's

e burden of proof
Securities Act, the
a cause other than
an undermine the
d have caused the
show that there is

h but-for causation
tive outcomes. For
firm for improper
btor contends that,
judge would have
to either historical
on proving that the

dollar amount;



- Prevailed over any competing topping bids that would have been made at a confirmation hearing; and
- Been held by the bankruptcy court to be in the best interests of creditors, feasible, and not likely to be followed by liquidation of the entity.

To carry this burden, the plaintiff would need to show that the required number and amount of creditor interests would have confirmed the alternative plan. Such a showing would necessarily rest on evidence in the bankruptcy regarding (1) the relative value of the alternative plan compared with the confirmed plan, (2) the positions of important interested parties regarding the alternative plan, and (3) whether the alternative plan would serve the highest and best interests of the creditors compared with any other proposed or alternative plans. Given the many financial and bankruptcy issues involved in making this showing, the plaintiff would almost certainly need an expert witness to explain such evidence and its relevance.

This example illustrates why the trier of fact often finds expert testimony helpful and necessary to understand whether the defendant's wrongful conduct has caused the damages claimed by the plaintiff. Even if damages experts do not provide testimony regarding causation, they must nevertheless understand the plaintiff's theory of causation, connect their opinions on causation to facts of the case, and be ready to opine on both alternative outcomes and alternative causes.

## NOTES

1. *See, e.g.*, *Craig v. Oakwood Hosp.*, 684 N.W.2d 296, 312 (Mich. 2004); *Schafersman v. Agland Coop*, 631 N.W.2d 862, 871 (Neb. 2001).
2. *See, e.g.*, *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 770 P.2d 278, 281 (Cal. 1989); *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 242–43 (Colo. 1987) (*en banc*); *Johnson v. Am. Nat'l Red Cross*, 578 S.E.2d 106, 108 (Ga. 2003); *Clampitt v. D.J. Spencer Sales*, 786 So. 2d 570, 573 (Fla. 2001) (quoting *Jefferies v. Amery Leasing, Inc.*, 698 So. 2d 368, 370 (Fla. Dist. Ct. App. 1997)); *Bajwa v. Metro. Life Ins. Co.*, 804 N.E.2d 519, 526 (Ill. 2004); *Ulwick v. DeChristopher*, 582 N.E.2d 954, 958 (Mass. 1991); *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000); *Whaley v. CSX Transp.*, 609 S.E.2d 286, 298 (S.C. 2005) (FELA case); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995).
3. *See, e.g.*, *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 242–43 (Colo. 1987) (*en banc*); *Canonico v. Beechmont Bus Serv., Inc.*, 790 N.Y.S.2d 36, 37 (App. Div. 2005); *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 251 (Tex. 1974).
4. *See, e.g.*, *Sargent v. Mass. Accident Co.*, 29 N.E.2d 825, 827 (Mass. 1940); *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 529 (Pa. 2005); *Cobb v. W. Va. Human Rights Comm'n*, 619 S.E.2d 274, 290 n.26 (W. Va. 2005).

   The causation standards for negligence extend to the tort of strict products liability, which does not require proof of fault or breach of a duty but does require a showing that the plaintiff was injured as a result of the product's defective condition. *See, e.g.*, *Greenman v. Yuba Power Prods., Inc.*, 377 P.2d 897, 900 (Cal. 1963); *Hiigel v. Gen. Motors Corp.*, 544 P.2d 983, 987 (Colo. 1975) (citing RESTATEMENT (SECOND) OF TORTS § 402A (1965)); *Hunt v. Blasius*, 384 N.E.2d 368, 372 (Ill. 1978); *Endresen v. Scheels Hardware & Sports Shop, Inc.*, 560 N.W.2d 225, 229 (N.D. 1997); *Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, 785 (Tex. 1988) (citing RESTATEMENT (SECOND) OF TORTS § 402A (1965)). The plaintiff must prove the claim by a preponderance of the evidence and can carry this burden by relying upon either direct or