# Exhibit 10

# Proving Antitrust Damages

## Legal and Economic Issues

Third Edition

ABA Section of Antitrust Law
Promoting Competition Protecting Consumers

American Bar Association
Defending Liberty Pursuing Justice

# Proving Antitrust Damages

## Legal and Economic Issues

### Third Edition

SECTION OF
ANTITRUST LAW
Promoting Competition
Protecting Consumers

AMERICAN BAR ASSOCIATION
Defending Liberty
Pursuing Justice

Cover design by ABA Design.

The materials contained herein represent the opinions of the authors and/or the editors, and should not be construed to be the views or opinions of the law firms or companies with whom such persons are in partnership with, associated with, or employed by, nor of the American Bar Association or the Section of Antitrust Law unless adopted pursuant to the bylaws of the Association.

Nothing contained in this book is to be considered as the rendering of legal advice for specific cases, and readers are responsible for obtaining such advice from their own legal counsel. This book is intended for educational and informational purposes only.

© 2017 American Bar Association. All rights reserved.

No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the publisher. For permission contact the ABA Copyrights & Contracts Department, copyright@americanbar.org, or complete the online form at http://www.americanbar.org/utility/reprint.html.

Printed in the United States of America.

21 20 19 18 17 5 4 3 2 1

ISBN: 978-1-63425-975-0

e-ISBN: 978-1-63425-976-7

Discounts are available for books ordered in bulk. Special consideration is given to state bars, CLE programs, and other bar-related organizations. Inquire at Book Publishing, ABA Publishing, American Bar Association, 321 N. Clark Street, Chicago, Illinois 60654-7598.

www.shopABA.org

CONT

*Foreword* ........
*Preface* ........

**PART I** ........

**Chapter 1**
**Impact: Injury and Causation** ........
A. Injury ........
B. Material Cause........
C. The Standard of Proof ........
D. Proof of the Fact of Damage ....

**Chapter 2**
**Antitrust Injury and Standing** ......
A. Antitrust Injury ........
1. Supreme Court Preceden
2. AGC's Consumer-or-Co
Factor ........
B. Antitrust Standing and the Dir
1. Limiting Scope of the In
2. Exceptions to the Indirec
C. Duplicative Recovery, Comple
Situated Plaintiffs ........
D. Class-Wide Injury Issues in A

**Chapter 3**
**Statute of Limitations** ........
A. Accrual of an Antitrust Cause
1. Speculative Damages .....
2. Continuing Violations....
B. Tolling of the Limitations Peri
1. Fraudulent Concealment
2. Government Suits ........
3. Equitable Tolling ........
C. Damage Calculations........
1. Period of Recovery .......
2. Conduct Prior to the Lin

CHAPTER 1

# IMPACT: INJURY AND CAUSATION

Section 4 of the Clayton Act establishes a treble damages remedy for any person who is "injured in his business or property by reason of anything forbidden in the antitrust laws."[1] While this statutory language has spawned a host of judicial elaborations and limitations, this chapter addresses the minimum requirement for recovery: whether the plaintiff can prove an injury that was caused by an antitrust violation.

Antitrust violations may inflict harm in a number of ways. Collusive or monopolistic practices may increase the price that consumers or businesses pay for what they buy. Suppliers' refusals to deal may limit or deny access to inputs that businesses purchase to use in their operations or for resale. Businesses also may suffer in their output markets because of violations that limit or foreclose access to customers, such as a competitor's exclusive contracts, or violations that force reductions in their selling prices, such as a competitor's predatory pricing or collusion among purchasers. An exhaustive list of how antitrust violations inflict private harm on consumers and commercial enterprises would be a long one.

These various types of harm produce tangible financial consequences. Paying more than they otherwise would for what they buy takes money out of consumers' pockets and cash out of firms' coffers. Disruptions in a business's input and output markets may produce lower revenues or higher expenses, which translate into lower profits and, in some cases, losses, as well as an inability to continue operations. For a start-up business, the consequences may include a failure to begin what would otherwise be profitable operations, or wasted sunk costs. Efforts to counteract or minimize the effect of a violation may entail substantial disruptions and out-of-pocket costs.

---

1. 15 U.S.C. § 15. If liability can be established, the Clayton Act provides mandatory attorneys' fees and costs as well as damages. A settlement with one defendant that gives plaintiffs more than the damages they could recover at trial—and thus moots a claim for compensatory damages—does not impair their right to recover attorneys' fees and costs against another defendant. Funeral Consumers Alliance v. Service Corp. Int'l, 695 F.3d 330, 340-42 (5th Cir. 2012).

