**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LINDA FAIRSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cv-8042 (PKC) |
| v. | ) | |
| | ) | |
| NETFLIX, INC., AVA DUVERNAY, and | ) | |
| ATTICA LOCKE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE**
**CERTAIN TESTIMONY AND THE EXPERT REPORT OF DEFENDANTS'**
**REBUTTAL EXPERT DAVID P. KAPLAN**

Kara L. Gorycki
Andrew T. Miltenberg
Stuart Bernstein
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212)736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com

*Attorneys for Plaintiff Linda Fairstein*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

RELEVANT BACKGROUND ............................................................................................ 3

   I.      Plaintiff's Expert Doug Bania............................................................................. 3

   II.     Defendants' Rebuttal Expert David P. Kaplan ............................................. 5

     A.    Kaplan's Opinions Concerning Causation.................................................. 6

     B.    Kaplan's Opinions Concerning Fisher's Reputational Harm Analysis ...................... 8

     C.    Kaplan's Opinions Concerning Damages Calculations by Fisher & Bania ................ 8

ARGUMENT ....................................................................................................................... 8

      KAPLAN SHOULD BE PRECLUDED FROM TESTIFYING ABOUT CERTAIN OF HIS OPINIONS AT TRIAL ........................................................................... 8

   1.    The Court Should Exclude Kaplan's Causation Opinions.............................................. 10

       a.    Kaplan's Causation Opinions Usurp the Role of Judge and Jury.................... 10

       b.    Kaplan's Causation Opinions Are Grounded In Antitrust Principles That Do Not "Fit" This Case......................................................................... 13

       c.    Kaplan Is Not Qualified to Offer His Causation Opinions............................. 18

   2.    The Court Should Exclude Kaplan's Speculative Opinions and Testimony Concerning Alternative Causes of Plaintiff's Damages .......................................................... 19

   3.    The Court Should Exclude Kaplan's Opinions About Fisher's Reputational Harm Analysis.......................................................................................................... 21

   4.    Kaplan's Opinions About "Leisure Time" and the Publishing Industry Should Be Excluded ........................................................................................................ 22

CONCLUSION.................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arista Recs. LLC v. Usenet.com*,
 608 F. Supp. 2d 409 (S.D.N.Y. 2009)..................................................................... 7, 20

*Astra Aktiebolag v. Andrx Pharm., Inc.*,
 222 F. Supp. 2d 423 (S.D.N.Y. 2002)........................................................................ 14

*Ctr. for Indep. of Disabled, New York v. Metro. Transp. Auth.*,
 No. 17-cv-2990, 2023 WL 7403642 (S.D.N.Y. Nov. 9, 2023).................................. 14

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993)........................................................................... 1, 9, 13, 18

*Duke Energy Carolinas, LLC v. NTE Carolinas II LLC, et al.*,
 No. 3:19-cv-00515 (W.D.N.C.)................................................................................. 18

*Eshelman v. Puma Biotechnology, Inc.*,
 No. 7:16-CV-18-D, 2019 WL 1092572 (E.D.N.C. Mar. 8, 2019)............................. 14

*Fairstein v. Netflix, Inc.*,
 No. 20-CV-8042 (PKC), 2023 WL 6125631 (S.D.N.Y. Sept. 19, 2023) ................. 12

*Fiataruolo v. United States*,
 8 F.3d 930 (2d Cir. 1993).......................................................................................... 10

*Grajeda v. Vail Resorts Inc.*,
 No. 2:20-cv-00165, 2023 WL 4803755 (D. Vt. July 27, 2023)................................ 14

*Granite Partners, L.P. v. Lynch*,
 2002 WL 826956, (S.D.N.Y. May 1, 2002) ................................................................ 1

*Gubarev v. Buzzfeed*,
 No. 1:17-cv-60426-UU (S.D. Fla.) ............................................................................ 19

*Guccione v. Hustler Magazine, Inc.*,
 800 F.2d 298 (2d Cir. 1986)...................................................................................... 12

*Heller v. Shaw Indus., Inc.*,
 167 F.3d 146 (3d Cir. 1999)...................................................................................... 18

*Herbert v. Lando*,
 781 F.2d 298 (2d Cir. 1986)...................................................................................... 12

*Hirchak v. W.W. Grainger, Inc.*,
 980 F.3d 605 (8th Cir. 2020)..................................................................................... 18

*In re Nexium (Esomeprazole) Antitrust Litig.*,
 842 F.3d 34 (1st Cir. 2016)....................................................................................... 14

*In Re Payment Card Interch. Fee And Merchant Discount Antitrust Litig,*
 638 F.Supp.3d 227 (E.D.N.Y. 2022) ............................................................. 1, 10, 12

*In re Platinum-Beechwood Litig.*,
 469 F. Supp. 3d 105 (S.D.N.Y. 2020)....................................................................... 10

*In re: Gen. Motors LLC Ignition Switch Litig.*,
 No. 14-MD-2543, 2015 WL 9480448 (S.D.N.Y. Dec. 29, 2015) ............................ 18

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
 209 F. Supp. 3d 612 (S.D.N.Y. 2016)....................................................................... 14

*Marvel Characters, Inc. v. Kirby*,
 726 F.3d 119 (2d Cir. 2013)........................................................................................ 7

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ............................................................................... 10

*Nnebe v. Daus*,
   No. 06-cv-4991 (RJS), 2023 WL 6881992 (S.D.N.Y. Oct. 18, 2023) .................................... 21

*Pacific Life Ins. Co. v. Bank of N.Y. Mellon*,
   571 F. Supp. 3d 106 (S.D.N.Y. 2021) .............................................................................. 8, 9

*Riegel v. Medtronic, Inc.*,
   451 F.3d 104 (2d Cir. 2006) ............................................................................... 19, 22

*Saks Fifth Ave. v. James, Ltd.*,
   630 S.E.2d 304 (Va. 2006) ............................................................................... 11

*Tardif v. City of New York*,
   No. 13-cv-4056, 2022 WL 2195332 (S.D.N.Y. June 17, 2022) ............................................ 17

*U.S. v. Williams*,
   506 F.3d 151 (2d Cir. 2007) ............................................................................... 9

*United States v. Articles of Banned Hazardous Substances*,
   34 F.3d 91 (2d Cir. 1994) ............................................................................... 10

*United States v. Jones*,
   965 F.3d 149 (2d Cir. 2020) ............................................................................... 20

*Vale v. United States of Am.*,
   673 F. App'x 114 (2d Cir. 2016) ............................................................................... 22

## INTRODUCTION

Plaintiff Linda Fairstein ("Plaintiff" or "Fairstein") brings this motion pursuant to Rules 702 and 403 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), which seeks an order precluding Defendants' rebuttal expert David P. Kaplan ("Kaplan") from offering certain opinions at trial. Plaintiff also seeks to exclude Kaplan's expert report as inadmissible hearsay. *Granite Partners, L.P. v. Lynch*, 2002 WL 826956, at *7 (S.D.N.Y. May 1, 2002).

