**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LINDA FAIRSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-8042 (PKC) |
| | ) | |
| v. | ) | |
| | ) | |
| NETFLIX, INC., AVA DUVERNAY, and | ) | |
| ATTICA LOCKE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANTS' JURY**
**INSTRUCTIONS AND MEMORANDUM IN SUPPORT OF DEFENDANTS' PROPOSED**
**JURY INSTRUCTIONS**

Kara L. Gorycki
Andrew T. Miltenberg
Stuart Bernstein
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com

## **TABLE OF CONTENTS**

I.    Objections to Defendants' Preliminary Instructions .................................................. 1

   A.   Proposed Instruction No. 3 -"Case Background" ............................................. 1

   B.   Proposed Instruction No. 4 –"Overview" ....................................................... 2

II.   Objections to Defendants' Liability Instructions ...................................................... 4

   A.   Defendants' Proposed Instruction No. 15 – "Defamation Cases in General".................... 4

   B.   Defendants' Proposed Instruction No. 17 – "Defamatory Meaning" ................................ 6

   C.   Defendants' Proposed Instruction No. 18 – "Material Falsity" ........................................ 6

   D.   Defendants' Proposed Instruction No. 19 – "Matters of Editorial Judgment".................... 7

   E.   Defendants' Proposed Instruction No. 20 – "Opinion"..................................................... 7

   F.   Defendants' Proposed Instruction No. 22 – "Knowledge of Falsity" ............................... 9

   G.   Defendants' Proposed Instruction No. 23 – "Actual Malice-Meaning" .......................... 10

   H.   Defendants' Proposed Instruction No. 24 — "Actual Malice-Dramatization"................ 13

III.   Defendants' Proposed Damages Instructions........................................................... 14

   A.   Defendants' Proposed Instruction No. 27 — Damages .................................................. 14

   B.   Defendants' Proposed Instruction No. 28 — Punitive Damages ..................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Armstrong v. Simon & Schuster, Inc.*,
    85 N.Y.2d 373 (1995) .................................................................................................11

*Biro v. Conde Nast*,
    883 F. Supp. 441 (2d Cir. 2012) ..............................................................................11

*Bouveng v. NYG Capital LLC*,
    175 F. Supp. 3d 280 (S.D.N.Y. 2016) ..........................................................4, 16, 17

*Brian v. Richardson*,
    87 N.Y.2d 46 (1995) ................................................................................................. 8

*Cantu v. Flanigan*,
    705 F. Supp. 2d 220 (E.D.N.Y. 2010) ...............................................................4, 16

*Carroll v. Trump*,
    No. 20-cv-7311 (S.D.N.Y.)......................................................................................4, 16

*Celle v. Filipino Rptr. Enters.*,
    209 F.3d 163 (2d Cir. 2000) .............................................................................8, 15, 16

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014)..................................................................................... 8

*Compuware Corp. v. Moody's Investors Servs.*,
    499 F.3d 520 (6th Cir. 2007) ...................................................................................11

*Conformis, Inc. v. Aetna, Inc.*,
    58 F. 4th 517 (1st Cir. 2023)....................................................................................11

*Contemporary Mission, Inc. v. NY Times Co.*,
    842 F.2d 612 (2d Cir. 1988) ....................................................................................12

*Curtis Publ. Co. v. Butts*,
    388 U.S. 130 (1967) .................................................................................................10

*Davis v. Boeheim*,
    24 N.Y.3d 262 (2014) ............................................................................................... 8

*Davis v. Costa-Gavras*,
    654 F. Supp. 653 (S.D.N.Y. 1987)...........................................................................14

*Dodds v. Am. Broadcast Co.*,
    145 F. 3d 1053 (9th Cir. 1998) ................................................................................13

*Egiazaryan v. Zalmayev*,
    880 F. Supp. 2d 494 (S.D.N.Y. 2012)....................................................................... 8

*Fairstein v. Netflix*,
    2023 WL 6125631 (S.D.N.Y. Sept. 19, 2023)...........................................3, 10, 12, 14

*Fairstein v. Netflix*,
    553 F. Supp. 3d 48 (S.D.N.Y. 2021).................................................................. passim

*Faulk v. Aware, Inc.*,
    19 A.D.2d 464 (1st Dep't 1963)...........................................................................4, 17

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ............................................................................................9, 15

*Gilmore v. Jones*,
   2021 WL 68684 (W.D. Va. Jan. 8, 2021) ................................................................ 10

*Goldfarb v. Channel One Russia*,
   663 F. Supp. 3d 280 (S.D.N.Y. 2023) ..................................................................... 10

*Gross v. N.Y. Times Co.*,
   82 N.Y.2d 146 (1993) .............................................................................................. 8

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989) ..................................... 10

*Howard v. Antilla*,
   294 F.3d 244 (1st Cir. 2002) ................................................................................... 11

*Huggins v. Moore*,
   94 N.Y.2d 296 (1999) ............................................................................................... 5

*Janklow v. Newsweek, Inc.*,
   788 F.2d 1300 (8th Cir. 1986) .................................................................................. 9

*Jankovic v. Int'l Crisis Grp.*,
   822 F. 3d 576 (D.C. Cir. 2016) ............................................................................... 10

*J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*,
   201 Cal. Rptr. 3d 782 (Cal. App. 2016) ................................................................... 6

*Kendall v. Daily News Publ'g Co.*,
   716 F.3d 82 (3d Cir. 2013) ...................................................................................... 11

*Kesner v. Dow Jones & Co.*,
   515 F. Supp. 3d 149 (S.D.N.Y. 2021) ..................................................................... 11

