# EXHIBIT F

## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

LINDA FAIRSTEIN,                                  )
                                                  )
          Plaintiff,                              )
                                                  )   Case No. 20-cv-8042 (PKC)
         v.                                      )
                                                  )
NETFLIX, INC., AVA DUVERNAY, and                  )
ATTICA LOCKE,                                     )
                                                  )
         Defendants.                             )


## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR OMNIBUS MOTION *IN LIMINE*
## REGARDING PLAINTIFF'S PURPORTED EXPERTS

Bart H. Williams (*pro hac vice*)
Alyson C. Tocicki (*pro hac vice*)
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Phone: (310) 284-4520
bwilliams@proskauer.com
atocicki@proskauer.com

Seetha Ramachandran
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 11036
Phone: (212) 969-3455
sramachandran@proskauer.com

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-8000
natalie.spears@dentons.com
gregory.naron@dentons.com
jacqui.giannini@dentons.com

Justin N. Kattan
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Phone: (212) 768-6700
justin.kattan@dentons.com

***Future "Lost Profits":*** Plaintiff's claimed lost profits are purely hypothetical, ██████ ██████████████████████████████████████████ [6] Instead, Mr. Bania's damages analysis presumes that Plaintiff would have been signed to a new publishing contract and then "would have continued to author one book per year, until she is 83 years old," with only a modest decline in sales/advances. (*Id.* ¶ 109, Schedule 6a.) Mr. Bania further speculates that the hypothetical publisher would be willing to pay Plaintiff ***higher*** advances for future novels than what she agreed to in her last contract, ==even though PRH expected Plaintiff's future sales (and advances) to== ==***decrease***==. (*Id.* ¶¶ 105–06; Ex. 6, Ball Tr. at 104:7–19.)[7]

Mr. Bania's damages calculation also includes a ==$400,000 advance that, he claims, a== ==publisher would have paid Plaintiff to write her memoir, but for the Series. (Ex. 3, Bania Rep.== ==¶ 114.) Mr. Bania bases this assumption on a hearsay March 2019 e-mail in which Ms. Fairstein's== ==agent relays nothing more than a publisher's interest, rather than a concrete offer. (Ex. 4, Bania== ==Tr. at 143:5-16; Ex. 7, E-mail from E. Newberg to L. Fairstein, Mar. 20, 2019.)==

***Causation as to "Series as a Whole":*** Plaintiff also proffers Mr. Bania as an expert on "causation" as to economic damages—*i.e.*, he believes that the Series as a whole caused Plaintiff's claimed lost profits. To support his causation opinion, Mr. Bania conducted a "Google Trends" analysis, which purports to show that Internet searches concerning Ms. Fairstein spiked around the

---

[6] 

==[7] Mr. Bania speculates that Ms. Fairstein agreed to artificially low advances in her 2019 publishing== ==contract "to mitigate against the potential for [her publisher] to cut ties with Ms. Fairstein." (Ex.== ==3, Bania Rep. ¶ 105.) Not only is there no evidence to support that presumption, it defies common== ==sense since Ms. Fairstein and PRH "negotiated this deal in March of 2019," several months before== ==the Series aired. (Ex. 6, Ball Tr. at 102:17–103:15.)==