These potential financial effects of antitrust violations suggest a comparison: if the violation had not occurred, the plaintiff would be better off than it actually is. This is the familiar "but-for" proposition, and it is the central analytical approach to determining the impact of an antitrust violation.[2] The but-for principle requires one to envision exactly how the world would be different without ("but for") the challenged conduct. An antitrust plaintiff is harmed by a violation when the plaintiff would be in a better financial position but for the violation; conversely, if the plaintiff would be in the same position without regard to whether the violation occurred, the violation produced no harm.[3]

The but-for principle fuses into one inquiry the concepts of injury and causation, the subjects of this chapter, and the measurement of damages, the subject of Chapters 4 to 6. If the plaintiff's actual condition is worse than what it would have been in the hypothetical but-for world, a violation can be said to have "caused" an "injury" in but-for terms. Likewise, a damages award measures the extent of the difference in outcomes between the actual world and the but-for world to compensate the plaintiff for this injury. See Chapters 4 to 6 for a more thorough discussion of the

2. *See, e.g.*, Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433-34 (2013) (damages resulting from an antitrust injury measured by comparison to a "but-for" world that reflects conditions in the actual world in all respects except the alleged anticompetitive conduct); J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 566 (1981) (damages turn on "what plaintiff's situation would have been in the absence of the defendant's antitrust violation"); Reiter v. Sonotone Corp., 442 U.S. 330, 340 (1979) (a price-fixing conspiracy injures a consumer when it causes the consumer "to pay a higher price . . . than it otherwise would have paid"); Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 561-62 (1931) (the harm of a predatory pricing conspiracy is measured by "the difference between the prices [plaintiff] actually received and what would have been received but for the unlawful conspiracy"); *In re* Cardizem CD Antitrust Litig., 332 F.3d 896, 904 (6th Cir. 2003); Greater Rockford Energy & Tech. Corp. v. Shell Oil Co., 998 F.2d 391, 401-02 (7th Cir. 1993); Rose Confections, Inc. v. Ambrosia Chocolate Co., 816 F.2d 381, 394 (8th Cir. 1987); Argus, Inc. v. Eastman Kodak Co., 801 F.2d 38, 41 (2d Cir. 1986).

3. *See, e.g.*, Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n, 623 F.3d 281, 285 (6th Cir. 2010) (rule changes that never went into effect did not cause or threaten any injury); MetroNet Servs. Corp. v. US West Commc'ns, 329 F.3d 986, 1009 (9th Cir. 2003), *superseded on other grounds sub nom.* MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124 (9th Cir. 2004).



construction of a but-for wc
interdependence between injur
Section 4 of the Clayton Act h
headings of injury, causation, a

This chapter will address:
(2) the causal test for linking a
(3) the standard of proof for
injury; and (4) the types of pro
As will be seen, the determina
for the application of standing a
in the next chapter, and for the
the subject of Chapter 4. In addi
been caused by an antitrust viol
4 because of standing and a
limitations, or because a sufficie
supplied. Each of these issues
chapters. It is important to recog
issues if the plaintiff cannot meet
linked to the asserted antitrust vi

At the outset, it should be
uniform vocabulary for discuss
"injury" to refer to the detrimen
refer to the test for establishing th
and the violation, and "fact of c
"impact," to refer to the showing
connection to the asserted injury.

4. *See, e.g.*, *MetroNet Servs. Cor*
Corp., 972 F.2d 1483, 1490 (

5. *See* Gelboim v. Bank of Am.
for a discussion of the relati
standing, and antitrust injury.

6. *Cf.* ABA SECTION OF ANTIT
CIVIL ANTITRUST CASES F-
INSTRUCTIONS] (employing sc
use "causation," "causation in
describe what this chapter ca
Supreme Court's decision in B
U.S. 477 (1977), courts on occ
proof of impact as well as the s
to the basis for antitrust liab
"antitrust injury" concept is be
which reflects the holding in

of antitrust violations suggest a
curred, the plaintiff would be better
liar "but-for" proposition, and it is
rmining the impact of an antitrust
es one to envision exactly how the
t for") the challenged conduct. An
on when the plaintiff would be in a
olation; conversely, if the plaintiff
ut regard to whether the violation
rm.[3]