Kaplan has a background in economics, and has primarily served as an expert in antitrust class action lawsuits and unfair competition cases. Defendants seek to introduce Kaplan's testimony at trial to rebut the opinions and testimony of Plaintiff's economic damages expert Doug Bania ("Bania") and reputation expert Robert J. Fisher ("Fisher"). It is Defendants' burden to prove by a preponderance of the evidence that Kaplan's opinions are admissible at trial. FRE 702. They cannot meet this burden with respect to several of Kaplan's opinions.

***First***, Kaplan's opinions about causation are inadmissible because they usurp the Court's role in instructing the jury as to core legal concepts, including Plaintiff's burden of proof with respect to the damages allegedly caused by the Series.[1] Kaplan was recently precluded from offering similar opinions in *In Re Payment Card Interch. Fee And Merchant Discount Antitrust Litig.* ("*Payment Card Antitrust Litig.*"), where the Court found *inter alia* that Kaplan's causation opinions encroached upon the court's "duty to instruct on the law," relied on legal sources to "articulate a legal standard," and constituted an improper "instruction for evaluating damages models," and "how the factfinder should evaluate … what makes a damages model 'reliable.'" 638 F.Supp.3d 227, 307-309 (E.D.N.Y. 2022) (Brodie, J.).

---

[1] The "Series" is *When They See Us*.

Kaplan relies on antitrust principles and methods to form his opinions but provides no explanation as to how or why this is proper in a defamation case. Kaplan further defies *Daubert's* command that expert testimony "fit" the issues and facts in a case and he offers no reliable explanation why Bania and Fisher should be held to a higher standard than the well-established rule that experts are not required to categorically exclude every possible alternative cause of harm.

**Second**, Kaplan's opinions regarding alternative causes of Plaintiff's damages are inadmissible because they are unreliable and based on sheer speculation—Kaplan undertook **no analysis** to arrive at his opinions. Kaplan's unsupported opinions seem to be an attempt by Defendants to bring inadmissible and highly prejudicial hearsay into the case. Such opinions will not assist the jury in understanding any matters that require specialized knowledge. Kaplan's speculation that events, conduct, statements and publications that date as far back as 1989 might be explanations for Plaintiff's damages in 2019 will surely mislead the jury.

**Third**, Kaplan's opinions regarding Plaintiff's reputational harm are inadmissible because he is not qualified to offer them.

**Fourth**, Kaplan's opinions regarding "leisure time" and alternative publishers should be excluded as speculative and because Kaplan is not qualified to offer opinions about the publishing industry. Kaplan's opinions likening Plaintiff to an alleged pedophile and an alleged rapist are also egregiously false and immensely prejudicial and should be excluded.

For these reasons, and as fully set forth below, the Court should preclude Kaplan from testifying about several of his opinions at trial and those opinions should be excluded from the jury's consideration.

## RELEVANT BACKGROUND

### I.    <u>Plaintiff's Expert Doug Bania[2]</u>

Bania is an expert with more than 20 years of experience in IP valuation, management, damages calculations and internet and social media analytics evaluation. Declaration of Kara L. Gorycki in Support of Motion to Exclude Opinions of David P. Kaplan ("Gorycki Decl."),[3] Ex. 1, Bania Rpt. (6/17/22) at 1. Bania is the founder of Nevium Intellectual Property Consultants, and in such capacity has developed extensive experience providing causation and damages opinions in defamation and intellectual property cases involving public figures. *Id.* He has been named as an expert in over one hundred cases, has been deposed twenty-four times, and provided trial testimony in eight cases. *Id.* As he explains in his report, Bania was asked to (1) review the performance of Plaintiff's business entities, including Fairstein Enterprises LLC ("Enterprises");[4] (2) determine whether Plaintiff's economic damages were proximately caused by the alleged defamation; and (3) calculate the lost profits proximately caused by the defamation. *Id.* at 1. While Bania reviewed the performance of each of Plaintiff's business entities, his calculation of economic damages concerns Enterprises' lost profits, or economic harm to Plaintiff's publishing career. *Id.* at 12-14.

***Bania's opinions*** and proposed testimony ***"assume that Plaintiff is able to establish liability" and that she is therefore entitled to damages***. *Id.* at 1, 25. In forming his opinions, Bania relied on indisputable principles concerning economic damages: (1) proximate cause "requires that the plaintiff tie damages to the wrongful act;" (2) "lost profits are recoverable only when they can

---

[2] Plaintiff respectfully refers the Court to the Memorandum in Support of Plaintiff's Motion to Exclude the Testimony and Expert Report of Defendants' Expert Rebuttal Witness Anthony Freinberg, for a description of the qualifications of Plaintiff's expert witness Robert J. Fisher, his opinions and testimony. *See* Freinberg Br., Relevant Background, Pt. I. Kaplan's report and testimony seek to rebut some of those opinions and testimony, but are primarily focused on Bania's report and testimony.

[3] Unless otherwise indicated, all the exhibits cited herein as "Ex." are annexed to the Gorycki Declaration.

[4] Plaintiff established Enterprises in 2003 to house her publishing career and to receive all income from Plaintiff's books. Ex. 2, Fairstein Decl. 6/29/20, ¶ 4 (cited in Bania Expert Rpt., Ex.A-20(a)).

be traced to, and result directly, from the wrong to be redressed;" and (3) when profits "are lost as a consequence of a 'completely voluntary and independent business decision,' the plaintiff may not be able" to establish causation. *Id.* at 7.

Bania took the following steps to determine whether the June 2019 termination of Penguin Random House's ("Penguin") publishing relationship with Plaintiff was proximately caused by the Series (*id.* at 6-12, Schedules 4a and 5a):

- He considered "Key Dates" in Plaintiff's publishing career, including (1) the dates she entered into agreements with her publishers for books including April 14, 1995 and March 5, 2007; (2) the May 31, 2019 Netflix release of the Series, which generated 24.8 million views in its first month; (3) Penguin's termination of Plaintiff's remaining contracts on June 7, 2019; and (4) June 26, 2019, when Penguin reverted all rights to all of Plaintiff's books to her and refused to publish any novels previously authored by her.

- He reviewed the financial performance of Enterprises from 2013 through 2021 and noted that Enterprises had lower sales and profit following the airing of the Series.

- He analyzed email correspondence relating to Penguin's actions in June 2019.

- He considered four events relating to the Central Park Jogger ("CPJ") case that occurred prior to the airing of the Series: (1) the 2012 releases of a book and a documentary TV film about the case; (2) the December 2014 settlement of the civil action filed by "the Five" in 2003, in which Plaintiff was named as a defendant; (3) the November 2016 publication of an article in which former District Attorney Robert Morgenthau was quoted criticizing Plaintiff in connection with the CPJ case; and (4) the July 2018 publication by the New York City Law Department of documents concerning the original investigation and prosecution of the CPJ case that had just been unsealed.