*Leidig v. Buzzfeed, Inc.*,
   371 F. Supp. 3d 134 (S.D.N.Y. 2019) ....................................................................... 7

*Lovingood v. Discovery Communications*,
   800 Fed. Appx. 840 (11th Cir. 2020) ..................................................................... 14

*Morsette v. The Final Call*,
   309 A.D.2d 249 (1st Dep't 2003) ............................................................................ 17

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ..................................................................................... 4, 13, 14

*Newton v. Nat'l Broad. Co.*,
   930 F.2d 662 (9th Cir. 1990) ................................................................................... 13

*Ollman v. Evans*,
   750 F. 2d 970 (D.C. Cir. 1984) ................................................................................. 9

*Palin v. N.Y. Times*,
   No. 17-cv-4853 (S.D.N.Y.) ............................................................................. passim

*Prozeralik v. Capital Cities Comm'ns*,
   82 N.Y.2d 466 (1993) .............................................................................................. 10

*Reeves v. California Broadcasting Cos., Inc.*,
   580 F. Supp. 84 (S.D.N.Y. 1983) .............................................................................. 6

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
   42 N.Y.2d 369 (1977) ............................................................................................ 7, 8

*Roberts v. Doe*,
   2010 WL 11527317 (S.D.N.Y. May 11, 2010) ................................................................. 15, 16

*Saenz v. Playboy Enters.*,
   841 F. 3d 1309 (7th Cir. 1998) ....................................................................................... 13

*Sorvillo v. St. Francis Preparatory School*,
   607 Fed. Appx. 22 (2d Cir. 2015).................................................................................... 11

*Stepanov v. Dow Jones Co.*,
   120 A.D. 3d 28 (1st Dep't 2014)................................................................................. 11, 12

*Stern v. Cosby*,
   645 F. Supp. 2d 258 (S.D.N.Y. 2009).............................................................................. 15

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
   330 F.3d 1110 (9th Cir. 2003).......................................................................................... 10

*U.S. Dominion Corp. v. Powell*,
   554 F. Supp. 3d 42 (D.D.C. 2021)................................................................................... 10

*Unsworth v. Elon Musk*,
   2019 WL 8220721 (C.D. Cal. Nov. 18, 2019) ................................................................. 9

*Webber v. Dash*,
   19-cv-610 (S.D.N.Y.) ....................................................................................................... 4

Plaintiff Linda Fairstein ("Plaintiff") respectfully submits this memorandum of law in response to Defendants' Jury Instructions (ECF No. 332) and Memorandum in Support of Defendants' Jury Instructions (ECF No. 333).[1] Plaintiff reserves the right to raise additional objections to the proposed instructions discussed herein, and any other proposed instructions submitted by Defendants, at a later stage of the proceedings, including at the charging conference. It is Plaintiff's position that the Court should adopt Plaintiff's Proposed Jury Instructions, (ECF No. 248), and, accordingly, any failure to address an instruction that has been proposed by Defendants should not be construed as an acknowledgment or admission that the instruction should be adopted by the Court.

## I. OBJECTIONS TO DEFENDANTS' PRELIMINARY INSTRUCTIONS

### A. Proposed Instruction No. 3 –"Case Background"

This instruction is a transparent attempt to subvert the normal order of trial and focus the jury on the Five with a blatant appeal to emotion. The proposed instruction is rife with factual and legal inaccuracies and prejudicial language that would effectively put the Court in the position of making an opening statement for Defendants. This instruction:

- Improperly advises the jury to determine "who has the better argument for each of the issues in the case," after suggesting that opening statements are evidence. ECF No. 332, Defs. Prop. Jury Instr., at 6; ECF No. 248, Pltf. Prop. Jury Instr., at 6 ("What the lawyers have said in their opening statements is not evidence").

- Improperly tells jurors to give "both sides an equal opportunity to "***convince***"[2] them, suggesting that jurors' emotions should play a role in returning a verdict. ECF No. 332, Defs. Prop. Jury Instr., at 6 (emphasis added); ECF No. 248, Pltf. Prop. Jury Instr., at 8 ("You are not to be swayed by rhetoric or emotional appeals").

---

[1] The Memorandum will be cited herein as "Defs. Mem."

[2] When one Googles the word "convince" the first definition that appears in the search results is to "cause (someone) to believe firmly in the ***truth*** of something." (emphasis added). It is the jury's job to impartially judge the facts and determine the weight of the evidence not to firmly believe in the "truth" of what any side is presenting. ECF No. 248, Pltf. Prop. Jury Instr., at 6.

- Tells the jury that the Series **is** a dramatization of the "experiences of" the Five when there is a question in the case about whether the average viewer would understand the depiction of Ms. Fairstein as dramatization.[3] *See Fairstein v. Netflix*, 553 F. Supp. 3d 48, 71 (S.D.N.Y. 2021) ("*Fairstein I*") ("Given the full content and context of the series at issue, the Court declines to conclude that the average viewer would assume that 'When They See Us' is 'more fiction than fact'"). There is also a question as to whether the Series depicts the Five's "experiences" when depicting Plaintiff in the Series. *See* ECF No. 232, Pltf. Omnibus Motion in Limine, at 9 (scenes at issue in this case "depict Fairstein's actions outside the presence of the individuals who were questioned by police, their family members and lawyers").

- Incorrectly states that the Sex Crimes Unit "prosecuted and secured the convictions of the Five in connection with the rape of the Jogger." The case was prosecuted by Elizabeth Lederer, who was assigned to the Trial Division and the Sex Crimes Unit, and Arthur "Tim" Clements, who was assigned only to the Trial Division. *See* Declaration of Kara L. Gorycki in Support of Pltf. Opp. To Defs. MIL No. 1, dated February 16, 2024, Exs. 2-3.