inquiry the concepts of injury and
and the measurement of damages,
laintiff's actual condition is worse
othetical but-for world, a violation
ury" in but-for terms. Likewise, a
he difference in outcomes between
to compensate the plaintiff for this
nore thorough discussion of the

id, 133 S. Ct. 1426, 1433-34 (2013)
injury measured by comparison to a
ons in the actual world in all respects
conduct); J. Truett Payne Co. v.
, 566 (1981) (damages turn on "what
n in the absence of the defendant's
one Corp., 442 U.S. 330, 340 (1979)
onsumer when it causes the consumer
otherwise would have paid"); Story
nt Paper Co., 282 U.S. 555, 561-62
cing conspiracy is measured by "the
ff] actually received and what would
ful conspiracy"); *In re* Cardizem CD
(6th Cir. 2003); Greater Rockford
Co., 998 F.2d 391, 401-02 (7th Cir.
brosia Chocolate Co., 816 F.2d 381,
astman Kodak Co., 801 F.2d 38, 41

l Collegiate Athletic Ass'n, 623 F.3d
s that never went into effect did not
troNet Servs. Corp. v. US West
h Cir. 2003), *superseded on other*
orp. v. Qwest Corp., 383 F.3d 1124



construction of a but-for world for damages purposes. Despite this interdependence between injury, causation, and damages, courts applying Section 4 of the Clayton Act have developed discrete inquiries under the headings of injury, causation, and damages.[4]

This chapter will address: (1) the definition of the plaintiff's injury; (2) the causal test for linking an asserted injury to the alleged violation; (3) the standard of proof for establishing that the violation caused the injury; and (4) the types of proof typically offered to meet the standard. As will be seen, the determination of injury and causation sets the stage for the application of standing and antitrust injury requirements, discussed in the next chapter, and for the quantification of the plaintiff's damages, the subject of Chapter 4. In addition, some injuries, even if proven to have been caused by an antitrust violation, are not compensable under Section 4 because of standing and antitrust injury requirements, statute of limitations, or because a sufficient quantification of damages has not been supplied. Each of these issues is addressed in greater detail in later chapters. It is important to recognize that there is no need to consider those issues if the plaintiff cannot meet the first bar of showing an injury causally linked to the asserted antitrust violation.

At the outset, it should be noted that courts have not arrived at a uniform vocabulary for discussing these issues.[5] This chapter will use "injury" to refer to the detriment asserted by the plaintiff, "causation" to refer to the test for establishing the requisite connection between the injury and the violation, and "fact of damage," or its more modern equivalent "impact," to refer to the showing that the violation had a sufficient causal connection to the asserted injury.[6]

---

4. *See, e.g.*, *MetroNet Servs. Corp.*, 329 F.3d at 1008; Amerinet, Inc. v. Xerox Corp., 972 F.2d 1483, 1490 (8th Cir. 1992).
5. *See* Gelboim v. Bank of Am. Corp., 823 F.3d 759, 769-77 (2d Cir. 2016) for a discussion of the relationship among Article III standing, antitrust standing, and antitrust injury.
6. *Cf.* ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES F-2 to F-6 (2005) [hereinafter MODEL JURY INSTRUCTIONS] (employing somewhat different terminology). Some courts use "causation," "causation in fact," "injury in fact," and similar terms to describe what this chapter calls "fact of damage" or "impact." Since the Supreme Court's decision in Brunswick Corp. v. Pueblo Bowl-O-Mat, 429 U.S. 477 (1977), courts on occasion have used "antitrust injury" to refer to proof of impact as well as the showing that a proven impact properly relates to the basis for antitrust liability. For the sake of clarity, however, the "antitrust injury" concept is better reserved for use only in the latter sense, which reflects the holding in *Brunswick*. *See* Ronald W. Davis, *Standing*

### A. Injury

If there were a Hippocratic Oath for antitrust plaintiffs seeking damages, it would be "First, prove your harm." That process starts with an identification of the injury that the plaintiff will seek to tie to the alleged violation.