- He used the tool "Google Trends" to determine any trends between January 1, 2012 to May 1, 2022 in the relationship between Google search users' interest in the following terms: "Linda Fairstein," "Central Park Five" and "When They See Us."

- He considered the dates of Plaintiff's entry into lucrative book contracts with Penguin (including June 15, 2009, Aug. 26, 2015, Nov. 12, 2015 and June 4, 2019).

Bania focused on an internal, June 3, 2019 Penguin email noting that there had been ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ *Id.* at 9, ¶ 49; Ex. 14, 6/3/19 email, at 1. He also focused on an email sent three days later, on June 6, 2019, ██████████████████████████████ ██████████████████████████████████████████████████ ████████████████████. *Id.*; Ex. 15, 6/6/19 email, at 1. Bania concluded from the correspondence that Penguin had been "pressured by the public[,]" which was in an uproar over Plaintiff's portrayal in the Series, to take this drastic action. *Id.*

Bania conducted a Google Trends analysis evaluating the number of searches for the 3 terms "Linda Fairstein," "Central Park Five" and "When They See Us" from 2012 through May 1, 2022. A table demonstrating the results identifies the date the Series was released, as well as 4 CPJ-related events which pre-dated the Series. *Id.* at 10-11. Bania found that ***the only significant rise in interest*** in any of the 3 terms considered ***occurred in June 2019***, around the time Penguin noticed a major uptick in social media concerning Plaintiff in connection with the CPJ case. *Id.* (emphasis added). Increases in such interest occurring around the dates of the 4 events were negligible. *See id.* at 11 (Figure 3).

Bania concluded, based on his assumption that liability was established in Plaintiff's lawsuit, correspondence with Plaintiff's publishers, the short time sequence between the airing of the Series and the termination of Plaintiff's relationships with her publishers, that the Series was "the proximate cause of the lower sales, profit and lost opportunities at Fairstein Enterprises." *Id.* at 12. Bania calculated Plaintiff's economic damages, in the form of Enterprises lost profits, to be approximately $1.37 million. *Id.* at 24.

## II.   **Defendants' Rebuttal Expert David P. Kaplan**

Kaplan has a B.A. and an M.A. in Economics and a Juris Doctorate, though he does not practice law. Ex. 3, Kaplan Rpt. (9/2/22), at ¶ 5. He is primarily an expert in the field of antitrust

class certification. *Id.*, Ex. 1, Curriculum Vitae ("C.V."). Kaplan has worked on class certification

motions in 15 to 20 antitrust cases in the past 10 years. Ex. 4, Kaplan Dep. at 27:20-24. Kaplan's

C.V. references only two defamation matters in which he has served as an expert witness

concerning damages. *See* Ex. 3, Kaplan Rpt., Ex. 1.

Kaplan was retained to review Bania's report and Fisher's supplemental report of August

8, 2022. *Id.* at 5, 8. Kaplan **did not conduct his own analysis** to determine the proximate cause of

Plaintiff's economic damages identified by Bania. *See* Ex. 4, Kaplan Dep. at 77:15-78:5, 230.

Kaplan's report addresses both Bania's proximate cause analysis and his damages calculation. It

also addresses Fisher's opinions concerning (1) the cause of the reputational harm alleged by

Plaintiff in this case; (2) the economic value of that harm; and (3) the cost of an effective reputation

repair program. Ex. 3, Kaplan Rpt., at 8-9; 12-13; 17-18.

A.    **Kaplan's Opinions Concerning Causation**

The following are Kaplan's opinions regarding Bania's and Fisher's reports:

- "[A] damages expert should consider 'all other relevant factors' that may affect estimated damages beyond the conduct at issue and a 'failure to do so could result in the expert's testimony being excluded.'" Ex. 3, Kaplan Rpt., at 12, ¶ 16.[5]

- "Bania and Fisher have not established the necessary causation here, including precluding the possibility that other factors may have affected publishing career." *Id.* at 13, ¶ 19.

- "Bania's failure to isolate just the effects, if any, of the five scenes and statements at issue… [from the other scenes in the Series] renders his damage analysis unreliable." *Id.* at 18, ¶ 29. Kaplan critiques Bania's *Google Trends* analysis (Figure 3) (Ex. 1, Bania Rpt., at 10-11) on these grounds, asserting that it "provides no methodology" to "disaggregate" the "possible negative impact" of such *other* scenes. *Id.* at 19, ¶ 32.

- "Bania made a mistake in his analysis as he <u>explicitly represented in his report</u> that he based his calculations on <u>all</u> of the 11 alleged defamatory scenes and statements

---

[5] Quoting Robert P. Gray et al., Chapter 11 "Planning Credible Lost Profits Analyses for Financial Experts" in *The Comprehensive Guide to Economic Damages, Vol. One* ("*The Comprehensive Guide*"). *See* Ex. 6, at 248-49.

included in the Fairstein Complaint. But only five of the 11 scenes and statements are now relevant. This mistake renders his analysis unreliable." *Id.* at 16, ¶ 24(2).[6]

- Bania does not properly consider "how his but-for world would be impacted by Fairstein's own conduct related to her continuous defense of the original [Central Park Jogger] prosecution at issue and the impact of such conduct may have had on Fairstein's *reputation.*" *Id.* at 16, ¶ 24(3) (emphasis added).

In connection with the above-listed opinions, Kaplan discusses events, actions, statements and publications that he speculates may have been the cause or causes of Plaintiff's economic damages rather than the alleged defamation, including (1) scenes from the Series that are no longer or were never part of this case; (2) the Series as a whole; (3) negative content on social media about Plaintiff and the CPJ case dating from as early as 2013; (4) Plaintiff's own "conduct including that related to [Harvey] Weinstein," and the prosecution of the CPJ case; (5) Plaintiff's statements about the CPJ case in the press or social media since the early 2000s; (6) protests at events attended by Plaintiff prior to 2014; and (7) the Mystery Writers of America rescission of its decision to honor Plaintiff with a prestigious award in 2018. *See generally* Ex. 3, Kaplan Rpt.

Given that Kaplan performed no causal analysis linking ***any of the above*** to Enterprises' lost profits, and that many of these events, statements and publications occurred many years before Plaintiff's loss of her publishing career in June 2019, it appears that Defendants are attempting to use Kaplan's purported expertise as a means of injecting highly prejudicial hearsay evidence that is irrelevant to Bania's lost profits analysis. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of their testimony"); *Arista Recs. LLC v. Usenet.com*, 608 F. Supp. 2d 409, 428-429 (S.D.N.Y. 2009) ("An expert who simply repeats the hearsay of the client who retained him, without any independent investigation or

---

[6] Paragraph 4 of Bania's report states that he was "asked to calculate economic damages" with respect to the defamation claims ***in the case***. Paragraph 4 does not mention the number "11." Ex. 1, Bania Rpt., at 1, ¶ 4.

analysis, does not assist the trier of fact in understanding matters that require specialized knowledge.")