- Inaccurately described Plaintiff as retiring from the District Attorney's office to become a crime fiction novelist. After retiring, Plaintiff continued to work as an attorney (including on behalf of victims of sexual assault and the wrongly accused), consultant and worked to raise money for various nonprofit organizations who helped victims of sexual assault and people suffering from terminal illnesses.

- Unnecessarily and inexplicably includes reference to actress Felicity Huffman[4] in the paragraph about Plaintiff.

- Mischaracterizes Netflix as a mere "streaming service that released" the Series. Netflix, has not asserted a defense to liability in this action on the ground that it merely published the Series. ECF No. 102.

ECF No. 332, Defs. Prop. Jury Instr., at 5-6.

**B.  Proposed Instruction No. 4 – "Overview"**

This instruction should not be given before opening statements, as suggested by

Defendants. *See Palin v. N.Y. Times*, No. 17-cv-4853, ECF No. 175, Trial Tr. at 74:12-14, 74:21

(giving preliminary instruction **after** opening statements). All instructions to the jury should first

---

[3] Throughout this case the Court, and the parties, have referred to the Series as a docudrama. *See Fairstein I*, 553 F. Supp. 3d at 64.
[4] Shortly after the Series was released, Huffman was convicted of fraud and spent 11 days in jail as a result of participating in a scheme to get her daughter into college. *See, e.g.*, https://nypost.com/2023/12/01/entertainment/felicity-huffmans-parenting-is-pure-hollywood-entitlement/

refer to Plaintiff as "Linda Fairstein" rather than "Ms. Fairstein." Proposed Instruction Number 4 refers to "defamation." Should a preliminary instruction be given, it should use the term "libel" and define that for the jury. *Palin*, No. 17-cv-4853, ECF No. 175, Trial Tr. at 74:22, 76:7-25. *See* ECF No. 248, Pltf. Prop. Jury Instr. No. 13, at 18. Defendants' description of the five scenes is vague and could confuse the jury, particularly the references to the "reinvestigation and vacatur of the Five's convictions." Defs. Prop. Instr. No. 4, at 7. In *Palin v. N.Y. Times*, Judge Rakoff quoted the statements the plaintiff alleged to be libel, which is a less confusing approach. *Palin*, No. 17-cv-4853, ECF No. 175, Trial Tr. at 75:5-76:6. *See* ECF No. 248, Pltf. Prop. Instr. No. 13, at 18-21. Plaintiff need only prove that the sock DNA scene ("Scene 4") has a defamatory meaning. *See* ECF No. 232, Pltf. Omnibus Motion in Limine, Pt. I; ECF No. 248, Pltf. Prop. Instr. No. 13. The use of the term "materially false" will confuse the jury—the word "false" is sufficient. *Palin*, No. 17-cv-4853, ECF No. 175, Trial Tr. at 76:13. The "clear and convincing evidence" standard should not be introduced to the jury in a preliminary instruction and certainly not without any accompanying definitions of the different standards of proof. *Id.* at 76:18. Emphasizing the burden of proof with respect to the actual malice element of Plaintiff's claim improperly places significance on that element as compared to what else has to be proven.

Instructions to the jury concerning actual malice should not include that Defendants "knew that the statements were defamatory." Defs. Prop. Instr. No. 4, at 8. *See Fairstein v. Netflix*, 2023 WL 6125631, at *8 (S.D.N.Y. Sept. 19, 2023) ("*Fairstein II*") (actual malice requires proof that defendant acted with knowledge of the falsity of the statement or reckless disregard as to whether the statement was true or false). *See* discussion *infra* regarding Defs. Prop. Instr. No. 23.

Defendants also grossly misstate the law in Proposed Instruction No. 4 because Plaintiff is not required to "prove that damages resulted ***only*** from the statements in the Challenged Scenes as

to which she has proven all the elements of her defamation claim." Defs. Prop. Instr. No. 4, at 8 (emphasis added); Defs. Mem., at 10. When it comes to determining the amount of damages that should be awarded in an action involving libel *per se*, the jury need not apportion damages to individual statements within the publication nor show that solely actionable statements caused the plaintiff's harm. *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 319-325, 335-340 (S.D.N.Y. 2016) (plaintiff narrowed proof at trial from 1,800 to 66 defamatory statements contained in multiple articles and jury awarded compensatory damages based on actionable statements as a whole); *Bouveng*, No. 14-cv-05474, ECF No. 219, Jury Charge, at 47; ECF No. 221, Verdict Form; *Cantu v. Flanigan*, 705 F. Supp. 2d 220, 223-224 (E.D.N.Y. 2010) (upholding multi-million-dollar jury award for economic damages and reputational harm resulting from singular impact of multiple defamatory statements about the plaintiff); *Cantu*, 05-cv-3850, ECF No. 242-2, Jury Charge, at 14-16, 19-21; *Carroll v. Trump*, No. 20-cv-7311, ECF No. 280, Verdict Form; *Carroll v. Trump*, No. 20-cv-7311, ECF No. 280-2, Jury Instructions; *Webber v. Dash*, 19-cv-610, ECF No. 281, Jury Charge, Trial Tr. at 604-605; *Faulk v. Aware, Inc.*, 19 A.D.2d 464, 467-471 (1st Dep't 1963). *See* Plaintiff's Opposition to Defendants' Motion *in Limine* No. 3: Omnibus Motion *in Limine* Regarding Plaintiff's Experts.