In this context, an "injury" refers to a financial detriment suffered by the plaintiff, without regard to its source. The detriment may be defined in a number of ways. One is historical: the plaintiff is paying more than in the past for the product or service in question, or has suffered a decline in revenues, profits, or market share.[7] Or it had to pay a cost as a result of the anticompetitive conduct.[8] Another is more broadly comparative: the plaintiff has fared less well than it or a comparable firm has fared in similar circumstances.[9] For a firm that has attempted but failed to enter a market,

---

*on Shaky Ground: The Strangely Elusive Doctrine of Antitrust Injury*, 70 ANTITRUST L.J. 697, 734 (2003). Also, because "a causal connection between an antitrust violation and harm to the [plaintiff]" is one of the elements of antitrust standing, *see* Associated Gen. Contractors v. Cal. State Council of Carpenters, 459 U.S. 519, 537 (1983), a failure to prove fact of damage may be treated as a standing issue. *See, e.g.*, Jebaco v. Harrah's Operating Co., 587 F.3d 314, 320-21 (5th Cir. 2009) (loss of fees for leasing berth to riverboat casino unrelated to casino operators' anticompetitive conspiracy and confers no standing to sue for Sherman Act violation). Standing is better viewed as a prudential limitation on recovery that denies relief under § 4 even where the basic requirement of impact is shown. *See Associated Gen. Contractors*, 459 U.S. at 529-37.

7. *See, e.g.*, O'Bannon v. Nat'l Collegiate Athletic Ass'n, 802 F.3d 1049, 1067 (9th Cir. 2015) (collegiate athletes injured in fact by NCAA rules that foreclosed the market for use of their names, images, and likenesses in video games); ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 289 (3d Cir. 2012) (loss of sufficient market share to remain viable demonstrated antitrust injury); LePage's Inc. v. 3M, 324 F.3d 141, 161-62 (3d Cir. 2003); Callahan v. A.E.V., Inc., 182 F.3d 237, 254-57 (3d Cir. 1999).

8. *See, e.g.*, TransWeb, LLC v. 3M Innovative Props. Co., 812 F.3d 1295, 1308-12 (Fed. Cir. 2016) (affirming award of trebled attorney's fees as damages for having to defend lawsuit aimed at reducing competition by seeking to enforce knowingly fraudulent patent).

9. *See, e.g.*, Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 116, 119, 122 (1969) (injury based on a comparison of plaintiff's market share in the restrained Canadian market and its higher share in the United States market); MM Steel, L.P. v. JSW Steel (USA) Inc., 806 F.3d 835, 851-52 (5th Cir. 2015) (affirming use of competing firm's higher gross-profit margin as yardstick because firm was reasonably similar to plaintiff);



the detriment is the failure to s
to do so must be shown to esta
Proof of an actual historica
Because the ultimate test invo
performance has improved ove
benchmarks, may nevertheless
have and would have done e
violation.[11] As proof of its di
point to real-world projections
achieved.
As the foregoing suggests,
rather than an absolute, conditi
or prices as "high" or sales le
profits or low market share, for
potential in a free market. Wha
current condition relative to sor

---

Eleven Line, Inc. v. N. Tex
(5th Cir. 2000) (reversing
yardstick for lack of eviden
of "closely comparable" or r
10. *See, e.g.*, *Zenith Radio Cor*
made insufficient efforts to
its "business or property" un
802 F.3d 732, 737-41 (5th C
preparedness to enter marke
marketed its services to tra
incumbent viewed it as a thr
11. *See, e.g.*, Conwood Co. v. U
Cir. 2002) (increase in plain
negate injury); Chiropractic
275-76 (6th Cir. 1989) (incre
proof of injury because they
taken the actions in dispute"
F.2d 980, 991, 993-94 (5th C
may cause injury by delayin
Lee-Moore Oil Co. v. Unio
1979).
12. See William H. Page, Antit
Approach to Antitrust Injury
Pollock, The "Injury" and
Antitrust Action, 57 NW. U.
13. *See* Pollock, *supra* note 11, a

the detriment is the failure to start operations, but intent and preparedness to do so must be shown to establish an injury.[10]

Proof of an actual historical or comparative detriment is not necessary. Because the ultimate test involves the but-for principle, a plaintiff whose performance has improved over the relevant period, or exceeded relevant benchmarks, may nevertheless claim it has been injured because it should have and would have done even better in the absence of the antitrust violation.[11] As proof of its disappointed expectations, the plaintiff may point to real-world projections of success surpassing what it has actually achieved.

As the foregoing suggests, an economic injury is inherently a relative, rather than an absolute, condition.[12] It is insufficient to characterize costs or prices as "high" or sales levels as "low."[13] A business that has low profits or low market share, for example, may simply be achieving its full potential in a free market. What matters is a comparison of the plaintiff's current condition relative to some specific baseline.