**B.** **Kaplan's Opinions Concerning Fisher's Reputational Harm Analysis**

Kaplan offers the following opinions concerning Fisher's reputational harm analysis:

- Fisher "attributes alleged reputational harm purportedly suffered by Fairstein, not only to the series as a whole, but to headlines in articles and statements made before and after the series." *Id.* at 17, ¶ 25(3).

- Fisher provided no "empirical evidence" to support his calculation of the cost of the reputation program he designed to repair Plaintiff's reputation after the Series. *Id.* at 18, ¶ 25(4).

- Fisher did not provide any "explanation or basis . . . as to how Fairstein arrived at" an estimate of her reputational harm of between $6 to $8 million. *Id.* at 9, ¶ 11.

**C.** **Kaplan's Opinions Concerning Damages Calculations by Fisher & Bania**

Kaplan's report contains, *inter alia*, the following opinions concerning the damages calculation conducted by Fisher and Bania:

- Bania failed to include the value of leisure time in his calculations. *Id.* at 42, ¶ 79.

- Fisher and Bania failed to consider the possibility that publishing firms other than the "Big Five" might publish Plaintiff's books, earning Enterprises profits. *Id.* at 34-36, ¶¶ 61-64 (comparing Plaintiff to an alleged child molester and rapist).

## ARGUMENT

### KAPLAN SHOULD BE PRECLUDED FROM TESTIFYING ABOUT CERTAIN OF HIS OPINIONS AT TRIAL

A court's inquiry in determining whether expert testimony is admissible focuses on three issues: (i) whether the witness is qualified to be an expert; (ii) whether the opinion is based on reliable data or methodology; and (iii) whether the expert's testimony on a particular issue will assist the trier of fact. *Pacific Life Ins. Co. v. Bank of N.Y. Mellon*, 571 F. Supp. 3d 106, 112 (S.D.N.Y. 2021); FRE 702. "The ***proponent of expert testimony*** has the burden of establishing by

a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied[.]"
*U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (emphasis added); *Pacific Life*, 571 F. Supp.
3d at 12-13. However, even if expert testimony meets the admissibility requirements of Rule 702,
it may nevertheless be excluded under Rule 403 "if its probative value is substantially outweighed
by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *See Daubert*,
509 U.S. at 595; *Pacific Life*, 571 F. Supp. 3d at 114. "The Rule 403 inquiry is particularly
important in the context of expert testimony 'given the unique weight such evidence may have in
a jury's deliberations.'" *Pacific Life*, 571 F. Supp. 3d at 114.

Here, Defendants cannot establish by a preponderance of the evidence that the following
*categories* of Kaplan's opinions and testimony are admissible under FRE 702:

> **1. Causation opinions**, located at Paragraphs 16-25, 27-35, 56, 81, 86 and 91 of
> Kaplan's report. *See* Ex. 3.

> **2. Opinions concerning alternative causes of Plaintiff's damages**, located at Paragraphs
> 13-16, 24(1-3), 33, 34, 36-48, 50-53, 63 and 83-85 of Kaplan's report. *See id*.

> **3. Opinions concerning Fisher's reputational harm analysis**, located at Paragraphs 10-
> 11, 25, 80, 82, 86, 88-90 and 91 of Kaplan's report. *See id*.

> **4. Opinions concerning the calculation of the amount of Plaintiff's damages: (a)
> Bania's failure to include "leisure time" in his damages analysis, and (b) the alleged
> failure of both Bania and Fisher to consider alternative publishers for Plaintiff's
> work**, located at Paragraphs 57, 58-59, 61, 62, 65, 79 and 87 of Kaplan's report. *See id*.

The *first category* invades the role of the court and/or the jury; moreover, Kaplan's
methods are insufficiently relevant under *Daubert* because they do not "fit" the facts of or issues
in this case. Kaplan is also unqualified to give such testimony and opinions in the context of a
defamation case. The *second category* is speculative, unreliable and prejudicial represents lay
testimony, relies on hearsay and must be excluded under FRE 403 as unduly prejudicial. Kaplan
is not qualified to offer the *third category*. Finally, the *fourth category* is speculative and lacks

any reliable foundation; further, Kaplan is not qualified to offer opinions relating to the publishing business.

1.      **The Court Should Exclude Kaplan's Causation Opinions**

Kaplan's causation opinions should be deemed inadmissible on three grounds: (1) they invade the role of the court and/or the jury; (2) they fail to meet *Daubert*'s "fit" test to establish relevance to the case; and (3) Kaplan is unqualified to issue them.

a.      **Kaplan's Causation Opinions Usurp the Role of Judge and Jury**

"It is a well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions." *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 115 (S.D.N.Y. 2020) (quoting *United States v. Articles of Banned Hazardous Substances*, 34 F.3d 91, 96 (2d Cir. 1994)). Admitting "such opinions would 'trespass[ ] on the province of the jury and the trial court' by imposing the expert's view on the parameters of the law and whether or not it has been violated." *Id.* (quoting *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993)). The Second Circuit has consistently held that expert testimony that usurps the role of the jury in applying the law to the facts is inadmissible under Rule 702 because it "undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (citation omitted).

Kaplan's causation opinions, and any related testimony, should be excluded because they usurp the role of judge and jury. Kaplan's opinions constitute an improper instruction on evaluating damages models, including "how the factfinder should evaluate Plaintiffs' proof of damages or what makes a damages model 'reliable.'" *Payment Card Antitrust Litig.*, 638 F. Supp. 3d at 309. Kaplan seeks to instruct the jury that Plaintiff must—but cannot—prove that her damages were

caused by the five scenes that will be at issue at trial under certain legal standards of proof, and, in doing so, relies on ill-fitting antitrust concepts and econometrics that contradict applicable law.

Kaplan articulates two standards of proof which he imposes on the causation analyses performed by Bania and Fisher: 1) a causation analysis must account for *every* alternative causal theory to meet the applicable standard for causation – otherwise it is unreliable;[7] and 2) to prove causation, a defamation plaintiff in a case involving an audiovisual work must proffer evidence that the specific, defamatory scenes within the work caused the plaintiff's damages. Ex. 3, Kaplan Rpt., at 12, 15, 17, 18, 31, ¶¶ 16, 24(1), 25(2), 19, 53(n. 142).[8] Kaplan opines that Plaintiff has failed to prove causation because neither Bania's nor Fisher's opinions meet these standards. *Id.*, at 12, ¶ 16 (Bania and Fisher fail "to estimate alleged damages caused <u>only</u> by the specific scenes" and "isolate" the scenes "from other conduct"); 15 (¶ 24(1) ("Bania's calculations do not meet the burden of demonstrating economic causation" because he has only tied them to the Series as a whole and because he "made no attempt to disaggregate" damages caused by causes other than the five scenes); 19-20 (¶¶ 32-33) (Bania's *Google Trends* analysis provides no method for disaggregating negative impact of other scenes from five scenes); 31 (¶ 53, n. 142) (Bania has not