## II.   OBJECTIONS TO DEFENDANTS' LIABILITY INSTRUCTIONS

### A.   Defendants' Proposed Instruction No. 15 – "Defamation Cases in General"

This instruction is an effort by Defendants to present legal arguments to the jury and improperly place prominence on the element of actual malice as opposed to instructing the jury in a straightforward manner on each element of Plaintiff's defamation claims. It is not an introduction to "defamation cases in general" because it solely pertains to the *Times v. Sullivan* standard of actual malice. *See* 5 Mod. Fed. Jury Instr. Civil ¶ 91.01 (noting "reference should be made to state

law for the balance of issued to be covered in libel instructions"). Judge Rakoff did not utilize this form of instruction in *Palin v. N.Y. Times*. *See id.*, No. 17-cv-4853 (S.D.N.Y.) (ECF No. 170), at 13-14. Focusing the jury on the element of actual malice upfront—rather than providing a general explanation of each element that the jury must evaluate—could cause confusion and lead jurors to conclude that their determination of whether Defendants acted with actual malice should take prominence in their deliberations. The instruction incorrectly refers to Plaintiff as a "public official." Defendants' proposed modifications to the pattern instruction have no basis in law:

- Whether the Series concerns a "matter of public importance," is not an issue for the jury. Whether a publication addresses a matter of public interest or public concern is typically decided as a matter of law in cases in which private figures sue media defendants and allege they acted with "gross irresponsibility." *See, e.g.*, *Huggins v. Moore*, 94 N.Y.2d 296, 302-303 (1999). The parties are in agreement, here, that the applicable standard is actual malice.

- Defendants are also wrong in their assertion that "a public official suing for defamation must prove more than merely that a statement was false." Defs. Prop. Instr. No. 15. Under New York law, one element of Plaintiff's libel claims is falsity, or that the statement "is not substantially true." N.Y. Pattern Jury Instr. 3:27. The way Defendants' proposed instruction is written suggests that falsity is not the appropriate standard. To the extent that Defendants are referencing the higher burden of proof for the element of falsity (*i.e.* "clear and convincing evidence"), the proposed instruction is unclear and confusing.

- The last sentence of Proposed Instruction No. 15 "Even negligent misstatements about the conduct of a public official such as Ms. Fairstein would discourage free expression and critical commentary, and thus cannot be the basis for liability" makes no sense as written and should not be relied on when instructing the jury. The negligence standard is inapplicable in this case and reference to it will cause confusion.

Plaintiff's Proposed Instruction No. 13, modeled after New York's Pattern Jury Instructions, provides a general instruction which fully explains what libel is, the statements at issue in this case, the elements of libel that need to be evaluated by the jury and Plaintiff's burden of proof with respect to each element. ECF No. 248, Pltf.'s Prop. Instr. No. 13, at 18-26.

### B.  Defendants' Proposed Instruction No. 17 – "Defamatory Meaning"

The parties are in disagreement about the context in which the five scenes at issue need to be viewed and whether the jury needs to evaluate the five scenes for defamatory meaning. *See* ECF No. 232, Pltf. Omnibus Motion in Limine, at Pt. I. Plaintiff objects to Defendants' misstatement of law that "Whether or not a challenged statement has a defamatory meaning must be determined by its natural and probable effect on the mind of the average viewer. The average viewer is not someone with special training in the law…." Defs. Prop. Instr. No. 17, at 34. This standard applies when analyzing whether a statement is privileged as a fair and true report under **California** law. *See Reeves v. California Broadcasting Cos.*, *Inc.*, 580 F. Supp. 84 (S.D.N.Y. 1983); *J-M Mfg. Co.*, *Inc. v. Phillips & Cohen LLP*, 201 Cal. Rptr. 3d 782, 802-803 (Cal. App. 2016). The statement that the average viewer is "a reasonable person of ordinary intelligence, education and background" is likewise grounded in California law. 6A Cal. Jur. 3d Assault and Other Willful Torts § 230 (2024).

### C.  Defendants' Proposed Instruction No. 18 – "Material Falsity"

Plaintiff objects to the term "Material Falsity" as potentially causing juror confusion. New York's Pattern Jury Instruction Civil 3:27 uses the term "Falsity." Plaintiff also objects to the statement "If you find that a statement does not paint a plaintiff in a worse light than the facts about her behavior that you find are true then the statement is substantially true" as a prejudicial misstatement of the law that will mislead the jury. Defendants attempt to impose a legal standard employed by courts as a matter of law—that "[i]f the gist or substance of the Challenged Scene has no greater 'sting' than the true facts, then you must find for the Defendants." *See Fairstein* I, 553 F. Supp. 3d at 71. Defendants seek an improper instruction that the jury may consider the context of the statements, "a dramatization of historical events," when determining the element of

falsity. No context is needed—the jury need only compare the evidence presented as to what the truth was and with the scene being evaluated. *See* ECF No. 248, Pltf. Prop. Instr. No. 15; *Palin*, No. 17-4853, ECF No. 170, Jury Instr. No. 12; *Leidig v. Buzzfeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019) (substantial truth is determined as to each allegedly false and defamatory statement "specifically identified by the plaintiff").