---

Eleven Line, Inc. v. N. Texas State Soccer Ass'n, Inc., 213 F.3d 198, 208 (5th Cir. 2000) (reversing use of other arenas' average net revenue as yardstick for lack of evidence that their average represented performance of "closely comparable" or reasonably similar business).

10. *See, e.g.*, *Zenith Radio Corp*., 395 U.S. at 126-29 (unsuccessful entrant made insufficient efforts to enter the restrained markets to prove injury to its "business or property" under § 4); Sanger Ins. Agency v. Hub Int'l, Ltd., 802 F.3d 732, 737-41 (5th Cir. 2015) (potential entrant showed sufficient preparedness to enter market where it had an office and experienced staff, marketed its services to trade association members, made ten sales, and incumbent viewed it as a threat)

11. *See, e.g.*, Conwood Co. v. U.S. Tobacco Co., 290 F.3d 768, 788-90 (6th Cir. 2002) (increase in plaintiff's market share during violation does not negate injury); Chiropractic Coop. Ass'n v. Am. Med. Ass'n, 867 F.2d 270, 275-76 (6th Cir. 1989) (increase in chiropractors' incomes does not defeat proof of injury because they "may have earned much more had AMA not taken the actions in dispute"); Multiflex, Inc. v. Samuel Moore & Co., 709 F.2d 980, 991, 993-94 (5th Cir. 1983) (unsuccessful attempt to monopolize may cause injury by delaying successful plaintiff's rise in market share); Lee-Moore Oil Co. v. Union Oil Co., 599 F.2d 1299, 1304-05 (4th Cir. 1979).

12. See William H. Page, Antitrust Damages and Economic Efficiency: An Approach to Antitrust Injury, 47 U. Chi. L. Rev. 467, 469 (1980); Earl E. Pollock, The "Injury" and "Causation" Elements of a Treble-Damage Antitrust Action, 57 Nw. U. L. Rev. 691, 693-95 (1963).

13. *See* Pollock, *supra* note 11, at 694-95.

Divorcing an injury from its source, which is the consequence of separating injury and fact of damage, gives "injury" a broad meaning. What the plaintiff defines as its injury may be wholly self-inflicted or the result of obvious market forces affecting all businesses.[14] The plaintiff's definition of its injury lays the foundation for consideration of such matters. As a practical matter, because the choice of the injury to assert is in the plaintiff's hands,[15] anticipation of the issues of fact of damage, antitrust injury, standing, and damages to be confronted down the road is critical even in the earliest stages of potential antitrust litigation.[16]

## B. Material Cause

Once the plaintiff has defined its injury, the next step is to link that injury to the asserted violation. "To prevail, a private party must establish some link between the defendant's alleged anticompetitive conduct, on the one hand, and its injuries and the consumer's, on the other."[17] The prevailing test of antitrust causation to satisfy Section 4 of the Clayton

---

14. *See* Suture Express, Inc. v. Owens & Minor Distribution, Inc., 851 F.3d 1029, 2017 WL 971782, at *10 (10th Cir. 2017) (affirming summary judgment for defendant distributor when plaintiff, a smaller, specialized distributor, could not prove tying arrangement harmed competition; rather, increasing competition drove down all competitors' profit margins).
15. *See, e.g.*, Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n, 751 F.3d 368, 376 (5th Cir. 2014) (affirming dismissal of complaint focused on plaintiff's own financial losses while its "assertions regarding market injury [injury to competition] are completely speculative").
16. On grounds of policy and practicality, antitrust courts have shaped the scope of injuries that will be compensable for certain offenses. *See* Page, *supra* note 12, at 467-89. A prime example is the remedy for unlawful overcharges, for which the injury is deemed to be the overcharge itself without regard to consequential losses or loss-reducing downstream price increases. *See also* Hanover Shoe v. United Shoe Machinery Corp., 392 U.S. 481, 487-93 (1968). Similar issues have arisen concerning the definition and scope of the injury that tying arrangements inflict on purchasers. *Compare* Kypta v. McDonald's Corp., 671 F.2d 1282, 1285 (11th Cir. 1982) (injury based on the combined price of tying and tied products) *with* Crossland v. Canteen Corp., 711 F.2d 714, 722 (5th Cir. 1983) (injury based on price of tied product, with consequential losses recoverable in "extraordinary" cases). See Chapters 8 and 9 for a discussion of these matters in greater depth.
17. Novell v. Microsoft Corp., 731 F.3d 1064, 1080 (10th Cir. 2013).