_____

[7] A review of the source upon which Kaplan relies for this first standard reveals that Kaplan fabricated this rule out of whole cloth. Kaplan's formulation of this standard (at 12, ¶ 16) – that "a damages expert should consider 'all other relevant factors' that may affect estimated damages beyond the conduct at issue and a 'failure to do so could result in [exclusion] of the expert's testimony'" – relies upon *The Comprehensive Guide*, at 248-249. Ex. 3, Kaplan Rpt., at 12 n. 48; Ex. 6. That text makes clear that exclusion of a damages expert is warranted only where the court "finds that *other significant issues* caused all or part of the lost revenues/profits being claimed during the damages period." Ex. 6, at 248-49 (emphasis added). Moreover, the source that *The Comprehensive Guide* cites for the exclusion of a damages expert's testimony is a 2006 Virginia Supreme Court case that does not require experts to account for *every other factor* relevant to a damages assessment. *Saks Fifth Ave. v. James, Ltd.*, 630 S.E.2d 304 (Va. 2006) (expert failed to assess any significant factors that may have impacted damages calculation).

[8] Kaplan implicitly articulates this standard by rejecting evidence of causation relied upon by both Bania and Fisher as insufficient because such evidence refers to the Series as opposed to the five scenes at issue. For example, Kaplan argues that the June 3, 2019 Penguin email, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ (Ex. 14) is insufficient to "isolate the impact . . . of the five scenes . . . from other issues concerning Fairstein in the series not at issue here." Ex. 3, Kaplan Rpt., at 31, ¶ 53(n. 142) (citing to Bania's report, Ex. 1, at 9, ¶¶ 49-50). Fisher cites the same email in his report. *See* Ex. 5, at 27. Kaplan fails to cite any caselaw or secondary authority for his implicit suggestion that to meet her burden of proof, Plaintiff's evidence of causation must specifically reference one or more of the five scenes.

established causation but simply demonstrated "correlation" by relying on the June 3, 2019

Penguin email ███████████████████████████████████████████████, but not in the five

scenes specifically). This improperly enters the province of judge and jury, in first instructing the

jury as to what Kaplan believes is the proper legal standard for causation and then telling the jury

that they should find in favor of Defendants on the issue of causation.[9]

In *Payment Card Antitrust Litig.*, an antitrust case, Judge Brodie excluded the portions of

Kaplan's expert testimony and report which echoed the disaggregation theories Kaplan offers in

this case, finding that Kaplan's opinion that "it is critically important for any reliable damage

model to be explicitly connected to the precise allegations at issue" encroached on "the court's

duty to instruct on the law." 638 F. Supp. 3d at 308. Judge Brodie also excluded the portions of

Kaplan's report that described the economic literature supporting his opinions because Kaplan was

using those sources to instruct the jury about a "fundamentally legal concept"—what is "'critical'

with regard to damages estimations." *Id.* Judge Brodie further found that Kaplan could not instruct

the jury that failing to control for other economic factors is "an essential component of evaluating

proof of damages" or about "situations in which '[c]ourts refuse to find causation.'" *Id.* Here,

---

[9] Kaplan usurps the Court's role in an additional respect: He speculates that scenes in the Series other than the five scenes at issue, including those that were dismissed as non-defamatory or were never part of the case, caused Plaintiff's economic damages. *See, e.g.*, Ex. 3, Kaplan Rpt. at 18-19, ¶ 30. This is no more than a thinly veiled attempt by Defendants to relitigate their subsidiary meaning defense, which was already rejected by the Court as a matter of law. *Fairstein v. Netflix, Inc.*, No. 20-CV-8042 (PKC), 2023 WL 6125631, at *28 (S.D.N.Y. Sept. 19, 2023) ("the point of view described by defendants is so broad that the… doctrine could encompass nearly any perfidious act attributed to Fairstein."). Informing the jury that Bania and Fisher failed to establish causation of Plaintiff's economic damages because the Series in its entirety may have caused Plaintiff's economic damages would in effect reverse the Court's decision rejecting the subsidiary meaning doctrine as grounds for dismissal of the case. Even if Defendants could get a second bite at the apple, the application of the subsidiary meaning doctrine, as well as the related incremental harm and libel proof plaintiff doctrines, are solely for the Court to decide as a matter of law. *See Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986); *Herbert v. Lando*, 781 F.2d 298, 310 (2d Cir. 1986). Allowing Kaplan to offer speculative and unreliable opinions about other scenes to the jury would unfairly prejudice Plaintiff. Additionally, Kaplan's baseless, repeated insinuation that Plaintiff has failed to prove causation because her evidence does not contain specific references to the five scenes at issue appears to be aimed at stripping the Court of its critical role in determining whether these two limiting doctrines apply and causing juror confusion. Allowing such impermissible and speculative testimony would unfairly prejudice Plaintiff at trial. FRE 403.

Kaplan relies on several of the **same** sources to offer similarly improper opinions. Ex. 3, Kaplan Rpt., at 13, ¶ 18 n. 50 ("proof that a defendant's wrongful conduct caused a plaintiff to suffer damages is a key concept in the determination of culpability in civil litigation."); Ex.7, *Litigation Services Handbook*, at KAPLAN000273-274 ("courts refuse to find causation when an expert neglects to consider other factors that could have caused, or at least contributed to, the plaintiff's damages."); Ex. 8, *Econometrics, Legal, Practical and Technical Issues*, at KAPLAN000193-194 ("courts typically require an analysis of damages that not only quantifies the amount…but also demonstrates that those damages are causally linked to the allegedly anticompetitive acts"); Ex. 9, *Antitrust Economics for Lawyers*, Ch. 8, at KAPLAN000751 ("one should not lose sight of the fact that the analysis must establish that the alleged collusive behavior caused the alleged damages… the use of a simple before-and-after model that does not control for…attribution of all differences to the behavior of defendants would not pass muster in a peer-reviewed journal."); Ex. 10, *Proving Antitrust Damages*, at KAPLAN000551 ("Courts typically require an analysis of damages that not only quantifies the amount of damages, but also demonstrates that those damages are causally linked to the allegedly anticompetitive acts.")

For the same reasons that Judge Brodie excluded Kaplan's improper legal instructions regarding causation in *Payment Card Antitrust Litig.*, the Court should exclude Kaplan's inadmissible causation opinions in this case.

### b. Kaplan's Causation Opinions Are Grounded In Antitrust Principles That Do Not "Fit" This Case

Defendants cannot establish that Kaplan's causation opinions and testimony are admissible under FRE 702[10] because the opinions do not "fit" the issues and facts in this case. *See, e.g., LVL*

---

[10]"Rule 702 … requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to **relevance**." *Daubert*, 509 U.S. at 591 (emphasis added).

*XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 641 (S.D.N.Y. 2016); *Grajeda v. Vail Resorts Inc.*, No. 2:20-cv-00165, 2023 WL 4803755, at *14 (D. Vt. July 27, 2023). An expert's opinions may fail *Daubert's* fit requirement where the expert's methodology was "'***transposed from one area to a completely different context, and there is no independent research supporting the transposition***.'" *Ctr. for Indep. of Disabled, New York v. Metro. Transp. Auth.*, No. 17-cv-2990, 2023 WL 7403642, at *1 (S.D.N.Y. Nov. 9, 2023) (quoting *Astra Aktiebolag v. Andrx Pharm., Inc.*, 222 F. Supp. 2d 423, 488 (S.D.N.Y. 2002), *aff'd*, 84 F. App'x 76 (Fed. Cir. 2003)) (emphasis added).

Numerous courts have excluded testimony in which an expert 1) applies methods, techniques or tests that are established in one context or subject matter to a different one, but 2) fails to demonstrate that such transposition is supported by research or logic. *See, e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 52 (1st Cir. 2016) (exclusion of expert's methodology and corresponding testimony was not abuse of discretion where (1) the methodology, which incorporated "econometric analysis of stock market data," and had been used in connection with stock valuation, "had questionable relevance to hypothesizing the outcome of a settlement agreement," and (2) there was insufficient independent research concerning its application to "predict settlement terms"); *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2019 WL 1092572, at **5-6 (E.D.N.C. Mar. 8, 2019) (excluding expert's opinion concerning the results of the application of a model based on a set of facts that were different from the facts of the case, finding that neither the model nor the opinion "fit" the case).

In *Eshelman*, the plaintiff alleged that the defendant corporation defamed him in proxy statements opposing the plaintiff's proposal to place himself on an enlarged board of directors which asserted that the plaintiff defrauded the FDA with respect to a clinical drug trial. 2019 WL

1092572, at *1. The defendant's reputational harm expert offered testimony applying a model he had developed "based on research studying the effect of public disclosure of 'shareholder class action lawsuits alleging financial misrepresentation' in violation of Rule 10b-5" to determine what harm, if any, the defendant's statements caused the plaintiff. *Id.*at *5. The court found that the model did "not fit the facts of th[e] case," and excluded the testimony because neither the defendant nor the expert had shown "how being named as a defendant in a shareholder class action [alleging Rule 10b-5 violations] applies to being accused of clinical trial fraud in a corporate SEC filing opposing a proposal in a proxy contest." *Id.*

Similarly, Kaplan's economic damages theories, grounded in antitrust damages analysis (including as related class certification) and econometrics, have no obvious application in this defamation case. *See* Ex. 3, Kaplan Rpt., 12-13, 15-21, 43, 45 (¶¶ 16, 18-19, 24, 28-29, 31-35, 80-81 and 86). For example, a number of these paragraphs opine about Bania's obligation to "isolate" or "disaggregate" the effects of the five scenes at issue from the effects of Kaplan's alternative explanations, including other scenes from the Series and the Series as a whole. *See* Ex. 3, Kaplan Rpt., at 12, 16, 18-20 and 31 (¶¶16, 24, 29, 31-33 and 53). Per Kaplan's own sources, disaggregation is a concept that is applied in antitrust class action lawsuits by federal district courts **as a matter of law**. Ex. 10, *Proving Antitrust Damages*, at KAPLAN000541 ("the district court may certify a class only if the plaintiff can disaggregate damages caused by the theory certified for class treatment from damages caused by uncertified theories…. [T]he district court, as a matter of law, must decide this in the first instance."); Ex. 9, *Antitrust Economics for Lawyers*, at KAPLAN000739 & n. 25 (discussing whether "alleged anticompetitive activities or unrelated lawful factors" are cause of antitrust damages), KAPLAN000731 (discussing "collusion damages models for indirect purchasers" and noting that "court rejected…challenges to plaintiff's expert's

damages methodology and the expert's failure to disaggregate damages to … one remaining theory of liability.") Kaplan's opinion that Bania's "failure to isolate just the effects, if any, of the five scenes and statements at issue is a substantial mistake that renders his damages analysis unreliable," (Ex. 3, Kaplan Rpt. ¶¶ 18, 29), is grounded in "***antitrust injury and standing doctrines***" that "identify which measures of harm are consistent with the public goals of antitrust laws." Ex. 11, *Economic Authority and the Limits of Expertise in Antitrust Cases*, at KAPLAN000486 ("Ideally, the damage model would isolate the antitrust offense as the single causal factor") (emphasis added).

Kaplan's criticism that Bania's causation analysis "confuses correlation with causation," also employs econometrics principles that are commonly used in the antitrust context as well as for macroeconomic forecasting. Ex. 3, Kaplan Rpt., at ¶ 18 n. 50, ¶ 20 n. 55, ¶ 35, ¶ 53 n. 142; Ex. 8, *Econometrics*, at KAPLAN000193-194 ("econometric tests can be used to determine whether the data are consistent with the anticompetitive act having caused changes in the dependent variable."); Ex. 12, *Econometrics: A Modern Approach*, at KAPLAN000759-760 ("The most common application of econometrics is the forecasting of such important macroeconomic variables as interest rates, inflation rates and gross domestic product"), KAPLAN000770 (discussing application of "ceteris paribus" in context of evaluating public policy).

Kaplan gives no explanation of how the economic principles he relies on in criticizing Plaintiff's experts—which primarily relate to ***legal issues*** such as class certification and standing and the ***forecasting*** of economic conditions or social behavior—"fit" the facts and issues in this case, or why they are properly applied. *See, e.g.*, *Eshelman*, 2019 WL 1092572, at \*\*5-6. The type of econometric analysis performed by experts in antitrust cases involves consideration of economic factors that are understood to impact each other, and are therefore assumed to be potential causes

of an economic effect, such a dramatic price increase of a product; the analysis therefore entails isolation of the impact of anti-competitive conduct alleged to have caused the increase from economic factors generally known to cause price increases. *See, e.g.*, Ex. 8, *Econometrics, Legal, Practical and Technical Issues*, at KAPLAN000187-91. Thus, for example, where an economist seeks to determine whether such a price increase, occurring soon after entry into a price-fixing agreement by its manufacturers, was caused entirely or in part by the agreement, econometric analysis allows the economist to "separate[e] the impact" of the agreement, or "isolate" it from (1) costs for manufacturing the product and (2) demand for the product. *See id.*, at KAPLAN000190-191.[11]

This is also not a case where Plaintiff's experts need engage in any type of forecasting, with respect to economic variables or social behavior. Nor are they determining the best way to implement public policy initiatives. Ex. 12, *Introductory Econometrics*, at KAPLAN000759-760, 770.