### D.  Defendants' Proposed Instruction No. 19 – "Matters of Editorial Judgment"

Plaintiff objects to this entire instruction on the ground that it will mislead and confuse the jury on a very straightforward issue that Defendants complicate—"that minor inaccuracies may be disregarded in determining whether each scene is false." ECF No. 248, Pltf. Prop. Instr. No. 15. *See Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 383 (1977). A separate instruction is not needed on this issue and introducing "matters of editorial judgment" to the jury could cause them to believe that Defendants are protected by an editorial privilege that is not at issue in this case. None of the cases cited by Defendants suggest that this jury instruction should be used. The issue of editorial judgment arises in cases where a plaintiff argues that a defendant should have included certain facts in a ***truthful*** publication to minimize the defamatory impact of the published statements. *See Rinaldi*, 42 N.Y. 2d at 383. Plaintiff makes no such allegation here and, if she had, we would not be going to trial. *See id.* ("the courts, and juries have no proper function" in evaluating matters of editorial judgment).

### E.  Defendants' Proposed Instruction No. 20 – "Opinion"

It would be fundamental error for this instruction—which contravenes well established and controlling precedent—to be given to the jury. Defendants misstate the Second Circuit's, New York Court of Appeals' and this Court's, holdings to incorrectly argue that the jury must determine whether each of the five scenes is a statement of fact or protected opinion. ECF No. 333, Defs.

7

Mem. at 21-24; ECF No. 332, Defs. Prop. Instr. No. 20. "The vast majority of courts, and all of the federal circuits, agree that whether a statement is a fact or opinion is a matter of law for the court to decide." Hon. Robert J. Sack, Sack on Defamation: Libel Slander and Related Problems (5th Ed., 2023 Supp.), § 4:3.7 n. 291 (citing *Rinaldi*, 42 N.Y. 2d at 381).

Under New York law, it is clear that the inquiry into whether allegedly defamatory statements assert facts or merely state opinions ***must be made by the court***. *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (1993); *accord Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014) ("Determining whether a statement is an allegation of fact or mere opinion is a legal question for the court.") (citing *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995)); *Celle v. Filipino Rptr. Enters.*, 209 F.3d 163, 178 (2d Cir. 2000) ("The court ***must*** also decide as a matter of law whether the challenged statement is opinion.") (emphasis added) (citing *Rinaldi*, 42 N.Y. 2d at 381); *Fairstein I*, 553 F. Supp. 3d at 66 ("The distinction between fact and opinion is an issue of law for the courts");[5] *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 504 (S.D.N.Y. 2012) ("Whether a particular statement expresses fact or opinion is a question that the court must decide as a matter of law."). Despite Defendants' best efforts to extrapolate meaning from case opinions that simply is not there, ***none*** of the New York cases cited by Defendants hold that "the fact/opinion distinction goes to the jury." Defs. Mem., at 22-23. Indeed, in *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014), the New York Court of Appeals reiterated that "[d]istinguishing between fact and opinion is a question of law ***for the courts***." *Id.* (emphasis added).

---

[5] Defendants read words into the *Fairstein I* opinion that are not there. The Court did not hold that whether the five scenes constitute protected opinion could not be determined as a matter of law. Defs. Mem., at 22. On the contrary, the Court held that the five scenes were actionable because "[t]he average viewer could conclude that these scenes have a basis in fact and do not merely reflect the creators' opinions about controversial historical events." *Fairstein I*, 553 F. Supp. 3d at 58.

While Defendants urge the Court to adopt an approach taken in a limited number of jurisdictions outside New York,[6] "the 'overwhelming weight of post-*Gertz* authority [is] that the distinction between opinion and fact is a matter of law … and for good reason." *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1305 n. 7 (8th Cir. 1986) (alteration in original) (quoting *Ollman v. Evans*, 750 F. 2d 970, 978 (D.C. Cir. 1984)). "[B]ecause such questions generally tend to be problematic and involve important First Amendment issues, they remain within the province of the trial court." *Id.* The Court should follow controlling Second Circuit and New York precedent and reject the proposed instruction outright.

### F.  **Defendants' Proposed Instruction No. 22 – "Knowledge of Falsity"**

This instruction improperly imposes a higher burden of proof on Plaintiff than is already required by emphasizing "knowledge of falsity" as a requirement for proving actual malice. ECF No. 332, Defs. Prop. Instr. No. 22; ECF No. 333, Defs. Mem., at 13-14. The omission of "reckless disregard" without an accompanying, clear definition of what it means, will surely mislead the jury.

- **Paragraph 2**: The instruction that the jury must "bear in mind that a difference in interpretation of events is not evidence of actual malice" is misleading, as it asks the jury to presume that there are no objective facts from which actual malice can be determined. This is not supported by the case law. Nor has Plaintiff asserted a claim based on different interpretations of events—there are five, specific depictions that can be proven to be false.

- **Paragraph 3**: This is not a case in which a failure to investigate has been alleged. The reference to "irresponsible failure to follow professional standards" is irrelevant and could confuse the jury. Unlike *Palin v. N.Y. Times*, this case does not involve news reporting.

- **Paragraph 4:** Defendants' financial and other motives against Plaintiff may be considered by the jury when determining whether Plaintiff has proven actual

---

[6] In *Unsworth v. Elon Musk*, 2019 WL 8220721, at *10 (C.D. Cal. Nov. 18, 2019), the court noted a distinguishing factor in cases sent to the jury – "[w]ithout an actual malice requirement, an ambiguous statement must be determined by a jury."

malice. It is agreed that these considerations alone do not support a finding of actual malice, but it is not clear that they can be considered.[7]

- **Paragraph 5:** This is a legal argument, not a jury instruction. As written it suggests that the bias of the Defendants' sources cannot be considered. This also imposes a requirement that Defendants not only had to doubt their sources but believe Plaintiff was telling the truth—this has no basis in law. Recklessness may be found where there are "obvious reasons to doubt the veracity" of a source or "the accuracy of his reports." *Fairstein II*, 2023 WL 6125631, at *21. The "inherent improbability of a story" may also be considered. *Id.* at *21.