Without explaining how or why disaggregation and related concepts should be applied in this case, Kaplan simply has no basis to opine that Bania's and Kaplan's opinions are unreliable because they failed to rule out all other possible causes of Plaintiff's damages. Ex. 3, Kaplan Rpt. at 15-16, ¶ 24(1)-(3). There is simply no reason to diverge from FRE 702's requirement that "[an] expert must make some reasonable attempt to eliminate **some of the most obvious [alternative] causes**," of damages but need not "categorically exclude each and every possible alternative cause." *Tardif v. City of New York*, No. 13-cv-4056, 2022 WL 2195332, at *8 (S.D.N.Y. June 17, 2022) (emphasis added).[12] *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543,

---

[11] The text states: "when correctly implemented, econometric techniques can isolate and measure the effect of a single explanatory factor on the economic outcomes that are relevant when estimating damages." Ex. 8, at KAPLAN000190.
[12] This view was adopted by the Advisory Committee to the Federal Rules of Evidence on the occasion of the Rules' 2000 Amendment. *See* FRE 702 Advisory Committee Notes to the 2000 Amendments (stating that "Courts both before

2015 WL 9480448, at *2 & n. 1 (S.D.N.Y. Dec. 29, 2015). *Accord Hirchak v. W.W. Grainger, Inc.*, 980 F.3d 605, 608 (8th Cir. 2020) ("An expert opinion "should not be excluded [simply] because the expert failed to rule out every possible alternative . . . [b]ut an expert opinion must account for 'obvious' alternatives.") (internal quotation marks and citations omitted); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 156 (3d Cir. 1999) (same).

Here, Bania and Fisher followed this principle. Bania's causation analysis starts with a finding of liability by the jury and evaluates the singular issue of whether economic harm resulted from the loss of Plaintiff's publishing career. Ex. 1, Bania Rpt. at 1-2, ¶ 6. Fisher similarly assumed that Plaintiff obtained a jury verdict in her favor. Ex. 5, Fisher Supp. Rpt., at 75-76. Bania and Fisher each considered, and accounted for, alternative explanations that Defendants have raised in this case, including but not limited to the 2012 Central Park Five book by Sarah Burns, the 2012 Ken Burns documentary, the settlement of the Five's lawsuit, and negative press concerning Plaintiff. Ex. 1, Bania Rept. at 4-5, 10-11; Ex. 5, Fisher Supp. Rpt. at 67-69. Kaplan provides no reason why his antitrust rules, as opposed to FRE 702, should be followed.

### c. Kaplan Is Not Qualified to Offer His Causation Opinions

Yet another reason why Kaplan's causation opinions should be excluded is that Kaplan is not qualified to provide a sound basis for applying antitrust concepts in the context of a defamation case. FRE 702. One of the only two defamation cases listed in Kaplan's C.V., *Duke Energy Carolinas, LLC v. NTE Carolinas II LLC, et al.*, No. 3:19-cv-00515 (W.D.N.C.)., involved a corporate defamation claim that was grounded in claims of breach of contract and unfair competition between utility companies. Ex. 3, Kaplan Rpt., Ex. A, Curriculum Vitae, at 6.

---

and after *Daubert* have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. These factors include: . . . (3) Whether the expert has adequately accounted for obvious alternative explanations.") (citations omitted).

Kaplan's rebuttal work primarily concerned damages resulting from unfair competition. Ex. 13. He also evaluated the impact of the alleged defamation on the ability of a company to compete in the energy marketplace. Ex. 4, Kaplan Dep. at 57:12-60:19; Ex. 13. In the second case, *Gubarev v. Buzzfeed*, No. 1:17-cv-60426-UU (S.D. Fla.), Kaplan also served as a rebuttal expert and analyzed the damages claim of a corporate entity for business interruption and lost profits.[13] Ex. 4, Kaplan Dep. at 40:5-41:7, 42:10-43:11. At his deposition, he did not have a specific recollection of responding to the individual plaintiff's claim for reputational damages, separate and apart from that related to the corporate entity. *Id.* at 42:23-43:4.

## 2.    The Court Should Exclude Kaplan's Speculative Opinions and Testimony Concerning Alternative Causes of Plaintiff's Damages

Regardless of whether Kaplan's causation opinions are excluded at trial, as discussed *supra* at Point 1, his opinions that Plaintiff's economic damages and reputational harm were caused by sources other than the Series should be excluded as speculative and unreliable because Kaplan has ***undertaken no research or analysis*** to determine whether the alternative causes he points to had an impact on Plaintiff prior to the release of the Series. Ex. 3, Kaplan Rpt. at ¶¶ 13-16, 24(3), 33, 36-53, 63, 83-85.[14] *See, e.g., Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006), *aff'd on other grounds*, 552 U.S. 312 (2008) (to be admissible, "[a]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence

---

[13] Notably, Plaintiff has not moved to exclude Kaplan's opinions related to Bania's damages calculations. *See, e.g.*, Ex. 3, Kaplan Rpt. at 37-42, ¶¶ 66-78

[14] With respect to Plaintiff's economic damages for loss of her publishing career, Kaplan's opinion is nonsensical because it is undisputed that Plaintiff had a publishing career with Penguin Random House at the time the Series aired—what Fairstein said or did in 2002, or even in 2018 is too remote in time to have impacted Penguin's termination of her publishing agreement on June 7, 2019. In any event, both Bania and Fisher did consider alternative causes. Ex. 1, Bania Rept. at 4-5, 10-11; Ex. 5, Fisher Supp. Rpt. at 67-69. Bania even considered a statement made by Robert Morgenthau that is cited in Kaplan's report. *Compare* Ex. 3, Kaplan Rpt. at 22, ¶ 37 with Ex. 1, Bania Rpt., at 9-10, ¶¶ 53-56.

substantiate that conclusion"); *United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020) (Expert testimony should be excluded if it is "speculative or conjectural.").

Kaplan's speculative opinions are grounded, in part, on the equally speculative deposition testimony of non-parties about what could have mitigated Plaintiff's harm. Ex. 3, Kaplan Rpt. at 23-31, ¶¶ 39-53. Some testimony concerns events that occurred as early as 2012 and really bear no relevance to whether the Series caused Plaintiff's damages. For example, Kaplan states that in 2012 and 2013 Plaintiff's book publicist "Lauren" Rossi (her name is Laura) blocked negative Tweets blocked individuals on Twitter. *Id.* ¶ 39. Also, ███████████████████████ ████████████████ *Id.* ¶ 45. There is no explanation of why or how such remote events impacted Plaintiff in May 2019 such that they should have been considered by Plaintiff's experts. Kaplan's unsupported opinions about alternative causes of Plaintiff's damages seem to be yet another attempt by Defendants to bring inadmissible and highly prejudicial hearsay into the case. They will not assist the trier of fact and should be excluded. *Arista Recs. LLC*, 608 F. Supp. 2d at 428-429 ("An expert who simply repeats the hearsay of the client who retained him, without any independent investigation or analysis, does not assist the trier of fact in understanding matters that require specialized knowledge.").