- **Paragraph 6**: "Specifically brought home" is vague and the instruction is misleading. The creation of the Series goes beyond "writing," as set forth in the Court's summary judgment opinion. *Fairstein II*, 2023 WL 6125631, at **16 (discussing Netflix employee involvement in "Key Beats" and film cuts, as well as automatic dialogue replacement). *See also* Plaintiff's Opposition to Defendants' Motion *In Limine* No. 7.

---

[7] Numerous courts, including the New York Court of Appeals, have held that a defendant's financial motive is relevant to the actual malice inquiry if considered as part of the overall circumstantial evidence relating to the defendant's state of mind. *See Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1136 (9th Cir. 2003) (evidence that publisher needed blockbuster story to raise its profile and used the story to solicit funds was relevant to the actual malice inquiry); *Jankovic v. Int'l Crisis Grp.*, 822 F. 3d 576, 595-596 (D.C. Cir. 2016) (defendant's offer to stop writing negative stories about the plaintiff in exchange for payment was relevant to actual malice); *U.S. Dominion Corp. v. Powell*, 554 F. Supp. 3d 42, 62, 64 (D.D.C. 2021) (defendants' motives to raise public profiles and profit from defamatory statements supported allegations of actual malice); *Gilmore v. Jones*, 2021 WL 68684, at *8 (W.D. Va. Jan. 8, 2021) (defendants' profit motive in publishing stories about the plaintiff were relevant to actual malice inquiry) (citing *Harte-Hanks*); *Prozeralik v. Capital Cities Comm'ns*, 82 N.Y.2d 466, 475-476 (1993) (fact that defendant's libelous television and radio broadcast occurred at time when defendant was engaged in ratings competition with rival television station for advertising revenues was relevant to actual malice inquiry). Motives other than profit are also relevant to whether a defendant acted with actual malice. *See Curtis Publ. Co.*, 388 U.S. at 158 (newspaper's desire to change its image and pressure to produce successful exposé relevant to actual malice inquiry); *Palin v. N.Y. Times,* 940 F.3d 804, 814-815 (2d Cir. 2019) (author's personal bias against defamation plaintiff's ideological position could support inference that he was untruthful in testifying he was unaware that the libels were untrue); *Goldfarb v. Channel One Russia*, 663 F. Supp. 3d 280, 309 (S.D.N.Y. 2023) (existence of an independent motive for news organization to level accusations against the plaintiff was relevant to actual malice because it suggested defendant would have aired broadcast even if it entertained serious doubts as to its truth).

Defendants should not be permitted to skew the jury's understanding of what they are to determine through the cryptic, misleading and incorrect instructions discussed above.

### G.  **Defendants' Proposed Instruction No. 23 – "Actual Malice-Meaning"**

It would be fundamental error to adopt Proposed Instruction No. 23 because Plaintiff's claims in this case are for ***express*** defamation based on ***false*** statements of fact. *Fairstein I*, 553 F. Supp. 3d 48, 63 (S.D.N.Y. 2021). Defendants are, accordingly, wrong in their assertion that the actual malice standard imposed in cases involving defamation by implication applies here. *See* Defs. Mem., at 14-18. Under New York law, defamation by implication is "'premised not on direct [false] statements but on false suggestions, impressions and implications arising from otherwise ***truthful*** statements.'" *Sorvillo v. St. Francis Preparatory School*, 607 Fed. Appx. 22, 25 (2d Cir. 2015) (citing *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 380-381 (1995)) (alteration in original) (emphasis added); *Biro v. Conde Nast*, 883 F. Supp. 441, 463-464 (2d Cir. 2012); *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 170 (S.D.N.Y. 2021). *See Conformis, Inc. v. Aetna, Inc.*, 58 F. 4th 517, 536 (1st Cir. 2023) (distinguishing *Howard v. Antilla* from a case in which a plaintiff alleges that the "statement itself is injurious").[8] In such cases, the plaintiff must demonstrate that "the language of the communications as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones Co.*, 120 A.D. 3d 28, 37-38 (1st Dep't 2014). The Second Circuit adopted this standard in *Biro v. Conde Nast* but not as an element of proving actual malice.

---

[8] In *Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 528-529 (6th Cir. 2007), "[u]nlike a typical defamation claim which challenges false statements of fact," the plaintiff alleged that the report in question "omitted key facts and implied incorrect connotations" about the plaintiff's business practices. In *Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 90 (3d Cir. 2013), the Third Circuit acknowledged that the actual malice standard has ***different elements of proof*** in ordinary defamation cases than in defamation-by-implication cases.

883 F. Supp. at 466.[9] In *Stepanov*, New York's First Department rejected this standard as a requirement for proving actual malice, holding "it is not a test for fault and whether a particular plaintiff is a public or private figure is not relevant to the inquiry. Furthermore, it is not a subjective standard like the 'actual malice' test, but an objective one." 120 A.D. 3d at 37-38. These heightened standards do not apply to cases of "allegedly false statements of verifiable fact, with inferences flowing from those facts." *Armstrong*, 85 N.Y.2d at 381 ("[T]his is not, as [defendants] argue, a case of 'a modern Rosetta stone' where the passage in issue must be 'stretched and extrapolated' by subjective interpretations in order to find any possibly falsity.").

Defendants urge the Court to adopt a standard that does not apply in this case because "the defamatory meaning of the statements is in dispute." Defs. Mem., n. 9. This ignores the obvious— defamatory meaning is an element of every defamation claim, whether express or by implication.[10] Defamatory meaning in this case turns on false depictions of Plaintiff (*i.e.* false statements) in each of the five scenes—there has been no finding by the Court that any scene that will be at issue at trial is true or substantially true.