The danger that Kaplan's opinions will confuse issues, mislead the jury or unfairly prejudice Plaintiff far outweighs any probative value that his testimony might have. Kaplan plans to speculate that events, conduct, statements and publications that date as far back as 1989 might be explanations for Plaintiff's injuries; such speculation has no probative value whatsoever. The opinions and testimony should therefore be excluded under FRE 403.

**3.     The Court Should Exclude Kaplan's Opinions About Fisher's Reputational Harm Analysis**

Paragraphs 25, 80, 82, 86, 88-90 of Kaplan's report purport to assess Fisher's reputational harm analysis, including Fisher's (1) calculation of the value of the reputational harm sustained by Plaintiff due to the alleged defamation and (2) the design and cost of the reputation repair program Fisher recommends for Plaintiff. Kaplan is not qualified to offer these opinions or testimony because he has no educational or experiential background in reputational harm, and they should therefore be excluded under FRE 702.

As discussed *supra*, at Point 1.c, Kaplan has little experience with defamation cases. Kaplan testified at his deposition that he has never been retained in the area of public relations, and has never designed a reputation repair program like the one designed by Fisher. *See* Ex. 4, Kaplan Dep., at 66:3-67:8. Moreover, Kaplan had no specific recollection of responding to any reputational harm allegations made by the individual plaintiff in the one *defamation* case cited in his C.V. *Id.*, at 42:23-43:4. "To offer expert testimony under Rule 702, a witness must be 'qualified as an expert by knowledge, skill, experience, training, or education.'" *Nnebe v. Daus*, No. 06-cv-4991 (RJS), 2023 WL 6881992, at *1 (S.D.N.Y. Oct. 18, 2023). Plainly, Kaplan is not qualified to offer the opinions and testimony found in these paragraphs, which relate to Fisher's reputational harm analysis. [15]

---

[15] Kaplan's lack of qualifications concerning reputational harm analysis also render a portion of Paragraph 24 of his report concerning Bania's causation analysis inadmissible. Ex. 3, Kaplan Rpt., at 16, ¶ 24(3). Kaplan criticizes Bania for failing to consider the impact of "[Plaintiff's] own conduct and the impact such conduct may have had on Fairstein's reputation" *if the five scenes had never aired*. *Id.* The remaining portion of this paragraph, which recites reciting the speculative testimony of Plaintiff's former literary agent about how Plaintiff might "still be publishing books," should also be excluded under FRE 403 as it poses grave danger of unfairly prejudicing Plaintiff.

4.    **Kaplan's Opinions About "Leisure Time" and the Publishing Industry Should Be Excluded**

Kaplan's opinions about leisure time and Plaintiff's ability to work with alternative publishers after losing her publishing contract and literary agent are speculative and unreliable. *See Vale v. United States of Am.*, 673 F. App'x 114, 116 (2d Cir. 2016) ("Expert testimony is inadmissible as unreliable where it consists of conclusory and speculative opinions, or where it lacks foundation."); *Reigel*, 451 F.3d at 127 ("expert opinion requires some explanation as to how the expert came to his conclusion").

Paragraph 79 of Kaplan's report opines that Bania's calculation of Plaintiff's lost profits is deficient because it fails to consider any offset by the value to Plaintiff of having additional "leisure time" due to the destruction of her career as a "Big Five" author. Ex. 3, Kaplan Rpt., at 42 ¶ 79. This opinion is based solely on the content of a series of economics textbooks. Ex. 4, Kaplan Dep. at 218:19-229:25.[16] Kaplan did not consider any evidence concerning whether Plaintiff enjoys writing fiction, considers it to be work, or values time away from writing.[17] Moreover, nothing in Kaplan's background suggests that he has any experience in determining whether an established "Big Five" author would benefit from leisure time. In short, Paragraph 79 and related testimony should be excluded as unreliable, speculative and conclusory.

Paragraphs 58-59, 61-62 and 64-65 in Kaplan's report, which criticize both Bania's and Fisher's damages calculations for failing to consider whether Plaintiff could sell new works to an alternative publisher, should be excluded on the same ground. Ex. 3, Kaplan Rpt., at 32-36. At his

---

[16] Most unfortunately, and inexplicably, one of Kaplan's sources outrageously discusses the "leisure time" of slaves. Ex. 4, Kaplan Dep. 223:20-224:23.

[17] Although Kaplan did consider an email written by Plaintiff in June 2019 stating that "not writing provided her with a first summer vacation in 30 years," he made no determination whether the statement indicated that Plaintiff was an author who valued "leisure time" over creative writing. *See* Ex. 3, Kaplan Rpt., at 42; Ex. 4, Kaplan Dep. at 228:21-229:19. Kaplan did not calculate what "benefit [Plaintiff] would receive from leisure time." *Id.*

deposition, Kaplan conceded the following: (1) he did not obtain any evidence of the willingness of alternative publishers to publish Plaintiff's future work and on what financial terms; (2) he is unaware of any methods by which Plaintiff's experts would be able to obtain such information; and (3) he has no knowledge about whether an author is able to obtain a new publishing deal without a literary agent – a relevant point because since her ICM literary agent dropped her, Plaintiff has had no representation. *See* Ex. 4, Kaplan Dep., at 158:8-160:14; 160:24-161:11. Kaplan has failed to provide any foundation for his contention that an alternative publisher would be willing to publish Plaintiff's new work. His view that Plaintiff could mitigate her lost profits in this manner is therefore speculative and conclusory. In addition, Kaplan's discussion of alternative publishers likens Plaintiff to an alleged pedophile and an alleged rapist. Such highly prejudicial comparisons should be disallowed at trial. Ex. 3, Kaplan Rpt. at 35-36, ¶ 64. FRE 403.

Kaplan is also not qualified to offer an opinion concerning alternative publishers. Nothing in Kaplan's report or C.V. suggests that Kaplan has sufficient knowledge of, or experience with, the publishing industry to assess the value of Plaintiff's works to alternative publishers. Ex. 3, Kaplan Rpt. & Ex. 1. Nor can Kaplan reliably opine about the type and extent of harm that might be sustained by a move from a "Big Five" publisher to a small press. For these reasons, Kaplan's opinions about alternative publishers should be excluded at trial. FRE 702.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant Plaintiff's motion to preclude Defendants' rebuttal expert David P. Kaplan's from testifying at trial about the opinions and statements set forth in Paragraphs 10-25, 27-48, 50-53, 56, 57-59, 61-65, and 79-91 of his expert report, along with such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         December 15, 2023

Respectfully Submitted,

By:    /s/ *Kara L. Gorycki*
    Kara L. Gorycki
    Andrew T. Miltenberg
    Stuart Bernstein
    NESENOFF & MILTENBERG, LLP
    363 Seventh Avenue, Fifth Floor
    New York, New York 10001
    (212) 736-4500
    kgorycki@nmllplaw.com
    amiltenberg@nmllplaw.com
    sbernstein@nmllplaw.com

    *Attorneys for Plaintiff Linda Fairstein*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2023, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Kara L. Gorycki*