*Palin v. N.Y. Times*, 482 F. Supp. 3d 208, 216-217 (S.D.N.Y. 2020), which Defendants rely on, is not binding precedent. Judge Rakoff acknowledged in his opinion that "there is no controlling precedent squarely on point" with his imposition of an actual malice requirement with respect to defamatory meaning. *Id.* He cited no New York case which adopted the same, or similar, requirement in cases involving express defamation. Several cases cited in the *Palin* opinion, and in Defendants' memorandum, concerned defamation by implication based on true statements. In

---

[9] In *Contemporary Mission, Inc. v. NY Times Co.*, 842 F.2d 612, 616 (2d Cir. 1988), the Second Circuit required proof that the article was published with actual malice with respect to "the business controversies described in the article." The Court did not separately require proof of knowledge or reckless disregard with respect to defamatory meaning.
[10] Here, the Court has already determined that four of the five scenes have a defamatory meaning. *Fairstein II*, 2023 WL 6125631, at **16, 19, 25 (S.D.N.Y. Sept. 19, 2023).

*Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 668 n. 5 (9th Cir. 1990), there was **uncontroverted** evidence that the statements made about the plaintiff in the broadcast at issue were true. In *Dodds v. Am. Broadcast Co.*, 145 F. 3d 1053, 1061-1064 (9th Cir. 1998), the Ninth Circuit analyzed the plaintiff's express defamation and implied defamation claims **separately**, requiring the plaintiff to prove that the defendants intended to convey defamatory impression only with respect to the claim for implied defamation. The Seventh Circuit's holding in *Saenz v. Playboy Enters.*, 841 F. 3d 1309, 1318 (7th Cir. 1998), aligns with these decisions, distinguishing between cases in which a plaintiff claims that defendants acted with actual malice with respect to a false statement versus innuendo.

*Palin* is also factually distinguishable from the present case in which the Series depicts Plaintiff, in her own name: i) manipulating a timeline of the attacks in Central Park; ii) telling NYPD officers not to use "kid gloves" before an assaultive interrogation of Kevin Richardson; iii) directing NYPD members to roundup young black "thugs" in the projects; iv) discussing the sudden discovery of DNA results with Lederer and Morgenthau; and v) being told that she coerced confessions from the Five. Plaintiff has alleged that each scene is false. In contrast, there was a question in *Palin* as to whether the statements were "of and concerning" the Plaintiff as opposed to her Political Action Committee. ("PAC"). The *Times* editorial in question implied that the PAC, and thus Palin, incited the shooting of a congresswoman. *Palin*, 17-cv-4853, ECF No. 170, Jury Instr. Nos. 9-11. The jury was to assess whether that implication was false. Instruction No. 9. There is no indication that Palin claimed that the actual statements in the editorial were false.

### H.  **Defendants' Proposed Instruction No. 24 — "Actual Malice-Dramatization"**

As they did at the summary judgment phase of this action, Defendants once again run afoul of *Times v. Sullivan* in seeking a wholly improper instruction to the jury that adopts an "essence of truth" standard for filmmakers who create docudramas. Defs. Mem., at 11-13; ECF No. 332, Defs. Prop. Instr. No. 24. Dramatizations are subject to the same actual malice standard as any other publication. In *Lovingood v. Discovery Communications*, 800 Fed. Appx. 840, 848 (11th Cir. 2020), the Eleventh Circuit refused to "invoke an invincible shield of protection for all works characterized as docudrama" and applied "the actual malice standard that the Supreme Court first articulated in *New York Times* and has applied for more than fifty years." *Id*. In *Lovingood*, the District Court distinguished between "changing the location in which a conversation took place and reducing the number of people involved in the conversation" and the utter falsification of real-life events, cautioning that such falsification has "***significant potential*** to damage the reputation of the individual depicted in the historical dramatization." 275 F. Supp. 3d 1301, 1313 (N.D. Ala. 2017) (emphasis added).

Here, the Court found that "actual malice may be present when a dramatization or fictional work includes a description of a real-life person that is contradicted by the source material." *Fairstein II*, 2023 WL 6125631, at *11. The Court further distinguished this case from the cases Defendants rely on in support of Instruction No. 24, noting "Fairstein does not complain that she was defamed through the use of a fictionalized composite character. Her claims are directed to words and deeds attributed to her by name." *Id.* Instruction No. 24 is another improper attempt to use jury instructions to argue the Defendants' case for them—it is Defendants' job to ***present evidence*** to the jury that the depiction of Plaintiff in each of the five scenes was the product of a particular storytelling technique. In addition, there is no support for their instruction that "there is

no actual malice if the essence of the portrayals that Plaintiff complains about fairly represents the source materials believed to be true by the Defendants." Defs. Prop. Instr. No. 24. In *Davis v. Costa-Gavras*, the court held that "if alterations of fact in scenes portrayed are not made with ***serious doubts of truth of the telescoped composite***, such scene does not ground a charge of actual malice." 654 F. Supp. 653, 658 (S.D.N.Y. 1987). This belies any assertion that the "essence of truth" is the standard generally applied to docudramas.

## III.   **DEFENDANTS' PROPOSED DAMAGES INSTRUCTIONS**

### A.   **Defendants' Proposed Instruction No. 27 — Damages**

This instruction misstates the law of damages for libel claims. Plaintiff is not required to prove that the "damages she seeks were caused solely by the statements in the Challenged Scenes." ECF No. 332, Defs. Prop. Instr. No. 27. Neither Plaintiff nor her experts need to link her damages to each scene.

As the U.S. Supreme Court has explained, "[t]he common law of defamation is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss. Under the traditional rules pertaining to actions for libel, ***the existence of injury is presumed from the fact of publication***." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349, 94 S. Ct. 2997, 3011, 41 L. Ed. 2d 789 (1974). Here, Plaintiff's damages are presumed, and "virtually certain" because the five scenes at issue constitute libel *per se*—they not would tend to injure Plaintiff in her trade, business or profession and expose Plaintiff to "public contempt ridicule, aversion or disgrace, or induce an evil opinion of [her] in the minds of right-thinking persons." *Stern v. Cosby*, 645 F. Supp. 2d 258, 289-90 (S.D.N.Y. 2009) (Chin, J.); *Fairstein I*,  553 F. Supp. 3d at 63, 76-79. *See also Celle*, 209 F.3d at 179 ("If a statement is defamatory *per se*, injury is assumed."); N.Y. Pattern Jury Instr.-Civil 3:29. In these circumstances, Plaintiff need not provide evidence of special damages.

If the jury finds that Plaintiff has proven all of the elements of her libel claim with respect to *one scene*, then the jury may award general damages because "*actual damage* to reputation arises *from the statement* itself." *Roberts v. Doe*, 2010 WL 11527317, at *2 (S.D.N.Y. May 11, 2010) (Preska, J.). General damages are those which the "law presumes to be the natural, proximate and necessary result of the publication." *Id.* at *3. Substantial damages may be awarded where there is proof of substantial injury. *Id. See Carroll v. Trump*, 20-cv-7311, ECF No. 280-4, Jury Instructions, at 3-4; *Carroll v. Trump*, No. 20-cv-7311, ECF No. 280, Verdict Form. Recently, in *Carroll v. Trump*, the jury awarded general damages for the combined impact of two statements made by Donald Trump, but awarded punitive damages separately for each statement. No. 20-cv-7311, ECF No. 280, Verdict Form.

In a case of libel *per se*, a Plaintiff may also seek compensation for special damages, or the "loss of something having economic or pecuniary value." *Roberts*, at *2. The economic or pecuniary loss must "flow directly from the *injury to reputation* caused by the defamation." *Celle*, 209 F.3d at 179 (emphasis added). This does not mean that a plaintiff must provide a direct link between each statement in a multi-statement publication and the resulting economic damages. Indeed, in *Cantu*, the plaintiff was awarded $38,000,000 in economic damages for lost business deals resulting from the injury to his reputation that was caused by globally circulated news article containing multiple defamatory statements. 705 F. Supp. at 223-224. The plaintiff's economic damages expert did not link his damages to a specific statement but rather testified as to the percentage of the plaintiff's ownership interest in each of the companies that lost the contracts and business opportunities at issue. *Id.* at 224. In *Cantu*, the jury instructions asked the jury to determine whether eight statements were defamatory, but did not direct the jury to determine causation, or damages, with respect to each statement. *Cantu*, No. 05-cv-3850, ECF No. 242-2,

Jury Instructions, at 14-15, 19-20, 25-26. The Second Circuit upheld the *Cantu* economic damages award. 705 F. Supp. 2d at 222. Similarly, in *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 319-325, 335-340 (S.D.N.Y. 2016), a case in which the plaintiff tried 66 defamatory statements in multiple media sources (reduced from an initial 1,800), the jury was not asked to assess damages with respect to each defamatory statement. *Bouveng*, No. 14-cv-5474, ECF No. 221. *See Faulk v. Aware, Inc.*, 19 A.D.2d 464, 467-471 (1st Dep't 1963).

Proposed Instruction No. 27 incorrectly states that Plaintiff is not liable for damages arising from other publications or third parties. Such an instruction would improperly exclude the backlash against Plaintiff on social media which caused her mental anguish and reflects the gravity of her reputational harm. The backlash and third-party threats are discussed in Plaintiff's Opposition to Defendants' Motion *in Limine* No. 6: Motion to Preclude Third Party Threats.

Plaintiff further objects to the inclusion of the statement that "Defendants claim that Plaintiff's program would be ineffective, including because of Plaintiff's public statements about the Five and their prosecution, and because she has not shown accountability, remorse or empathy." ECF No. 332, Defs. Prop. Instr. No. 27, at 57. As discussed in Plaintiff's motion to exclude Defendants' Rebuttal Expert Anthony Freinberg, Defendants have adduced no evidence to support this theory. ECF No. 264. In addition, allowing Defendants to assert that Plaintiff has not shown accountability, remorse or empathy presumes that Plaintiff engaged in the misconduct that was falsely depicted in the Series and which Defendants contend is merely their opinion. Such a statement would certainly prejudice the jury.

**B. <u>Defendants' Proposed Instruction No. 28 — Punitive Damages</u>**

Plaintiff objects to this instruction on the ground that it utilizes the standard set forth in *Morsette v. The Final Call*, 309 A.D. 2d 249, 254-255 (1st Dep't 2003). As discussed in Plaintiff's

Opposition to Defendants' Motion *In Limine* No. 2: Motion to Bifurcate and Exclude Reference to Punitive Damages, this is not the applicable standard.

Dated: New York, New York
        February 16, 2024

Respectfully Submitted,

By:    /s/ *Kara L. Gorycki*
        Kara L. Gorycki
Andrew T. Miltenberg
Stuart Bernstein
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
kgorycki@nmllplaw.com
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com

*Attorneys for Plaintiff Linda Fairstein*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2024, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

/s/ *Kara L. Gorycki*